No. 26-6822

In the
United States Court of Appeals
for the Fourth Circuit

KANAUTICA ZAYRE-BROWN,

*Plaintiff-Appellee,*

v.

NORTH CAROLINA DEPARTMENT
OF ADULT CORRECTION, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of North Carolina

**JOINT APPENDIX (JA001-JA350)**


Stephanie A. Brennan
Michelle A. Liguori
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6500

***Counsel for Defendant-Appellants***

Daniel K. Siegel
Michele Delgado
Jaclyn A. Maffetore
ACLU of N.C. Legal Foundation
P. O. Box 28004
Raleigh, NC 27611-8004
(919) 834-3466

***Counsel for Plaintiff - Appellee***

No. 26-6822

In the
United States Court of Appeals
for the Fourth Circuit

KANAUTICA ZAYRE-BROWN,

*Plaintiff-Appellee,*

v.

NORTH CAROLINA DEPARTMENT
OF ADULT CORRECTION, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of North Carolina

# JOINT APPENDIX (JA001-JA350)

## TABLE OF CONTENTS


| VOLUME I | | |
|---|---|---|
| **ECF #** | **Description** | **Page** |
| 176 | Order on fees | JA001 |
| N/A | District court docket report | JA020 |
| 1 | Complaint | JA050 |
| 62 | Plaintiff's motion for partial summary judgment | JA098 |
| 92 | Order denying without prejudice motions for summary judgment | JA102 |

| | | |
|---|---|---|
| 102 | Plaintiff's renewed motion for partial summary judgment | JA117 |
| 116 | Order on renewed summary judgment | JA120 |
| 117 | Notice of appeal | JA128 |
| 118 | Defendant's motion to stay pending appeal | JA129 |
| 126 | Order denying motion to stay | JA131 |
| 127 | Fourth Circuit order denying motion to stay | JA143 |
| 128 | Defendant's notice regarding injunction | JA152 |
| 129 | Plaintiff's response to notice | JA156 |
| 131 | Plaintiff's renewed proposal for compliance | JA164 |
| 132 | Defendant's supplemental response | JA170 |
| 134 | Order on supplemental review | JA175 |
| 135 | Defendant's notice regarding court order | JA177 |
| 140 | Defendant's notice of compliance | JA181 |
| 140-2 | Statement of Dr. Renberg | JA184 |
| 141 | Amended redacted version of 140-1, Statement of Dr. Simopolous | JA186 |
| 144 | Plaintiff's response to notice of compliance | JA196 |
| 146 | Order for Defendants to resubmit report | JA203 |
| 147 | Notice of Fourth Circuit order | JA207 |
| 147-1 | Exhibit (Committee reconsideration) | JA210 |
| 148 | Fourth Circuit judgment | JA211 |
| 149 | Amended Fourth Circuit order | JA213 |
| 152 | Fourth Circuit mandate | JA215 |
| 162 | Joint stipulation of dismissal | JA217 |

| | | |
|---|---|---|
| 163 | Plaintiff's motion for attorney fees and costs | JA220 |
| 163-1 | Exhibit A Davidson Declaration | JA225 |
| 163-2 | Exhibit B Siegel Declaration | JA244 |
| 165 | Bill of costs | JA269 |
| 165-1 | Cost itemization | JA271 |
| 165-2 | Cost invoices | JA272 |
| 166-1 | Exhibit – Plaintiff's timekeeping sheets | JA293 |
| N/A | Transcript of August 26, 2025 hearing on motion for attorneys fees | JA322 |
| 168 | Joint status update | JA347 |
| 177 | Notice of appeal | JA349 |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-191-MOC-DCK

| | | |
|---|---|---|
| **KANAUTICA ZAYRE-BROWN**,<br><br>Plaintiff,<br><br>vs.<br><br>**NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.,**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Attorney's Fees and costs. (Doc. No. 163). Defendants filed a response in opposition, and Plaintiff has filed a reply. (Doc. Nos. 166, 167). This matter is ripe for disposition.

## I. Background

Plaintiff is a transgender woman with gender dysphoria. In 2010, Plaintiff transitioned socially to living as a woman and began receiving gender-affirming care, including psychotherapy, hormone therapy, and gender-affirming surgeries. (Doc. No. 92 at 1–2). Plaintiff continued to experience dysphoria related to her lower body. While she was in prison in the custody of the State of North Carolina's Department of Adult Corrections ("DAC"), she began seeking gender-affirming genital surgery from Defendants. (Id.). DAC's Division Transgender Accommodation Committee ("DTARC"), responsible for evaluating requests for gender-affirming surgery, confirmed Plaintiff's gender dysphoria diagnosis in 2017. (Id. at 3). DTARC ultimately denied Plaintiff's requests for gender-affirming surgery. (Id. at 4 & n.3, 5).

Plaintiff then filed this action, seeking declaratory and injunctive relief under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973.

Plaintiff sought a declaration that "Defendants' practices in obstructing and denying [her] . . . adequate and necessary medical treatment and accommodations for gender dysphoria" violated the Constitution, as well as a "permanent injunction[] requiring Defendants to provide Plaintiff with necessary medical care[.]" (Doc. No. 1 at 46). She also sought damages under two federal statutory claims and the North Carolina Constitution. (Id.).

After the Court denied Defendants' motion to dismiss (Doc. No. 25 at 11), extensive discovery confirmed that contracted UNC health providers and DAC providers believed that Plaintiff needed gender-affirming surgery to treat her gender dysphoria. (Doc. No. 92 at 4 & n.3). Defendants filed a Rule 35 motion seeking to have two of their expert witnesses examine Plaintiff, which Plaintiff successfully opposed in part. (Doc. No. 47 at 1).

Following the limited evaluation, Defendants' expert Sarah Boyd similarly concluded that she believed gender-affirming surgery was "necessary" to cure Plaintiff's gender dysphoria. (Doc. No. 62-1 at 166:21–26, 167:12–21). Discovery further revealed that Defendant Arthur Campbell—DAC's Chief Medical Officer responsible for evaluating requests for gender-affirming surgery—authored a "position statement" in which he asserted "that gender-affirming surgery is never medically necessary" to treat gender dysphoria. (Doc. No. 92 at 3).

After two rounds of briefing cross-motions for summary judgment and two hearings, this Court held that Plaintiff satisfied the elements of her Eighth Amendment claim. The Court held "that Defendant's denial caused Plaintiff to suffer significant injury is beyond genuine dispute," (id. at 8), and that "[n]o reasonable jury could find that Defendants lacked subjective awareness that denying[her] request carried some risk of harm," (id. at 10). Moreover, the Court found that Dr. Campbell's position statement evidenced a de facto ban on gender-affirming surgery. (Doc. No. 116 at 5–7). "[C]onsidering Dr. Campbell's authorship of the position statement, other

DTARC members' deference to his medical judgment, and DTARC's track record of denying dysphoric prisoners' requests for gender-affirming surgery, the Court [could not] credit Dr. Campbell's testimony" to the contrary. (Id. at 5).

The Court thus concluded that "Defendants' review of Plaintiff's accommodation request violated Plaintiff's Eighth Amendment rights insofar as Defendants denied Plaintiff the individualized medical evaluation the Eighth Amendment requires." (Id. at 6). The Court entered a permanent injunction that provided Defendants with two options: "either (1) give Plaintiff the surgery that Plaintiff's experts contend remains medically necessary; or (2) within 30 days from entry of this order form a new committee, subject to this Court's approval, to re-assess Plaintiff's accommodation request, that committee to contain at least two medical doctors with gender dysphoria expertise." (Id.).

Defendants refused to comply with the Court's order. On the eve of the Court's deadline for compliance, and less than six months from Plaintiff's projected release date, Defendants filed their notice of appeal of the Court's injunction. (Doc. No. 117). The next day, Defendants moved the Court to stay its injunction pending appeal. (Doc. No. 118). Plaintiff opposed the motion and this Court denied it, noting that "Defendants ha[d] apparently taken no steps to comply with the Court's injunction." (Doc. No. 126 at 2). Defendants renewed their stay motion with the Fourth Circuit, which Plaintiff opposed on an expedited basis. (4th Cir. Doc. Nos. 17, 18, 19-1). The Fourth Circuit denied Defendants' stay motion as well. (4th Cir. Doc. No. 20).

While briefing was underway at the Fourth Circuit, this Court received briefing and held a hearing on how Defendants would comply with the permanent injunction. (Doc. Nos. 128, 129, 131, 132, 134). In response to the injunction, Defendants selected two doctors to re-evaluate Plaintiff for surgery. (Doc. No. 128 at 2). The results of that re-evaluation were filed with the

Court on November 6, 2024. (Doc. No. 140). However, Plaintiff was released from custody on November 2, 2024. Nevertheless, Plaintiff objected to the adequacy of Defendants' "Notice of Compliance" (Doc. No. 144), and on November 22, 2024, the Court held that Defendants had failed to comply with "basic requirements" of its order and made "legally irrelevant" submissions, and the Court required Defendants to submit a complaint report within ten days. (Doc. No. 146 at 2–4).

On November 4, 2024, two days after Plaintiff's release from custody, the Fourth Circuit requested supplemental briefing regarding whether her release would render the appeal moot. (4th Cir. Doc. No. 43). Plaintiff argued that it did and moved to dismiss the appeal on November 19, 2024. (4th Cir. Doc. Nos. 44, 45). The Fourth Circuit dismissed the appeal and directed that the decision below be vacated as moot on December 2, 2024.[1] (Doc. No. 149). Thus, Plaintiff was released from prison and her Eighth Amendment claim became moot before the Court could consider Defendants' resubmitted report for compliance. Ultimately, Defendants never fully complied with the permanent injunction, having run out the clock on Plaintiff's sentence.

A jury trial on damages in this case was delayed while the parties litigated the appeal in this matter and complied with this Court's orders to engage in mediation. Settlement efforts resulted in an impasse and Plaintiff ultimately decided to dismiss her remaining claims without proceeding to trial. (Doc. Nos. 159, 162).

Plaintiff now moves for reasonable attorney's fees and expenses in the following amounts:

- $408,843.75 in attorneys' fees to the ACLU of North Carolina Legal Foundation

---

[1] Plaintiff filed a bill of costs associated with the dismissed appeal, which was granted. (Doc. No. 157).

• $4,138.94 in expenses to the ACLU of North Carolina Legal Foundation

• $117,363.75 in attorneys' fees to the American Civil Liberties Union Foundation

• $6,246.35 in expenses to the American Civil Liberties Union Foundation

Plaintiff also seeks taxable costs of $21,617.90.

## II. Discussion

### A. Whether Plaintiff is the Prevailing Party

Title 42 of the United States Code, Section 1988 provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A plaintiff constitutes a "prevailing party" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Here, the Court first notes that the parties dispute whether Plaintiff is a "prevailing party" and thus entitled to an award of attorneys' fees under Section 1988. For the following reasons, the Court agrees with Plaintiff that she is the prevailing party.

Defendants argue that, even though Plaintiff won a final judgment on the merits of her Eighth Amendment claim and a permanent injunction, she is not a prevailing party because she did not obtain all the relief sought—specifically, the Court did not require Defendants to provide Plaintiff with gender-affirming surgery. Defendants also argue that Plaintiff is not a prevailing party because the permanent injunction was vacated after Plaintiff was released from prison. The Court disagrees.

The Supreme Court has held that "[i]f the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." Texas State Tchrs. Ass'n v. Garland

Indep. Sch. Dist., 489 U.S. 782, 791–92 (1989) (citation modified). "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." Lefemine v. Wideman, 568 U.S. 1, 4 (2012). Whatever its form, a final judgment will confer prevailing-party status if it "'affects the behavior of the defendant toward the plaintiff.'" Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (quoting Hewitt v. Helms, 482 U.S. 755, 761 (1987)). This question "does not turn on the magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992).

Here, Defendants argue that because the Court did not require them to provide gender-affirming surgery, Plaintiff is not a prevailing party. (Doc. No. 166 at 8). While Plaintiff did not obtain all the relief she sought in this case, she did obtain some of it. In her complaint, Plaintiff asked the Court to declare unconstitutional "Defendants' practices in obstructing and denying [her] . . . adequate and necessary medical treatment and accommodations for gender dysphoria." (Doc. No. 1 at 46). She also sought a permanent injunction requiring adequate medical care, which would necessarily involve an individualized evaluation. See (Id.).

The Court granted both requests. The Court found that Defendants' practices amounted to an unconstitutional ban on medical care and compelled Defendants to take steps for Plaintiff's benefit: either provide her surgery or an independent evaluation for surgery by qualified doctors. (Doc. No. 116 at 6). The extent of the relief may affect her total recovery, but it does not affect whether she is a prevailing party under 42 U.S.C. § 1988.

**B. Whether the Requested Hourly Rate Amounts Are Reasonable**

Here, counsels seek $262.50 for each attorney in calculating the lodestar amount. "The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). The burden is on the fee applicant to justify the reasonableness of

the requested fee. See Blum v. Stenson, 465 U.S. 886, 897 (1984). Determining a reasonable attorney fee award using the lodestar method involves three steps: (1) determining a lodestar figure; (2) subtracting fees for hours spent on unsuccessful claims unrelated to successful one; and (3) evaluating the plaintiff's degree of success. Randolph v. PowerComm Constr., Inc., No. 18-1728, 2019 WL 3072555, at *4 (4th Cir. July 11, 2019) (per curiam).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d)(3), caps attorney's fees for injunctive relief claims brought under 42 U.S.C. § 1983 at 150 percent of the hourly rate authorized by the Judicial Conference under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, for paying appointed counsel. The current non-capital maximum hourly rate authorized by the CJA is $175.[2] Thus, the current PLRA maximum rate is $262.50, the hourly rate sought by counsels.[3]

"[T]he PLRA rate virtually always replaces the prevailing market rate as the presumptively reasonable rate in the court's determination of the lodestar figure because actual prevailing rates are very unlikely to be as low as the PLRA rate." Kelly v. Wengler, 822 F.3d 1085, 1103 (9th Cir. 2016). Further, the PLRA rate sought is substantially below rates that have

---

[2] See Guide to Judiciary Policy, Vol. 7, Chapter 2, § 230.16(a), https://www.uscourts.gov/administration-policies/judiciary-policies/guidelines-administering-cja-and-related-statutes-6#a230_16 (Jan. 1, 2025).

[3] Application of the current PLRA rate is appropriate to account for the delay in payment to Plaintiff's counsel while the litigation was pending. See, e.g., Missouri v. Jenkins, 491 U.S. 274, 282 (1989) ("enhancement for delay in payment" including by "basing the award on current rates" is "part of a reasonable attorney's fee"); Reaching Hearts Int'l, Inc. v. Prince George's Cnty., 478 Fed. App'x. 54 (4th Cir. 2012); Skinner v. Uphoff, 324 F. Supp. 2d 1278, 1283 (D. Wyo. 2004) (applying current PLRA rate for all work performed); Edmo v. Idaho Dept. of Corr., No. 1:17-cv-00151-BLW, 2025 WL 605467, at *1 (D. Idaho Feb. 25, 2025) (allowing fee multiplier to PLRA maximum).

been considered appropriate for attorneys with Plaintiff's counsel's experience level in North Carolina federal courts. The Court finds that the hourly rate requested by Plaintiff's counsel is reasonable.

### C. Reasonableness of Fees—Application of the Johnson Factors

In exercising its discretion in the application of the lodestar method, the Court is guided by the following twelve factors, often referred to as the Johnson[4] factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.8 (4th Cir. 1987)). "Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable." Firehouse Rest. Grp., Inc. v. Scurmont LLC, No. 4:09-cv-00618-RBH, 2011 WL 4943889, at *12 (D.S.C. Oct. 17, 2011) (citing EEOC v. Serv. News Co., 898 F.2d 958, 965 (4th Cir. 1990)). The Court addresses each factor in turn.

#### i. Time and Labor Expended

Plaintiff's counsel began investigating this case in 2019, long before the time period for which they seek fees. The relevant portion of the litigation spanned nearly three years, and involved significant client communication, medical record review, motions practice (including

[4] See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974) (setting forth the twelve reasonableness factors).

several motions filed by Defendants against which Plaintiff had to defend), a lengthy discovery period including fifteen depositions (two of which were 30(b)(6) depositions), two rounds of summary judgment briefing and associated hearings, two stay motions, and full briefing at the Fourth Circuit. This factor weighs in favor of the fees requested being reasonable.

**ii. Novelty and Difficulty of the Questions Raised**

The Court has noted from the outset "the myriad novel legal and factual issues at play in this case." (Doc. No. 25 at 5). This case involved complex issues without significant precedent in this circuit regarding healthcare for a transgender incarcerated person, a prison system's accommodation policy, and the requirements of the Eighth Amendment. In the limited instances in which courts have considered similar issues, the courts encountering such issues have considered them "novel." <u>See, e.g.</u>, <u>Edmo v. Idaho Dept. of Corr.</u>, 679 F. Supp. 3d 993, 1015 (D. Idaho 2022), <u>rev'd in part on other grounds</u>, <u>Edmo v. Corizon, Inc.</u>, 97 F.4th 1165 (9th Cir. 2024). This factor weighs in favor of the fees being reasonable.

**iii. Skill Required to Properly Perform the Legal Services**

As detailed in their attached declarations, Plaintiff's counsels have shown that they have significant experience with civil rights litigation, particularly on behalf of incarcerated persons and members of the LGBTQ community. (Davidson Decl. ¶¶ 5–8; Siegel Decl ¶¶ 3–6). Moreover, courts in North Carolina and across the country have acknowledged the reputation of the ACLU and ACLU-NC in civil rights cases. <u>See, e.g.</u>, <u>Orr v. Trump</u>, No. 1:25-CV-10313-JEK, 2025 WL 1695941, at *7 (D. Mass. June 17, 2025) (referencing the lengthy experience of the ACLU "litigating claims pertaining to transgender individuals' civil rights and civil liberties"); <u>Progeny v. City of Wichita, Kansas</u>, No. 621CV01100EFMADM, 2023 WL 6597768, at *9 (D. Kan. Oct. 10, 2023) ("the ACLU ... is [a] well-known entit[y] with significant experience

litigating civil rights claims"); M.E. v. T.J., 854 S.E.2d 74, 111 (N.C. Ct. App. 2020) ("The public interest in the resolution of Plaintiff's appeal is in part demonstrated by the fact that, on appeal, Plaintiff is represented by attorneys representing ACLU of North Carolina . . . ."); Carcano v. Cooper, No. 1:16CV236, 2019 WL 3302208, at *6 (M.D.N.C. July 23, 2019) ("Plaintiffs are well-represented by several major nonprofit legal organizations [including] the American Civil Liberties Union of North Carolina."). This factor weighs in favor of the requested fees being reasonable.

**iv. Opportunity Costs of Litigation**

The ACLU and ACLU-NC assert that they are non-profit public interest legal organizations in high demand, but with limited resources, and must be judicious in selecting cases. Especially with respect to lead counsel, this litigation required a significant outlay of attorney time over the course of years, severely limiting counsel's ability to take on other matters litigating important civil liberties issues. (Davidson Decl. ¶ 15; Siegel Decl. ¶ 11). This factor weighs in favor of the requested fees being reasonable.

**v. Customary Fee for Similar Work**

In determining the lodestar amount, the Court should use an hourly rate that reflects "the prevailing market rates in the relevant community for the type of work for which [a party] seeks an award." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 244 (4th Cir. 2009). As such, the first step is to determine the reasonable hourly rate to apply. The relevant community is typically the "community in which the court sits[.]" Rum Creek Coal Sales, 31 F.3d at 179. However, the court may consider market rates beyond the immediate community when there are no local attorneys with the relevant skills. Id.

After defining the relevant community, the court determines the prevailing market rate in that community for the type of work involved. The requested hourly rate should reflect "what attorneys earn from paying clients for similar services in similar circumstances[.]" Depaoli v. Vacation Sales Assocs., L.L.C., 489 F.3d 615, 622 (4th Cir. 2007). The moving party must show "'specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which he seeks an award." Spell, 824 F.2d at 1402 (quoting Blum, 465 U.S. at 895). This burden is typically met by providing "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Robinson, 560 F.3d at 245. The Court may also rely on its own knowledge and experience of the relevant market to determine a reasonable rate. See Rum Creek Coal Sales, 31 F.3d at 179.

As noted, Plaintiff seeks an hourly rate at the current PLRA rate of $262.50. Defendants take issue with Plaintiff's use of the current PLRA rate, rather than historical rates, to determine the lodestar. (Doc. No. 166 at 15–16). The Supreme Court and Fourth Circuit have made clear that compensation for work done over time may require adjustment to account for present value. See Missouri v. Jenkins, 491 U.S. 274, 282 (1989) (compensation for fees over time is made "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value"); Daly v. Hill, 790 F.2d 1071, 1081 (4th Cir. 1986) (district court erred by adopting historic rates and remanding to either "increase the hourly rates to reflect current market rates" or "increase the lodestar to counterbalance the effect of inflation and forgone interest"). Courts within the Fourth Circuit have exercised their discretion in this way. See, e.g., Scott v. Clarke, No. 3:12-CV-00036, 2020 WL 7220571, at *6 (W.D. Va. Mar. 12, 2020) (finding "reasonable and consistent with the PLRA's hourly rate cap" a rate of $220.50 for work

performed between January 2017 and June 2019), report and recommendation adopted as modified, 2020 WL 2771949 (W.D. Va. May 28, 2020).

Here, based on counsel's skill and experience, the current PLRA rate of $262.50 is still below the market rate for a case of this nature and is presumptively reasonable. (See Doc. No. 164 at 9–11(citing Blum v. Stenson, 465 U.S. at 895 n.11; Kelly, 822 F.3d at 1103).

**vi. Attorney's Expectation at Outset of Litigation**

Neither party has presented an argument with respect to this factor. This factor does not weigh significantly one way or the other.

**vii. Time Limitations**

An attorney is entitled to some premium when priority work takes time away from the lawyer's other legal work. Virginia Acad. of Clinical Psych. v. Blue Shield of Va., 543 F. Supp. 126, 148–49 (E.D. Va. 1982). Here, as noted, Plaintiff's counsels argue that, although Plaintiff's struggle to get necessary care while incarcerated endured for many years, her prison term was fixed and therefore operated as a constant time constraint in this litigation, and obtaining a permanent injunction before Plaintiff's release was of the utmost importance. This factor weighs modestly in favor of the requested fee award.

**viii. Amount in Controversy and Results Obtained**

The Supreme Court has held that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). The purpose of the fee-shifting provision in Section 1988 is to encourage the bringing of civil rights lawsuits which might otherwise not be brought because of the costs of hiring counsel, and not for a financial windfall for plaintiff's attorneys. Farrar, 506 U.S. at 114–16; City of Riverside v. Rivera, 477 U.S. 561, 578 (1986).

As discussed above, Plaintiff obtained (1) a declaratory judgment that DAC's process for evaluating gender-affirming surgery requests violated the Eighth Amendment and (2) a permanent injunction against Defendants requiring them to take steps to reevaluate Plaintiff's need for surgery that they would not have otherwise taken. The Court's order concluding that the Eighth Amendment requires an individualized process for transgender prisoners will serve as precedent for other transgender prisoners. See Zayre-Brown v. N.C. Dep't of Public Safety, No. 3:22-cv-191-MOC-DCK, 2024 WL 1641795 (W.D.N.C. Apr. 16, 2024). Additionally, the Court's opinions discredit Dr. Campbell as an appropriate decisionmaker and address DAC's process for anyone who may need gender-affirming care. For practical purposes, Plaintiff's suit will impact other transgender prisoners in DAC custody. This factor weighs in favor of the requested fee's reasonableness.

**ix. Experience, Reputation, and Ability of Counsel**

As noted, counsels seek $262.50 for each attorney in calculating the lodestar amount. Here, Plaintiff's counsels argue that they have considerable experience litigating civil rights claims on behalf of prisoners and the LGBTQ community, and without the PLRA's cap they would be entitled to significantly higher market rates. (Davidson Decl. ¶ 12; Siegel Decl. ¶ 7). This factor weighs in favor of the requested fee's reasonableness.

**x. Undesirability of the Case in the Legal Community**

Lawsuits that are undesirable, either because of novelty of the issue or difficulty of the litigation, are eligible for premium attorneys' fees. See Alexander v. Hill, 625 F. Supp. 567, 570 (W.D.N.C. 1985) (considering that the case in question was "frustrating and thankless and require(d) great dedication" as the basis for an upward adjustment in attorneys' fees).

Fee awards in civil rights cases help incentivize competent counsel to take on unpopular clients who have meritorious claims. See, e.g., Kelly, 822 F.3d at 1104 ("Improving the quality of prisoner suits requires that plaintiffs with meritorious civil rights cases be able to secure competent counsel."). This litigation involved advocacy on behalf of two politically unpopular minorities in North Carolina: incarcerated people and transgender people.

Litigation on behalf of prisoners is generally considered "undesirable" given the stigma attached to this population and the PLRA's cap on recoverable fees. (Davidson Decl. ¶ 16; Siegel Decl. ¶ 12). Furthermore, North Carolina has historically not been very sympathetic to providing benefits to transgender individuals. See Kadel v. Folwell, 100 F.4th 122 (4th Cir. 2024) (regarding North Carolina exclusions of gender-affirming care from state employees health plan); Carcaño v. McCrory, 203 F. Supp. 3d 615 (M.D.N.C. 2016) (regarding North Carolina law restricting bathroom usage based on biological sex). Cases challenging such harms face substantial challenges in the current political climate. (Davidson Decl. ¶ 16). This factor weighs in favor of finding that the requested fees are reasonable.

#### xi. Nature and Length of Professional Relationship between Attorney and Client

An on-going relationship with a client who brings repeat business to a firm tends to lead to lower hourly rates. Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1300, 1305 (11th Cir. 1988). However, a first-time, one-time, and/or contingency relationship may render this factor irrelevant from the attorneys' fee analysis, and therefore inconsequential. See Bunn v. Bowen, 637 F. Supp. 464, 472 (E.D.N.C. 1986).

Plaintiff notes that ACLU-NC has maintained a relationship with Plaintiff since before her transfer to a women's prison, and current lead counsel has maintained a relationship with her

since starting at ACLU-NC in late 2019. (Siegel Decl. ¶ 6). Plaintiff's counsel maintained close contact with Plaintiff while she was incarcerated through letters, prison phone calls, communications with family members, and visitations, and since her release from prison through regular email and cell phone contact. (Id.). This included complaint and declaration review and witness preparation as well as regular updates and strategy discussions regarding her case and transmission of all major filings through legal mail. (Id.). This factor weighs in favor of finding that the requested fees are reasonable.

**xii. Attorneys' Fee Awards in Similar Cases**

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without (of) the court's circuit." Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 719 (5th Cir. 1974). Plaintiff has shown that the costs and fees sought here are reasonable when compared with awards to other civil rights litigants. See Johnson, 488 F.2d at 719 ("The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit."). For example, in Bone v. Univ. of N.C. Health Care Sys., the plaintiffs sought relief against the UNC Health Care System to "vindicate the rights of . . . patients who suffer from a sight-related disability" under the ADA and Rehabilitation Act, among other claims. No. 1:18CV994, 2024 WL 1014164, at *24 (M.D.N.C. Mar. 8, 2024). Over four years of litigation, Plaintiffs were partially successful on cross-motions for summary judgment, achieved a permanent injunction, and ultimately declined to pursue their damages claims at trial. Id. at *3. The Middle District of North Carolina determined that a fee award of $1.1M for nearly 5,000 hours of work by attorneys and paralegals was justified in that case. Id. at **17–19, 25.

In Edmo v. Idaho Dep't of Corrs., a transgender prisoner litigated for three years and ultimately succeeded on her Eighth Amendment claim resulting in a permanent injunction that provided her with gender-affirming surgery. No. 1:17-cv-00151-BLW, 2025 WL 605467, at *1 (D. Idaho Feb. 25, 2025). Claims under the Equal Protection Clause and the Affordable Care Act were either settled or abandoned, and so the court only awarded fees that were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" under the Eighth Amendment. Id. at **1, 8 (quoting 42 U.S.C. § 1997e(d)(1)). Though the PLRA maximum cap controlled, the court awarded plaintiff's counsel $2.4M for 5,283.4 billable hours. Id. at *9. Here, Plaintiff's counsels seek $526,207.50 for 2,004.6 billable hours. Given that courts have awarded attorney fees far greater than the damages awarded to plaintiffs, this factor weighs in favor of the fee award's reasonableness.

In sum, in light of the factors enumerated in Johnson by Plaintiff's counsel, the attorney's fee award sought is reasonable. See Rum Creek Coal Sales, 31 F.3d at 175. Furthermore, Plaintiff's counsel have shown that they used sound billing judgment in the amount of fees requested. Plaintiff's counsel note that they have already cut several timekeepers and many hours as a matter of billing judgment. Though there were several attorneys on this case, Plaintiff has not sought fees for counsel who withdrew from representation or assisted in the suit but never filed a notice of appearance (Davidson Decl. ¶ 9), or for her private pro bono counsel with Patterson Harkavy. Additionally, of the remaining five attorneys, the bulk of hours sought are for the lead counsel at ACLU-NC (Jaclyn Maffetore), with significantly fewer hours sought for supporting counsel. Further, Plaintiff's counsel have eliminated entries for largely administrative tasks and, as a result, do not seek fees for work performed by paralegals or law student interns. (Davidson Decl. ¶ 9; Siegel Decl. ¶ 9).

Because "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," Hensley, 461 U.S. at 434, Plaintiff's counsel have already cut a significant number of hours in review of their billing entries. (Davidson Decl. ¶ 9; Siegel Decl. ¶ 9). Plaintiff's counsel culled hours where attorney work could be perceived as vague or duplicative, restricting hours sought in many circumstances to primary authors of written work product where reasonable, or to first chairs of depositions only. (Id.).

Moreover, in recognition that Plaintiff voluntarily dismissed her remaining claims for damages, Plaintiff's counsels have discounted as much attorney time as could be readily identified as pertaining solely to those unsuccessful claims. (Id.). The self-imposed cuts by the timekeepers with records before the court amount to approximately 1,450 total hours – representing a roughly 42% overall reduction in total hours now sought before this court. (Id.). Given that Plaintiff's counsel has already engaged in this exercise of sound billing judgment, and in light of the Johnson factors, the Court will award Plaintiff's counsel the full amount of requested fees.

Plaintiff's counsel also requests their reasonable hours associated with preparing the pending motion. "Time spent defending entitlement to attorney's fees is properly compensable in a § 1988 fee award." Daly, 790 F.2d at 1080. ACLU-NC requests $5,853.75 for 22.3 hours spent preparing this petition. (Siegel Decl. ¶ 13 n.1). ACLU National requests $1,496.25 for 5.7 hours spent preparing this petition. (Davidson Decl. ¶ 13). This time spent is reasonable when compared to awards made by North Carolina district courts for time spent on fee petitions. See, e.g., Mercer v. Duke Univ., 301 F. Supp. 2d 454, 470 (M.D.N.C. 2004) (awarding $11,450).

**D. Costs**

In addition to attorney fees, Plaintiff also asks the Court for reimbursement of costs incurred. "A prevailing plaintiff in a civil rights action is entitled, under § 1988, to recover those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Spell, 852 F.2d at 771 (citation and internal quotation marks omitted). The Fourth Circuit has held that such out-of-pocket expenses may include "supplemental secretarial costs, copying, telephone costs and necessary travel." Wheeler v. Durham Bd. of Educ., 585 F.2d 618, 623 (4th Cir. 1978) (footnote omitted).

Here, Plaintiff seeks $4,138.94 to compensate ACLU-NC for reasonable travel expenses of counsel to prison visitations and hearings in this matter, as well as the cost of postage. Plaintiff seeks $6,246.35 to compensate ACLU National for travel and lodging expenses for counsel to attend hearings and to take or defend depositions in this case. (Davidson Decl. ¶ 14; Siegel Decl. ¶ 14). Plaintiff separately seeks $21,617.90 in taxable costs, through her filed bill of costs and supporting documents.

Because Plaintiff is the prevailing party in this matter, these costs will be allowed. See FED. R. CIV. P. 54(d)(1). In sum, the Court finds that the costs submitted by Plaintiff are reasonable out-of-pocket expenses incurred which are normally charged to a fee-paying client while providing legal services.

## III. Conclusion

The legal fees in this case were incurred primarily on the constitutional issue of denial of due process. Plaintiff prevailed on that issue both before this Court and the Fourth Circuit. The State of North Carolina prevailed on the medical necessity claim once an unbiased panel reviewed the claim. But because the due process issue was the cause of so much litigation and resulting costs, the Court will award the full attorney fees and costs requested.

For the foregoing reasons, the Court will grant Plaintiff's motion for attorney's fees and costs.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 163) is **GRANTED**.

Signed: June 22, 2026

Max O. Cogburn Jr.
United States District Judge

# U.S. District Court
# Western District of North Carolina (Charlotte)
# CIVIL DOCKET FOR CASE #: 3:22-cv-00191-MOC-DCK

Zayre-Brown v. North Carolina Department of Adult Corrections et al
Assigned to: District Judge Max O. Cogburn, Jr
Referred to: Magistrate Judge David Keesler
Related Case: 3:26-cv-00098-SCR-WCM
Case in other court: 4th Circuit, 24-06477
4th Circuit, 26-06822
Cause: 28:1331 Fed. Question: Civil Rights Violation

Date Filed: 04/28/2022
Date Terminated: 07/31/2025
Jury Demand: Defendant
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Kanautica Zayre-Brown** represented by

**Christopher A. Brook**
Patterson Harkavy LLP
100 Europa Drive
Suite 420
Chapel Hill, NC 27517
919-942-5200
Email: cbrook@pathlaw.com
*TERMINATED: 03/09/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Kohle Siegel**
ACLU of North Carolina
P.O. Box 28004
Raleigh, NC 27611
919-592-4630
Email: dsiegel@acluofnc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jaclyn Maffetore**
ACLU of North Carolina Legal Foundation
PO Box 28004
Raleigh, NC 27611
919-354-5070
Fax: 919-869-2075
Email: jmaffetore@acluofnc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jon W. Davidson**
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004

323-536-9880
Email: jondavidson@aclu.org
*TERMINATED: 12/31/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Li Nowlin-Sohl**
American Civil Liberties Union Foundation
125 Broad St. 18th Floor
New York, NY 10004
206-348-3163
Email: lnowlin-sohl@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michele Delgado**
ACLU of NC Legal Foundation
PO Box 28004
Raleigh, NC 27611
919-834-3466
Email: mdelgado@acluofnc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Taylor Taylor Brown**
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-519-7887
Email: tbrown@aclu.org
*TERMINATED: 11/28/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**North Carolina Department of Adult Corrections** represented by **Laura Howard McHenry**
NC Department of Justice
114 W. Edenten Street
Raleigh, NC 27602
919-716-6532
Fax: 919-716-6764
Email: lmchenry@ncdoj.gov
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**

N.C. Department of Justice
114 West Edenton Street
Raleigh, NC 27602
919-716-6516
Email: orodriguez@ncdoj.gov
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
NC Department of Justice
114 W. Edenton Street
P. O. Box 629
Raleigh, NC 27602-0629
919-716-6920
Fax: 919-716-6764
Email: sbrennan@ncdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
NC DOJ
114 W. Edenton Street
Raleigh, NC 27603
919-716-6942
Email: mbulleri@ncdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Todd Ishee**
*in his official capacity as Secretary of the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gary Junker**
*in his official capacity as Deputy Secretary*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*

*of the North Carolina Department of Adult Correction*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brandeshawn Harris**
*in her official capacity as Chief Deputy Secretary, the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Arthur Campbell**
*in his official capacity as Medical Director III, the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Terri Catlett**
*in her official capacity as Director of Healthcare Administration, Division of Prisons, the North Carolina Department of Public Safety*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jonathan Peiper**
*in his official capacity as Human Services Director the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian Sheitman**
*Medical Director III, the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Valerie Langley**
*in her official capacity as Nurse Director the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Abhay Agarwal**
*Medical Director II, the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sarah Cobb**
*in her official capacity as Director of Rehabilitative Services, Division of Prisons, the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Josh Panter**
*in his official capacity as Correctional Administrator the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Charlotte Williams**
*in her official capacity as a Program Manager, the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elton Amos**
*in his official capacity as Medical Director II, the North Carolina Department of Adult Correction*

represented by **Laura Howard McHenry**
(See above for address)
*TERMINATED: 03/27/2026*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elmer Bulleri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**North Carolina Department of Public Safety**
*TERMINATED: 06/22/2023*

represented by **Orlando Luis Rodriguez**
(See above for address)
*TERMINATED: 01/10/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Brennan**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Eddie Buffaloe, Jr.**<br>*TERMINATED: 06/22/2023* | represented by | **Orlando Luis Rodriguez**<br>(See above for address)<br>*TERMINATED: 01/10/2025*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Stephanie Ann Brennan**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Todd Ishee**<br>*in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety*<br>*TERMINATED: 06/22/2023* | represented by | **Orlando Luis Rodriguez**<br>(See above for address)<br>*TERMINATED: 01/10/2025*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Stephanie Ann Brennan**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 04/28/2022 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ANCWDC-5549958), filed by Kanautica Zayre-Brown.(Maffetore, Jaclyn) (Entered: 04/28/2022) |
| 04/28/2022 | | Case assigned to District Judge Max O. Cogburn, Jr. and Magistrate Judge David Keesler. Notice: You must click this link to retrieve the **Case Assignment Packet**. *This is your only notice - you will not receive a separate document.*(tlj) (Entered: 04/28/2022) |
| 04/29/2022 | 2 | Summons Issued Electronically as to All Defendants. **NOTICE: Counsel shall print the summons and serve with other case opening documents in accordance with Fed.R.Civ.P.4** . (tlj) (Entered: 04/29/2022) |
| 04/29/2022 | 3 | WAIVER OF SERVICE Returned Executed by Kanautica Zayre-Brown. All Defendants. (Maffetore, Jaclyn) (Entered: 04/29/2022) |
| 05/02/2022 | 4 | NOTICE of Appearance by Stephanie Ann Brennan on behalf of All Defendants (Brennan, Stephanie) (Entered: 05/02/2022) |
| 05/02/2022 | 5 | NOTICE of Appearance by Orlando Luis Rodriguez on behalf of All Defendants (Rodriguez, Orlando) (Entered: 05/02/2022) |
| 05/11/2022 | 6 | MOTION for Leave to Appear Pro Hac Vice as to Jon W. Davidson Filing fee $ 288, receipt number ANCWDC-5566242. by Kanautica Zayre-Brown. (Maffetore, Jaclyn). Motions referred to David Keesler. (Entered: 05/11/2022) |

| | | |
|---|---|---|
| 05/11/2022 | 7 | **ORDER granting 6 Motion for Leave to Appear Pro Hac Vice added Jon W. Davidson for Kanautica Zayre-Brown *(Pro Hac Vice Attorney served via NEF)*. Signed by Magistrate Judge David Keesler on 5/11/22. (mga)** (Entered: 05/11/2022) |
| 05/11/2022 | | Notice to Jon W. Davidson: Pursuant to Local Rule 83.1 you are required to **Register** for E-Filing Access or Link Existing Account **Link**.*(Attorney served via NEF)* Deadline by 5/18/2022. (mga) Modified text on 5/17/2022 (brl). (Entered: 05/11/2022) |
| 06/13/2022 | 8 | NOTICE of Appearance by Michele Delgado on behalf of Kanautica Zayre-Brown (Delgado, Michele) (Entered: 06/13/2022) |
| 06/24/2022 | 9 | MOTION to Dismiss for Failure to State a Claim by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 7/8/2022 (Rodriguez, Orlando) (Entered: 06/24/2022) |
| 06/24/2022 | 10 | MEMORANDUM in Support re 9 MOTION to Dismiss for Failure to State a Claim by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Attachments: # 1 Exhibit DPS Policy)(Rodriguez, Orlando) (Entered: 06/24/2022) |
| 06/27/2022 | 11 | MOTION for Leave to Appear Pro Hac Vice as to Taylor Brown Filing fee $ 288, receipt number ANCWDC-5632709. by Kanautica Zayre-Brown. (Maffetore, Jaclyn). Motions referred to David Keesler. (Entered: 06/27/2022) |
| 06/27/2022 | 12 | **ORDER granting 11 Motion for Leave to Appear Pro Hac Vice added Taylor Brown for Kanautica Zayre-Brown *(Pro Hac Vice Attorney served via NEF)*. Signed by Magistrate Judge David Keesler on 6/27/22. (mga)** (Entered: 06/27/2022) |
| 06/27/2022 | | Notice to Taylor Brown: Pursuant to Local Rule 83.1 you are required to **Register** for E-Filing Access or Link Existing Account **Link**. *(Attorney served via NEF)* Deadline by 7/5/2022. (mga) (Entered: 06/27/2022) |
| 06/28/2022 | 13 | MOTION for Preliminary Injunction by Kanautica Zayre-Brown. Responses due by 7/12/2022 (Attachments: # 1 Exhibit 1 - Expert Declaration of Randi C. Ettner, Ph.D, # 2 Exhibit 2 - Delcaration of Kanautica Zayre-Brown, # 3 Exhibit Index) (Maffetore, Jaclyn) (Attachment 1 replaced on 7/29/2022 with corrected PDF provided by counsel. NEF regenerated.) (maf) (Entered: 06/28/2022) |
| 06/28/2022 | 14 | MEMORANDUM in Support re 13 MOTION for Preliminary Injunction by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 06/28/2022) |
| 07/01/2022 | 15 | Joint MOTION for Extension of Time to File Response/Reply re: 9 MOTION to Dismiss for Failure to State a Claim , 13 MOTION for Preliminary Injunction by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 7/15/2022 (Rodriguez, Orlando). Modified to remove referral on 7/1/2022 (mga). (Entered: 07/01/2022) |
| 07/07/2022 | 16 | **ORDER granting 15 Motion for Extension of Time to File Response/Reply. Accordingly, the deadline for Plaintiff to respond to Defendants Motion to Dismiss 9 , is extended up to and including July 15, 2022, and the deadline for Defendants to respond to Plaintiffs Motion for Preliminary Injunction, 13 , is extended up to and** |

| | | |
|---|---|---|
| | | **including July 19, 2022. Signed by District Judge Max O. Cogburn, Jr on 7/7/2022. (ams)** (Entered: 07/07/2022) |
| 07/15/2022 | 17 | RESPONSE in Opposition re 9 MOTION to Dismiss for Failure to State a Claim by Kanautica Zayre-Brown. Replies due by 7/22/2022 (Maffetore, Jaclyn) (Entered: 07/15/2022) |
| 07/19/2022 | 18 | RESPONSE in Opposition re 13 MOTION for Preliminary Injunction by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Replies due by 7/26/2022 (Attachments: # 1 Appendix to Response to Motion for Preliminary Injunction, # 2 Affidavit of Mingo, # 3 Affidavit of Richardson, # 4 Affidavit of Junker, # 5 Exhibit A to Affidavit of Junker, # 6 Affidavit of Boyd, # 7 Exhibit A to Affidavit of Boyd, # 8 Affidavit of Penn, # 9 Exhibit A to Affidavit of Penn) (Rodriguez, Orlando) (Entered: 07/19/2022) |
| 07/21/2022 | 19 | Consent MOTION for Extension of Time to File Response/Reply re: 13 MOTION for Preliminary Injunction by Kanautica Zayre-Brown. Responses due by 8/4/2022 (Attachments: # 1 Proposed Order) (Delgado, Michele). Modified to remove referral on 7/22/2022 (kab). (Entered: 07/21/2022) |
| 07/22/2022 | 20 | **ORDER granting 19 Motion for Extension of Time to File Response/Reply re: 13 MOTION for Preliminary Injunction. Response in Opposition to the Motion for Preliminary Injunction is extended up to and including August 2, 2022. Signed by District Judge Max O. Cogburn, Jr on 7/22/2022. (ams)** (Entered: 07/22/2022) |
| 07/22/2022 | 21 | REPLY to Response to Motion re 9 MOTION to Dismiss for Failure to State a Claim by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 07/22/2022) |
| 08/02/2022 | 22 | REPLY to Response to Motion re 13 MOTION for Preliminary Injunction by Kanautica Zayre-Brown. (Attachments: # 1 Exhibit 1 - Second Expert Declaration of Randi C. Ettner, Ph.D, # 2 Exhibit 2 - Declaration of Jaclyn Maffetore, # 3 Exhibit Index) (Maffetore, Jaclyn) (Entered: 08/02/2022) |
| 08/03/2022 | | NOTICE of Hearing on Motion re: 13 MOTION for Preliminary Injunction , 9 MOTION to Dismiss for Failure to State a Claim : Motion Hearing set for 8/23/2022 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 08/03/2022) |
| 08/17/2022 | 23 | NOTICE *of Supplemental Authority* by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams re 9 MOTION to Dismiss for Failure to State a Claim (Attachments: # 1 Exhibit 4th Cir Case Williams v. Kincaid) (Rodriguez, Orlando) (Entered: 08/17/2022) |
| 08/17/2022 | 24 | NOTICE *of Supplemental Authority* by Kanautica Zayre-Brown re 9 MOTION to Dismiss for Failure to State a Claim , 13 MOTION for Preliminary Injunction (Maffetore, Jaclyn) (Entered: 08/17/2022) |
| 08/23/2022 | | Minute Entry: MOTION HEARING held before District Judge Max O. Cogburn, Jr. Re 9 MOTION to Dismiss for Failure to State a Claim , 13 MOTION for Preliminary Injunction . Motions taken under advisement, order to issue. Plaintiffs attorney: Michele |

| | | |
|---|---|---|
| | | Delgado, Jaclyn Maffetore, Taylor Brown. Defendants attorney: Orlando Rodriguez, Stephanie Brennan. Court reporter: Deborah Cohen-Rojas. (ams) (Entered: 08/23/2022) |
| 09/23/2022 | 25 | **ORDER denying 9 Motion to Dismiss for Failure to State a Claim; denying 13 Motion for Preliminary Injunction. Signed by District Judge Max O. Cogburn, Jr on 9/23/2022. (ams)** (Entered: 09/23/2022) |
| 10/07/2022 | 26 | ANSWER to 1 Complaint with Jury Demand by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams.(Rodriguez, Orlando) (Entered: 10/07/2022) |
| 10/11/2022 | | NOTICE pursuant to Local Rule 16.1 you are **required** to conduct an Initial Attorney's Conference within 14 days. At the conference, the parties are **required** to discuss the issue of consent to jurisdiction of a magistrate judge in accordance with Local Rules 16.1(A) and 73.1(C). The **Certificate of Initial Attorneys Conference**, and if applicable, the **Joint Stipulation of Consent to Exercise jurisdiction by a US Magistrate Judge**, should be filed within 7 days of the conference. If appropriate, a party may file a Motion to Stay the Initial Attorney's Conference. CIAC Report due by 11/1/2022. (ams) (Entered: 10/11/2022) |
| 10/19/2022 | 27 | Joint CERTIFICATION of initial attorney conference and discovery plan (Maffetore, Jaclyn) (Entered: 10/19/2022) |
| 10/20/2022 | 28 | **Pretrial Order and Case Management Plan: Estimated Trial Time: five (5) days. Discovery due by 4/28/2023. Motions due by 5/26/2023. Mediation deadline set for 5/15/2023. Ready Date for Trial set for 10/16/2023 09:31 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. Signed by Magistrate Judge David Keesler on 10/20/22. (mga)** (Entered: 10/20/2022) |
| 12/01/2022 | 29 | Consent MOTION for Protective Order by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 12/15/2022 (Attachments: # 1 Proposed Order) (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 12/01/2022) |
| 12/02/2022 | 30 | **CONSENT PROTECTIVE ORDER. Signed by Magistrate Judge David Keesler on 12/2/2022. (brl)** (Entered: 12/02/2022) |
| 12/07/2022 | 31 | MOTION for Leave to Appear Pro Hac Vice as to Lisa Nowlin-Sohl Filing fee $ 288, receipt number ANCWDC-5855868. by Kanautica Zayre-Brown. (Maffetore, Jaclyn). Motions referred to David Keesler. (Entered: 12/07/2022) |
| 12/07/2022 | 32 | **ORDER granting 31 Motion for Leave to Appear Pro Hac Vice added Lisa Nowlin-Sohl for Kanautica Zayre-Brown *(Pro Hac Vice Attorney served via NEF)*. Signed by Magistrate Judge David Keesler on 12/7/22. (mga)** (Entered: 12/07/2022) |
| 12/07/2022 | | Notice to Lisa Nowlin-Sohl: Pursuant to Local Rule 83.1 you are required to **Register** for E-Filing Access or Link Existing Account **Link**. *(Attorney served via NEF)* Deadline by 12/14/2022. (mga) (Entered: 12/07/2022) |
| 12/15/2022 | 33 | Consent MOTION for Discovery *for Leave to Depose Plaintiff* by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due |

| | | |
|---|---|---|
| | | by 12/29/2022 (Attachments: # 1 Exhibit A Notice of Deposition, # 2 Proposed Order) (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 12/15/2022) |
| 12/16/2022 | 34 | **ORDER granting 33 Defendant's Consent Motion for Leave to Depose a Person Confined in Prison. Defendants may take the deposition of Plaintiff Kanautica Zayre-Brown as agreed by the parties and pursuant to Fed.R.Civ.P. 30(a)(2)(B). Signed by Magistrate Judge David Keesler on 12/16/22. (mga)** (Entered: 12/16/2022) |
| 01/06/2023 | 35 | Joint MOTION for Extension of Time of Scheduling Order Deadlines by Kanautica Zayre-Brown. Responses due by 1/20/2023 (Attachments: # 1 Proposed Order) (Maffetore, Jaclyn). Motions referred to David Keesler. (Entered: 01/06/2023) |
| 01/06/2023 | 36 | **ORDER granting 35 parties' Joint Motion for Extension of Certain Case Management Deadlines. The case deadlines are revised as follows: Plaintiff's Expert Reports - February 3, 2023; Defendants' Expert Reports - March 17, 2023; Amend Pleadings - April 5, 2023; Discovery Completion - May 19, 2023: Mediation Report - June 2, 2023; Dispositive Motions - June 16, 2023. Signed by Magistrate Judge David Keesler on 1/6/23. (mga)** (Entered: 01/06/2023) |
| 02/17/2023 | 37 | MOTION for Discovery *Order to Submit to Rule 35 Examinations* by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 3/3/2023 (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 02/17/2023) |
| 02/17/2023 | 38 | MEMORANDUM in Support re 37 MOTION for Discovery *Order to Submit to Rule 35 Examinations* by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 02/17/2023) |
| 02/24/2023 | 39 | RESPONSE in Opposition re 37 MOTION for Discovery *Order to Submit to Rule 35 Examinations* by Kanautica Zayre-Brown. Replies due by 3/3/2023 (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Siegel, Daniel) (Entered: 02/24/2023) |
| 03/03/2023 | 40 | REPLY to Response to Motion re 37 MOTION for Discovery *Order to Submit to Rule 35 Examinations* by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 03/03/2023) |
| 03/13/2023 | 41 | MOTION for Extension of Time of Scheduling Order Deadlines by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 3/27/2023 (Attachments: # 1 Proposed Order) (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 03/13/2023) |
| 03/15/2023 | 42 | RESPONSE to Motion re 41 MOTION for Extension of Time of Scheduling Order Deadlines by Kanautica Zayre-Brown. Replies due by 3/22/2023 (Siegel, Daniel) (Entered: 03/15/2023) |
| 03/16/2023 | 43 | REPLY to Response to Motion re 41 MOTION for Extension of Time of Scheduling Order Deadlines by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, |

| | | |
|---|---|---|
| | | Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 03/16/2023) |
| 03/16/2023 | 44 | **ORDER granting with modification 41 Defendants' Motion for Extension of Certain Case Management Deadlines. Defendants' Expert Report deadline is extended to: (1) thirty (30) days from the date of an Order allowing Defendants' Rule 35 Motion (Document No. 37); or (2) fourteen (14) days from the date of an Order denying Defendants' Rule 35 Motion (Document No. 37); or April 7, 2023, whichever is later. All other deadlines remain as previously ordered. See (Document No. 36). Signed by Magistrate Judge David Keesler on 3/16/23. (mga)** (Entered: 03/16/2023) |
| 05/11/2023 | 45 | Second MOTION for Extension of Time of Scheduling Order Deadlines by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 5/25/2023 (Attachments: # 1 Proposed Order) (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 05/11/2023) |
| 05/12/2023 | 46 | **ORDER granting with modification 45 Second Joint Motion for the Modification of Certain Case Management Deadlines. Completion of discovery due within 45 days from the date of the provision of Defendants expert reports; mediation report due within 30 days of the completion of discovery; and dispositive motions due within 45 days of the completion of discovery. The trial date in this case remains unchanged. Signed by US Magistrate Judge David Keesler on 5/11/23. (mga)** Modified text on 5/18/2023 (rth). (Entered: 05/12/2023) |
| 06/07/2023 | 47 | **ORDER granting in part and denying in part 37 Defendants' Motion for an Order Compelling Plaintiff to Submit to Rule 35 Examinations. Signed by US Magistrate Judge David Keesler on 6/7/23. (mga)** (Entered: 06/07/2023) |
| 06/19/2023 | 48 | Consent MOTION TO EXCUSE CERTAIN NAMED DEFENDANTS FROM MEDIATION by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 7/3/2023 (Attachments: # 1 Proposed Order) (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 06/19/2023) |
| 06/20/2023 | 49 | **ORDER granting 48 Motion To Excuse Certain Named Defendants From Mediation. The individual Defendants, sued in their official capacities, are excused from attending the mediated settlement conference in this matter. Signed by US Magistrate Judge David Keesler on 6/20/2023. (brl)** (Entered: 06/20/2023) |
| 06/21/2023 | 50 | Consent MOTION to Substitute Party Defendants and to Amend Caption by Abhay Agarwal, Elton Amos, Eddie M. Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee, Gary Junker, Valerie Langley, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 7/5/2023 (Attachments: # 1 Proposed Order substituting parties and amending the caption) (Rodriguez, Orlando). Motions referred to David Keesler. Modified text on 6/21/2023 (rth). (Entered: 06/21/2023) |
| 06/22/2023 | 51 | **ORDER granting 50 Motion to Substitute Party Defendants and to Amend Caption. The North Carolina Department of Public Safety (DPS), and Eddie Buffaloe, Jr., in his official capacity as Secretary of DPS, shall be replaced as party Defendants with the North Carolina Department of Adult Correction (DAC) and Todd Ishee, as Secretary of DAC. Signed by US Magistrate Judge David Keesler on 6/21/2023. (brl)** (Entered: 06/22/2023) |

| | | |
|---|---|---|
| 07/12/2023 | | Set/Reset Hearings: Jury Trial set for 10/16/2023 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 07/12/2023) |
| 08/11/2023 | 52 | Joint MOTION to Continue Docket Call/Trial by Abhay Agarwal, Elton Amos, Eddie Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 8/25/2023 (Rodriguez, Orlando) (Entered: 08/11/2023) |
| 08/15/2023 | 53 | Joint MOTION to Take Deposition from Dr. Armand Antommaria *Out of Time* by Kanautica Zayre-Brown. Responses due by 8/29/2023 (Maffetore, Jaclyn). Motions referred to David Keesler. (Entered: 08/15/2023) |
| 08/16/2023 | 54 | **ORDER granting 53 Joint Motion to Take Deposition from Dr. Antommaria. The discovery completion deadline is extended to September 7, 2023 for the limited purpose of taking the out-of-time expert deposition of Dr. Antommaria. Signed by US Magistrate Judge David Keesler on 8/16/23. (mga)** (Entered: 08/16/2023) |
| 08/16/2023 | | Set/Reset Pretrial Order Deadlines: Discovery due by 9/7/2023. (mga) (Entered: 08/16/2023) |
| 08/25/2023 | 55 | **ORDER granting 52 Motion to Continue Docket Call/Trial. Jury Trial set for 1/22/2024 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. Signed by District Judge Max O. Cogburn, Jr on 8/24/2023. (brl)** (Entered: 08/25/2023) |
| 09/05/2023 | 56 | REPORT of Mediation by Asa L. Bell, Jr. (Mediator). Outcome of Mediation: Parties reached an Impasse. (Attachments: # 1 Envelope)(ef) (Entered: 09/07/2023) |
| 09/18/2023 | 57 | Joint MOTION for Leave to File Excess Pages by Kanautica Zayre-Brown. Responses due by 10/2/2023 (Maffetore, Jaclyn). Motions referred to David Keesler. (Entered: 09/18/2023) |
| 09/18/2023 | 58 | **ORDER granting 57 Joint Motion for Leave to File Excess Pages. Signed by US Magistrate Judge David Keesler on 9/18/23. (mga)** (Entered: 09/18/2023) |
| 10/05/2023 | 59 | MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 10/19/2023 (Rodriguez, Orlando) (Entered: 10/05/2023) |
| 10/05/2023 | 60 | MEMORANDUM in Support re 59 MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 10/05/2023) |
| 10/05/2023 | 61 | Appendix by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North |

| | | |
|---|---|---|
| | | Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Appendix re: 60 Memorandum in Support of Motion,, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Envelope, # 5 Envelope, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Affidavit)(Rodriguez, Orlando) (Entered: 10/05/2023) |
| 10/05/2023 | 62 | MOTION for Partial Summary Judgment - *Expedited Consideration Requested* by Kanautica Zayre-Brown. Responses due by 10/19/2023 (Attachments: # 1 Exhibit Transcript Excerpts - Deposition of Sara Boyd, Ph.D., # 2 Exhibit Expert Report of Randi C. Ettner, Ph.D., # 3 Exhibit Transcript Excerpts - Deposition of Kanautica Zayre-Brown, # 4 Exhibit WPATH Standards of Care, Version 7, # 5 Exhibit Transcript Excerpts - 30(b)(6) Deposition of Arthur Campbell, M.D., # 6 Exhibit Health and Wellness Services Organization Policy, # 7 Exhibit Utilization Management Policy, # 8 Exhibit Transcript Excerpts - Deposition of Terri Catlett, # 9 Exhibit Defendants' Interrogatory Responses, # 10 Exhibit Transcript Excerpts - Deposition of Gary Junker, Ph.D., # 11 Exhibit Transcript Excerpts - Deposition of Arthur Campbell, M.D., # 12 Exhibit Transcript Excerpts - 30(6)(b) Deposition of Dr. Lewis J. Peiper, # 13 Exhibit Transcript Excerpts - Deposition of Brian Sheitman, M.D., # 14 Exhibit Transcript Excerpts - Deposition of Brandeshawn Harris, # 15 Exhibit Transcript Excerpts - Deposition of Patricia Hahn, Ph.D., # 16 Exhibit Declaration of Katherine Croft, B.S.N. R.N., # 17 Exhibit Declaration of Bradley Figler, M.D., # 18 Exhibit Declaration of Donald Caraccio, M.D., # 19 Exhibit Declaration of Jennifer Dula, MSW, # 20 Exhibit September 16, 2021 Medical Record, # 21 Exhibit November 2, 2021 Medical Record, # 22 Exhibit Transcript Excerpts - Deposition of Dr. Lewis J. Peiper, # 23 Exhibit Transcript Excerpts - Deposition of Marvella Bowman, Ph.D., # 24 Exhibit Second Declaration of Kanautica Zayre-Brown, # 25 Exhibit Transcript Excerpts - Deposition of Joseph Penn, M.D., # 26 Appendix of Exhibits) (Maffetore, Jaclyn) (Entered: 10/05/2023) |
| 10/05/2023 | 63 | MEMORANDUM in Support re 62 MOTION for Partial Summary Judgment - *Expedited Consideration Requested* by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 10/05/2023) |
| 10/19/2023 | 64 | RESPONSE in Opposition re 62 MOTION for Partial Summary Judgment - *Expedited Consideration Requested* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Replies due by 10/26/2023 (Rodriguez, Orlando) (Entered: 10/19/2023) |
| 10/19/2023 | 65 | Appendix by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Appendix re: 64 Response in Opposition to Motion,, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Envelope, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # |

| | | |
|---|---|---|
| | | 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit)(Rodriguez, Orlando) (Entered: 10/19/2023) |
| 10/19/2023 | 66 | MEMORANDUM in Opposition re 59 MOTION for Summary Judgment by Kanautica Zayre-Brown. Replies due by 10/26/2023 (Attachments: # 1 Exhibit 1 - 8/23/22 Hearing Transcript, # 2 Exhibit 2 - ADA Recommendation, # 3 Appendix of Response Exhibits)(Maffetore, Jaclyn) (Entered: 10/19/2023) |
| 10/20/2023 | 67 | Exhibit to 62 Motion for Partial Summary Judgment (Corrected) (Maffetore, Jaclyn) Modified text on 10/24/2023 (ams). (Entered: 10/20/2023) |
| 10/26/2023 | 68 | REPLY to Response to Motion re 62 MOTION for Partial Summary Judgment - *Expedited Consideration Requested* by Kanautica Zayre-Brown. (Attachments: # 1 Exhibit 1 - Expert Rebuttal Report of Dr. Ettner, # 2 Exhibit 2 - Expert Rebuttal Report of Dr. Antommaria, # 3 Appendix of Reply Exhibits)(Maffetore, Jaclyn) (Entered: 10/26/2023) |
| 10/26/2023 | 69 | REPLY to Response to Motion re 59 MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 10/26/2023) |
| 10/26/2023 | 70 | MOTION to Strike *Expert Testimony of Dr. Boyd* by Kanautica Zayre-Brown. Responses due by 11/9/2023 (Attachments: # 1 Exhibit 1 - Deposition of Dr. Boyd) (Maffetore, Jaclyn) (Entered: 10/26/2023) |
| 10/26/2023 | 71 | Appendix by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Appendix re: 69 Reply to Response to Motion,, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Rodriguez, Orlando) (Entered: 10/26/2023) |
| 10/26/2023 | 72 | MEMORANDUM in Support re 70 MOTION to Strike *Expert Testimony of Dr. Boyd* by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 10/26/2023) |
| 10/26/2023 | 73 | MOTION to Strike *Expert Testimony of Dr. Li* by Kanautica Zayre-Brown. Responses due by 11/9/2023 (Attachments: # 1 Exhibit 1 - Deposition of Dr. Li) (Maffetore, Jaclyn) (Entered: 10/26/2023) |
| 10/26/2023 | 74 | MEMORANDUM in Support re 73 MOTION to Strike *Expert Testimony of Dr. Li* by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 10/26/2023) |
| 10/26/2023 | 75 | MOTION to Strike *Expert Testimony of Dr. Penn* by Kanautica Zayre-Brown. Responses due by 11/9/2023 (Attachments: # 1 Exhibit 1 - Deposition of Dr. Penn) (Maffetore, Jaclyn) (Entered: 10/26/2023) |
| 10/26/2023 | 76 | MEMORANDUM in Support re 75 MOTION to Strike *Expert Testimony of Dr. Penn* by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 10/26/2023) |
| 10/27/2023 | 77 | MOTION for Extension of Time to File Response/Reply re: 70 MOTION to Strike *Expert Testimony of Dr. Boyd*, 73 MOTION to Strike *Expert Testimony of Dr. Li*, 75 MOTION to Strike *Expert Testimony of Dr. Penn* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as |

| | | |
|---|---|---|
| | | Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 11/13/2023 (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 10/27/2023) |
| 10/30/2023 | 78 | MEMORANDUM in Opposition re 77 MOTION for Extension of Time to File Response/Reply re: 70 MOTION to Strike *Expert Testimony of Dr. Boyd*, 73 MOTION to Strike *Expert Testimony of Dr. Li*, 75 MOTION to Strike *Expert Testimony of Dr. Penn* < by Kanautica Zayre-Brown. Replies due by 11/6/2023 (Maffetore, Jaclyn) (Entered: 10/30/2023) |
| 10/30/2023 | 79 | **ORDER granting Defendants' 77 Motion for Extension of Time to File Response/Reply re: 70 MOTION to Strike *Expert Testimony of Dr. Boyd*, 73 MOTION to Strike *Expert Testimony of Dr. Li*, 75 MOTION to Strike *Expert Testimony of Dr. Penn*. Responses due by 12/11/2023. Signed by US Magistrate Judge David Keesler on 10/30/23. (mga)** (Entered: 10/30/2023) |
| 11/01/2023 | | NOTICE of Hearing on Motion re: 59 MOTION for Summary Judgment , 62 MOTION for Partial Summary Judgment - *Expedited Consideration Requested* : Motion Hearing set for 11/9/2023 10:15 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 11/01/2023) |
| 11/09/2023 | | Minute Entry: MOTION HEARING held before District Judge Max O. Cogburn, Jr. Re 62 MOTION for Partial Summary Judgment - *Expedited Consideration Requested*, 59 MOTION for Summary Judgment . Motions taken under advisement, order to issue. Plaintiffs attorney: Jaclyn Maffetore, Li Nowlin-Sohl, Daniel Siegel, Michele Delgado. Defendants attorney: Stephanie Brennan, Orlando Rodriguez. Court reporter: Michelle McGirr. (ams) (Entered: 11/09/2023) |
| 11/28/2023 | 80 | MOTION to Withdraw as Attorney *Taylor Brown* by Kanautica Zayre-Brown. Responses due by 12/12/2023 (Attachments: # 1 Exhibit A - Consent to Withdrawal of Counsel) (Maffetore, Jaclyn). Motions referred to David Keesler. (Entered: 11/28/2023) |
| 11/28/2023 | 81 | **ORDER granting 80 Motion to Withdraw as Attorney. Attorney Taylor Taylor Brown terminated. Signed by US Magistrate Judge David Keesler on 11/28/23. (mga)** (Entered: 11/28/2023) |
| 12/05/2023 | 82 | Consent MOTION to Continue Docket Call/Trial by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 12/19/2023 (Attachments: # 1 Affidavit Placeholder - Brennan Declaration, # 2 Proposed Order on Defndants' Consent Motion to Continue the Trial) (Rodriguez, Orlando) (Entered: 12/05/2023) |
| 12/05/2023 | 83 | Sealed Document (*Sealed - Attorney*): Declaration Containing Personal Medical Information of Counsel re: 82 Consent MOTION to Continue Docket Call/Trial by Defendants; (available to Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams) (Rodriguez, Orlando) (Entered: 12/05/2023) |

| | | |
|---|---|---|
| 12/05/2023 | 84 | Consent MOTION to Seal Document 83 Sealed Document,, by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 12/19/2023 (Attachments: # 1 Proposed Order on Defendants' Consent Motion to Seal Declaration) (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 12/05/2023) |
| 12/05/2023 | 85 | **ORDER granting 84 Motion to Seal Document. Document No. 83 shall remain under SEAL until otherwise ordered by this Court. Signed by US Magistrate Judge David Keesler on 12/5/2023. (brl)** (Entered: 12/05/2023) |
| 12/11/2023 | 86 | RESPONSE in Opposition re 70 MOTION to Strike *Expert Testimony of Dr. Boyd* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Replies due by 12/18/2023 (Attachments: # 1 Appendix to Response to Motion to Exclude Dr. Boyd, # 2 Exhibit Excerpts of Deposition of Dr. Ettner)(Rodriguez, Orlando) (Entered: 12/11/2023) |
| 12/11/2023 | 87 | RESPONSE in Opposition re 73 MOTION to Strike *Expert Testimony of Dr. Li* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Replies due by 12/18/2023 (Attachments: # 1 Appendix to Response to Motion to Exclude Dr. Li, # 2 Exhibit WPATH 8, # 3 Exhibit Excerpts of Deposition of Dr. Antommaria, # 4 Exhibit CV of Dr. Li)(Rodriguez, Orlando) (Entered: 12/11/2023) |
| 12/11/2023 | 88 | RESPONSE in Opposition re 75 MOTION to Strike *Expert Testimony of Dr. Penn* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Replies due by 12/18/2023 (Attachments: # 1 Appendix to Response to Motion to Exclude Dr. Penn, # 2 Exhibit Excerpts of Deposition of Dr. Ettner)(Rodriguez, Orlando) (Entered: 12/11/2023) |
| 12/15/2023 | | Set/Reset Hearings: Jury Trial RESET for 2/20/2024 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 12/15/2023) |
| 12/18/2023 | 89 | REPLY to Response to Motion re 70 MOTION to Strike *Expert Testimony of Dr. Boyd*, 75 MOTION to Strike *Expert Testimony of Dr. Penn*, 73 MOTION to Strike *Expert Testimony of Dr. Li* by Kanautica Zayre-Brown. (Siegel, Daniel) (Entered: 12/18/2023) |
| 12/19/2023 | 90 | **ORDER granting 82 Motion to Continue Docket Call/Trial. Jury Trial RESET for 2/20/2024 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. Signed by District Judge Max O. Cogburn, Jr on 12/19/2023. (ams)** (Entered: 12/19/2023) |
| 01/24/2024 | 91 | Consent MOTION for an order excusing the individual Defendants from appearing at trial by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina |

| | | |
|---|---|---|
| | | Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 2/7/2024 (Attachments: # 1 Memorandum to excuse individual Defendants from attending trial.) (Rodriguez, Orlando). Modified to remove referral on 1/24/2024 (mga). (Entered: 01/24/2024) |
| 02/02/2024 | 92 | **ORDER denying without prejudice 59 Motion for Summary Judgment ; denying without prejudice 62 Motion for Partial Summary Judgment. IT IS FURTHER ORDERED that the parties SHALL meet and confer, and no later than February 13, 2024, file a consent motion stipulating to a procedure for the evidentiary hearing in this matter. Signed by District Judge Max O. Cogburn, Jr on 2/2/2024. (ams)** (Entered: 02/02/2024) |
| 02/02/2024 | | Set/Reset Hearings: Jury Trial set for 4/15/2024 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 02/02/2024) |
| 02/02/2024 | | NOTICE of Hearing: Evidentiary Hearing set for 2/20/2024 02:00 PM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 02/02/2024) |
| 02/05/2024 | 93 | TRANSCRIPT of MOTION HEARING held on Thursday, November 9, 2023 before United States District Judge Max O. Cogburn, Jr.. **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov** Release of Transcript Restriction set for 5/2/2024. (Reporter: Michelle McGirr, ) (Entered: 02/05/2024) |
| 02/08/2024 | 94 | Consent MOTION to allow the remote testimony of Dr. Randi C. Ettner by Kanautica Zayre-Brown. Responses due by 2/22/2024 (Attachments: # 1 Exhibit A - Declaration of Dr. Randi Ettner) (Maffetore, Jaclyn). Modified to remove referral on 2/9/2024 (mga). (Entered: 02/08/2024) |
| 02/08/2024 | 95 | MEMORANDUM in Support re 94 Consent MOTION to allow the remote testimony of Dr. Randi C. Ettner by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 02/08/2024) |
| 02/12/2024 | 96 | **ORDER granting 91 Motion for an order excusing the individual Defendants from appearing at trial. Signed by District Judge Max O. Cogburn, Jr on 2/12/2024. (brl)** (Entered: 02/12/2024) |
| 02/12/2024 | 97 | MOTION for Writ of Habeas Corpus ad testificandum by Kanautica Zayre-Brown. (Maffetore, Jaclyn). Modified to remove referral on 2/13/2024 (mga). (Entered: 02/12/2024) |
| 02/13/2024 | 98 | **ORDER granting 94 Motion to allow the remote testimony of Dr. Randi C. Ettner. Signed by District Judge Max O. Cogburn, Jr on 2/13/2024. (ams)** (Entered: 02/13/2024) |
| 02/13/2024 | 99 | **ORDER granting 97 Motion for Writ of Habeas Corpus ad testificandum. Signed by District Judge Max O. Cogburn, Jr on 2/13/2024. (ams)** (Entered: 02/13/2024) |
| 02/13/2024 | 100 | STIPULATION re 92 Order on Motion for Summary Judgment, Order on Motion for Partial Summary Judgment,, by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary |

| | | |
|---|---|---|
| | | of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams (Rodriguez, Orlando) (Entered: 02/13/2024) |
| 02/20/2024 | | Minute Entry: EVIDENTIARY HEARING held before District Judge Max O. Cogburn, Jr. Matter taken under advisement, order to issue. Plaintiffs attorney: Jaclyn Maffetore, Li Nowlin-Sohl, Daniel Siegel, Jon Davidson. Defendants attorney: Orlando Rodriguez, Stephanie Brennan. Court reporter: Deborah Cohen-Rojas. (ams) (Entered: 02/20/2024) |
| 02/21/2024 | 101 | TRANSCRIPT of motion hearing held on 2/20/2024 before Judge Max O. Cogburn, Jr.. **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov** Release of Transcript Restriction set for 5/20/2024. (Reporter: Deborah Cohen-Rojas, 704-350-7400) (Entered: 02/21/2024) |
| 02/29/2024 | 102 | Second MOTION for Summary Judgment by Kanautica Zayre-Brown. Responses due by 3/14/2024 (Siegel, Daniel) (Entered: 02/29/2024) |
| 02/29/2024 | 103 | MEMORANDUM in Support re 102 Second MOTION for Summary Judgment by Kanautica Zayre-Brown. (Siegel, Daniel) (Entered: 02/29/2024) |
| 02/29/2024 | 104 | Appendix by Kanautica Zayre-Brown. Appendix re: 102 Motion for Summary Judgment (Attachments: # 1 Exhibit CV of Dr. Randi Ettner PhD, # 2 Exhibit WPATH SOC V7, # 3 Exhibit WPATH SOC V8, # 4 Exhibit Case Summary, # 5 Exhibit Emal and Position Statement, # 6 Exhibit Position Statement, # 7 Hearing Transcript)(Siegel, Daniel) (Entered: 02/29/2024) |
| 03/01/2024 | 105 | MOTION for Extension of Time to File Response/Reply re: 102 Second MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 3/15/2024 (Rodriguez, Orlando). Modified to remove referral on 3/1/2024 (mga). (Entered: 03/01/2024) |
| 03/01/2024 | 106 | RESPONSE to Motion re 105 MOTION for Extension of Time to File Response/Reply re: 102 Second MOTION for Summary Judgment by Kanautica Zayre-Brown. Replies due by 3/8/2024 (Siegel, Daniel) (Entered: 03/01/2024) |
| 03/04/2024 | 107 | NOTICE of intent not to file reply re 105 MOTION for Extension of Time to File Response/Reply re: 102 Second MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 03/04/2024) |
| 03/11/2024 | 108 | **ORDER re 105 MOTION for Extension of Time to File Response/Reply re: 102 Second MOTION for Summary Judgment . The Court orders the briefing schedule as directed herein. Signed by District Judge Max O. Cogburn, Jr on 3/11/2024. (ams)** (Entered: 03/11/2024) |
| 03/15/2024 | 109 | MOTION to Continue Docket Call/Trial by Kanautica Zayre-Brown. Responses due by 3/29/2024 (Maffetore, Jaclyn) (Entered: 03/15/2024) |

| | | |
|---|---|---|
| 03/21/2024 | 110 | MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 4/4/2024 (Rodriguez, Orlando) (Entered: 03/21/2024) |
| 03/21/2024 | 111 | MEMORANDUM in Support re 110 MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 03/21/2024) |
| 03/21/2024 | 112 | RESPONSE in Opposition re 102 Second MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Replies due by 3/28/2024 (Rodriguez, Orlando) (Entered: 03/21/2024) |
| 03/26/2024 | 113 | REPLY to Response to Motion re 102 Second MOTION for Summary Judgment by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 03/26/2024) |
| 03/27/2024 | | **TEXT-ONLY ORDER granting 109 Motion to Continue Docket Call/Trial *Text of Order: MOTION to Continue Docket Call/Trial by Kanautica Zayre-Brown is GRANTED. This matter is continued to a trial date to be determined. So Ordered.* Entered by District Judge Max O. Cogburn, Jr on 3/27/2024. (eel)** (Entered: 03/27/2024) |
| 03/27/2024 | | Set/Reset Hearings: Jury Trial RESET for 6/17/2024 or other date to be determined by the Court, 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 03/27/2024) |
| 04/01/2024 | 114 | RESPONSE in Opposition re 110 MOTION for Summary Judgment by Kanautica Zayre-Brown. Replies due by 4/8/2024 (Maffetore, Jaclyn) (Entered: 04/01/2024) |
| 04/04/2024 | 115 | REPLY to Response to Motion re 110 MOTION for Summary Judgment by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 04/04/2024) |
| 04/16/2024 | 116 | **ORDER granting in part and denying in part 102 Plaintiff's Renewed Motion for Summary Judgment; denying 110 Defendants' Renewed Motion for Summary Judgment. The Court further directs an INJUNCTION as stated herein. Signed by District Judge Max O. Cogburn, Jr on 4/16/2024. (ams)** (Entered: 04/16/2024) |
| 05/15/2024 | 117 | NOTICE OF APPEAL as to 116 Order on Motion for Summary Judgment,,, by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. *Use this link www.ca4.uscourts.gov to retrieve 4th Circuit case opening documents, i.e. Appearance of Counsel, Docketing Statement, Disclosure Statement, and Transcript* |

| | | |
|---|---|---|
| | | *Order Form.* Note: Your Transcript Order Form must be served on the District Court as well as the Circuit Court. (No fee required) (Rodriguez, Orlando) (Entered: 05/15/2024) |
| 05/16/2024 | 118 | MOTION to Stay by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 5/30/2024 (Rodriguez, Orlando). Modified to remove referral on 5/16/2024 (mga). (Entered: 05/16/2024) |
| 05/16/2024 | 119 | MEMORANDUM in Support re 118 MOTION to Stay by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 05/16/2024) |
| 05/16/2024 | 120 | Transmission of Notice of Appeal to US Court of Appeals re 117 Notice of Appeal (ams) (Entered: 05/16/2024) |
| 05/17/2024 | 121 | USCA Case Number 24-6477 for 117 Notice of Appeal, USCA Case Manager: Richard H. Sewell. (slm) (Entered: 05/17/2024) |
| 05/17/2024 | | Set/Reset Hearings: In light of the appeal in this matter, the Jury Trial is RESET for 8/19/2024 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 05/17/2024) |
| 05/24/2024 | 122 | RESPONSE in Opposition re 118 MOTION to Stay by Kanautica Zayre-Brown. Replies due by 5/31/2024 (Maffetore, Jaclyn) (Entered: 05/24/2024) |
| 05/31/2024 | 123 | REPLY to Response to Motion re 118 MOTION to Stay by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. (Rodriguez, Orlando) (Entered: 05/31/2024) |
| 06/03/2024 | 124 | Appeal Filing fee received: in amount of $ 605, receipt number 9908 (llp) (Entered: 06/03/2024) |
| 07/08/2024 | 125 | Miscellaneous Filing by Kanautica Zayre-Brown. *Letter re: Case Status* (Maffetore, Jaclyn) (Entered: 07/08/2024) |
| 07/12/2024 | 126 | **ORDER denying 118 Motion to Stay.IT IS, FURTHER, ORDERED that Defendants SHALL, within 14 days of this Orders entry, form a new committee containing at least two medical doctors with gender dysphoria expertise to re-assess Plaintiffs accommodation request, and submit a roster of the reconstituted committee to this Court for approval. Signed by District Judge Max O. Cogburn, Jr on 7/12/24. (clc)** (Entered: 07/12/2024) |
| 07/16/2024 | | Set/Reset Hearings: In light of the appeal in this matter, the Jury Trial is RESET for 10/21/2024 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 07/16/2024) |
| 07/26/2024 | 127 | ORDER of USCA denying motion for stay pending appeal re: 117 Notice of Appeal [24-6477]. (nvc) (Entered: 07/26/2024) |
| 07/26/2024 | 128 | NOTICE *of Response to the Court's Injunction* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official |

| | | |
|---|---|---|
| | | capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams re 126 Order on Motion to Stay, (Attachments: # 1 Exhibit CV of Dr. Renberg, # 2 Exhibit CV of Dr. Simopoulos) (Rodriguez, Orlando) (Entered: 07/26/2024) |
| 07/30/2024 | 129 | Response to Defendants' Proposal For Compliance with the Court's Permanent Injunction by Kanautica Zayre-Brown re: 128 Notice (Other)(Maffetore, Jaclyn) Modified text on 7/31/2024 (ams). (Entered: 07/30/2024) |
| 08/02/2024 | 130 | TRANSCRIPT of motion hearing held on 8/23/2022 before Judge Max O. Cogburn, Jr.. **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov** Release of Transcript Restriction set for 10/28/2024. (Reporter: Deborah Cohen-Rojas, 704-350-7400) (Entered: 08/02/2024) |
| 08/14/2024 | | NOTICE of Hearing: Oral Argument set for 8/16/2024 11:30 AM in Courtroom 1, 100 Otis St, Asheville, NC 28801 before District Judge Max O. Cogburn Jr. The Court intends to hear from both sides regarding Defendants Response to the Courts Injunction (Doc. No. 128) and Plaintiffs Response (Doc. No. 129) to same. The Court has authorized remote attendance of this hearing for all parties. The Clerk will e-mail a Teams invitation with connection instructions. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 08/14/2024) |
| 08/14/2024 | | Set/Reset Hearings: Oral Argument RESET for 8/16/2024 12:30 PM in Courtroom 2, 100 Otis St, Asheville, NC 28801 before District Judge Max O. Cogburn Jr. The Court intends to hear from both sides regarding Defendants Response to the Courts Injunction (Doc. No. 128) and Plaintiffs Response (Doc. No. 129) to same. The Court has authorized remote attendance of this hearing for all parties. The Clerk will e-mail a Teams invitation with connection instructions. (ams) (Entered: 08/14/2024) |
| 08/16/2024 | | Minute Entry: ORAL ARGUMENT HEARING held before District Judge Max O. Cogburn, Jr. Plaintiff's attorneys: Christopher A. Brook, Daniel Kohle Siegel, Jaclyn Maffetore, Jon W. Davidson. Defendant's attorneys: Orlando Luis Rodriguez. Court reporter: Michelle McGirr 828-771-7217. (hms) (Entered: 08/16/2024) |
| 08/23/2024 | 131 | NOTICE *of Renewed Proposal for Compliance with Permanent Injunction* by Kanautica Zayre-Brown (Maffetore, Jaclyn) (Entered: 08/23/2024) |
| 08/23/2024 | 132 | NOTICE *of Supplemental Response to Court's Injunction* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams re 128 Notice (Other),, (Rodriguez, Orlando) (Entered: 08/23/2024) |
| 09/16/2024 | 133 | Miscellaneous Filing by Kanautica Zayre-Brown. re: 131 Notice (Other), Oral Argument Hearing, 132 Notice (Other), *Letter re: Case Status* (Maffetore, Jaclyn) (Entered: 09/16/2024) |
| 09/23/2024 | 134 | **ORDER re: materials proposed by parties, Documents 131 , 132 . Signed by District Judge Max O. Cogburn, Jr on 9/20/2024. (ams)** (Entered: 09/23/2024) |

| | | |
|---|---|---|
| 09/25/2024 | 135 | NOTICE *of information Regarding Court's Order* by Abhay Agarwal, Elton Amos, Eddie Buffaloe, Jr, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Todd Ishee(in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, North Carolina Department of Public Safety, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams (Rodriguez, Orlando) (Entered: 09/25/2024) |
| 09/25/2024 | 136 | **ORDER terminating as moot 70 Motion to Strike, 73 MOTION to Strike *Expert Testimony of Dr. Li*, 75 MOTION to Strike *Expert Testimony of Dr. Penn.* Signed by District Judge Max O. Cogburn, Jr on 9/25/2024. (ams)** (Entered: 09/25/2024) |
| 09/27/2024 | 137 | Joint MOTION to Continue Docket Call/Trial by Kanautica Zayre-Brown. Responses due by 10/11/2024 (Maffetore, Jaclyn) (Entered: 09/27/2024) |
| 10/07/2024 | | **TEXT-ONLY ORDER granting 137 Motion to Continue Docket Call/Trial. Jury Trial is RESET for 12/16/2024 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. *So Ordered.* Entered by District Judge Max O. Cogburn, Jr on 10/7/2024. (ams)** (Entered: 10/07/2024) |
| 11/01/2024 | 138 | Joint MOTION to Continue Docket Call/Trial by Kanautica Zayre-Brown. Responses due by 11/15/2024 (Maffetore, Jaclyn) (Entered: 11/01/2024) |
| 11/04/2024 | 139 | TRANSCRIPT of ORAL ARGUMENT held on Friday, August 16, 2024 before United States District Judge Max O. Cogburn, Jr.. **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov** Release of Transcript Restriction set for 1/30/2025. (Reporter: Michelle McGirr, ) (Entered: 11/04/2024) |
| 11/06/2024 | 140 | NOTICE *of Compliance with DE 116* by Arthur Campbell, Terri Catlett, Jonathan Peiper, Brian Sheitman, Valerie Langley, Abhay Agarwal, Sarah Cobb, Josh Panter, Charlotte Williams, Elton Amos, North Carolina Department of Adult Corrections, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Brandeshawn Harris re 116 Order on Motion for Summary Judgment,,, (Attachments: # 1 Exhibit Statement of Dr. Simopolous, # 2 Envelope Statement of Dr. Renberg)(Rodriguez, Orlando) (Entered: 11/06/2024) |
| 11/07/2024 | 141 | REDACTED DOCUMENT re: [140-1] by Arthur Campbell, Terri Catlett, Jonathan Peiper, Brian Sheitman, Valerie Langley, Abhay Agarwal, Sarah Cobb, Josh Panter, Charlotte Williams, Elton Amos, North Carolina Department of Adult Corrections, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Brandeshawn Harris. (Rodriguez, Orlando) Modified event type on 11/8/2024 (ams). (Entered: 11/07/2024) |
| 11/07/2024 | 142 | MOTION TO SEAL DOCUMENT re: [140-1] by Arthur Campbell, Terri Catlett, Jonathan Peiper, Brian Sheitman, Valerie Langley, Abhay Agarwal, Sarah Cobb, Josh Panter, Charlotte Williams, Elton Amos, North Carolina Department of Adult Corrections, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Brandeshawn Harris. Modified event type and text on 11/8/2024 (ams). (Entered: 11/07/2024) |

| | | |
|---|---|---|
| 11/07/2024 | | Set/Reset Deadlines: Mediation deadline set for 2/3/2025. (mga) (Entered: 11/07/2024) |
| 11/11/2024 | | **TEXT-ONLY ORDER granting 142 Motion to Seal Document** ***Text of Order: MOTION TO SEAL DOCUMENT re: [140-1] by Arthur Campbell, Terri Catlett, Jonathan Peiper, Brian Sheitman, Valerie Langley, Abhay Agarwal, Sarah Cobb, Josh Panter, Charlotte Williams, Elton Amos, North Carolina Department of Adult Corrections, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Brandeshawn Harris is GRANTED. So Ordered*****. Entered by District Judge Max O. Cogburn, Jr on 11/11/24. (eel)** (Entered: 11/11/2024) |
| 11/14/2024 | 143 | **ORDER granting 138 Motion to Continue Docket Call/Trial. The trial is continued to a date to be determined. Signed by District Judge Max O. Cogburn, Jr on 11/14/2024. (ams)** (Entered: 11/14/2024) |
| 11/21/2024 | 144 | Response by Kanautica Zayre-Brown re: 140 Notice of Compliance. (Maffetore, Jaclyn) Modified text on 11/22/2024 (ams). (Entered: 11/21/2024) |
| 11/21/2024 | 145 | **VACATED PER TEXT ORDER 11/22/2024** **ORDER that Defendants shall have 20 days to file a reply to Plaintiff's response to Defendants' Notice of Compliance with the Court's Injunction 144 . Reply due by 12/11/2024. Signed by District Judge Max O. Cogburn, Jr on 11/21/2024. (ams)** Modified text and regenerated NEF on 11/21/2024 (ams). Modified on 11/22/2024 (ams). (Entered: 11/21/2024) |
| 11/22/2024 | | **TEXT-ONLY ORDER** ***Text of Order: The Court hereby vacates the Order 145 and will move forward on a ruling without further input from Defendants. So Ordered.*** **Entered by District Judge Max O. Cogburn, Jr on 11/22/2024. (ams)** (Entered: 11/22/2024) |
| 11/22/2024 | 146 | **ORDER that Defendants shall re-submit a report that complies with the Court's permanent injunction. Defendants shall submit the report within 10 days of the entry of this Order. Signed by District Judge Max O. Cogburn, Jr on 11/22/2024. (ams)** (Entered: 11/22/2024) |
| 11/22/2024 | | Set/Reset Deadlines: Defendants report due by 12/2/2024. (ams) (Entered: 11/22/2024) |
| 11/25/2024 | 148 | USCA JUDGMENT as to Kanautica Zayre-Brown re 117 Notice of Appeal [24-6477]. (llp) (Entered: 11/27/2024) |
| 11/26/2024 | 147 | NOTICE *of Fourth Circuit's Order* by Arthur Campbell, Terri Catlett, Jonathan Peiper, Brian Sheitman, Valerie Langley, Abhay Agarwal, Sarah Cobb, Josh Panter, Charlotte Williams, Elton Amos, North Carolina Department of Adult Corrections, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Brandeshawn Harris (Attachments: # 1 Exhibit)(Rodriguez, Orlando) (Entered: 11/26/2024) |
| 11/26/2024 | 149 | AMENDED ORDER of USCA as to Kanautica Zayre-Brown re 117 Notice of Appeal [24-6477]. (llp) (Entered: 11/27/2024) |
| 12/05/2024 | 150 | Consent MOTION for Extension of Time to file Motion for Costs and Attorneys' Fees by Kanautica Zayre-Brown. Responses due by 12/19/2024 (Maffetore, Jaclyn). Motions referred to David Keesler. (Entered: 12/05/2024) |
| 12/05/2024 | 151 | **ORDER granting Plaintiff's 150 Consent Motion to Extend Time to File Motion for Costs and Attorneys' Fees. Signed by US Magistrate Judge David Keesler on 12/5/24. (mga)** (Entered: 12/05/2024) |

| | | |
|---|---|---|
| 12/16/2024 | | NOTICE of Hearing: Status Conference set for 1/14/2025 10:15 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 12/16/2024) |
| 12/17/2024 | 152 | MANDATE of USCA as to Kanautica Zayre-Brown re: 117 Notice of Appeal [24-6477]. (llp) (Entered: 12/17/2024) |
| 01/07/2025 | 153 | Consent MOTION for Extension of Time of Mediation Deadline and Continuance of Status Conference by Arthur Campbell, Terri Catlett, Jonathan Peiper, Brian Sheitman, Valerie Langley, Abhay Agarwal, Sarah Cobb, Josh Panter, Charlotte Williams, Elton Amos, Kanautica Zayre-Brown, North Carolina Department of Adult Corrections, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Brandeshawn Harris. Responses due by 1/21/2025 (Attachments: # 1 Proposed Order) (Rodriguez, Orlando). Motions referred to David Keesler. (Entered: 01/07/2025) |
| 01/08/2025 | 154 | Deleted entry. Docketed in wrong case. Modified on 1/8/2025 (mga). (Entered: 01/08/2025) |
| 01/08/2025 | 155 | **ORDER granting Defendants' 153 Consent Motion to Continue the Status Conference and Extend the Mediation Deadline. The parties shall file a Mediation Report on or before March 21, 2025. IT IS FURTHER ORDERED that the Status Conference scheduled for January 14, 2025, is CANCELLED. A Status Conference will be rescheduled for a date after March 21, 2025. Signed by US Magistrate Judge David Keesler on 1/8/25. (mga)** (Entered: 01/08/2025) |
| 01/10/2025 | 156 | Notice of Substitution of Counsel by Michael Elmer Bulleri on behalf of Terri Catlett, Josh Panter, Charlotte Williams, Brian Sheitman, Sarah Cobb, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Brandeshawn Harris, Jonathan Peiper, Valerie Langley, Abhay Agarwal, Gary Junker, Arthur Campbell, Elton Amos, North Carolina Department of Adult Corrections, Attorney Orlando Luis Rodriguez terminated. (Bulleri, Michael) (Entered: 01/10/2025) |
| 01/27/2025 | | Set/Reset Hearings: Given the previous orders regarding Mediation and Status Conference deadlines, the Jury Trial is RESET for 4/21/2025 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 01/27/2025) |
| 01/28/2025 | 157 | ORDER of USCA regarding costs for proceedings are taxed and certified as to Kanautica Zayre-Brown re 152 Mandate, 117 Notice of Appeal [24-6477]. (Attachments: # 1 Bill of Costs Form)(llp) (Entered: 01/29/2025) |
| 02/11/2025 | 158 | NOTICE of Appearance by Laura Howard McHenry on behalf of All Defendants (McHenry, Laura) (Entered: 02/11/2025) |
| 03/18/2025 | | Set/Reset Hearings: Given the previous orders regarding Mediation and Status Conference deadlines, the Jury Trial is RESET for 6/16/2025 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 03/18/2025) |
| 03/21/2025 | 159 | REPORT of Mediation. Outcome of Mediation: Parties reached an Impasse. (Maffetore, Jaclyn) (Entered: 03/21/2025) |
| 03/25/2025 | | NOTICE of Hearing: Status Conference set for 4/28/2025 10:15 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 03/25/2025) |

| | | |
|---|---|---|
| 03/28/2025 | | NOTICE of Cancellation of Status Conference scheduled for 4/28/2025 (ams) (Entered: 03/28/2025) |
| 04/04/2025 | | NOTICE of Hearing: Status Conference set for 4/22/2025 10:15 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 04/04/2025) |
| 04/09/2025 | 160 | Consent MOTION to Continue Docket Call/Trial *Currently Set for the Week of June 16, 2025* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 4/23/2025 (Brennan, Stephanie) (Entered: 04/09/2025) |
| 04/22/2025 | | Minute Entry: STATUS CONFERENCE held before District Judge Max O. Cogburn, Jr. Parties prepared to proceed to trial on or about July 21, 2025. Court to determine exact date and will notify parties when decided. Plaintiffs attorney: Jaclyn Maffetore, Daniel Siegel. Defendants attorney: Stephanie Brennan, Laura McHenry. Court reporter: Deborah Cohen-Rojas. (ams) (Entered: 04/22/2025) |
| 04/24/2025 | 161 | **ORDER granting 160 Motion to Continue Docket Call/Trial. The Court will consider the parties requests when rescheduling the trial.Signed by District Judge Max O. Cogburn, Jr on 04/24/2025. (cjs)** (Entered: 04/24/2025) |
| 05/20/2025 | | NOTICE of Hearing: Jury Trial TENTATIVELY set for 7/21/2025 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. If this date changes the Court will notice the parties accordingly. The trial will NOT be held during the period of July 30, 2025 through August 1, 2025, nor the week of August 25, 2025, as requested by the parties. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 05/20/2025) |
| 06/20/2025 | 162 | STIPULATION of Dismissal by Kanautica Zayre-Brown (Claims still Pending. Case to remain Open). (Maffetore, Jaclyn) (Entered: 06/20/2025) |
| 07/07/2025 | | Set/Reset Hearings: In light of the anticipated Motions for Attorneys' Fees, this case is continued until the next civil term. If parties file a Stipulation of Dismissal of all claims before the trial date, this case will close accordingly. Jury Trial RESET for 8/18/2025 09:30 AM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 07/07/2025) |
| 07/21/2025 | 163 | MOTION for Attorney Fees by Kanautica Zayre-Brown. Responses due by 8/4/2025 (Attachments: # 1 Exhibit A - Declaration of Jon Davidson, # 2 Exhibit B - Declaration of Daniel K. Siegel, # 3 Appendix Exhibit Index) (Maffetore, Jaclyn) (Entered: 07/21/2025) |
| 07/21/2025 | 164 | MEMORANDUM in Support re 163 MOTION for Attorney Fees by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 07/21/2025) |
| 07/21/2025 | 165 | BILL OF COSTS by Kanautica Zayre-Brown. Objection to Bill of Costs due by 8/4/2025 (Attachments: # 1 Appendix Costs Itemization, # 2 Appendix Costs Invoices)(Maffetore, Jaclyn) (Entered: 07/21/2025) |
| 07/31/2025 | | Set/Reset Deadlines as to 163 MOTION for Attorney Fees . Motion Hearing set for 8/26/2025 02:30 PM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. (ams) (Entered: 07/31/2025) |
| 08/04/2025 | 166 | RESPONSE in Opposition re 163 MOTION for Attorney Fees by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), |

| | | |
|---|---|---|
| | | Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Replies due by 8/11/2025 (Attachments: # 1 Exhibit A-Plaintiff's Timekeeping Sheets)(Brennan, Stephanie) (Entered: 08/04/2025) |
| 08/11/2025 | 167 | REPLY to Response to Motion re 163 MOTION for Attorney Fees by Kanautica Zayre-Brown. (Maffetore, Jaclyn) (Entered: 08/11/2025) |
| 08/18/2025 | | NOTICE of Hearing on Motion re: 163 MOTION for Attorney Fees : Motion Hearing RESET for 8/26/2025 01:30 PM in Courtroom #5A, 401 W Trade St, Charlotte, NC 28202 before District Judge Max O. Cogburn Jr. *This is your only notice - you will not receive a separate document.*(ams) (Entered: 08/18/2025) |
| 08/26/2025 | | Minute Entry: MOTION HEARING held before District Judge Max O. Cogburn, Jr. Re 163 MOTION for Attorney Fees . Motion taken under advisement. Counsel to file status of settlement within 31 days. Plaintiffs attorney: Jaclyn Maffetore, Daniel Siegel, Michele Delgado. Defendants attorney: Stephanie Brennan, Michael Bulleri. Court reporter: Deborah Cohen-Rojas. (ams) (Entered: 08/26/2025) |
| 08/26/2025 | | Set/Reset Deadlines: Status Report due by 9/26/2025 (ams) (Entered: 08/26/2025) |
| 09/24/2025 | 168 | STATUS REPORT *filed jointly* by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams (Brennan, Stephanie) (Entered: 09/24/2025) |
| 12/30/2025 | 169 | Unopposed MOTION to Withdraw as Attorney by Kanautica Zayre-Brown. Responses due by 1/13/2026 (Davidson, Jon). Motions referred to David Keesler. (Entered: 12/30/2025) |
| 12/31/2025 | 170 | **ORDER granting 169 Motion to Withdraw as Attorney. Attorney Jon W. Davidson terminated. Signed by US Magistrate Judge David Keesler on 12/31/2025. (cjs)** (Entered: 12/31/2025) |
| 03/06/2026 | 171 | Unopposed MOTION to Withdraw as Attorney by Kanautica Zayre-Brown. Responses due by 3/20/2026 (Brook, Christopher). Motions referred to David Keesler. (Entered: 03/06/2026) |
| 03/09/2026 | 172 | **ORDER granting 171 Motion to Withdraw as Attorney. Attorney Christopher A. Brooks representation of Plaintiff in this matter is terminated. Signed by US Magistrate Judge David Keesler on 3/9/2026. (brl)** (Entered: 03/09/2026) |
| 03/26/2026 | 173 | MOTION to Withdraw as Attorney by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Responses due by 4/9/2026 (Attachments: # 1 Exhibit Exhibit A - Consent to Withdrawal) (McHenry, Laura). Motions referred to David Keesler. (Entered: 03/26/2026) |
| 03/27/2026 | 174 | **ORDER granting 173 Motion to Withdraw as Attorney. Attorney Laura Howard McHenry's representation of Defendants in this matter is terminated. Signed by US Magistrate Judge David Keesler on 3/27/2026. (brl)** (Entered: 03/27/2026) |
| 04/17/2026 | 175 | Letter re: Case Status by Kanautica Zayre-Brown. (Maffetore, Jaclyn) Modified on 4/20/2026 (ams). (Entered: 04/17/2026) |

| | | |
|---|---|---|
| 06/22/2026 | 176 | **ORDER granting 163 Motion for Attorney Fees. Signed by District Judge Max O. Cogburn, Jr on 6/22/2026. (ams)** (Entered: 06/22/2026) |
| 07/22/2026 | 177 | NOTICE OF APPEAL as to 176 Order on Motion for Attorney Fees by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Sarah Cobb, Brandeshawn Harris, Todd Ishee(in his official capacity as Secretary of the North Carolina Department of Adult Correction), Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams. Filing fee $ 605, receipt number ANCWDC-7530539. *Use this link www.ca4.uscourts.gov to retrieve 4th Circuit case opening documents, i.e. Appearance of Counsel, Docketing Statement, Disclosure Statement, and Transcript Order Form.* Note: Your Transcript Order Form must be served on the District Court as well as the Circuit Court. (Brennan, Stephanie) Modified to add receipt number on 7/22/2026 (tlj). (Entered: 07/22/2026) |
| 07/23/2026 | 178 | Transmission of Notice of Appeal to US Court of Appeals re 177 Notice of Appeal (ams) (Entered: 07/23/2026) |
| 07/29/2026 | 179 | USCA Case Number 26-6822 for 177 Notice of Appeal [26-6822] USCA Case Manager: M. Powers. (llp) (Entered: 07/29/2026) |
| 08/12/2026 | 180 | TRANSCRIPT REQUEST by Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Gary Junker, Valerie Langley, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams for proceedings held on 8/26/2025 before Judge Cogburn, Jr.. (Brennan, Stephanie) (Entered: 08/12/2026) |
| 08/12/2026 | 181 | USCA TRANSCRIPT ORDER ACKNOWLEDGMENT as to Kanautica Zayre-Brown re: 177 Notice of Appeal [26-6822]. Court Reporter: Deborah Cohen-Rojas Current Deadline: 10/19/2026 Proceedings: Hearing on Motion Attorney Fees, Judge Cogburn, Jr., 08/26/2025 Ordering Party(ies): Abhay Agarwal, Elton Amos, Arthur Campbell, Terri Catlett, Leslie Cooley Dismukes, Gary Junker, Valerie Langley, Charles Mautz, North Carolina Department of Adult Corrections, Josh Panter, Jonathan Peiper, Brian Sheitman, Charlotte Williams, Trevor Wingard. (Attachments: # 1 Transcript Order Form)(llp) (Entered: 08/12/2026) |
| 08/14/2026 | 182 | TRANSCRIPT of motion for attorneys' fees held on 8/26/2025 before Judge Max O. Cogburn **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a *Notice of Intent to Request Redaction* and 21 calendar days to file a *Redaction Request*. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER. Policy at www.ncwd.uscourts.gov *(Does this satisfy all appellate orders for this reporter? - Yes.)*** Release of Transcript Restriction set for 11/9/2026. (Reporter: Deborah Cohen-Rojas, 704-350-7400) (Entered: 08/14/2026) |

---


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/17/2026 15:41:15 | | | |
| **PACER Login:** | sabrennan | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-00191-MOC-DCK |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

KANAUTICA ZAYRE-BROWN,

*Plaintiff*,

v.

THE NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; EDDIE BUFFALOE JR., in his official capacity as Secretary of the North Carolina Department of Public Safety; TODD ISHEE, in his official capacity as Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety; GARY JUNKER, in his official capacity as Director of Health and Wellness, Division of Prisons, North Carolina Department of Public Safety; BRANDESHAWN HARRIS, in her official capacity as Assistant Commissioner of Prisons, Division of Prisons, North Carolina Department of Public Safety; ARTHUR CAMPBELL, in his official capacity as Medical Director, Division of Prisons, North Carolina Department of Public Safety; TERRI CATLETT, in her official capacity as Director of Healthcare Administration, Division of Prisons, North Carolina Department of Public Safety; JONATHAN PEIPER, in his official capacity as Interim Director of Behavioral Health, Division of Prisons, North Carolina Department of Public Safety; BRIAN SHEITMAN, in his official capacity as Chief of Psychiatry, Division of Prisons, North Carolina Department of Public Safety; VALERIE LANGLEY, in her official capacity as Director of Nursing, Division of Prisons, North Carolina Department of Public Safety; ABHAY AGARWAL, in his official capacity as Deputy Chief Medical Officer, Division of Prisons, North Carolina Department of Public Safety;

**COMPLAINT**

SARAH COBB, in her official capacity as Director of Rehabilitative Services, Division of Prisons, North Carolina Department of Public Safety; JOSH PANTER, in his official capacity as Director of Operations, Division of Prions, North Carolina Department of Public Safety; CHARLOTTE WILLIAMS, in her official capacity as Prison Rape Elimination Act Director, Division of Prisons, North Carolina Department of Public Safety; and ELTON AMOS, in his official capacity as a member of the Utilization Review Board, Division of Prisons, North Carolina Department of Public Safety.

*Defendants.*

**INTRODUCTION**

1. Plaintiff Kanautica Zayre-Brown ("Plaintiff") has been in the custody of the North Carolina Department of Public Safety ("DPS") since October 2017. Plaintiff is a transgender woman who has been diagnosed as suffering from gender dysphoria, a serious medical condition. Plaintiff has needed and requested treatment for gender dysphoria for several years. DPS and its officials sued herein (collectively, "Defendants") have a constitutional obligation to provide Plaintiff with the medically necessary care she requires. Defendants have failed and continue to fail to meet their constitutional obligations to Plaintiff.

2. Plaintiff was first diagnosed with gender dysphoria in 2010. Gender dysphoria is a condition involving clinically significant distress or impairment resulting from an incongruency between a person's gender identity and the sex they were assigned at birth. Plaintiff's gender dysphoria is a disability, because it is the result of a physical impairment causing severe distress and substantial limitations on her major life activities. In 2017, DPS confirmed Plaintiff's gender dysphoria diagnosis and her need for treatment.

3. Since entering DPS custody in 2017, Plaintiff has requested necessary treatment and accommodations for her gender dysphoria, including gender-affirming hormone therapy and use of her legal name and gender-consistent pronouns. Plaintiff's requests have been met with unjustified delays that have needlessly prolonged her suffering. Even when DPS has granted approval for these requests, it has failed to provide these necessary treatments and accommodations consistently.

4. Plaintiff's previous treatments have not adequately alleviated her gender dysphoria. She has suffered and continues to suffer severe physical, emotional, and psychological distress as a result.

5. Plaintiff needs gender-affirming surgery for the treatment of gender dysphoria. Plaintiff has requested gender-affirming surgery from DPS on numerous occasions. Medical providers to whom DPS referred Plaintiff agreed that gender-affirming surgery is medically necessary for her. Plaintiff meets the criteria for gender-affirming surgery under DPS's Policy and Procedure for the Evaluation and

Management of Transgender Offenders[1] ("DPS Policy for Transgender Prisoners") and the recognized standards of care for the treatment of gender dysphoria.

6. Defendants have known these facts for years. Acting with deliberate indifference to Plaintiff's serious medical needs, Defendants have repeatedly rejected Plaintiff's requests to be provided gender-affirming surgery, wrongfully deeming it as "elective." Defendants have also repeatedly refused to act through their own established internal protocols for this kind of care on Plaintiff's request. Defendants have offered no medical justification for why Plaintiff's receipt of this care should be denied or delayed.

7. For these reasons and as alleged below, Defendants have violated Plaintiff's rights under federal and state law. Plaintiff seeks declaratory and injunctive relief, and damages.

## JURISDICTION AND VENUE

8. Plaintiff brings this action under 42 U.S.C. § 1983; the Eighth Amendment to the United States Constitution; Article I, Section 27 of the North Carolina Constitution; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*; and Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. §794a.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides federal district courts original jurisdiction in civil actions arising under the U.S. Constitution and the laws of the United States, and § 1343(a)(3), which provides

[1] *See* N.C. Dept. of Pub. Safety Policy & Proc. Manual, Ch. E § .2700 (Aug. 22, 2019) *reissued with amendments* at Ch. F § .4300 (March 31, 2021), https://files.nc.gov/ncdps/F-.4300-03_31_21.pdf. All subsequent citations shall be to the version of the policy reissued on March 31, 2021, unless otherwise indicated.

federal district courts original jurisdiction in civil actions to redress the deprivation, under color of any State law, of any right secured by the U.S. Constitution.

10. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367(a) because it so related to Plaintiff's federal law claims that it is part of the same case or controversy under Article III of the U.S. Constitution.

11. This Court has personal jurisdiction over Defendants as residents of North Carolina.

12. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Western District of North Carolina.

13. Plaintiff has exhausted all available administrative remedies for the claims alleged herein.

## PARTIES

14. Plaintiff Kanautica Zayre-Brown is a 40-year-old woman who is currently housed at Anson Correctional Institution ("Anson CI"). Plaintiff has been incarcerated in the custody of DPS since October 2017.

15. Defendant DPS is a public entity as defined by Title II of the ADA and constitutes a program or activity receiving federal financial assistance under the Rehab Act. DPS is sued under the ADA, Rehab Act, and Article I, Section 27 of the state Constitution.

16. Defendant Eddie Buffaloe Jr. is the Secretary of DPS. He is responsible for overall operation of DPS, including North Carolina's prisons. Defendant Buffaloe has

a legal duty to provide needed health care to all persons in DPS custody. Upon information and belief, Defendant Buffaloe is also the final reviewer and decision-maker of grievances submitted pursuant to DPS's Administrative Remedy Procedure. He is sued in his official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

17. Defendant Todd Ishee is the Prisons Commissioner for the Division of Prisons ("DOP") of DPS. He is responsible for the administration of North Carolina's prisons, including the creation and implementation of DPS policies and procedures. Defendant Ishee has a legal duty to provide needed health care to all persons in DOP custody. He is sued in his official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

18. Defendant Dr. Gary Junker is the Director of Health and Wellness for DOP. He is responsible for planning, organizing, and coordinating a Health and Wellness delivery system which includes medical, nursing, dental, behavioral health, mental health, pharmacy, quality assurance, and administration for all persons in DOP custody. As Director of Health and Wellness, Defendant Junker must approve all DOP Health and Wellness polices and directives. Defendant Junker has a legal duty to provide needed health care to all persons in DOP custody. Upon information and belief, Defendant Junker is one of the two final reviewers and decision-makers of requests for surgical intervention made to the Division Transgender Accommodation Review Committee ("DTARC"). He is sued in his official capacity under §1983 for

violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

19. Defendant Brandeshawn Harris is the Assistant Commissioner of Prisons for DOP. She is responsible for the overall custody and security operations of DOP. Upon information and belief, Defendant Harris is one of two final reviewers and decision-makers for requests for surgical intervention made to DTARC. She is sued in her official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

20. Defendant Dr. Arthur "Les" Campbell is the Medical Director for DOP. He is responsible for oversight of the day-to-day operations of medical services and for the quality of medical services provided to all persons in DOP custody. Defendant Campbell has a legal duty to provide needed health care to all persons in DOP custody. Upon information and belief, Defendant Campbell is a member of DTARC. He is sued in his official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

21. Defendant Terri Catlett is the Director of Healthcare Administration for DOP. She is responsible for the oversight of the budget, staffing, and contracts for DOP medical services, as well as medical records, electronic records, and telehealth related to all persons in DOP custody, among other things. Defendant Catlett has a legal duty to provide needed health care to all persons in DOP custody. Upon information and belief, Defendant Catlett is a member of DTARC. She is sued in her official

capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

22. Defendant Dr. Johnathan Peiper is the Behavioral Health Director for DOP. He is responsible for the approval of behavior health services provided to all persons in DOP custody. Defendant Peiper is also responsible for overseeing the day-to-day operation of behavior health services and ensuring their quality. Defendant Peiper has a legal duty to provide needed health care to all persons in DOP custody. Upon information and belief, Defendant Peiper is a member of DTARC. He is sued in his official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

23. Defendant Dr. Brian Sheitman is the Chief of Psychiatry for DOP. Defendant Sheitman has a legal duty to provide needed health care to all persons in DOP custody. Upon information and belief, Defendant Sheitman is a member of DTARC. He is sued in his official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

24. Defendant Valerie Langley, RN, is the Director of Nursing for DOP. Defendant Langley has a legal duty to provide needed health care to all persons in DOP custody. Upon information and belief, Defendant Langley is a member of DTARC. She is sued in her official under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

25. Defendant Dr. Abhay Agarwal is the Deputy Medical Director of DOP. Defendant Agarwal has a legal duty to provide needed health care to all persons in

DOP custody. Upon information and belief, Defendant Agarwal is a member of DTARC. He is sued in his official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

26. Defendant Sarah Cobb is the Director of Rehabilitative Services of DOP. Defendant Cobb has a legal duty to provide needed health care to all persons in DOP custody. Upon information and belief, Defendant Cobb is a member of DTARC. She is sued in her official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

27. Defendant Josh Panter is the Director of Operations for DOP. Upon information and belief, Defendant Panter is a member of DTARC. Defendant Panter has a legal duty to provide needed health care to all persons in DOP custody. He is sued in his official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

28. Defendant Charlotte Williams is the Prison Rape Elimination Act ("PREA") Director for all of DPS Adult Correction and Juvenile Justice. She is responsible for developing, implementing, and overseeing DPS efforts to comply with PREA standards in all of its facilities. Defendant Williams has a legal duty to provide needed health care to all persons in DOP custody. Upon information and belief, Defendant Williams is a member of DTARC. She is sued in her official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

29. Defendant Dr. Elton Amos is a member of the Utilization Review Board for DOP. Defendant Amos has a legal duty to provide needed health care to all persons in DOP custody. He is sued in his official capacity under §1983 for violations of Plaintiff's Eighth Amendment rights and under Article I, Section 27 of the state Constitution.

## FACTUAL ALLEGATIONS

### I. Gender Identity and Gender Dysphoria

30. "Gender Identity" is a well-established medical concept, referring to a person's deeply felt, internal sense of their own gender, e.g., being male, female, or non-binary.

31. All human beings develop and possess a gender identity. It is a core part of identity that cannot be altered by choice or by external factors.

32. Typically, people who are assigned female at birth based on their external anatomy identify as girls or women, and people who are assigned male at birth based on their external anatomy identify as boys or men. Individuals with a gender identity congruent with the sex they were assigned at birth are cisgender. A cisgender man, for example, is a person who was assigned male at birth and who has a male gender identity.

33. Transgender people have a gender identity that differs from the sex assigned to them at birth. A transgender woman is a woman who was assigned male at birth but who, like a cisgender woman, has a female gender identity. A transgender man is a man who was assigned female at birth but who, like a cisgender man, has a male gender identity.

34. "Gender dysphoria" is a medical diagnosis for a condition involving clinically significant distress and impairment that may result from the incongruence between one's gender identity and one's sex assigned at birth. "Gender identity disorder" was a diagnostic label used in the past to refer to people experiencing incongruence between their gender identity and their sex assigned at birth, but that term was abandoned to acknowledge that neither a transgender person's identity nor gender incongruence are "disordered."

35. Gender dysphoria is a serious medical condition codified in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM-5") and the International Classification of Diseases-10 ("ICD-10").

36. If untreated or inadequately treated, gender dysphoria can lead to serious harms. These harms include clinically significant psychological distress, impairment of basic life activities, and debilitating depression. Untreated or inadequately treated gender dysphoria is also associated with higher risks of experiencing unemployment, homelessness, victimization, and involvement in the criminal legal system. For some individuals, not receiving necessary treatment for gender dysphoria results in self-harm, suicidal ideation, suicide, and death.

37. The widely accepted standards of care for treating gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). WPATH is the leading international organization focused on transgender healthcare with a membership of physicians, psychiatrists, psychologists, social workers,

surgeons, and other health professionals who specialize in the diagnosis and treatment of gender dysphoria.

38. WPATH publishes the Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People ("SOC"). The current version of the Standards of Care—Version 7—was released in September 2011 following a five-year process in which 18 gender dysphoria specialists submitted peer-reviewed papers to help identify the most effective treatments for gender dysphoria. The SOC are the prevailing standards of care used by mental health providers and medical professionals treating gender dysphoria.

39. The SOC explicitly apply "in their entirety" to transsexual, transgender, and gender non-conforming people in "institutional environments such as prisons," and state:

> Health care for transsexual, transgender, and gender-nonconforming people living in an institutional environment should mirror that which would be available to them if they were living in a non-institutional setting within the same community. All elements of assessment and treatment as described in the [Standards of Care] can be provided to people living in institutions . . . . Access to these medically necessary treatments should not be denied on the basis of institutionalization or housing arrangements. If the in-house expertise of health professionals in the direct or indirect employ of the institution does not exist to assess and/or treat people with gender dysphoria, it is appropriate to obtain outside consultation from professionals who are knowledgeable about this specialized area of health care.[2]

[2] World Professional Association for Transgender Health, *Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People*, at 67 (7th Ed. 2012), https://www.wpath.org/publications/soc.

40. There is broad agreement among leading medical and mental-health professional associations and organizations—including the American Medical Association, the American Psychological Association, the American Psychiatric Association, the American Academy of Family Physicians, the American Congress of Obstetricians and Gynecologists, the Endocrine Society, the National Association of Social Workers, and WPATH—that gender dysphoria is a serious medical condition and that treatment for gender dysphoria is medically necessary.

41. The National Commission on Correctional Healthcare recommends that the medical management of prisoners with gender dysphoria "follow accepted standards developed by professionals with expertise in transgender health," citing the SOC.[3]

42. The SOC are designed to help individuals live in accordance with their gender identity, eliminating the clinically significant distress often associated with an incongruence between a person's gender identity and sex assigned at birth. Treatment protocols include social transition (dressing, grooming, and living in accordance with one's gender identity in all facets of life), legal transition, and medical transition, including gender affirming hormone therapy and gender-affirming surgical care. The particular course of medical treatment varies based on the individualized needs of the person suffering from gender dysphoria.

---

[3] National Commission on correctional Health Care, Position Statement: Transgender Health Care in Correctional Settings (October 18, 2009; reaffirmed with revision April 2015), https://www.ncchc.org/filebin/Positions/Transgender-and-Gender-Diverse-Health-Care-in-Correctional-Settings-2020.pdf (last visited Dec. 12, 2021).

## II. Mrs. Zayre-Brown's History of Gender Dysphoria

43. Since she was a child, Mrs. Zayre-Brown has been aware of her female identity and understood herself to be female. From a young age, Mrs. Zayre-Brown felt repelled by and sought to hide her genitalia. Mrs. Zayre-Brown frequently dressed in a feminine manner despite disapproval from many of her family members. Because of her feminine presentation, Mrs. Zayre-Brown was targeted for violence and sexual harassment and ran away from home multiple times to avoid abuse.

44. In or around 1996, when Mrs. Zayre-Brown was about 15 years old, she left home permanently. At that time, Mrs. Zayre-Brown began routinely dressing in a feminine manner and going by the name Kanautica, instead of the typically masculine name she was given at birth.

45. Mrs. Zayre-Brown was under DPS supervision in programs for youth from 2001 until 2005, and under DPS supervision for adults from 2005 until January of 2010. Upon information and belief, Mrs. Zayre-Brown was held under only minimum security or less during these periods of DPS supervision, was permitted to hold a job in the community, and was permitted to express herself by wearing her own clothes.

46. After being released from DPS supervision in 2010, Mrs. Zayre-Brown socially transitioned to live openly as the woman she knew herself to be in all aspects of her life.

47. In or around 2010, Mrs. Zayre-Brown was diagnosed with gender dysphoria by psychologist Dr. Katrina Kuzyszyn-Jones at the UNC School of Psychiatry and began receiving psychotherapy for treatment of her gender dysphoria.

48. In May of 2012, with the support of Dr. Kuzyszyn-Jones, Mrs. Zayre-Brown began gender-affirming hormone therapy to treat her gender dysphoria at UNC Health Care. Upon information and belief, Mrs. Zayre-Brown began hormone therapy under the care of UNC endocrinologist Dr. Julie Sharpless.

49. In November of 2012, Mrs. Zayre-Brown legally changed her name from the typically masculine name she was given at birth to Kanautica Promises Zayre, to align with her female identity.

50. In 2012 and 2013, as part of treatment for gender dysphoria, Mrs. Zayre-Brown had gender-affirming mammoplasty and body contouring surgeries, resulting in a more typically feminine body shape.

51. In 2014, Mrs. Zayre-Brown married her long-time partner, Dionne Brown, and began going by Kanautica Promises Zayre-Brown.

52. On July 20, 2017, Mrs. Zayre-Brown underwent gender-affirming orchiectomy—removal of the testes—as part of treatment of her gender dysphoria. The orchiectomy was intentionally performed in a manner to facilitate later gender-affirming genital surgery, the next step in Mrs. Zayre-Brown's treatment plan prior to her incarceration by DPS.

## III. <u>DPS's Policy for Transgender Prisoners</u>

53. On or around August 22, 2019, DPS rescinded its previous Health Services Policy regarding the care and treatment of incarcerated transgender people[4] and issued the DPS Policy for Transgender Prisoners.

---

[4] *See* N.C. Dept. of Pub. Safety Health Services Policy and Procedure Manual, Policy TX I-13 (Aug. 2018), https://files.nc.gov/ncdps/Transgender.pdf.

54. The DPS Policy for Transgender Prisoners establishes procedures for the "evaluation and management" of transgender people in DPS custody. These include procedures for housing assignments and health care.

55. Under the DPS Policy for Transgender Prisoners, "Routine Accommodation" requests include continuation of hormone therapy (if prescribed immediately before incarceration); male or female undergarments; hygiene/hair products, cosmetics, and other canteen items; private showering; and facility housing considerations.[5] Routine Accommodation requests are evaluated by a Facility Transgender Accommodation Review Committee ("Facility TARC" or "FTARC"), in consultation with the Warden of the facility.[6] Each Facility TARC "includes representatives from psychiatry (as needed), behavioral health, primary care provider, nursing administration (Associate Wardens for custody and operations/programs), unit manager, and the facility PREA Compliance Manager."[7]

56. "Non-Routine Accommodation" requests include, but are not limited to: initiation of hormone therapy; gender-consistent facility assignment; and gender-affirming surgical requests.[8]

57. "Non-Routine Accommodation" requests and appeals from decisions made by FTARC are considered by the Division Transgender Accommodation Review Committee ("Division TARC" or "DTARC").[9] The DTARC must include, "at a

---

[5] DPS Policy for Transgender Prisoners, § .4303(j)(3).
[6] *Id.*, § .4303(j).
[7] *Id.*, § .4302(j).
[8] *Id.*, § .4303(j)(4).
[9] *Id.*, § .4303(i), (j)(4).

minimum, the Medical Director, Chief of Psychiatry, Behavioral Health Director, Director of Rehabilitative Services, and the PREA Director."[10]

58. Upon information and belief, the current members of the DTARC are Defendants Campbell, Catlett, Peiper, Sheitman, Langley, Agarwal, Cobb, Panter, and Williams.

59. The DPS Policy for Transgender Prisoners requires that the DTARC refer its recommendations regarding surgical intervention or gender-identity-consistent facility transfer to the Assistant Commissioner of Prisons—Defendant Harris—and Director of Health and Wellness Services—Defendant Junker—for final determinations.[11]

60. An interim policy issued on July 13, 2021 for the purpose of amending the policy "prior to the annual review date" clarified that "[a]fter gender-identity-consistent facility transfer, subsequent transfers will be managed according to Division guidelines."[12]

61. Decision-making under the DPS Policy for Transgender Prisoners is supposed to require individualized review and consideration on a case-by-case basis.[13]

62. The DPS Policy for Transgender Prisoners also enumerates training requirements and "respectful communication" requirements for DPS staff in relation

---

[10] *Id.*, § .4302(k).
[11] *Id.*, § .4303(j)(4).
[12] *See* Interim Policy and Procedure: Evaluation & Management of Transgender Offenders, N.C. Dept. of Pub. Safety Policy & Proc. Manual, Ch. F, § .4300(I) (July 13, 2021), https://files.nc.gov/ncdps/F.4300-Interim-Evaluation-Management-of-Transgender-Offenders.pdf.
[13] DPS Policy for Transgender Prisoners, § .4303(g), (j)(2)(G), (j)(4).

to transgender individuals in DPS custody. Staff are required to use either "gender preferred or gender-neutral" pronouns and names when interacting with a transgender person in DPS custody. Intentional misuse of gender pronouns is prohibited. DPS staff are required to "maintain the privacy and confidentiality" of people who are transgender.[14] Additionally, DPS staff are supposed to "receive training specific to the care and custody of LGBTI offenders," both initially and annually.[15]

63. Upon information and belief, DPS has never provided any prisoner with gender-affirming surgery for the treatment of gender dysphoria.

## IV. Defendants' Delays and Denials of Mrs. Zayre-Brown's Requests for Gender Dysphoria Treatment

64. On October 10, 2017, Mrs. Zayre-Brown entered DPS custody. Immediately after her incarceration began, Mrs. Zayre-Brown informed DPS correctional officers that she is a transgender woman who needs to be treated consistently with her female identity and provided medical treatment for gender dysphoria. DPS medical and mental health staff obtained medical records from Mrs. Zayre-Brown's previous health care providers, which documented her treatment for gender dysphoria including hormone therapy and certain gender-affirming surgeries.

65. On October 13, 2017, DPS mental health provider Susan Garvey evaluated Mrs. Zayre-Brown for gender dysphoria and noted that "[a]ccording to the DSM-V, [Mrs. Zayre-Brown] meets the criteria for a diagnosis of Gender Dysphoria in

[14] *Id.*, § .4306.
[15] *Id.*, § .4305.

Adolescents and Adults[.]" On November 16, 2017, DPS medical provider Dr. Joseph J. Umesi confirmed Mrs. Zayre-Brown's gender dysphoria diagnosis.

66. On November 27, 2017 Mrs. Zayre-Brown had her first interview with the FTARC panel at Harnett Correctional Institution ("Harnett CI") to formally request treatment of her gender dysphoria. At that time, Mrs. Zayre-Brown requested, among other things, that her legal name be used on all documents in the DPS system to prevent her from being misgendered by DPS staff, which exacerbates her gender dysphoria, and to be referred to an endocrinologist to restart hormone therapy. Mrs. Zayre-Brown also asked about receiving the gender-affirming genital surgery that she intended to undergo prior to her incarceration, as part of treatment for gender dysphoria.

67. Despite the fact that DPS has known since the beginning of her term of incarceration that Mrs. Zayre-Brown is a transgender woman with gender dysphoria who has undergone hormone therapy and gender-affirming surgeries, DPS housed Mrs. Zayre-Brown in male facilities for almost two years. Mrs. Zayre-Brown was misgendered on a near-constant basis by both correctional and medical staff and other prisoners. Being a transgender woman in a male facility exacerbated Mrs. Zayre-Brown's gender dysphoria, caused her extreme mental and psychological distress, placed her at grave risk of physical assault and sexual assault, and led to Mrs. Zayre-Brown being placed on suicide-watch.

68. After numerous attempts to obtain a transfer to a women's facility and after the added public pressure of community advocacy and media coverage, Mrs. Zayre-Brown was finally transferred to Anson CI, a women's facility on August 15, 2019.

69. While at Anson CI, Mrs. Zayre-Brown has continued to face discrimination in the treatment of, and refusal to accommodate, her gender dysphoria.

70. Although DPS's Policy for Transgender Prisoners requires respectful communication and training to that effect, DPS staff has persistently mis-gendered Mrs. Zayre-Brown–addressing her using masculine pronouns or her since-changed name–which has the known impact of worsening her gender dysphoria.

71. Further, in implementing its Policy for Transgender Prisoners, DPS has erected onerous and medically unnecessary barriers which have delayed or prevented Mrs. Zayre-Brown from obtaining treatment for gender dysphoria, and which do not apply to the treatment of other disabilities.

72. As detailed *infra*, Mrs. Zayre-Brown's requests for accommodation and necessary medical treatment of Mrs. Zayre-Brown's gender dysphoria have been unjustifiably delayed, provided inconsistently, and/or outright denied.

73. On top of the harm from the unlawful discrimination Mrs. Zayre-Brown has experienced on the basis of her disability, Mrs. Zayre-Brown continues to suffer extreme psychological and emotional harm due to DPS's deliberate indifference to her need for necessary treatment of her gender dysphoria, including gender-affirming surgery.

74. The physical, psychological, and emotional distress caused by DPS's failure to provide needed treatment of Mrs. Zayre-Brown's gender dysphoria is persistent and severe. For Mrs. Zayre-Brown, her external genitalia fill her with feelings of disgust and unrelenting fear and anxiety that others will know that she is not "complete" in the way that she needs to be. DPS's repeated delay, interruption, and denial of treatment for Mrs. Zayre-Brown's gender dysphoria has placed and continues to place her at risk of serious harm.

*A. Denial and Delay of Hormone Therapy*

75. Despite extensive documentation in her pre-incarceration medical records of her history of receiving hormone therapy, DPS's confirmation of her diagnosis of gender dysphoria, and Mrs. Zayre-Brown requests for hormone therapy, DPS did not reinitiate Mrs. Zayre-Brown's hormone therapy for the treatment of her gender dysphoria until June of 2018, eight months after entering DPS custody.

76. In addition to DPS's eight-month delay in reinitiating Mrs. Zayre-Brown's hormone therapy, Mrs. Zayre-Brown has also experienced unwarranted and repeated interruptions of her hormone therapy, as well as inconsistent and inadequate monitoring of her hormone levels.

77. When taken consistently at an appropriate dosage, hormone therapy for transgender women like Mrs. Zayre-Brown suppresses androgens, which has feminizing effects, including body fat redistribution, decreased body and facial hair growth, and decreased erectile function. However, inadequate or interrupted

hormone therapy will not sufficiently suppress androgens to achieve the maximum possible feminizing effects.

78. As a result of periods of interrupted and/or inadequate hormone therapy, Mrs. Zayre-Brown has suffered physical and emotional distress from hair growth, weight gain, and genital sensation that exacerbate her gender dysphoria, causing depression, anxiety, suicidal thoughts, and a dangerous attempt and ongoing desire to self-mutilate her genitals.

79. On January 31, 2019, Mrs. Zayre-Brown had an appointment with Dr. Karla Pou, an endocrinologist with UNC Health that DPS referred her to for hormone therapy treatment. Dr. Pou discovered that the labs assessing Mrs. Zayre-Brown's hormone levels sent from DPS in advance of Mrs. Zayre-Brown's visit had been incorrectly calibrated to male hormone target ranges, resulting in mislabeling of the lab values, and that Mrs. Zayre-Brown's hormone levels were below the target female range.

80. On or around January 26, 2019, Mrs. Zayre-Brown ran out of her prescribed hormone therapy medication and a refill was not issued. Upon information and belief, DPS did not administer Mrs. Zayre-Brown her prescribed hormone therapy for approximately five days prior to her appointment with Dr. Pou.

81. Following the January 31, 2019 appointment, Dr. Pou informed DPS providers about the lab results and instructed that Mrs. Zayre-Brown's hormone therapy should not be withheld without a medical justification.

82. On April 15, 2019, Mrs. Zayre-Brown had an appointment with Dr. Pou for maintenance of her hormone therapy. Dr. Pou noted at this appointment that DPS failed to provide her with the requested labs necessary to evaluate the efficacy of Mrs. Zayre-Brown's hormone therapy regimen.

83. On July 9, 2020, Mrs. Zayre-Brown had a hormone therapy maintenance appointment at UNC Endocrinology with Dr. Donald Caraccio. Although Mrs. Zayre-Brown had routinely attended hormone therapy maintenance appointments roughly every three months to monitor and assess the efficacy of her hormone therapy, after this appointment, no further maintenance appointments were scheduled for Mrs. Zayre-Brown for the remainder of 2020.

84. Mrs. Zayre-Brown was transferred to Anson CI on August 15, 2020. Upon information and belief, Mrs. Zayre-Brown was not provided hormone therapy for at least two weeks following her transfer. Though Anson CI staff eventually reinitiated Mrs. Zayre-Brown's hormone therapy, the efficacy of her hormone therapy went unmonitored for several months.

85. As detailed further *infra,* from fall of 2020 through spring of 2021, Mrs. Zayre-Brown filed numerous requests for information as well as an emergency grievance to Defendant Ishee seeking, among other things, an endocrinology appointment to maintain her hormone therapy, and noting her worsening gender dysphoria as a result of the unwanted physical effects caused by her unregulated hormones.

86. On May 28, 2021, Mrs. Zayre-Brown's counsel issued a demand letter to DPS General Counsel seeking, among other things, an endocrinologist appointment for maintenance of Mrs. Zayre-Brown's hormone therapy.

87. On June 10, 2021, Mrs. Zayre-Brown had an appointment with Dr. Caraccio via telehealth to discuss the severe mental health symptoms she was experiencing because of her gender dysphoria. This was Mrs. Zayre-Brown's first hormone therapy maintenance appointment since July 9, 2020.

88. Mrs. Zayre-Brown expressed that she felt like she was not receiving adequate hormone therapy and the lack of adequate hormone therapy was contributing to her worsening mental health. Dr. Caraccio could make no determinations about the adequacy of hormone therapy, however, because DPS had not had labs drawn and sent them to Dr. Caraccio before the appointment.

89. In July 2021, after DPS finally sent labs to Dr. Caraccio, it was determined that Mrs. Zayre-Brown's hormone levels were again not within target range and that her hormone therapy treatment needed to be altered to be effective.

*B. Denial of Gender-Affirming Surgery*

90. Mrs. Zayre-Brown made her first inquiry to DPS about the gender-affirming genital surgery she required for treatment of her gender dysphoria on November 27, 2017, and Mrs. Zayre-Brown started requesting gender-affirming surgery from DPS through formal channels on November 7, 2018. Since then, DPS has repeatedly delayed, deferred, and denied Mrs. Zayre-Brown's requests for gender-affirming surgery without sufficient medical justification and on non-medical grounds.

91. On November 7, 2018, Mrs. Zayre-Brown made her first request for gender-affirming surgery for the treatment of gender dysphoria through a sick call while housed at Harnett CI.

92. On December 7, 2018, Mrs. Zayre-Brown submitted a request for gender-affirming surgery to the FTARC at Harnett CI.

93. On January 7, 2019, in advance of a January 11, 2019 Harnett CI FTARC meeting, Mrs. Zayre-Brown was evaluated for gender-affirming surgery by Dr. Umesi, who submitted a Utilization Review ("UR") request for "[f]ull genital gender-affirming surgery," noting that this was the next step in her treatment plan prior to incarceration and that her previous genital surgery was performed in accordance with the SOC.

94. Upon information and belief, on or around January 11, 2019, the Harnett CI FTARC reviewed Mrs. Zayre-Brown's request for gender-affirming surgery and indicated that gender-affirming surgery was "not recommended" but did not provide any rationale. The Harnett CI FTARC referred the request and its recommendation to the DTARC.

95. Beginning in or around February of 2019, DTARC repeatedly "deferred" Mrs. Zayre-Brown's request for gender-affirming surgery for decision at a later date, and without referral for a consultation with a health care provider competent in the treatment of gender dysphoria.

96. Mrs. Zayre-Brown made repeated inquiries and expressed distress to medical and mental health providers at Harnett CI and Warren Correctional Institution

("Warren CI"), where she was transferred in March of 2019, regarding the status of her request for gender-affirming surgery.

97. On April 15, 2019, at a hormone therapy maintenance appointment with Dr. Pou, Mrs. Zayre-Brown expressed to Dr. Pou that she needed gender-affirming surgery.

98. At this same appointment, Dr. Pou referred Mrs. Zayre-Brown to Dr. Brad Figler, a urologist with UNC Urology and surgical provider in the UNC Transgender Health Program. Dr. Figler performs a range of gender-affirming surgeries, including the gender-affirming genital surgery that Mrs. Zayre-Brown needs.

99. Upon information and belief, Dr. Figler's office contacted Warren CI, but the facility declined his assistance, asserting lack of knowledge about the desire for a consultation.

100. On July 8, 2019, Mrs. Zayre-Brown had another hormone therapy maintenance appointment with Dr. Pou. Following that appointment, Dr. Pou again referred Mrs. Zayre-Brown for consultation for gender-affirming surgery with Dr. Figler. Dr. Pou requested that DPS contact Dr. Figler's office directly and arrange a consultation for gender-affirming surgery "ASAP."

101. Multiple DPS medical and mental health providers for Mrs. Zayre-Brown—including Physician's Assistant Gloria Harvey, Nurse Caroline Fleming, Defendant Agarwal, Dr. Anita Wilson, and Dr. Patricia Hahn—were aware of Dr. Pou's recommendations and referred Dr. Pou's recommendation for a consultation with Dr. Figler to DTARC for review.

102. Mrs. Zayre-Brown expressed extreme distress to her mental health providers, including Dr. Hahn, caused by the lack of response from DTARC to her requests for gender-affirming surgery. The severity of Mrs. Zayre-Brown's distress culminated in her being taken to the emergency room on August 6, 2019. She was subsequently placed on suicide watch.

103. On August 15, 2019, Mrs. Zayre-Brown was transferred to Anson CI. On August 21, 2019, DTARC again "deferred" Mrs. Zayre-Brown's December 7, 2018 request for gender-affirming surgery. The DTARC report stated that it was deferring Mrs. Zayre-Brown's request for gender-affirming surgery, inaccurately asserting both that Mrs. Zayre-Brown had "successfully completed gender reassignment surgically" and that "[v]aginoplasty is an elective procedure which is not medically necessary for reassignment." The DTARC report also asserted that "[c]urrent staffing and resources does [sic] not allow for the proper post-operative care of this procedure." While designating its decision as a deferral, DTARC's decision was a denial of Mrs. Zayre-Brown's request for gender-affirming surgery.

104. After learning of DTARC's decision, Mrs. Zayre-Brown initiated the administrative remedy process to appeal DTARC's denial by filing a grievance using form DC-410 on October 27, 2019. In her Grievance Statement, Mrs. Zayre-Brown noted that gender-affirming care—including surgery—is medically necessary for the treatment of her gender dysphoria and cited to the DPS Policy for Transgender Prisoners regarding the appropriate procedure for review. On October 30, 2019, DPS

accepted this grievance for review and assigned it the Grievance No. 4575-2019-JPODA-13296.

105. On November 22, 2019, DPS issued a Step One Unit Response to Grievance No. 4575-2019-JPODA-13296 stating that Mrs. Zayre-Brown's request for gender-affirming surgery had been "reviewed by the DTARC committee in compliance with the Transgender Accommodation policy and procedure. Decisions rendered have been based on current policy and relevant factors taken under consideration."

106. Mrs. Zayre-Brown appealed Grievance No. 4575-2019-JPODA-13296 to Step Two on or around November 22, 2019.

107. On December 3, 2019, DPS issued a Step 2 Area/Complex/Institution Response to Grievance No. 4575-2019-JPODA-13296 reiterating that Mrs. Zayre-Brown's request for gender-affirming surgery had been "reviewed by the D-TARC in compliance with the Transgender Accommodation policy and procedure. Decisions rendered have been based on current policy and relevant factors taken under consideration."

108. Mrs. Zayre-Brown appealed Grievance No. 4575-2019-JPODA-13296 to the Secretary of DPS (Step Three) on December 3, 2019.

109. On January 2, 2020, the Inmate Grievance Resolution Board ("IGRB") issued a Step Three Administrative Remedy Response dismissing the final step of Grievance No. 4575-2019-JPODA-13296 as resolved. The Findings and Disposition Order stated: "it appears that medical staff have seen and treated this offender within the parameters of the Health Care Policy. The disagreement of the offender with that of

trained medical professionals does not render the professionals' judgment incompetent nor does it signify any indifference to the offender's medical care." The IGRB found that because the most current iteration of the DPS Policy for Transgender Prisoners did not go into effect until August 22, 2020–the day after DTARC's decision was rendered—there was no requirement for any Director to review DTARC's decision.

110. On January 15, 2020, Mrs. Zayre-Brown submitted a request for re-consideration for gender-affirming surgery to the Anson CI FTARC under the then-current DPS Policy for Transgender Prisoners.

111. On or around February 7, 2020, the Anson CI FTARC construed Mrs. Zayre-Brown's request for re-consideration as a request for an Accommodation Update under the DPS Policy for Transgender Prisoners, noted Mrs. Zayre-Brown's desire to appeal DTARC's previous decision denying her gender-affirming surgery, and referred the request to DTARC.

112. On or around May 21, 2020, DTARC met to discuss Mrs. Zayre-Brown's January 15, 2020 request for reconsideration for gender-affirming surgery. Following re-consideration, the DTARC report stated that no determination would be made until after "an in-person consultation with an OBGYN surgical specialist with experience in gender affirming surgery." Defendant Junker and Defendant Harris concurred with DTARC's recommendation and directed DTARC "to review consultation results to reconsider the request for accommodation to include rationale that any proposed surgery is supported as medically necessary."

113. Upon information and belief, a consultation with a provider outside of DPS has to be submitted and approved through a UR request by a DPS medical provider. Upon information and belief, DPS provider Jennifer Norris, NP and Medical Records Assistant Deloise Hildreth submitted UR Requests between July 1 and July 13, 2020 for a consult with Dr. Figler at UNC.

114. Upon information and belief, on July 23, 2020, Mrs. Zayre-Brown's DPS provider Norris and Medical Records Assistant Hildreth submitted a UR Request for Mrs. Zayre-Brown to have a telephone interview with the coordinator for the UNC Transgender Health Program. This interview was required in order to schedule an in-person consultation for gender-affirming surgery with Dr. Figler. Mrs. Zayre-Brown had this telephonic interview on August 8, 2020. No in-person consultation with Dr. Figler was scheduled at that time, however.

115. On or around August 27, 2020, DTARC met again to review Mrs. Zayre-Brown's January 2020 request for reconsideration and reissued its approval for a consultation with a specialist with experience in gender-affirming surgery. DTARC noted that Mrs. Zayre-Brown had spoken with the UNC coordinator by phone as necessary, and that an appointment for in-person consultation with the surgeon was "pending scheduling."

116. Despite Mrs. Zayre-Brown's repeated inquiries, no surgical consultation was scheduled before the next DTARC meeting on November 12, 2020. At that meeting, DTARC noted that Defendant Catlett would seek to follow up with the UNC Transgender Health Program.

117. In December of 2020, Mrs. Zayre-Brown was admitted to the inpatient mental health facility at the North Carolina Institution for Women after expressing an urge to self-mutilate her genitals, suicidal ideation, and extreme hopelessness due to her persistent gender dysphoria and DPS's refusal to provide her with the gender-affirming surgery she needs. After returning to Anson CI in January of 2021, Mrs. Zayre-Brown renewed her inquiries about the consultation for gender-affirming surgery and also inquired about her hormone therapy maintenance appointments.

118. In or around February of 2021, Mrs. Zayre-Brown sent an emergency grievance to Defendant Ishee, per DPS Administrative Remedy Procedures, noting that she had made nearly 50 requests for medically necessary treatment for her gender dysphoria since July of 2020, that she had been without a hormone therapy maintenance appointment for more than 200 days, and that she was very concerned about her worsening mental health and resulting urges to self-mutilate her genitals.

119. Upon information and belief, Defendant Ishee did not respond to Mrs. Zayre-Brown's emergency grievance.

120. On or around February 25, 2021, DTARC again met to review Mrs. Zayre-Brown's January 2020 request for reconsideration for gender-affirming surgery. DTARC reported that Defendant Catlett had been notified that Mrs. Zayre-Brown would need to meet with the UNC Transgender Health Program Management Team prior to a surgical consultation with Dr. Figler and that Defendant Catlett had "requested additional details of what the meeting . . . would entail."

121. In or around March through around early May 2021, without any communications from DPS related to her requests for gender-affirming surgery, Mrs. Zayre-Brown became increasingly distressed and began to experience thoughts of self-harm more frequently.

122. Upon information and belief, Mrs. Zayre-Brown met with Katherine Croft of the UNC Transgender Health Program to discuss treatment options via telehealth on May 25, 2021, as the final prerequisite for a surgical consultation with Dr. Figler. Following this appointment, however, DPS did not schedule the surgical consultation with Dr. Figler for Mrs. Zayre-Brown.

123. On May 28, 2021, counsel for Mrs. Zayre-Brown issued a demand letter to the DPS general counsel seeking the requested surgical consultation with UNC Urology for evaluation for gender-affirming surgery and all medically necessary treatment for Mrs. Zayre-Brown's gender dysphoria.

124. On July 12, 2021, Mrs. Zayre-Brown finally had an in-person consultation with Dr. Figler at the UNC Transgender Health Program–two-and-a-half years after her initial request for gender-affirming surgery and more than a year after approval for the consultation by DTARC.

125. During her consultation, Dr. Figler and Mrs. Zayre-Brown further discussed gender-affirming genital surgical options for the treatment of gender dysphoria. Recognizing that treatment of gender dysphoria is individualized for each patient, and taking into account Mrs. Zayre-Brown's need for immediate relief of her extreme

and increasing distress related to her genitalia, Dr. Figler recommended that Mrs. Zayre-Brown receive a gender affirming vulvoplasty.

126. Dr. Figler indicated that, but for a recommendation of weight loss prior to surgery, Mrs. Zayre-Brown satisfied the WPATH criteria for the gender-affirming surgery and he stated that a vulvoplasty was necessary in her case as the next step in Mrs. Zayre-Brown's treatment plan for her gender dysphoria, a plan with which Mrs. Zayre-Brown agreed.

127. Upon information and belief, Dr. Figler's recommendation was communicated to DPS.

128. In or around the first week of September of 2021, Mrs. Zayre-Brown met the goal weight recommended by Dr. Figler for gender-affirming surgery.

129. Despite having achieved the goal weight recommended for surgery and despite the recommendations of health care providers directly involved in treating Mrs. Zayre-Brown's gender dysphoria—including Dr. Pou as early as July, 2019, Dr. Hahn, and the providers at UNC's Transgender Health Program—on September 8, 2021, Dr. Elton Amos deferred the UR request submitted by provider Norris and Medical Records Assistant Hildreth to schedule Mrs. Zayre-Brown's gender-affirming surgery. He noted in comments, "ELECTIVE PROCEDURES NOT APPROVED."

130. On October 20, 2021, in a Transgender Accommodation Summary, DPS provider Jennifer Dula, MSW, noted:

> Based on the review of her records and the current assessment, it appears the next appropriate step for Ms. Brown is to undergo trans-feminine bottom surgery. The surgery will help her make significant progress in further

> treatment of her gender dysphoria. Ms Brown is psychologically stable to undergo this surgery and will be able to access post op care at an appropriate DPS facility . . . . Review of . . . all medical consultations with UNC Trans Health show that the risks, benefits and alternatives of this surgery have been reviewed with Ms. Brown, and she showed an excellent understanding during those consultations and this evaluation. She has demonstrated the ability to make an informed decision about undertaking surgery. In summary, Ms. Brown has met the WPATH criteria and is an appropriate candidate for surgery.

131. In reference to a consultation on October 21, 2021, Dr. Caraccio noted, "Regarding desire for vulvaplasty [sic], this is medically necessary part of treatment for this patient. She has been treated with hormones since 2012 and orchiectomy in 2017, with persistent symptoms of gender dysphoria."

132. On October 4, 2021, Ms Zayre-Brown filed another grievance seeking gender-affirming vulvoplasty and transfer to NCCIW to be closer to providers competent to treat her gender dysphoria, noting that she had achieved the weight loss recommended to undergo gender-affirming surgery, and reiterating that the surgery was medically necessary to treat her gender dysphoria, despite Dr. Amos's deferral inaccurately characterizing the procedure as "elective." In a Screening Response issued on October 11, 2021, DPS indicated that it received the grievance on October 7, 2021, that it had been accepted, and that it would begin a review process. The October 4, 2021 grievance was assigned Grievance No. 4575-2021-LPODF-19705.

133. On October 15, 2021, despite the previous response indicating that Grievance No. 4575-2021-LPODF-19705 had been accepted for review, DPS issued another screening response indicating that Grievance No. 4575-2021-LPODF-19705 had been

rejected pursuant to Section .0306 of the Administrative Remedy Procedure because it "requested a remedy for more than one incident."

134. On November 4, 2021, Mrs. Zayre-Brown submitted yet another grievance seeking gender-affirming surgery and transfer to NCCIW to be closer to providers competent to treat her gender dysphoria, that, upon information and belief, was substantially similar to Grievance No. 4575-2021-LPODF-19705. In a Screening Response issued on November 13, 2021, DPS indicated that it received the grievance on November 10, 2021, that it had been accepted, and that it would begin a review process. The November 4, 2021 grievance was assigned Grievance No. 4575-2021-LPODE-20189.

135. On November 28, 2021, DPS issued a Step One Unit Response to Grievance No. 4575-2021-LPODE-20189 noting: "According to the electronic health record, the Utilization Review Request that was placed for this procedure on 8/18/21 was deferred on 9/8/2021." Upon information and belief, Mrs. Zayre-Brown received this response on November 29, 2021, and appealed Grievance No. 4575-2021-LPODE-20189 to Step Two on or around November 30, 2021.

136. On December 16, 2021, DPS issued a Step Two Area/Complex/Institution Response to Grievance No. 4575-2021-LPODE-20189 stating that on September 28, 2021 "[i]t was indicated that the surgery was an elective procedure and not approved, however it was deferred. It was noted that your case is to be reviewed at the end of January 2022 at the next scheduled DTARC Meeting." The response further noted that Mrs. Zayre-Brown was "on the backlog" transfer to NCCIW, contingent on

"several factors." The response did not specify these factors, but simply noted "one of the main factors will be your behavior." Mrs. Zayre-Brown appealed Grievance No. 4575-2021-LPODE-20189 to Step Three on December 17, 2021.

137. On January 18, 2022, the IGRB issued a Step Three Administrative Remedy Response to Grievance No. 4575-2021-LPODE-20189 stating that "prison staff have taken appropriate action to address and resolve the offender's concerns voiced in the grievance" and reiterating that Mrs. Zayre-Brown's surgical request was scheduled for review "at the end of January at the next DTARC meeting." The IGRB dismissed Grievance No. 4575-2021-LPODE-20189 as resolved.

138. Upon information and belief, DTARC did not meet in January of 2022 and no explanation as to why has been provided to Mrs. Zayre-Brown.

139. Upon information and belief, at some point between February 17 and April 26, 2022, DTARC recommended that Mrs. Zayre-Brown be denied gender-affirming vulvoplasty as not medically necessary, and Defendants Junker and Harris agreed, despite the contrary determinations of her direct providers, including Ms. Dula, MSW, Dr. Caraccio, and Dr. Figler. This denial was conveyed to Mrs. Zayre-Brown on April 26, 2022.[16]

140. DTARC members have repeatedly deferred or declined to timely approve decisions on appropriate consultations for medically necessary treatment,

[16] These events were discovered or took place on the eve of filing, and following Mrs. Zayre-Brown's verification of the facts of this Complaint. Accordingly, Plaintiff's accompanying verification does not purport to verify any facts contained in this paragraph or that have occurred after her April 25, 2022 verification.

unnecessarily prolonging and worsening Mrs. Zayre-Brown's life-threatening mental and emotional distress as a result of her severe gender dysphoria.

141. The DPS Policy for Transgender Prisoners allows the DTARC, Defendant Harris, and Defendant Junker to delay action on—or override entirely—determinations of medical necessity made by Mrs. Zayre-Brown's qualified medical and mental health providers. It also creates medically unjustified obstacles to the provision of care for individuals like Mrs. Zayre-Brown who are suffering from gender dysphoria, simply on the basis of their specific medical condition and disability. DPS's implementation of this policy has led and continues to lead to unnecessary suffering constituting cruel and unusual punishment.

142. As a result of Mrs. Zayre-Brown's repeated requests and the recommendations from her medical providers both inside and outside DPS, Defendants have been deliberately indifferent to Mrs. Zayre-Brown's serious medical needs for treatment of gender dysphoria.

143. Due to Defendants' discriminatory treatment of Mrs. Zayre-Brown on the basis of her disability and their deliberate indifference to Mrs. Zayre-Brown's serious medical needs, she has suffered, and will continue to suffer irreparable harm, including severe mental and emotional distress, anxiety, depression, suicidal ideation, and self-injury.

## COUNT I

## Cruel and Unusual Punishment in Violation of the Eighth Amendment to the U.S. Constitution

*Against Defendants Buffaloe, Ishee, Junker, Harris, Campbell, Catlett, Peiper, Sheitman, Langley, Agarwal, Cobb, Panter, Williams, and Amos in their official capacities for declaratory and injunctive relief*

144. Mrs. Zayre-Brown incorporates the allegations in all preceding paragraphs as if stated fully herein.

145. Defendants Buffaloe, Ishee, Junker, Harris, Campbell, Catlett, Peiper, Sheitman, Langley, Agarwal, Cobb, Panter, Williams, and Amos are each responsible for providing adequate and necessary medical treatment for Mrs. Zayre-Brown's gender dysphoria.

146. Each of these Defendants know of and enforce the DPS Policy for Transgender Prisoner's procedures.

147. Mrs. Zayre-Brown's gender dysphoria is an objectively serious medical condition necessitating treatment.

148. Consistent hormone therapy is, and for years has been, medically necessary to adequately treat Mrs. Zayre-Brown's gender dysphoria.

149. Gender-affirming surgery including vulvoplasty is, and has long been, medically necessary to treat Mrs. Zayre-Brown's gender dysphoria.

150. Each of these Defendants know that Mrs. Zayre-Brown is a transgender woman suffering from gender dysphoria, that her current and previous healthcare has failed to adequately treat her gender dysphoria, and that Mrs. Zayre-Brown has

not received the gender-affirming surgery she requires to alleviate her gender dysphoria.

151. Each of these Defendants know that Mrs. Zayre-Brown's medical providers—including providers to whom DPS referred Mrs. Zayre-Brown—have determined gender-affirming surgery to be medically necessary to treat Mrs. Zayre-Brown's serious medical condition, gender dysphoria.

152. Each of these Defendants have long known that failure to adequately treat Mrs. Zayre-Brown's gender dysphoria has caused her serious harm and that there continues to be a substantial risk of further serious harm for as long as her receipt of additional gender-affirming surgery is delayed or denied.

153. Each of these Defendants' conscious disregard for the past harms and the substantial risk of future harm facing Mrs. Zayre-Brown violates all standards of decency, is grossly deficient medical care, will only exacerbate or prolong her pain, and constitutes deliberate indifference to serious medical needs in violation of the Eighth Amendment.

154. Each of these Defendants, by engaging in the aforementioned acts and omissions and in ratifying such acts or omissions, acted with willful and conscious disregard of the rights, welfare, and safety of Mrs. Zayre-Brown.

## <u>COUNT II</u>

## <u>Cruel or Unusual Punishment in Violation of N.C. Const. Art. I, Section 27</u>

*Against Defendant North Carolina Department of Public Safety and Defendants Buffaloe, Ishee, Junker, Harris, Campbell, Catlett, Peiper, Sheitman, Langley, Agarwal, Cobb, Panter, Williams, and Amos in their official capacities for declaratory and injunctive relief and damages*

155. Mrs. Zayre-Brown incorporates the allegations in all preceding paragraphs as if stated fully herein.

156. North Carolina's constitutional prohibition on "cruel or unusual punishments" provides at least the same level of protection as the Eighth Amendment. *See State v. Jackson*, 348 N.C. 644, 648, 503 S.E.2d 101, 103 (1998). The North Carolina Supreme Court has stated that "[o]ur state constitutional provision emphasizes the importance of this interest in North Carolina." *Medley v. N.C. Dep't of Correction*, 330 N.C. 837, 844, 412 S.E.2d 654, 659 (1992).

157. For the same reasons alleged in Count I of this complaint, Defendants have been deliberately indifferent to Plaintiff's serious medical need in violation the state Constitution.

158. Plaintiff has no other adequate remedy under state law for the violation of her state constitutional right to be free from cruel or unusual punishment.

## COUNT III

## Discrimination on the Basis of Disability in Violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*

*Against Defendant North Carolina Department of Public Safety for declaratory and injunctive relief and damages*

159. Mrs. Zayre-Brown incorporates the allegations in all preceding paragraphs as if stated fully herein.

160. The Americans with Disabilities Act (ADA) prohibits public entities from discriminating against persons with disabilities in their programs, services, and activities and from excluding persons with disabilities from participation in, or denying them the benefits of, the services, programs, or activities of such a public entity. 42. U.S.C. §§ 12131-12134.

161. Defendant DPS is a "public entity" as defined by the ADA.

162. Based on her diagnosis of gender dysphoria, which has been recognized and documented by DPS, Mrs. Zayre-Brown is a person with a "disability" within the meaning and scope of 42 U.S.C. § 12102. Mrs. Zayre-Brown's gender dysphoria is the result of a physical impairment that has caused parts of her anatomy to be in conflict with her gender identity, resulting in severe distress and substantial limitations on her major life activities of interacting with others, social functioning, thinking, caring for herself, and ensuring her safety.

163. DPS provides healthcare and accommodations to prisoners with disabilities other than gender dysphoria.

164. Mrs. Zayre-Brown is "a qualified individual with a disability" under the ADA because she is incarcerated in DPS's facilities. She is therefore "eligible" to participate in DPS's programs, services, and activities: indeed, she is required to participate in prison life because she is being held in prison against her will. However, DPS is failing to provide Mrs. Zayre-Brown equal access to prison life, on the basis of her disability and DPS's failure to accommodate it. DPS is failing to make reasonable modifications to its rules, policies, or practices, necessary to accommodate her disability and provide her an equal opportunity to participate safely, fully, and equally in prison life, including an equal opportunity to receive needed healthcare.

165. DPS has discriminated against and continues to discriminate against Mrs. Zayre-Brown in violation of both the ADA by maintaining policies, practices, and procedures that deny her access to treatment and support needed to treat and manage her disability, causing her ongoing harm solely because of her disability. By withholding medically necessary treatment that will likely cure her disability of gender dysphoria. DPS is violating the ADA because it excludes Mrs. Zayre-Brown from, and denies her the benefits of, the health care programs operated by DPS, because of her disability.

166. DPS further has discriminated against and continues to discriminate against Mrs. Zayre-Brown in violation of the ADA by failing to provide proper and reasonable training to custody and health staff in responding to persons diagnosed with gender dysphoria.

167. DPS has acted and continues to act with intent to discriminate against Mrs. Zayre-Brown based on her disability. DPS knew and knows that the harms to Mrs. Zayre-Brown's federally protected rights under the ADA were substantially likely and failed and continues to fail to act to not infringe those rights, thereby acting with deliberate indifference toward Mrs. Zayre-Brown's federally protected rights.

168. As a direct and legal result of DPS's actions and omissions, Mrs. Zayre-Brown has suffered and continues to suffer damages including, without limitation, pain and suffering and emotional, psychological, and physical distress.

## COUNT IV

## Discrimination on the Basis of Disability in Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794a

*Against Defendant North Carolina Department of Public Safety for declaratory and injunctive relief and damages*

169. Mrs. Zayre-Brown incorporates the allegations in all preceding paragraphs as if stated fully herein.

170. Section 504 of the Rehabilitation Act of 1973 prohibits an otherwise qualified individual with a disability being excluded from participation in, being denied the benefits of, or being subjected to discrimination under any program or activity receiving Federal financial assistance, solely by reason of the individual's disability. 29 U.S.C. §794a.

171. Defendant DPS receives federal financial assistance, as defined by the Rehab Act.

172. Based on her diagnosis of gender dysphoria, which has been recognized and documented by DPS, Mrs. Zayre-Brown is a person with a "disability" within the meaning and scope of 29 U.S.C. § 705(9)(B). Mrs. Zayre-Brown's gender dysphoria is the result of a physical impairment that has caused parts of her anatomy to be in conflict with her gender identity, resulting in severe distress and substantial limitations on her major life activities of interacting with others, social functioning, thinking, caring for herself, and ensuring her safety.

173. DPS provides healthcare and accommodations to prisoners with disabilities other than gender dysphoria.

174. Mrs. Zayre-Brown is "a qualified individual with a disability" under the Rehab Act because she is incarcerated in DPS's facilities. She is therefore "eligible" to participate in DPS's programs, services, and activities: indeed, she is required to participate in prison life because she is being held in prison against her will. However, DPS is failing to provide Mrs. Zayre-Brown equal access to prison life, on the basis of her disability and DPS's failure to accommodate it. DPS is failing to make reasonable modifications to it rules, policies, or practices, necessary to accommodate her disability and provide her an equal opportunity to participate safely, fully, and equally in prison life, including an equal opportunity to receive healthcare.

175. DPS has discriminated against and continues to discriminate against Mrs. Zayre-Brown in violation of the Rehab Act by maintaining policies, practices, and procedures that deny her access to treatment and support needed to treat and manage her disability, causing her ongoing harm solely because of her disability. By

withholding medically necessary treatment that will likely cure her disability of gender dysphoria, DPS is violating the Rehab Act because it excludes Mrs. Zayre-Brown from, and denies her the benefits of, the health care programs operated by DPS, solely because of her disability.

176. DPS further has discriminated against and continues to discriminate against Mrs. Zayre-Brown in violation of the Rehab Act by failing to provide proper and reasonable training to custody and health staff in responding to persons diagnosed with gender dysphoria.

177. DPS has acted and continues to act with intent to discriminate against Mrs. Zayre-Brown solely based on her disability. DPS knew and knows that the harms to Mrs. Zayre-Brown's federally protected rights under the Rehab Act were substantially likely and failed and continues to fail to act to not infringe those rights, thereby acting with deliberate indifference toward Mrs. Zayre-Brown's federally protected rights.

178. As a direct and legal result of DPS's actions and omissions, Mrs. Zayre-Brown has suffered and continues to suffer damages including, without limitation, pain and suffering and emotional, psychological, and physical distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kanautica Zayre-Brown respectfully requests entry of judgment in her favor and against Defendants, granting the following relief:

A. Preliminary and permanent injunctions requiring Defendants to provide Plaintiff with necessary medical care and accommodations for her gender dysphoria, including use of gender-consistent terminology, consistent hormone therapy maintenance, and prompt provision of gender-affirming vulvoplasty;

B. A declaration that Defendants' practices in obstructing and denying Plaintiff and other similarly situated prisoners adequate and necessary medical treatment and accommodations for gender dysphoria are unconstitutional and unlawful;

C. Nominal and compensatory damages, in an amount to be determined at trial;

D. Plaintiff's costs, including reasonable attorneys' fees; and

E. Any further relief to which Plaintiff may be entitled.

Respectfully submitted this the 28th day of April, 2022.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397
Michele Delgado*
NC Bar No. 50661
ACLU OF NORTH CAROLINA

LEGAL FOUNDATION
P.O. Box 28004
Raleigh, NC 27611-8004
Tel: (919) 834-3466
Fax: (919) 869-2075
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org

*admission forthcoming

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Tel: (919) 942-5200
Fax: (866) 397-8671
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
Taylor Brown*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004-2400
Tel: (212) 519-7887
Fax: (212) 549-2650
jondavidson@aclu.org
tbrown@aclu.org

**pro hac vice* admission
forthcoming

*Attorneys for Plaintiff*
*Kanautica Zayre-Brown*

## VERIFICATION

I, Kanautica P. Zayre-Brown, verify under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing Complaint concerning myself, my activities, and my intentions are true and correct of my own personal knowledge.

Executed on 25 April, 2022.

Kan P. Z Brown
Kanautica P. Zayre-Brown

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
NO. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*,<br><br>Defendants. | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(Expedited Consideration Requested) |

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Kanautica Zayre-Brown hereby moves this Court for partial summary judgment on her claim brought under the Eighth Amendment to the U.S. Constitution; liability with respect to her claim brought under Article I, Section 27 of the North Carolina Constitution; and her claim brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq. As demonstrated in Plaintiff's brief and exhibits supporting this motion, there is no genuine dispute as to any material fact as to these matters and Plaintiff is entitled to judgment as a matter of law. Defendants have long been aware of Plaintiff's gender dysphoria, which is an objectively serious medical need, and have been deliberately indifferent to that need by continuing to deny treatment prescribed by their own providers, thereby prolonging Plaintiff's pain and creating risk of future harm. Defendants are also discriminating against Plaintiff by denying her medical

care because of her disability of suffering from gender dysphoria while providing care to other prisoners for other conditions or disabilities.

Plaintiff's federal law claims seek injunctive relief that would require the defendant prison officials to provide her with medically necessary care. She has maintained from the outset of this case that, without this care, she has suffered serious harm and faces the ongoing risk of serious harm to her future health. *See* Doc. 14 (brief in support of motion for preliminary injunction). Accordingly, Plaintiff respectfully requests expedited consideration of this motion, and asks the Court to enter the following relief as soon as practicable:

(a) Declare that Defendants' refusal to provide Plaintiff adequate and necessary medical treatment and accommodations for gender dysphoria violates the Eighth Amendment to the U.S. Constitution and the Americans with Disabilities Act.

(b) Declare that the Department of Adult Corrections and Defendants sued in their official capacities are liable to Plaintiff under her state constitutional claim for an amount of damages to be determined at trial.

(c) Permanently enjoin Defendants to promptly provide Plaintiff gender-affirming vulvoplasty.

(d) Order such other relief as this Court deems just and equitable.

Respectfully submitted this 5th day of October 2023.

*<u>/s/ Jaclyn A. Maffetore</u>*
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel

NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)

L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2023, I electronically filed the foregoing Motion for Summary Judgment using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore
American Civil Liberties Union of
North Carolina Legal Foundation
P.O. Box 28004
Raleigh, NC 27611
Tel: (919) 256-5891
Fax: (919) 869-2075
jmaffetore@acluofnc.org

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-191-MOC-DCK

| | | |
|---|---|---|
| **KANAUTICA ZAYRE-BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on the parties' cross motions for summary judgment. (Doc. Nos. 59, 62). The Court heard argument on the motions in November 2023. Upon careful review of the pleadings, the Court finds unresolved questions of material fact and will deny both summary judgment motions without prejudice. The Court will hold an evidentiary hearing to resolve the disputed questions of fact identified in this order. After the evidentiary hearing, the parties may renew their summary judgment motions.

## I. BACKGROUND

Plaintiff, Kanautica Zayre-Brown, is a transgender woman. In 2010, Plaintiff was diagnosed with gender dysphoria ("GD").[1] Since then, Plaintiff has lived socially as a woman, received GD-related psychotherapy, and transitioned gender presentation and sex characteristics to female. In 2012, Plaintiff started hormone therapy and began a course of surgeries related to

[1] Gender Dysphoria is defined in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") as "marked incongruence between one's experienced/expressed gender and assigned gender." Gender Dysphoria, Diagnostic & Statistical Manual of Mental Disorders, 5th ed. S2H14. The condition is characterized by "(1) a marked incongruence between an individual's sex assigned at birth and the individual's gender identity, (2) strong cross-gender identification, and (3) clinically significant distress or impairment of functioning." (Doc. No. 63 at 2–3).

her transition process. Although these procedures somewhat alleviated Plaintiff's GD, Plaintiff remained dysphoric about the lower body. Plaintiff's course of surgeries culminated—for the time being—with a 2017 orchiectomy.[2] Shortly after the orchiectomy, Plaintiff began a 119-month sentence in the North Carolina Department of Adult Corrections ("DAC"). In December 2018, while in DAC custody, Plaintiff formally requested a gender-affirming genital surgery.

**a. The DAC's Review Process**

The DAC reviews all inmate requests for surgery through its "utilization review process," which evaluates the medical necessity of the requested procedure. In 2019, the DAC established its policy for the Evaluation and Management of Transgender Offenders ("ETMO Policy"). The ETMO policy provides for a Division Transgender Accommodation Review Committee ("DTARC"), which reviews transgender inmates' requests for medical interventions. When inmates suffering from GD request treatment from the DAC, the DTARC serves as the utilization review authority with the power to approve or deny requested treatments.

The DTARC is comprised of clinical staff, including Arthur L. Campbell, M.D. (Chief Medical Officer), Brian Sheitman, M.D. (Chief of Psychiatry), and Lewis Jonathan Peiper, Ph.D. (Director of Behavioral Health), as well as non-clinical staff like the DAC's Director of Operations (Josh Panter) and Director of Rehabilitative Services (Sarah Cobb). Defendants Panter and Cobb, and other non-clinical DTARC members, are not medical professionals and have no experience treating GD. When it comes to clinical requests, the non-clinical members of DTARC "generally defer to the clinical members." (Doc. No. 60 at 4). Even the clinical DTARC members, however, have limited training and experience with respect to GD.

The DTARC's recommendations are subject to approval by the Director of Health and

[2] An orchiectomy is the surgical removal of the testes.

Wellness Services (Defendant Junker) and Assistant Commissioner of Prisons (Defendant Harris). Neither decisionmaker has experience or training in treating GD. The DAC does not require such high-level approval for any procedure besides gender-affirming genital surgery. Despite having received over thirty such requests, the DTARC has never recommended approval of gender-affirming surgery for an inmate's GD. (Doc. No. 60 at 5; Doc. No. 63 at 10).

Dr. Campbell, a DTARC member and the DAC's Chief Medical Officer, authored a document titled "DTARC medical necessity position statement on gender reassignment surgery." In the position statement, Dr. Campbell asserts that gender-affirming surgery is never medically necessary to treat GD. Despite the document's title, Defendants claim that "Dr. Campbell's position paper was never adopted by DTARC or the [DAC]." (Doc. No. 60 at 5).

**b. The DAC's Efforts to Treat Plaintiff's GD**

Following Plaintiff's incarceration, DAC psychologist Susan Garvey confirmed Plaintiff's GD diagnosis. Plaintiff formally requested gender-affirming surgery in December 2018, and the facility referred that request to the DTARC in January 2019. During the pendency of the DTARC review, Plaintiff experienced distress related to GD and the DTARC's delays.

In mid-August 2019, the DTARC deferred Plaintiff's surgical request. Plaintiff submitted a request for reconsideration in early 2020. In response, the DTARC sought information from the UNC Transgender Health Program (UNC THP) regarding the nature of the procedure, number of visits required, and cost. Five months after Plaintiff submitted the reconsideration request, the DTARC indicated it would only resolve Plaintiff's request after an in-person consultation with an OBGYN surgical specialist experienced in gender-affirming surgery. (Doc. No. 63 at 12).

Plaintiff's first step towards in-person consultation—a telehealth interview with the UNC THP coordinator—did not occur for twelve months. Between the DTARC's May 2020 report

and Plaintiff's May 2021 telehealth interview with UNC, Plaintiff's mental health deteriorated. In December 2020, Plaintiff expressed to DAC provider Dr. Patrician Hahn suicidal thoughts and an urge to mutilate Plaintiff's genitals. In April 2021, Plaintiff tied a band around the genitals, which Dr. Hahn deemed a self-harm attempt designed to more quickly obtain gender-affirming surgery. In May 2021, the DAC's Director of Healthcare Administration (Defendant Terri Catlett) forwarded an email to DAC mental health staff indicating Plaintiff had expressed a desire to mutilate and kill herself.

On May 25, 2021, Plaintiff had a telehealth interview with the UNC THP Coordinator, Nurse Katherine Croft. Ms. Croft concluded that weight loss was Plaintiff's only obstacle to surgery. Croft then informed the DAC that the next step in UNC THP's surgical assessment would be an in-person consultation. That assessment occurred in July 2021. Plaintiff was evaluated by Dr. Bradley Figler, a surgeon selected by the DAC who has expertise in gender-affirming surgery. Dr. Figler concluded that Plaintiff met the requirements for gender-affirming genital surgery. Based on Plaintiff's persistent GD, Dr. Figler further concluded that gender-affirming surgery was medically necessary for Plaintiff.

Dr. Figler was not alone in concluding that Plaintiff was an appropriate candidate for gender-affirming surgery and that such surgery was medically necessary. Dr. Donald Caraccio, Plaintiff's endocrinologist, wrote in a clinical encounter note that vulvoplasty was a "medically necessary part of treatment for this patient." (Doc. No. 60 at 8). Jennifer Dula, Plaintiff's treating therapist, wrote in a clinical note that Plaintiff met the criteria for gender-affirming surgery and that surgery would "make significant progress in further treatment of [Plaintiff's GD]." (Id.).[3]

[3] Additionally, Dr. Hahn testified that she believed gender-affirming surgery was necessary from a mental health perspective. (Doc. No. 63 at 20). And Dr. Marvella Bowman, a psychologist who treated Plaintiff for six months beginning in August 2021, testified that Plaintiff was unlikely to

### c. The 2022 DTARC Meeting and Case Summary

In Autumn 2021, Plaintiff met the weight loss goal. DAC healthcare providers submitted a utilization review request for gender-affirming vulvoplasty.[4] On February 17, 2022, the DTARC met to consider Plaintiff's request. Before the meeting, doctors Campbell, Sheitman, and Peiper reviewed Plaintiff's medical records. That review apparently included the recommendations of Dr. Figler, Dr. Carccio, and Ms. Dula. During the meeting, doctors Campbell, Sheitman, and Peiper provided input based on their pre-meeting review. No other DTARC members reviewed Plaintiff's medical records before the meeting: they deferred to doctors Campbell, Sheitman, and Peiper. Doctors Sheitman and Peiper in turn deferred to Dr. Campbell with respect to medical necessity. Nonetheless, Defendants maintain that the DTARC did not rely on Dr. Campbell's position paper concluding that gender-affirming surgery is never medically necessary for the treatment of GD. (Doc. No. 60 at 5).

The DTARC ultimately recommended denial of Plaintiff's request for two reasons. First, the DTARC concluded that Plaintiff was well-adjusted and benefitting from existing treatment. Specifically, the DTARC concluded that Plaintiff did not present a risk of self-harm or suicide absent gender-affirming surgery. The DTARC dismissed contrary evidence (e.g., Plaintiff's statements regarding her desire to self-mutilate) as "an attempt to force the [DAC] to provide the desired surgery." (Doc. No. 60 at 13). Second, the DTARC found the medical literature was mixed on the efficacy of gender-affirming surgery as treatment for GD. The DTARC largely based this second conclusion on Dr. Campbell's research and analysis. Dr. Campbell concluded that the Standards of Care published by the World Professional Association for Transgender

---

stop experiencing GD absent surgery. (Id.).

[4] A vulvoplasty is a genital reconstruction surgery that creates a neo-vulva but does not create a vaginal cavity.

Health ("WPATH")—according to which Doctor Figler assessed Plaintiff's request—were not evidence-based. The DTARC's analysis was condensed into a Case Summary and provided to Defendants Junker and Harris for final decision.

Dr. Campbell was the sole author of the medical analysis section of the Case Summary. Dr. Campbell admitted that his medical analysis was based largely on his position statement. Defendants Junker and Harris deferred to Dr. Campbell's judgment on medical necessity.

In April 2022, Plaintiff received the DTARC's denial of her request for gender affirming surgery. This lawsuit followed.

#### d. Procedural History

Plaintiff filed this action in April 2022, raising claims under the U.S. and North Carolina Constitutions, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("RA"). Plaintiff moved for preliminary injunction on the Eighth Amendment claim, requesting the Court order Defendants to "provide Ms. Zayre-Brown the gender-affirming surgery that she urgently needs." (Doc. No. 14). Both parties moved for summary judgment. This Court heard argument on the parties' cross motions in November 2023.

## II. LEGAL STANDARD

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it could affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The movant for summary judgment bears the burden of persuasion. That burden requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). For issues on which the non-movant bears the burden of proof, the movant discharges the burden of persuasion by showing "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

If the movant meets their burden, the burden shifts to the non-movant. To meet their burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. More specifically, the non-movant must adduce sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995). Naked allegations or denials are insufficient. Celotex, 477 U.S. 317, 324.

Considering a motion for summary judgment, the Court views the evidence and any inferences therefrom in the light most favorable to the non-movant. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. ANALYSIS

### a. Eighth Amendment (Deliberate Indifference) Claim

The Eighth Amendment obligates states to "provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). States disappoint this obligation where they act with "deliberate indifference" to inmates' "serious medical needs." Id. at 103. The Eighth Amendment's scope is not static but draws from "evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 100–01

(1958). For that reason, before deciding whether a practice "comports with the fundamental dignity that the Amendment protects," courts must consider "objective evidence of contemporary values." Ford v. Wainwright, 477 U.S. 399, 406 (1986).

To state a deliberate indifference claim, Plaintiff must establish two elements. Thorpe v. Clarke, 37 F.4th 926, 933 (4th Cir. 2022). First, she must show that she has a "serious medical need." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). Second, she must show that officials knew of her need and related risks, but nevertheless disregarded them. Id.; see Farmer v. Brennan, 511 U.S. 825, 837 (1994). The first prong of the test is objective; the second is subjective. Hixson v. Moran, 1 F.4th 297, 302 (2021).

To satisfy the objective element, Plaintiff must show that Plaintiff has "suffered serious or significant physical or mental injury as a result of" Defendants' denial of the request for gender-affirming surgery. Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Even viewing the evidence in the light most favorable to Defendant, Plaintiff clears this hurdle comfortably.[5] That Defendant's denial caused Plaintiff to suffer significant injury is beyond genuine dispute.[6]

---

[5] Defendants contend that "after her surgery request was not approved, [Plaintiff] repeatedly denied having any concerns with sleep, appetite, energy level, or thoughts of self-harm or suicidal ideation." (Doc. No. 60 at 19). Plaintiff convincingly responds that Defendants cherry-pick evidence: "while Plaintiff has at times felt better than others, she has repeatedly reported severe anxiety, depression, and thoughts of self-harm and suicide." (Doc. No. 66 at 4). Indeed, Plaintiff could not have been diagnosed with GD unless she suffered "clinically significant distress or impairment." (Doc. No. 63 at 24). That is precisely why so many courts recognize GD as an objectively serious medical need. De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013); Edmo v. Corizon, Inc., 935 F.3d 757, 785 (9th Cir. 2019); Kosilek v. Spencer, 774 F.3d 63, 86 (1st Cir. 2014) (en banc); Soneeya v. Spencer, 851 F. Supp. 2d 228, 244–45 (D. Mass. 2012) (citing De'lonta v. Angelone, 330 F.3d 360, 634 (4th Cir. 2003)). Viewing the evidence in the light most favorable to Defendants does not require the Court to ignore contrary evidence that favors Plaintiff's case.

[6] As the Ninth Circuit noted in Edmo, "[f]ailure to follow an appropriate treatment plan [for GD] can expose transgender individuals to a serious risk of psychological and physical harm." 935

To prevail on the subjective component of the Eighth Amendment claim, Plaintiff must show that Defendants knew of and disregarded her objectively serious medical condition. See De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (quoting Farmer, 511 U.S. at 837). Where—as here—a deliberate indifference claim arises from prison officials' decision not to provide a course of treatment, "the essential test is one of medical necessity." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977). If prison officials knowingly refuse to provide medically necessary treatment—even if they provide other treatment consistent with the applicable standards of care—they fail to provide constitutionally adequate treatment. De'lonta, 708 F.3d at 526.[7]

Defendants knew the risks of denying Plaintiff's request for gender-affirming care. Even where prisoners have no symptoms—hardly the case here—"prison officials may not ignore medical conditions that are 'very likely to cause serious illness and needless suffering' in the future." Smith v. Carpenter, 316 F.3d 178, 188 (2d Cir. 2003) (quoting Helling v. McKinney, 509 U.S. 25, 33 (1993)).[8] Defendants accept that (1) Plaintiff suffers from GD and (2) the DAC is familiar with the WPATH Standards. The WPATH Standards dictate that GD—an objectively serious medical condition—will in some cases not resolve without gender-affirming surgery. Edmo v. Corizon, Inc., 935 F.3d 757, 770 (9th Cir. 2019) (quoting WPATH Standards of Care at 55). What's more, Plaintiff's medical records "document her history of distress, anxiety, hopelessness, self-harm, and suicidal ideation." (Doc. No. 63 at 26). Defendants reviewed those

F.3d at 771 (quoted in Williams v. Kincaid, 45 F.4th 759, 768 n.3 (4th Cir. 2022)).

[7] Where prison officials deny, delay, or interfere with an inmate's access to medical care, despite their knowledge of the attendant risks posed by the inmates' objectively serious medical needs, they act with deliberate indifference. Estelle, 429 U.S. at 104–05; Sharpe v. S.C. Dep't of Corr., 621 Fed. App'x 732, 734 (4th Cir. 2015).

[8] See Gordon v. Schilling, 937 F.3d 348, 359 (4th Cir. 2019) ("[I]t is inconsistent with the Eighth Amendment for a prison official to withhold treatment from an inmate who suffers from a serious, chronic disease until the inmate's condition significantly deteriorates.").

records, as well multiple expert recommendations concluding that gender-affirming surgery was medically necessary for Ms. Zayre-Brown. No reasonable jury could find that Defendants lacked subjective awareness that denying Ms. Zayre-Brown's request carried some risk of harm.

Plaintiff's deliberate indifference claim thus boils down to a single factual question: whether gender affirming surgery was medically necessary. This dispositive question is subject to two genuine disputes: (1) whether the DTARC applied the appropriate standard of care; and (2) whether the DTARC's medical necessity analysis afforded Plaintiff individualized consideration. These disputes prevent the Court from granting summary judgment at this time.

Courts rely on "[a]ccepted standards of care and practice within the medical community" to determine whether treatment is medically necessary. Edmo, 935 F.3d at 786; accord United States v. Derbes, 369 F.3d 579, 583 (1st Cir. 2004); Campbell v. Kallas, 936 F.3d 536, 549 (7th Cir. 2019). Accepted standards of care furnish the "objective evidence of contemporary values" that courts must consider in evaluating deliberate indifference claims. See Ford, 477 U.S. at 406. In the Fourth Circuit, requests for gender-affirming care are analyzed according to the WPATH standards. De'lonta, 708 F.3d at 526.[9] Where gender-affirming surgery is medically necessary for an inmate according to the WPATH Standards, but a prison official consciously disregards the risk of failing to provide that surgery, the prison official is deliberately indifferent. Id.[10]

Here, as in Edmo, a reasonable jury could find that Defendants did not credibly apply the

---

[9] The Circuit more recently reaffirmed its recognition of the WPATH Standards as "authoritative" in Grimm v. Gloucester Cnty. School Bd., 972 F.3d 586, 595. The Grimm Court adopted the Ninth Circuit's conclusion that besides WPATH, "[t]here are no other competing, evidence-based standards that are accepted by any nationally or internationally recognized medical professional groups." Id. at 595–96 (quoting Edmo, 935 F.3d at 769); see also Williams v. Kincaid, 45 F.4th 759, 768 n.3 (4th Cir. 2022).

[10] See also Campbell, 936 F.3d at 553 (Wood, J., dissenting) (citing Rosati v. Igbinoso, 791 F.3d 1037, 1040 (9th Cir. 2015); De'lonta, 708 F.3d at 525–26); Edmo, 935 F.3d at 794; Clark v. Quiros, 2023 WL 6050160, at *18 (D. Conn. 2023); Iglesias v. Federal Bureau of Prisons, 2021 WL 6112790 (S.D. Ill. 2021).

WPATH Standards. See 935 F.3d at 787. Dr. Campbell, a DTARC Member and the DAC's Chief Medical Officer, drafted the "DTARC medical necessity position statement on gender reassignment surgery," in which he concluded that gender-affirming surgery is never medically necessary for GD patients. Dr. Campbell's position is plainly at odds with the WPATH Standards. While Defendants maintain that the DTARC did not rely on Dr. Campbell's position paper, a reasonable jury could disagree and find that the DTARC's decision to deny gender-affirming care to Ms. Zayre-Brown contradicted the WPATH Standards.

A reasonable jury could also find that the DAC's ETMO policy, especially Dr. Campbell's role on the DTARC, operates in practice as an unconstitutional de facto ban on gender-affirming surgery. The DTARC has denied every request for gender-affirming surgery it has ever received—over thirty in total. Dr. Campbell's conclusion, and DTARC members' apparent deference thereto, that gender-affirming surgery is never medically necessary for GD offers more evidence of a sub rosa ban. A "blanket, categorical denial of medically indicated surgery . . . is the paradigm of deliberate indifference." Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014); see Gordon v. Schilling, 937 F.3d 348 (4th Cir. 2019).[11] While the DTARC purports to conduct individualized reviews of surgical requests, (Doc. No. 60 at 4–5), a categorical ban need not be de jure to be unconstitutional. The Eighth Amendment is violated where an administrative policy—though it could theoretically approve a surgery—functions in practice as a de facto denial.[12]

[11] Decisions regarding the medical necessity of gender-affirming surgery must be based on an "individualized medical evaluation" and not a "blanket rule." Kosilek, 221 F. Supp. 2d at 193 (quoting Allard v. Gomez, 9 F. App'x 793, 785 (9th Cir. 2001)); see Fields v. Smith, 653 F.3d 550 (7th Cir. 2011).

[12] "The majority of Courts hold that a blanket policy (or de facto ban) [on gender-affirming care for GD-afflicted inmates], which does not allow for the consideration of an inmate's particular medical needs, could violate the Eighth Amendment." Fisher v. Federal Bureau of Prisons, 484

### b. North Carolina Constitutional Claim

Article I, Section 27 of the North Carolina Constitution prohibits "cruel or unusual punishments." Section 27's protection is at least as broad as the Eighth Amendment's. State v. Green, 348 N.C. 588, 603 (1998); State v. Kelliher, 2022-NCSC-77, ___ N.C. ___, ¶¶ 48, 51 (Jun. 17, 2022). But a direct cause of action under the North Carolina Constitution—known as a Corum claim—arises only where the Plaintiff has no other "adequate state remedy." Davis v. Town of S. Pines, 116 N.C. App. 663, 675, 449 S.E.2d 240, 247 (1994); Corum v. UNC, 413 S.E.2d 276, 289 (N.C. 1992).

Plaintiff concedes that the State Tort Claims Act permits prisoners to sue North Carolina in the Industrial Commission for ordinary negligence. (Doc. No. 66 at 31) (citing N.C. GEN. STAT. § 143-291). But the Industrial Commission lacks jurisdiction over allegations of reckless conduct. (Id.) (quoting Collins v. N.C. Parole Comm'n, 456 S.E.2d 333, 336 (N.C. Ct. App. 1995). The Supreme Court has long held that the subjective component of Eighth Amendment deliberate indifference claims is assessed according to a recklessness standard. Farmer, 511 U.S. at 836. Recognizing the recklessness standard applicable to deliberate indifference claims, the Middle District of North Carolina found in Jarvis v. Joyner that a § 1983 deliberate indifference claim would be jurisdictionally barred from the Industrial Commission. No. 1:14CV254, 2020 WL 956801, at *6 n.2 (M.D.N.C. Feb. 27, 2020). The same is true here.

### c. Disability (ADA and RA) Claims

Title II ADA and Section 504 RA claims—like those brought by Plaintiff—"can be combined for analytical purposes." Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty., 673 F.3d

---

F. Supp. 3d 521, 543 (N. D. Ohio 2020) (citing Kosilek, 774 F.3d at 91; Fields, 653 F.3d at 550, 552, 556; Rosati, 791 F.3d at 1040; Keohane v. Fl. Dep't of Corr. Sec'y, 952 F.3d. 1257, 1266–67 (11th Cir. 2020)); see also Nosworthy v. Beard, 87 F. Supp. 3d 1164, 1191 (N.D. Cal. 2015); Edmo, 358 F. Supp. 3d at 1127; Iglesias, 2021 WL 6112790 at *18–19, *27 (S.D. Ill. 2021).

333, 336 n.1 (4th Cir. 2012) (cleaned up). The ADA and RA prohibit public entities from discriminating against individuals with disabilities or excluding disabled persons from the benefits of services, programs, and activities to which they are otherwise entitled. Williams v. Kincaid, 45 F.4th 759 (4th Cir. 2022), cert. denied, 143 S. Ct. 2414 (2023). GD is a disability, and GD-afflicted persons are protected by the ADA. Id. at 766, 768.

There are three species of ADA claim: intentional discrimination, disparate impact, and failure to accommodate. Richardson, 52 F.4th at 619. Each species of ADA claim includes an element reducible to the disputed medical necessity question identified above. Consequently, the Court will deny summary judgment on Plaintiff's ADA claims.

To state an intentional discrimination claim, Plaintiff must show that "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 (4th Cir. 2016). Whether Plaintiff is being "denied" care or requesting treatment for which she is "unqualified" boils down to the predicate question of medical necessity.

To state a disparate impact claim, Plaintiff must (i) "identify the challenged [] practice or policy, (ii) demonstrate that the practice or policy had an adverse impact on the plaintiff with a disability, and (iii) demonstrate a causal relationship between the identified practice and the disparate impact." Williams, 296 F. Supp. 3d at 789. Whether the DAC's policy of subjecting GD-specific healthcare requests to the DTARC as opposed to the mainstream utilization review process—i.e., whether the ETMO policy constitutes a de facto ban on gender-affirming surgery—likewise remains a disputed question of material fact.

Finally, to state a failure to accommodate claim, Plaintiff must "propose a reasonable

modification to the challenged public program that will allow them the meaningful access they seek." Lamone, 813 F.3d at 507. Defendants contend Plaintiff fails to establish that gender-affirming surgery is necessary for Ms. Zayre-Brown to fully participate in prison life or services. Defendants thus restate a key factual dispute: the medical necessity of gender-affirming surgery.

## IV. CONCLUSION

Two disputes define this case. Although they preclude resolution on summary judgment, a full bench trial on these narrow questions is unnecessary. Instead, in the interest of judicial economy, the Court will hold an evidentiary hearing on February 20, 2024.[13] The Court identifies the questions presented for the hearing as follows:

1. Whether gender-affirming surgery is medically necessary for Ms. Zayre-Brown according to the WPATH Standards of Care.[14]
2. Whether the ETMO policy, specifically the DTARC and Dr. Campbell's role therein, amounts to a de facto ban on gender-affirming surgery for GD patients.

North Carolina recognizes gender dysphoria as a mental disorder. It says that it further recognizes that gender reassignment surgery can be medically necessary in some cases. In determining medical necessity, it cannot then set up a sham process where the answer is always no.

---

[13] This procedural approach, originally adopted by the District of Idaho, was blessed by the Ninth Circuit in Edmo.

[14] Mere disagreement between prison officials and an inmate—or an inmate's private doctor or medical expert—falls short of deliberate indifference. Hixson v. Moran, 1 F.4th 297 at 303; Jackson v. Lightsey, 775 F.3d at 174; Grimm, 972 F.3d at 596 n.2 (quoting Kosilek, 774 F.3d at 90). But the Eighth Amendment does not demand that courts defer to prison doctors or administrators, nor does it allow a single dissenting medical opinion to carry the day for Defendants. Edmo, 935 F.3d at 786; Kosilek, 774 F.3d at n.12. While "cases involving dueling medical experts will typically not support an Eighth Amendment claim," Fisher, 484 F. Supp. 3d at 541, a district court may discredit "the contrary opinions of the State's treating physician and medical experts" who "lacked expertise and incredibly applied . . . the WPATH Standards of Care." Edmo 935 F.3d at 787.

After the evidentiary hearing, the Court will permit both sides to renew their summary judgment motions. The Court will then assess Plaintiff's likelihood of success on the merits and resolve her request for injunctive relief.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the parties' cross motions for summary judgment, (Doc. Nos. 59, 62), are **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties **SHALL** meet and confer, and no later than February 13, 2024, file a consent motion stipulating to a procedure for the evidentiary hearing in this matter.

<u>The Clerk is respectfully instructed to set an evidentiary hearing in this matter for February 20, 2024.</u>

<u>The Clerk is further instructed to continue the trial in this matter to the April 2024 Term.</u>

Max O. Cogburn Jr
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

KANAUTICA ZAYRE-BROWN,

Plaintiff,

v.

THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*,

Defendants.

No. 3:22-cv-00191-MOC-DCK

**PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to the Court's order of February 2, 2024 (Doc. 92 at 1), Plaintiff respectfully renews her motion for partial summary judgment (Doc. 62). Specifically, Plaintiff asks the Court to (1) grant her summary judgment on her Eighth Amendment and ADA claims; (2) enter a permanent injunction requiring Defendants to immediately arrange for Plaintiff to undergo gender-affirming surgery and all other necessary care as prescribed by her treating clinicians at UNC Hospital; and (3) grant Plaintiff summary judgment as to Defendants' liability for damages under Article I, Section 27 of the North Carolina Constitution.

Respectfully submitted this 29th day of February, 2024.

*/s/ Daniel K. Siegel*
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397

Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
919-592-4630

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on February 29, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

/s/ Daniel K. Siegel
Daniel K. Siegel

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-191-MOC-DCK

| | | |
|---|---|---|
| **KANAUTICA ZAYRE-BROWN**, Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.**, Defendants. | ) | |

**THIS MATTER** is before the Court on the parties' renewed motions for summary judgment. (Doc. Nos. 102, 110).

The question presented by this case is whether North Carolina's process for assessing the medical necessity of gender-affirming surgery for inmates suffering from gender dysphoria violates the Eighth Amendment of the United States Constitution. North Carolina recognizes that gender dysphoria is a serious mental disorder. North Carolina also recognizes that gender-affirming surgery may sometimes be medically necessary to treat gender dysphoria. Thus, where a gender dysphoric prisoner requests gender-affirming surgery, the State must afford their request unbiased and individualized consideration. North Carolina failed to do so here.

## I. Background

Plaintiff, diagnosed with gender dysphoria ("GD") in 2010, is a prisoner in the custody of the North Carolina Department of Public Safety ("DPS"). The North Carolina Department of Adult Corrections ("DAC") subjects inmates' surgical requests to a "utilization review process" that evaluates whether the requested procedure is medically necessary. Under the DAC's Evaluation and Management of Transgender Offenders ("EMTO") policy, a specialized body

(the Division Transgender Accommodation Review Committee or "DTARC") reviews transgender inmates' medical requests. Thus, when inmates suffering from GD request treatment from the DAC, the DTARC serves as the utilization review authority with power to approve or deny requested treatment. The DTARC reviewed and denied Plaintiff's request for gender-affirming surgery to treat GD.

Dr. Arthur Campbell is a DTARC member and Chief Medical Officer of the DAC. He is one of only two medical doctors on the DTARC. Members of the DTARC without medical training deferred to Dr. Campbell's analysis of Plaintiff's medical records. There is evidence that even DTARC members with medical training deferred to Dr. Campbell's assessment of whether gender-affirming surgery was medically necessary in Plaintiff's case.

Before the DTARC reviewed Plaintiff's surgical request, Dr. Campbell authored a document titled "DTARC Medical Necessity Position Statement on Gender Reassignment Surgery." In the position statement, Dr. Campbell asserted that gender-affirming surgery is <u>never</u> medically necessary to treat GD. Further, Dr. Campbell requested the Committee adopt this view, which is in conflict with the State's position. The DTARC ultimately declined to adopt Dr. Campbell's position paper, but only <u>after</u> denying Plaintiff's surgical request.

In April 2022, after the DTARC denied Plaintiff's request for gender-affirming surgery, Plaintiff sued. Plaintiff alleges violations of the United States and North Carolina Constitutions and the Americans with Disabilities Act ("ADA"). In November 2023, the Court heard argument on the parties' cross motions for summary judgment. The Court denied both motions without prejudice in light of two genuine disputes of material fact. (Doc. No. 92). Rather than proceed directly to trial, the Court held an evidentiary hearing on those two questions, after which the Court permitted the parties to renew their summary judgment motions. (<u>Id.</u>).

The evidentiary hearing occurred on February 20, 2024. The parties renewed their summary judgment motions shortly thereafter. (Doc. Nos. 102, 110). Those motions are fully briefed, and this matter is now ripe for disposition.

**II. Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material only if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The movant for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). If the movant satisfies this burden, the burden shifts to the non-movant. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 538 n.3. The non-movant may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment but must instead present evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 324; Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

Ruling on a summary judgment motion, the Court must view the evidence and any inferences therefrom in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Faced with cross-motions for summary judgment, the Court evaluates each motion separately on its own merits using the standard set forth above. See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003); accord Local 2-1971 of Pace Int'l Union v. Cooper, 364 F. Supp. 2d 546, 554 (W.D.N.C. 2005).

**III. Discussion**

The Eighth Amendment requires that prison administrators give "individualized medical evaluation" to prisoners' requests for treatment. See Allard v. Gomez, 9 F. App'x 793, 785 (9th Cir. 2001); Fields v. Smith, 653 F.3d 550 (7th Cir. 2011); Keohane v. Fl. Dep't of Corr. Sec'y, 952 F.3d. 1257, 1266–67 (11th Cir. 2020)); Nosworthy v. Beard, 87 F. Supp. 3d 1164, 1191 (N.D. Cal. 2015). Thus, a categorical denial of a particular course of medically necessary treatment violates the Eighth Amendment. Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014); Gordon v. Schilling, 937 F.3d 348, 360–62 (4th Cir. 2019). Such a blanket ban is unconstitutional even if it is not explicit: "The majority of Courts hold that a blanket policy (or de facto ban) . . . which does not allow for the consideration of an inmate's particular medical needs, could violate the Eighth Amendment." Fisher v. Federal Bureau of Prisons, 484 F. Supp. 3d 521, 543 (N.D. Ohio 2020) (citing Kosilek v. Spencer, 774 F.3d 63, 91 (1st Cir. 2014); Fields, 653 F.3d at 550, 552, 556; Rosati v. Igbinoso, 791 F.3d 1037, 1040 (9th Cir. 2015); Keohane v. Fl. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266–67 (11th Cir. 2020)).

Plaintiff's Eighth Amendment claim boils down to a single question: is Dr. Campbell's testimony credible? Because Defendants are not entitled to trial by jury on Plaintiff's request for

equitable relief under the Eighth Amendment, the Court is authorized to assess Dr. Campbell's credibility at the summary judgment stage.

At the February 2024 evidentiary hearing before this Court, Dr. Campbell testified that, despite authoring a position paper to the contrary, the DTARC would under certain circumstances approve gender-affirming surgery as medically necessary for an inmate suffering from gender dysphoria. He gave no examples of what he might consider a medical necessity. Despite receiving more than thirty such requests, the DTARC has never approved gender-affirming surgery as medically necessary to treat gender dysphoria. Dr. Campbell has impressive qualifications and has served this country admirably for several decades. But considering Dr. Campbell's authorship of the position statement, other DTARC members' deference to his medical judgment, and the DTARC's track record of denying dysphoric prisoners' requests for gender-affirming surgery, the Court cannot credit Dr. Campbell's testimony.

A judge sharing Dr. Campbell's views would be expected to recuse themselves from this case. A juror holding those same views would be excused for cause. Even taking the evidence in the light most favorable to the Defendants, no reasonable factfinder could conclude that Defendants afforded Plaintiff's surgical request the "individualized medical evaluation" our Constitution requires. Allard, 9 F. App'x at 785; Schilling, 937 F.3d at 360–62.

The Court's decision remains value neutral as to Dr. Campbell's apparent views. This case is about process, not substance. While this case involves a transgender prisoner, it is not a case about transgender issues. It is certainly not a case about whether states should or should not be required to pay for transgender healthcare. Instead, this case is about whether states can permit prison officials' personal views to determine the medical care available to prisoners.

The Court will award injunctive relief on Plaintiff's Eighth Amendment claim. To be entitled to injunctive relief, Plaintiff must show (1) actual success on the merits; (2) irreparable injury; (3) the inadequacy of legal remedies; (4) that the "balance of hardships" favors injunction; and (5) that injunction would not disserve the public interest. See Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Plaintiff satisfies all five factors. The Court finds that Defendants' review of Plaintiff's accommodation request violated Plaintiff's Eighth Amendment rights insofar as Defendants denied Plaintiff the individualized medical evaluation the Eighth Amendment requires. And a violation of constitutional rights "constitutes irreparable harm for purposes of equitable jurisdiction." Ross v. Meese, 818 F.2d 1132, 1135 (4th Cir. 1987). Legal remedies are inadequate where, as here, the constitutional violation is ongoing. And the balance of the equities favors Plaintiff because a state is not harmed by injunctive relief preventing the state from acting unconstitutionally. Leaders of a Beautiful Struggle v. Baltimore Police Dep't, 2 F.4th 330, 346 (4th Cir. 2021). Finally, injunctive relief vindicating a party's constitutional rights is clearly in the public interest. Legend Night Club v. Miller, 637 F.3d 291, 303 (4th Cir. 2011).

The Court offers Defendants a choice between two means of remedying their Eighth Amendment violation. Defendants may either (1) give Plaintiff the surgery that Plaintiff's experts contend remains medically necessary; or (2) within 30 days from entry of this order form a new committee, subject to this Court's approval, to re-assess Plaintiff's accommodation request, that committee to contain at least two medical doctors with gender dysphoria expertise.

The Court makes no finding as to medical necessity. The Court finds only that the process by which Defendants assessed medical necessity was flawed. The Court will not, because of this finding, uncritically credit Plaintiff's medical necessity argument. At this stage,

taking the evidence in the light most favorable to either party, a reasonable jury could find for either party on the question of medical necessity.

If Defendants accommodate Plaintiff's surgical request, Plaintiff's Eighth Amendment claim will be moot. While Plaintiff's ADA and Corum claims may remain viable, Defendants are entitled to trial by jury on those damages claims. Thus, if Defendants accommodate Plaintiff's surgical request, and Plaintiff's ADA and Corum claims proceed to trial, then the question of medical necessity will be put to the jury.

If Defendants instead form a new committee to re-evaluate Plaintiff's surgical request, and that committee finds the surgery medically unnecessary, the Court will re-review Defendants' medical necessity determination on Plaintiff's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' renewed summary judgment motion (Doc. No. 110) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's renewed summary judgment motion (Doc. No. 102) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's motion is **DENIED** with respect to Plaintiff's ADA and Corum claims. Plaintiff's renewed summary judgment motion is further **DENIED** insofar as the Court declines to adopt Plaintiff's medical necessity argument. Plaintiff's motion is **GRANTED** insofar as the Court finds that Defendants' accommodation review process violated Plaintiff's Eighth Amendment rights.

## INJUNCTION

Upon their receipt of actual notice of this Order, DPS is hereby **ENJOINED** to, within 30 days, either

(1) Notify the Court of DPS' intention to accommodate Plaintiff's surgical request; or

(2) Form a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this Court for approval.

**SO ORDERED**.

Signed: April 16, 2024

Max O. Cogburn Jr
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendants. | **NOTICE OF APPEAL** |

Notice is hereby given that all Defendants hereby appeal to the United States Court of Appeals for the Fourth Circuit from the injunction order, DE-116, entered by this Court in this action on April 16, 2024.

This the 15th day of May 2024.


**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
NC Bar No. 43167
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendant***

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendants. | **DEFENDANTS' MOTION TO STAY PENDING APPEAL** |

Defendants, pursuant to Federal Rule of Appellate Procedure 8 and Local Rule 7.1, hereby move for a stay of this matter pending resolution of Defendants' noticed appeal, DE 117. For the reasons stated in the brief filed in support of this motion, Defendants respectfully request that the Court stay all proceedings and the effect of the injunction, pending resolution of the appeal.

On May 15, 2024, Defendants' counsel contacted Plaintiff's counsel to determine their position on this Motion. In response, Plaintiff's counsel reported that Plaintiff would consent to staying the trial for the time being, but would not consent to staying the equitable relief ordered by the Court.

WHEREFORE, Defendants respectfully request that the Court stay this matter, including any and all deadlines and the effect of the injunction, until such time as Defendants' appeal is fully resolved. In the event the Court denies this request, Defendants respectfully request an additional 14 days from the date of the denial to submit notice to the Court with the names of the people it proposes to sit on a newly formed committee.

This the 16th day of May 2024.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
NC Bar No. 43167
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendant***

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-191-MOC-DCK

| | | |
|---|---|---|
| **KANAUTICA ZAYRE-BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS, ET AL.,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Defendants' motion to stay. (Doc. No. 118). Plaintiff responded in opposition, and Defendants replied. (Doc. Nos. 122, 123). The Court will deny Defendants' motion.

## I. Background

Earlier this year, the Court denied without prejudice the parties' first cross motions for summary judgment. (Doc. No. 92). Thereafter, the Court set an evidentiary hearing limited to two questions. (Id. at 14). Following that hearing, the Court permitted both sides to renew their summary judgment motions. (Doc. Nos. 92, 108). The Court granted Plaintiff's renewed summary judgment motion in part and denied Defendants' renewed motion in its entirety. (Doc. No. 116). Specifically, the Court denied summary judgment with respect to Plaintiff's ADA and Corum claims but granted partial summary judgment on Plaintiff's Eighth Amendment claim. (Id.). Consequently, the Court entered a mandatory injunction requiring Defendants "to, within 30 days, either (1) Notify the Court of DPS' intention to accommodate Plaintiff's surgical request; or (2) Form a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this

Court for approval." (Id. at 7–8).

Rather than comply with the Court's injunction, Defendants appealed to the Fourth Circuit under 28 U.S.C. § 1292(a)(1). Pending resolution of their appeal, Defendants seek to stay proceedings in this Court. Plaintiff consents to the stay of her ADA and Corum claims but opposes Defendants' effort to stay the Court's injunction granting relief on Plaintiff's Eighth Amendment claim. Defendants have apparently taken no steps to comply with the Court's injunction.

## II. Legal Standard

Federal Rule of Civil Procedure 62(d) permits—but does not require—a court to stay enforcement of an injunction where the interlocutory order granting that injunction has been appealed. FED. R. CIV. P. 62(d). A Rule 62(d) stay "'is not a matter of right, even if irreparable injury might otherwise result.'" Nken v. Holder, 556 U.S. 418, 433–34 (2009) (quoting Virginian Ry. Co. v. U.S., 272 U.S. 658, 672 (1926)). Instead, staying enforcement of an injunction pending its appeal constitutes "an extraordinary remedy." Kadel v. Folwell, No. 1:19CV272, 2022 WL 11166311, at *1 (M.D.N.C. Oct. 19, 2022) (quoting Does 1-5 v. Cooper, No. 13CV711, 2016 WL 10587195, at *1 (M.D.N.C. Mar. 2, 2016)).

Thus, to grant or deny a Rule 62(d) injunction the Court must exercise its "judicial discretion." Virginian Ry. Co., 272 U.S. at 672; United States v. Texas, 144 S. Ct. 797, 798 (2024). "The propriety of [such stay's] issue is dependent upon the circumstances of the particular case." Virginian Ry. Co., 272 U.S. at 672–73; see Hilton v. Braunskill, 481 U.S. 770, 777 (1987) ("[T]he traditional stay factors contemplate individualized judgments in each case"). The legal principles guiding the Court's discretion "have been distilled into consideration of four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' Hilton, [481 U.S. at 776.] There is substantial overlap between these and the factors governing preliminary injunctions, see Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 [(2008)]." Nken, 556 U.S. at 434. "The first two factors . . . are the most critical. It is not enough that the chance of success on the merits be 'better than negligible.' Sofinet v. INS, 188 F.3d 703, 707 (C.A.7 1999) (internal quotation marks omitted). . . . By the same token, simply showing some 'possibility of irreparable injury,' Abbassi v. INS, 143 F.3d 513, 514 (C.A.9 1998), fails to satisfy the second factor." Nken, 556 U.S. at 434–35.

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken v. Holder, 556 U.S. 418, 433–34 (2009).

## III. Discussion

### a. Jurisdictional Questions

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (emphasis added); see Coinbase, Inc. v. Bielski, 599 U.S. 736, 740 (2023) (quoting same). Defendants contend that their appeal "implicates all aspects of the case" and thus that "this Court lacks jurisdiction . . . to proceed with or enforce the injunction." (Doc. No. 119 at 3). That is wrong.

First, Defendants contend that their appeal of the injunction (which Defendants continue to defy) implicates the entire case because if Defendants voluntarily provide the surgery Plaintiff seeks, they "would lose the right to prevail on the merits of their appeal in a meaningful way." (Doc. No. 119 at 5). But even accepting Defendants' premise, Defendants have already indicated that they plan to pursue the second option afforded by the injunction—that is, to form a new

committee and re-assess Plaintiff's surgical request. See (Doc. No. 118). Therefore, Defendants' contention that their appeal implicates the entire case because it would require Defendants to provide the surgery Plaintiff requests is meritless.

Defendants next contend that their appeal implicates the entire case because "proceeding with option two [constituting a new committee to re-assess Plaintiff's request] would fundamentally alter the factual record underlying Plaintiff's claims." (Doc. No. 119 at 5). Specifically, Defendants contend that "if forced to move forward with injunctive relief now, Defendants will lose their ability to have the decision they made, and the Court's deliberate indifference finding in this context, meaningfully reviewed on appeal." (Id.). But this argument, like Defendants' first, relies on a non-sequitur. It is simply untrue that constituting a new committee "would create a new record . . . and eliminate Defendants' ability to rely on the evidence underlying the DTARC's determination." (Id. at 7). Instead, constituting a new committee would merely supplement the existing record. As Plaintiff notes, Defendants have already stated—and rigorously defended—their justification for denying Plaintiff's surgical request. (Doc. No. 122 at 7). Requiring them to do so for a second time—as the Court will—does not preclude Defendants from defending their original conclusion on appeal.

Third, Defendants contend that this Court would be without jurisdiction to approve a new committee or review its decision while Defendants' appeal remains pending. (Doc. No. 123 at 2). But Defendants conflate enforcing the injunction with expanding it. While the Court surely lacks jurisdiction to expand the injunction pending its appeal, the Court "does retain jurisdiction to enforce" it. Springs v. Ally Fin. Inc., 657 F. App'x 148, 151 (4th Cir. 2016) (quoting City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380, 394 (6th Cir. 2007)); see also Nat'l Grange v. California State Grange, 182 F. Supp. 1065, 1074 (E.D. Cal. 2016) (citing

Sekaquaptewa v. MacDonald, 544 F.2d 396, 406 (9th Cir. 1976)); Greater Potater Harborplace, Inc. v. Jenkins, 935 F.2d 267 (4th Cir. 1991) ("[A] court can enforce a judgment but, while the appeal is pending, it can take no action that expands the judgment or otherwise alters it."). That Defendants aim to improperly stay enforcement of the injunction—in contrast to an appropriate stay of its expansion—is clear from Defendants' pleadings. For example, Defendants' motion to stay "respectfully request[s] that the Court stay . . . the effect of the injunction[] pending resolution of the appeal." (Doc. No. 118 at 1).

Defendants contend that the Court's injunction "cannot be used to require surgery without further motion, judicial proceedings, new findings, and an expanded order." (Doc. No. 123 at 4). Perhaps. But that is not the issue before the Court. Instead, the issue is whether requiring Defendants to assemble a new committee and meaningfully review Plaintiff's surgical request constitutes impermissible expansion of the injunction under appeal. It does not. For that reason, the Court finds that it retains jurisdiction to enforce its injunction during the pendency of Defendants' appeal.

**b. The Nken Factors**

In the alternative to their jurisdictional argument (i.e., that the Court must stay the injunction), Defendants contend that the Court should stay these proceedings on a discretionary basis. Defendant's motion thus requires the Court to consider the four Nken factors. United States v. Texas, 144 S. Ct. 797, 798 (2024). Those four factors are (1) the stay applicant's likelihood of success on the merits; (2) the probability the applicant will be irreparably injured absent stay; (3) whether a stay would substantially injure other interested parties; and (4) the public interest. Nken, 556 U.S. at 434; see also Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970). Of these four factors, the applicant's likelihood of success on appeal and the probability of irreparable injury

absent stay are most important. Id. at 434–35. But a mere chance of success on appeal is insufficient to justify a stay. Nken, 556 U.S. at 434–35 (quoting Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999)) ("It is not enough that the chance of success on the merits be 'better than negligible.'"). Likewise, the possibility of irreparable injury does not satisfy the second Nken factor. Nken, 556 U.S. at 434–35 (quoting Abbassi v. INS, 143 F.3d 513, 514 (9th Cir. 1998)).

It bears noting that—as the Supreme Court recognized in Nken—the factors this Court considers in assessing a motion to stay share "substantial overlap" with the factors this Court considered in granting Plaintiff's injunction. See Nken, 556 U.S. at 434 (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008)).

### i. Likelihood of Success on the Merits

Defendant-Appellants claim they "will likely prevail on the merits of the appeal." (Doc. No. 119 at 8). It should come as no surprise that this Court—which ordered the injunctive relief Defendants now appeal—disagrees.

Defendants argue the Court's injunction is likely to be vacated by the Fourth Circuit because the Court made no medical necessity findings. (Doc. No. 119 at 8–9). Defendants are correct that Court eschewed the question of medical necessity. Instead, the Court found that Plaintiff satisfied the "actual success on the merits" prong of the injunction test by showing that Defendants violated Plaintiff's Eighth Amendment freedom from cruel and unusual punishment by denying her "the individualized medical evaluation that the Eighth Amendment requires." (Doc. No. 116 at 6) (citing Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); Ross v. Meese, 818 F.2d 1132, 1135 (4th Cir. 1987)).

In essence, Defendants argue that because the Court did not find that they denied

"medically necessary" care, Defendants cannot have violated the Eighth Amendment. Not so. Of course, denying inmates medically necessary healthcare does violate the Eighth Amendment. But it does not follow that denial of medically necessary healthcare is the only way Defendants could fall afoul of the deliberate indifference standard. Instead, correctional authorities also violate the Eighth Amendment where they fail to conduct a meaningful assessment of medical necessity but deny potentially necessary healthcare anyways. See Edmo v. Corizon, Inc., 935 F.3d 757, 800 n.22 (9th Cir. 2019). This is a second, distinct, theory of Eighth Amendment violation, and the one the Court found Defendants liable for here.

It is settled law that a de facto ban precluding "consideration of an inmate's particular medical needs" violates the Eighth Amendment. Fisher v. Federal Bureau of Prisons, 484 F. Supp. 3d 521, 543 (N.D. Ohio 2020) (citing Kosilek v. Spencer, 774 F.3d 63, 91 (1st Cir. 2014); Fields, 653 F.3d at 550, 552, 556; Rosati v. Igbinoso, 791 F.3d 1037, 1040 (9th Cir. 2015); Keohane v. Fl. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266–67 (11th Cir. 2020)). This Court found that Defendants maintained a de facto ban on gender-affirming surgery, and therefore refused to consider Plaintiff's individual medical needs—i.e., whether gender-affirming surgery was medically necessary for her specifically—in denying her surgical request. Defendants' categorical denial of a particular course of potentially medically necessary treatment violated the Eighth Amendment. See (Doc. No. 116 at 4) (citing Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014); Gordon v. Schilling, 937 F.3d 348, 360–62 (4th Cir. 2019)).

Defendants' administration of a de facto ban on gender-affirming surgery left this Court without a credible record of Defendants' rationale for concluding that such surgery was not medically necessary for this Plaintiff on these facts. The Court was, in effect, left without a medical necessity finding to review. Rather than uncritically credit Plaintiff's medical necessity claim, the

Court instead required Defendants to reconsider (in truth, meaningfully consider for the first time) whether gender-affirming surgery is medically necessary for this particular inmate. The Court's injunction merely requires Defendants to satisfy their Eighth Amendment duty. Thus, the Court concludes, Defendants are unlikely to prevail on the merits of their appeal.

The first Nken factor thus counsels against staying these proceedings.

### ii. Probability of Harm to Defendants Absent Stay

Defendants contend that absent stay they would suffer

> the risk of inconsistent rulings; the loss of the ability to have the decision they made, and the Court's deliberate indifference finding in this context, meaningfully reviewed on appeal; and the inability to challenge Plaintiff's remaining claims on medical necessity grounds, despite that issue being at the heart of all the claims.

(Doc. No. 119 at 8). Defendants further claim that "[t]he bulk of these harms would be irreparable." (Id.).

This argument is a version of Defendants' contention—rejected supra—that constituting a new committee to re-assess Plaintiff's surgical request "would fundamentally alter the factual record underlying Plaintiff's claims" such that "Defendants will lose their ability to have the decision they made, and the Court's deliberate indifference finding in this context, meaningfully reviewed on appeal." (Doc. No. 119 at 5). The Court rejects this argument for the same reason as before: convening a new committee would only supplement the existing record and would not prevent Defendants from defending the first committee's conclusion before the Fourth Circuit. In any case, Defendants retain the ability to secure meaningful appellate review (including on medical necessity grounds) of a hypothetical subsequent injunction ordering Defendants to provide gender-affirming surgery, including by moving to stay that second judgment on both jurisdictional (expansion of already-appealed injunction) and discretionary grounds.

Finally, neither the potential costs of re-constituting the DTARC, Long v. Robinson, 432 F.2d 977, 980 (4th Cir. 1970) (quoting Va. Petroleum Jobbers Ass'n v. Federal Power Commission, 259 F.2d 921, 925 (D.C. Cir. 1958)), nor the Court's "distort[ion] of Defendants' decision-making process," Kadel v. Folwell, 1:19CV272, 2022 WL 11166311, at *5 (M.D.N.C. Oct. 19, 2022), constitute irreparable harm sufficient to justify a stay. The second Nken factor thus favors denying Defendants' motion.

**iii. Potential Injury to Plaintiff**

Defendants next argue that a stay would not substantially injure Plaintiff because "a stay merely maintains the status quo wherein the relief she seeks would only follow from success on the merits of her legal claims." (Doc. No. 119 at 8). But Defendants do not—and cannot—show that without a stay, Plaintiff would receive the relief she seeks absent success on the merits of her legal claims. First, the Court's injunction was predicated on Plaintiff's showing of actual success on the merits of her Eighth Amendment claim. Second, the Court's injunction does not require Defendants to provide Plaintiff the relief she seeks, but only to assemble a new tribunal capable of fairly assessing whether gender-affirming surgery is medically necessary in Plaintiff's case. Thus, whether Plaintiff will receive gender-affirming surgery continues to depend on the merits of her legal claim.

Further, Plaintiff convincingly shows that the balance of the harms favors denying Defendants' motion to stay. Applying the Winter test, which shares "substantial overlap" with the Nken factors, this Court's order granting Plaintiff equitable relief concluded that "the balance of the equities favors Plaintiff because a state is not harmed by injunctive relief preventing the state from acting unconstitutionally." (Doc. No. 116 at 6) (citing Leaders of a Beautiful Struggle v. Baltimore Police Dep't, 2 F.4th 330, 346 (4th Cir. 2021)). The Court finds no reason to abandon

that conclusion here. The balance of harms thus favors denying Defendants' motion to stay.

Finally, the Court notes that Plaintiff's projected release date is November 4, 2024. If the Court were to stay these proceedings, and Plaintiff were released before the Fourth Circuit rules on Defendants' appeal, the stay would effectively moot the injunctive relief to which Plaintiff is entitled. Insofar as a stay would allow Defendants to "run out the clock" on this Court's injunction, the stay creates a high probability of serious injury to Plaintiff. For this reason, as well, the balance of harms counsels against granting Defendants' motion.

**iv. The Public Interest**

Defendants first contend that the public interest favors staying these proceedings because "the public has an interest in ensuring the efficient use of taxpayer dollars." (Doc. No. 119 at 9). To comply with this Court's injunction, Defendants suggest they "will need to spend tens of thousands of dollars to hire new committee members to re-evaluate Plaintiff's request," funds that would be "wasted" if Defendants prevail on appeal. (Id.).

First, the Court reiterates that Defendants are unlikely to prevail on appeal. Consequently, funds expended to comply with this Court's injunction by re-evaluating Plaintiff's surgical request are unlikely to be "wasted." Second, the Court notes that any "[in]efficient use of taxpayer dollars" (Doc. No. 119 at 9) is chargeable to Defendants themselves: it was Defendants who maintained a de facto policy refusing to provide gender-affirming surgery, a "sham process where the answer is always no." (Doc. No. 92 at 14). Third, Courts routinely hold that fiscal responsibility does not outweigh the public interest in protecting Constitutional rights or preserving public health. See Pashby v. Delia, 709 F.3d 307, 331 (4th Cir. 2013); Legend Night Club v. Miller, 637 F.3d 291, 303 (4th Cir. 2011); Leaders of a Beautiful Struggle, 2 F.4th at 346.

Next, Defendants suggest that a stay is justified because the public interest is served by

"having novel legal claims fully reviewed and considered through available appellate processes." (Doc. No. 119 at 9). More specifically, Defendants contend that the Court should stay these proceedings because "[t]he appeal may provide significant guidance on how to proceed with this case, including on the determination of medical necessity." (Id. at 6). Maybe so. But, as Plaintiff notes, the legal grounds on which this Court found in favor of Plaintiff's Eighth Amendment claim are not especially novel. It is well-established that a "blanket, categorical denial of medically indicated surgery . . . is the paradigm of deliberate indifference" prohibited by the Eighth Amendment. Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014); see Gordon v. Schilling, 937 F.3d 348 (4th Cir. 2019). The truly novel aspect of Plaintiff's claim is that gender-affirming surgery is medically necessary on these facts. Even if the Circuit concludes that Plaintiff's medical necessity argument fails—an issue not directly presented by Defendants' appeal, since the Court's injunction does not rely on a medical necessity finding—this Court's finding that Defendants violated Plaintiff's Eighth Amendment rights by failing to individually consider her surgical request could still stand.

## IV. Conclusion

For the foregoing reasons, the Court finds that it retains jurisdiction to enforce the injunction while it remains on appeal, and that the factors articulated by the Fourth Circuit and Supreme Court do not favor Defendants' motion to stay. Defendants "bear[] the burden of showing that the circumstances justify" a stay. Defendants have failed to carry that burden here, so their motion will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' motion to stay, (Doc. No. 118), is hereby **DENIED**. Defendants remain free to move for a stay before the Fourth Circuit under

FED. R. APP. P. 8(a)(2).

**IT IS, FURTHER, ORDERED** that Defendants **SHALL**, within 14 days of this Order's entry, form a new committee containing at least two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request, and submit a roster of the reconstituted committee to this Court for approval.

**SO ORDERED**.

Signed: July 12, 2024

Max O. Cogburn Jr
United States District Judge

FILED: July 25, 2024

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 24-6477
(3:22-cv-00191-MOC-DCK)

---

KANAUTICA ZAYRE-BROWN

Plaintiff - Appellee

v.

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS; TODD E. ISHEE, in his official capacity as Secretary of the North Carolina Department of Adult Correction; GARY JUNKER, in his official capacity as Deputy Secretary of the North Carolina Department of Adult Correction; ARTHUR CAMPBELL, in his official capacity as Medical Director III, the North Carolina Department of Adult Correction; BRANDESHAWN HARRIS, in her official capacity as Chief Deputy Secretary, the North Carolina Department of Adult Correction; TERRI CATLETT, in her official capacity as Director of Healthcare Administration, Division of Prisons, the North Carolina Department of Public Safety; JONATHAN PEIPER, in his official capacity as Human Services Director the North Carolina Department of Adult Correction; BRIAN SHEITMAN, Medical Director III, the North Carolina Department of Adult Correction; VALERIE LANGLEY, in her official capacity as Nurse Director the North Carolina Department of Adult Correction; ABHAY AGARWAL, Medical Director II, the North Carolina Department of Adult Correction; SARAH COBB, in her official capacity as Director of Rehabilitative Services, Division of Prisons, the North Carolina Department of Adult Correction; JOSH PANTER, in his official capacity as Correctional Administrator the North Carolina Department of Adult Correction; CHARLOTTE WILLIAMS, in her official capacity as a Program Manager, the North Carolina Department of Adult Correction; ELTON AMOS, in his official

capacity as Medical Director II, the North Carolina Department of Adult Correction

Defendants - Appellants

---

ORDER

---

Upon consideration of the submissions relative to appellants' motion to stay the proceeding in the district court and for a temporary administrative stay, the court denies the motion to stay the proceeding.

Judge Gregory and Judge Thacker voted to deny the motion. Judge Rushing voted to grant the motion.

For the Court

/s/ Nwamaka Anowi, Clerk

RUSHING, Circuit Judge, dissenting:

The North Carolina Department of Adult Correction denied a transgender inmate's request for sex-change surgery—here, a vulvoplasty[1]—after the Department's Transgender Accommodation Review Committee determined that surgery was not medically necessary. The inmate sued the Department, alleging that it had violated the Eighth Amendment's ban on cruel and unusual punishment by denying the inmate "medically necessary" care. Dist. Ct. Dkt. ECF 1, at 2, 38 (Complaint). Without making any finding about the likely medical necessity of this surgery, the district court—disturbed by one of the committee doctor's views on the medical efficacy of transgender surgery—imposed a mandatory preliminary injunction on the Department. *Zayre-Brown v. N.C. Dep't of Pub. Safety* (*Zayre-Brown II*), No. 3:22-CV-191-MOC-DCK, 2024 WL 1641795, at *3–4 (W.D.N.C. Apr. 16, 2024).

That injunction requires the Department—by this Friday, July 26—either (1) to agree to perform the vulvoplasty the committee determined was medically unnecessary, or (2) to form a new committee of "gender dysphoria expert[s]," who must be approved by the district court for correct views on this medical issue and who will reevaluate the inmate's request. *Id.* at *4. The Department is appealing the preliminary injunction to our Court, arguing it should never have been imposed. In the interim, the Department asked our Court to stay the injunction pending appeal. That way, the Department is not forced to perform a medically unnecessary surgery (thereby mooting the Eighth Amendment claim)

[1] A "vulvoplasty," in the words of the inmate's expert witness, entails the "removal of the phallus and the creation of typical, female-appearing [outer] genitals" in its place. Dist. Ct. Dkt. ECF 101, at 112.

or to create a taxpayer-funded committee of gender-dysphoria experts selected by the district court who will redo the prison committee's work and reach a new conclusion—all before this Court has a chance to decide the lawfulness of the injunctive order in the first place.

But today, a panel of this Court denies a stay, so that by the time our Court resolves the Department's appeal, our decision won't matter. Indeed, the panel denies even a temporary administrative stay, which would have given this Court some time to consider whether to grant the stay pending appeal. The panel's decision cannot be reconciled with the governing legal standard.

First—most importantly and most obviously—the Department is "likely to succeed on the merits" of its appeal challenging this mandatory preliminary injunction. *Ohio v. EPA*, 144 S. Ct. 2040, 2052 (2024). The district court's errors leap off the page. To begin, the court made *no finding* that the inmate's requested surgery was medically necessary and yet concluded the Department violated the Eighth Amendment by denying it. Even the out-of-circuit case the district court relied upon makes this error clear: "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances"—*i.e.*, that the official denied "medically necessary" treatment—"and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786–792 (9th Cir. 2019) (per curiam) (internal quotation marks and brackets omitted); *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("[T]he essential test is one of medical necessity."). The district court expressly made "no finding as to medical necessity"

because "a reasonable jury could find for either party on the question of medical necessity." *Zayre-Brown II*, 2024 WL 1641795, at *4. When pressed, the district court doubled down, stating that "Defendants are correct that [the] Court eschewed the question of medical necessity." *Zayre-Brown v. N.C. Dep't of Adult Corr.* (*Zayre-Brown III*), No. 3:22-CV-191-MOC-DCK, 2024 WL 3404620, at *3 (W.D.N.C. July 12, 2024). Without finding a likelihood of success on the medical necessity question, the district court could not find "actual success on the merits" of the inmate's deliberate indifference claim, as the court purported to do. *Zayre-Brown* II, 2024 WL 1641795, at *3.

Nor did the district court find, as our deliberate indifference precedent requires, that committee members likely had "actual *subjective* knowledge of both the inmate's serious medical condition and the excessive risk posed by [their] action or inaction," *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (emphasis added), such that their decision was "so grossly incompetent, inadequate, or excessive as to shock the conscience," *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) (internal quotation marks omitted). Rather, the uncontradicted testimony in the record reflects that, after much evaluation, the committee determined that the inmate was benefiting from the current treatment (of hormone therapy, psychological counseling, and women's housing and personal items) and a vulvoplasty was not medically necessary to treat the inmate's current condition. The inmate's expert disagreed, but "a disagreement among reasonable medical professionals is not sufficient to

sustain a deliberate indifference claim," which requires *subjective* knowledge and disregard of an excessive risk to the inmate's health or safety.[2] *Hixson*, 1 F.4th at 303.

Instead of following these legal requirements, the district court claimed the Department violated the Eighth Amendment in its "process, not substance." *Zayre-Brown II*, 2024 WL 1641795, at *3. Without any determination that the Department denied the inmate adequate medical care, the district court apparently concluded that the Department's decisionmaking process itself was cruel and unusual punishment. *See id.* at *4 ("The Court finds only that the process by which Defendants assessed medical necessity was flawed. . . . Defendants' accommodation review process violated Plaintiff's Eighth Amendment rights."). That is, to say the least, difficult to square with the Constitution.

---

[2] The district court relied on the World Professional Association for Transgender Health (WPATH) Standards. *Zayre-Brown v. N.C. Dep't of Pub. Safety* (*Zayre-Brown I*), No. 3:22-CV-191-MOC-DCK, 2024 WL 410243, at *5 (W.D.N.C. Feb. 2, 2024). This Court has declined to "offer an opinion one way or the other" regarding the "the necessity of sex reassignment surgery" in connection with the "WPATH Standards of Care" for "Eighth Amendment deliberate-indifference" claims, noting that other circuits have rejected such medical necessity arguments. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 595 n.2 (4th Cir.), *as amended* (Aug. 28, 2020); *cf. De'lonta v. Johnson*, 708 F.3d 520, 522–523, 526 (4th Cir. 2013). In any event, the WPATH Standards appear to be a red herring because they do not define medical necessity in this context. The prison clinicians explained that the WPATH Standards are "absolutely used" in their surgical intervention evaluation process, but that WPATH does not provide an "operational definition for medical necessity that we, at the primary-care level as providers, can utilize." Dist. Ct. Dkt. ECF 101, at 61–62. The inmate's expert witness, "one of the authors" of the WPATH Standards, testified to the same, explaining that "[m]eeting [the eligibility] criteria does not mean that surgery is medically necessary" and that the medical necessity determination must be "undertaken by a qualified mental-health professional" on a "case-by-case basis." Dist. Ct. Dkt. ECF 101, at 103, 106–107, 111. So even if one accepted the district court's highly suspect decision to incorporate the WPATH Standards into the Eighth Amendment as the constitutional minima, *see Zayre-Brown I*, 2024 WL 410243, at *5–6, that would make no difference. The WPATH Standards require "case-by-case" evaluations by mental health professionals.

*See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) ("[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." (internal quotation marks and emphasis omitted)). And it is based on a clearly erroneous assessment of the record. The district court asserted that, despite its policies to the contrary, the Department has a de facto ban on transgender surgeries. But the uncontradicted evidence amply demonstrates that the inmate here received an individualized evaluation.[3] For all these reasons, the Department is likely to succeed on the merits of its appeal challenging the mandatory injunction.

Second, the Department will "suffer irreparable injury without a stay" and the "public interest lies" in granting one. *Ohio*, 144 S. Ct. at 2052; *see Nken v. Holder*, 556

---

[3] *See* Dist. Ct. Dkt. ECF 61, Ex. 27 (committee report detailing consideration of inmate's specific circumstances, even examining "recent progress notes from supportive counseling and therapy sessions"); Dist. Ct. Dkt. ECF 101, at 11–14, 22, 45–50, 55–60, 76–80, 83–84, 88–90 (uncontradicted testimony of three clinicians on the committee that the Department's individualized consideration policy is de jure and de facto and that they each conducted independent individualized reviews of the inmate's mental health); *see also Zayre-Brown I*, 2024 WL 410243, at *2 (describing how the committee consulted with the UNC Transgender Health Program and referred the inmate for evaluations by medical professionals in that program).

At bottom, the district court's analysis turned on the views of one committee member, who had expressed skepticism in a draft policy document about the medical necessity of sex-change surgery. *Zayre-Brown II*, 2024 WL 1641795, at *3. The district court was upset that the doctor's "personal views" on this medical subject might have affected the process and so ordered the process redone with right-thinking doctors. *Id.* But the Eighth Amendment prohibits deliberate indifference, not differing medical opinions about the efficacy of surgery. *See Hixson*, 1 F.4th at 303. The committee could have been biased, negligent, and even guilty of malpractice without violating the Eighth Amendment. *See Jackson*, 775 F.3d at 178 (4th Cir. 2014) (noting that deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference").

U.S. 418, 435 (2009) (explaining that these factors "merge" here). Intruding on the Department's prerogatives—whether by requiring it to provide potentially unnecessary sex-change surgery against the judgment of prison medical professionals or by requiring it to create a new committee whose members are to be vetted by the district court for correct views on transgender surgery—constitutes irreparable injury and is contrary to the public interest. *See O'Dell v. Netherland*, 112 F.3d 773, 777 (4th Cir. 1997) (staying injunction pending appeal and explaining "it is not for the federal courts to so micromanage the Nation's prisons"); *see also Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994) ("We immediately stayed the district court's order . . . of [mandatory] preliminary injunction," and explained it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." (internal quotation marks omitted)). In addition, the Department is unlikely to recoup the taxpayer-funded expenditures the district court is imposing, whether in paying for the surgery or for hiring the reconstituted panel. *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 218 (4th Cir. 2019) (holding that when "monetary damages will be unavailable to remedy financial losses when litigation ends, there is no bar to treating those losses as irreparable injury").

Finally, a stay pending appeal will not "substantially injure" the inmate. *Ohio*, 144 S. Ct. at 2052. There has not yet been a finding that this surgery is necessary for the inmate, much less urgently so; indeed, the injunction does not even require the Department to provide surgery, so long as it forms a reconstituted committee that satisfies the district court. Staying this "disfavored" form of injunction—one that grants relief before trial—

would simply return the parties to the status quo while we decide the appeal. *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024) (internal quotation marks omitted).

Consideration of these longstanding traditional factors requires a stay pending appeal. Yet the panel refuses to issue one. It refuses even though denying a stay means that, by the time our Court issues a decision on the lawfulness of the district court's order, our ruling will be of no effect. But perhaps that's the point.

I respectfully dissent.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendants. | **DEFENDANTS' NOTICE IN RESPONSE TO THE COURT'S INJUNCTION** |

On April 16, 2024, the Court entered an order granting, in part, summary judgment in favor of Plaintiff and denying Defendants' motion for summary judgment. DE 116. In that order, the Court entered an injunction directing Defendants to either notify the Court of their intention to accommodate Plaintiff's requested surgery or to form a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this Court for approval. DE 116 at 7-8. Immediately thereafter, Defendants began the process of trying to identify medical doctors who would be willing and able to participate in the process mandated by the Court. However, Defendants filed a notice of appeal on May 15, 2024, and sought a stay on May 16, 2024. DE 117, DE 118. In the motion for a stay, Defendants requested that if this Court denied the motion for a stay that it provide them an additional 14 days to submit notice to the Court with the names of the people it proposes to sit on a newly formed committee. DE 118 at 1.

On July 12, 2024, the Court denied Defendants' motion for a stay and ordered Defendants to form a new committee containing at least two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee

to this Court for approval, within 14 days. DE 126 at 12. On July 17, 2024, Defendants moved for a stay in the Fourth Circuit Court of Appeals, which was denied on July 25, 2024. DE 127. Therefore, as required by the Court, Defendants propose the following committee members and process for this reassessment.

**A. Defendants' Proposed Committee Members**

**Ingrid Renberg, MD, MPH, MSL** – Dr. Renberg is WPATH certified and is a psychiatrist licensed in Pennsylvania. Dr. Renberg currently serves as the Statewide Psychiatric Medical Director for Centurion in Pennsylvania, which provides healthcare services to the state prisons in Pennsylvania. She earned her Master of Public Health and Medical Degree from St. George's University. Thereafter, she completed a Psychiatry Residency at the University of Connecticut Health Center, followed by a Child Psychiatry Fellowship at Allegheny General Hospital and a Forensic Psychiatry Fellowship at the Western Psychiatric Institute and Clinic in Pittsburgh, Pennsylvania. Dr. Renberg has extensive experience evaluating and treating patients with gender dysphoria. She also evaluates requests for gender affirming surgery for the Pennsylvania state prison system. A copy of Dr. Renberg's CV is attached hereto as Ex. A. Dr. Renberg's hourly rate for this review is $500.

**Eugene F. Simopoulos, MD** – Dr. Simopoulos is a board certified general and forensic psychiatrist who is licensed in Virginia. He currently serves as the Forensic Medical Director of the Western State Hospital in Staunton, Virginia. Dr. Simopoulos earned a Medical Degree from the George Washington University School of Medicine and Health Sciences, where he also completed a Psychiatry Residency. Additionally, Dr. Simopoulos completed a Fellowship in Forensic Psychiatry at the University of Virginia Department of Psychiatry and Neurobehavioral Sciences. Dr. Simopoulos is familiar with WPATH and its published standards. His professional

experience related to gender dysphoria includes presenting Grand Rounds on *Principles in the Evaluation and Treatment of the Transgender Patient* and monitoring the needs of the transgender inmate population on the Transgender Advisory Committee for the D.C. Department of Corrections. Dr. Simopoulos has also published articles and given lectures related to providing care to transgender patients in the carceral setting. In addition, Dr. Simopoulos has extensive experience evaluating and treating patients with gender dysphoria in jails and prisons. A copy of Dr. Simopoulos's CV is attached hereto as Ex. B. Dr. Simopoulos's hourly rate for this review is $400.

**B. Proposed Process For Reassessing Plaintiff's Surgery Request.**

As required by the Court, Defendants would ask this new committee to review Plaintiff's medical records and provide findings as to whether Plaintiff's requested vulvoplasty is medically necessary. To accomplish this review and determination, Defendants propose providing to each of these committee members the following materials:

- The medical records found at Defendants' Exhibit 8 entered into evidence during the February 20, 2024, hearing.
- Plaintiff's entire health chart from her admission into the Department's custody in October 2017 through the present.
- The results of the psychometric assessments performed by Plaintiff's expert, Randi C. Ettner, Ph.D., and Defendants' expert, Sara Boyd, Ph.D.

Defendants would ask each committee member to conduct an independent record review to assess whether the requested surgery is medically necessary. Following this record review, the committee members would meet virtually to discuss their conclusions. If a consensus is reached, then the committee would submit a report that articulates their consensus, to include an explanation

of the formulation of medical necessity applied and the bases for reaching their consensus. If there is no consensus, then each committee member would submit their own report that articulates their own conclusions, to include an explanation of the formulation of medical necessity applied and the bases for reaching their conclusions.

With respect to timing, Defendants respectfully note that each of the proposed committee members has substantial professional responsibilities and require sufficient time to conduct a review and prepare a report. Therefore, absent any unforeseen developments, Defendants propose that the record review and the committee meeting occur within 30 days of the entry of an order approving the new committee and that the consensus report or individual reports be submitted to Defendants' counsel within 45 days of the entry of an order approving the new committee.

This the 26th day of July 2024.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
NC Bar No. 43167
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendants***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*,<br><br>Defendants. | No. 3:22-cv-00191-MOC-DCK |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' PROPOSAL FOR COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION**

In response to the Court's permanent injunction, Defendants have proposed two candidates—Drs. Ingrid Renberg and Eugene Simopoulos—to reevaluate Plaintiff for gender-affirming surgery. (Doc. 128.) As discussed below, Defendants have not fully complied with the Court's order and do not appear to be taking their obligations in this matter seriously. Instead, they appear to be trying to "run out the clock" on this case to avoid the possibility of having to provide Plaintiff surgery.

Therefore, Plaintiff respectfully urges the Court to adjudicate whether Plaintiff has proven the medical necessity of surgery by a preponderance of the evidence. The Court has already received extensive briefing and held an evidentiary hearing on that issue. If any disputed issues of fact remain, the Court—which is the trier of fact on Plaintiff's Eighth Amendment claim seeking only equitable relief—can weigh the evidence, and only the Court may enter injunctive relief. (Doc. 116 at 4-5.) The

pending appeal before the Fourth Circuit concerns a different basis for liability—Defendants' *de facto* ban on surgery—that would not prevent this Court from addressing medical necessity and issuing a new injunction based on its findings. In sum, the issue is properly before the Court and ripe for determination.

If the Court permits Defendants to go forward with their proposed evaluators, Plaintiff respectfully submits the following objections:

*First*, Plaintiff objects to Renberg and Simopoulos's lack of demonstrated qualifications. The Court ordered Defendants to "[f]orm a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this Court for approval." (Doc. 116 at 8.) It is unclear from Defendants' filing whether Renberg and Simopoulos have the required "expertise", or if they are like Defendants themselves—prison officials who are generally familiar with gender dysphoria but who do not have specialized training or experience treating patients with that condition. It is also unclear whether either doctor has previously evaluated patients for gender-affirming surgery, and if they have, how often, what criteria they used, and if unlike Defendants, they have ever recommended surgery.

Defendants' counsel state that Renberg has performed such evaluations[1]—they do not state the same for Simopoulos (Doc. 128 at 2)—but the Court and Plaintiff

[1] Concerningly, independent research by Plaintiff's counsel has revealed that Dr. Renberg herself is being sued for allegedly violating the Eighth Amendment rights of a transgender prisoner by denying her request for gender-affirming surgery, and those claims have survived Dr. Renberg's motion to dismiss. *See Guthrie v. Noel*, 1:20-CV-02351, 2023 WL 8115928, *18-22 (M.D. Penn. Sept. 11, 2023).

have no way to evaluate that representation. Given Defendants' barebones filing, they likely could not carry their burden of qualifying these doctors as experts under Federal Rule of Evidence 702. *See Kadel v. Folwell*, 100 F.4th 122, 158 (4th Cir. 2024) (en banc) (affirming limitation of expert testimony on gender dysphoria "to the specific technical areas in which [the witnesses] had expertise"). They should not be treated as experts here.

To avoid protracted litigation on this issue, if the Court permits the evaluation to go forward, Plaintiff does not propose that Defendants receive even more time to find alternate candidates—they have already had over 100 days. But, if Defendants cannot timely propose different candidates who possess gender dysphoria expertise, Plaintiff lodges this objection now should the Court be required to later review the validity of Renburg and Simopoulos's evaluations.

*Second*, this Court ordered Defendants to "[f[orm a new committee . . . and submit *a roster of the reconstituted committee* to this Court for approval." (Doc. 126 at 12. (emphasis added)) But Defendants have not provided a full roster of the reconstituted committee and it is unclear whether Defendant Campbell will participate in this process. Plaintiff objects to any involvement by Defendant Campbell. As the Court found, he believes that gender-affirming surgery is never medically necessary for anyone, and "[a] judge sharing Dr. Campbell's views would be expected to recuse themselves from this case." (Doc. 116 at 5.) His continued involvement would inject bias into the process and not afford Plaintiff an objective evaluation.

*Third*, Plaintiff does not object to the proposed materials to be made available to Drs. Renberg and Simopoulos. (Doc. 128 at 3.) She asks, however, that they also be provided the declarations of Katherine Croft, Dr. Figler, Dr. Caraccio, and Jennifer Dula and the expert report of Dr. Randi Ettner a. (Docs. 62-2, 62-16, 62-17, 62-18, 62-19.) The issue here is whether surgery medically necessary *now*, not solely whether what the DTARC decided in February of 2022 was justified. *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

*Fourth*, Defendants' proposal seems to contemplate that the new committee would evaluate Plaintiff based only on "an independent record review," and without an actual evaluation of Plaintiff herself. Defendants themselves have argued that actual evaluations of Plaintiff were critical for their experts to opine on Plaintiff's medical needs. (*See* Doc. 38.) Plaintiff objects to any process that would not require Defendants' new committee members to meet with Plaintiff at least virtually.

*Fifth,* Defendants propose that "the record review and the committee meeting occur within 30 days of the entry of an order approving the new committee and that the consensus report or individual reports be submitted to Defendants' counsel within 45 days of the entry of an order approving the new committee." (Doc. 128 at 4.) Plaintiff shares the Court's concern that Defendants are trying to "run out the clock" on this case. (Doc. 126 at 10.) Therefore, Plaintiff proposes that Defendants have 21 days to conduct the evaluation, communicate their decision to the Court and Plaintiff's counsel, and provide all materials created for the evaluation process. Plaintiff understands that Defendants have busy schedules. But Plaintiff's constitutional interest in

obtaining timely, adequate medical care—along with Defendants' constitutional obligation to provide such care—is an overriding consideration.

In sum, because the candidates and procedure set forth by Defendants are inadequate and time is of the essence, Plaintiff asks the Court to proceed to adjudicating her medical necessity claim. If the Court declines to do so, Plaintiff proposes that the Court adopt the following process for her evaluation:

1. Defendants will provide a full list of their proposed committee members to the court immediately. The proposed committee will have 21 days to conduct their record review and evaluation of Plaintiff, confer, and communicate their decision to the Court and Plaintiff's counsel. Dr. Campbell must not participate in that process at all, formally or informally.

2. Defendants will make available to Drs. Renberg and Simopoulos and the rest of the proposed committee the following materials:

   a. The medical records found at Defendants' Exhibit 8 entered into evidence during the February 20, 2024, hearing.

   b. Plaintiff's entire health chart from her admission into the Department's custody in October 2017 through the present.

   c. The results of the psychometric assessments performed by Plaintiff's expert, Randi C. Ettner, Ph.D., and Defendants' expert, Sara Boyd, Ph.D.

   d. The declarations of Katherine Croft, Dr. Bradley Figler, Dr. Donald Caraccio, and Jennifer Dula. (Docs. 62-16, 62-17, 62-18, 62-19.)

   e. The expert report of Dr. Ettner. (Docs. 62-2.)

3. When Defendants communicate their decision, they will share all materials referenced or created for the evaluation process excluding any materials protected by attorney-client privilege.

4. Defendants' counsel will also provide declarations or affidavits from Drs. Simopoulos and Renberg attesting to how many times they have evaluated a patient with gender dysphoria for gender-affirming surgery; when those evaluations occurred; what criteria they used; and whether they recommended surgery.

5. If Defendants again refuse to provide surgery, Plaintiff requests that the Court consider a renewed motion on her medical necessity claim on an expedited basis.

Respectfully submitted this the 30th day of July, 2024.


*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*

(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on July 30, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*,<br><br>Defendants. | No. 3:22-cv-00191-MOC-DCK |

**PLAINTIFF'S RENEWED PROPOSAL FOR COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION**

In response to the Court's permanent injunction, Defendants proposed two candidates—Drs. Ingrid Renberg and Eugene Simopoulos—to reevaluate Plaintiff for gender-affirming surgery and set forth a proposal for the re-evaluation process. (Doc. 128.) Plaintiff filed a Response to Defendants' Proposal for Compliance with the Court's Permanent Injunction, lodging objections to Defendants' proposed reviewers and proposing revisions to the forecasted review process. On August 16, 2024, this Court held a hearing on Doc. 128, Defendants' Notice in Response to the Court's Injunction, and Doc. 129, Plaintiff's Response to Defendants' Proposal for Compliance with the Court's Permanent Injunction. The Court indicated that Defendants' proposed reviewers, Dr. Ingrid Renberg and Dr. Eugene Simopoulos, would be permitted to re-evaluate Plaintiff's need for gender-affirming surgery but invited the parties to

submit proposals regarding the process and materials to be considered in conjunction with that review.

Plaintiff reincorporates the concerns raised in her Response, Doc. 129, and proposes that the Court adopt the following process for her evaluation:

1. Drs. Renberg and Simopoulos will conduct telehealth evaluations of Plaintiff in addition to their records review and consider those evaluations in rendering their determination.[1]
2. Defendants will make available to Drs. Renberg and Simopoulos the following materials:
   a. The medical records found at Defendants' Exhibit 8 entered into evidence during the February 20, 2024, hearing;
   b. Plaintiff's entire health chart from her admission into the Department's custody in October 2017 through the present;
   c. The results of the psychometric assessments performed by Plaintiff's expert, Randi C. Ettner, Ph.D., and Defendants' expert, Sara Boyd, Ph.D.;

---

[1] At the August 16 hearing, Defendants' counsel expressed concern that Drs. Renberg and Simopoulos have full-time jobs that could make it difficult for them to conduct telehealth evaluations of Plaintiff. As Plaintiff is presently incarcerated in Defendants' custody, Defendants of course could make her available to be evaluated at any time Drs. Renberg and Simopoulos could conduct such telehealth evaluations, including in the evening. Given that what is to be determined is whether it is *currently* medically necessary for Plaintiff to receive gender-affirming surgery, *see Farmer v. Brennan*, 511 U.S. 825, 847 (1994), having Drs. Renberg and Simopoulos evaluate Plaintiff's *current* condition, as well as her *entire* health chart to date, is essential.

d. The declarations of Katherine Croft, Dr. Bradley Figler, Dr. Donald Caraccio, and Jennifer Dula (Docs. 62-16, 62-17, 62-18, 62-19);[2] and

e. The expert report of Dr. Ettner. (Docs. 62-2.)

3. Plaintiff objects to the inclusion of the Expert Report of Dr. Joseph Penn in the materials to be reviewed by Drs. Renberg and Simopoulos, as suggested by Defendants during the August 16 hearing. Dr. Penn did not evaluate Plaintiff, and his expert report is not relevant to the issues to be determined by Drs. Renberg and Simopoulos. Dr. Penn opined on "the adequacy and appropriateness of policies and procedures used by the Department for evaluating and managing requests for accommodations by transgender patients," "the Department's formulation and application of the phrase 'medical necessity'" and "Defendants' evaluation of Plaintiff's request for vulvoplasty." Doc. 65-13 at 1. These matters relating to the original review process have already been addressed by this Court and have no bearing on the subsequent review process. Moreover, Plaintiff moved to strike Dr. Penn's expert testimony. *See* Doc. 75 ("Dr. Penn is not qualified to opine on the matters at issue, and his opinions lack a reliable basis and are ultimately irrelevant to the Court's consideration."), Doc. 76. Dr. Penn's report should not be considered.[3]

---

[2] Defendants inaccurately asserted at the August 16 hearing that these declarations were "advocacy" documents. Not so. These are sworn statements of the medical providers to whom Defendants referred Plaintiff, whose views about the medical necessity of Plaintiff receiving gender-affirming care are now known to Defendants and should be part of any evaluation of Plaintiff's need for surgery regardless of whether they made their way into Plaintiff's prison health chart or not.

[3] While Plaintiff also has moved to strike the expert report of Dr. Boyd, Plaintiff conceded at the August 16 hearing that, given that Dr. Ettner's expert report should be

4. Plaintiff requests that Drs. Renberg and Simopoulos conduct their review as expeditiously as possible and would suggest a timeframe of 21 days from this Court's order.

5. Plaintiff requests that Defendants inform the Court and Plaintiff within 7 days from the conclusion of Drs. Renberg's and Simopoulos's review whether Defendants will provide Plaintiff the gender-affirming surgery she continues to seek. When Defendants communicate their decision, they will share all materials referenced or created for Drs. Renberg's and Simopoulos's evaluation processes, excluding any materials protected by attorney-client privilege.

6. Defendants' counsel will also provide the Court and Plaintiff declarations or affidavits from Drs. Simopoulos and Renberg attesting to how many times they have evaluated a patient with gender dysphoria for gender-affirming surgery; when those evaluations occurred; what criteria they used; and whether they recommended surgery or not after each such evaluation.

7. If Defendants again refuse to provide Plaintiff surgery, Plaintiff requests that the Court consider a renewed motion on her medical necessity claim on an expedited basis.

Respectfully submitted this the 23rd day of August, 2024.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore
NC Bar No. 50849

---

considered by Drs. Renberg and Simopoulos, Dr. Boyd's report could be as well, since, like Dr. Ettner, Dr. Boyd personally examined Plaintiff. Plaintiff nonetheless does not withdraw or waive her motion to strike Dr. Boyd's report to the extent it might be considered for other purposes related to this litigation.

Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on August 23, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendants. | **DEFENDANTS' SUPPLEMENTAL RESPONSE TO THE COURT'S INJUNCTION** |

On July 26, 2024, Defendants filed a notice in response to the Court's injunction. (DE 128) On July 30, 2024, Plaintiff filed a response to Defendants' notice. (DE 129) On August 16, 2024, the Court held a hearing to address the parties' respective filings. Toward the conclusion of the hearing, the Court instructed Defendants to submit an additional filing no later than Friday, August 23, 2024, that addressed two points: (1) any objections to the additional materials that Plaintiff proposes be provided to the new committee; and (2) the timing of the new committee's review, assuming a telehealth clinical interview could be part of the review.

**Objection to the Provision of Additional Materials as Requested by Plaintiff**

In their response, Defendants proposed providing the following set of materials to the new committee members: (1) the medical records found at Defendants' Exhibit 8 entered into evidence during the February 20, 2024, hearing; (2) Plaintiff's entire health chart from her admission into the Department's custody in October 2017 through the present; (3) the results of the psychometric assessments performed by Plaintiff's expert, Randi C. Ettner, Ph.D., and Defendants' expert, Sara Boyd, Ph.D. (DE 128 at 3)

Plaintiff agrees with this proposal, but also proposes providing additional materials, namely: (1) the declaration of Katherine Croft (DE 62-16); (2) the declaration of Dr. Bradley Figler (DE 62-17); (3) the declaration of Dr. Donald Caraccio (DE 62-18); (4) the declaration of Jennifer Dula (DE 62-19); and (5) the expert report of Dr. Randi Ettner (DE 62-2). (*See* DE 129 at 4) The Court should reject Plaintiff's request to provide additional materials to the new committee members for three reasons.

*First*, the additional materials that Plaintiff has proposed consist of litigation-orientated assertions and opinions that could bias the objective review contemplated by this new committee. Of the two options offered by the Court, Defendants have elected to "form a new committee to re-evaluate Plaintiff's surgical request." (*See* DE 116 at 7) Defendants understand the goal of this option to be a neutral reassessment of Plaintiff's accommodation request. To maximize the objectivity of the reassessment, it should be based solely on a new committee's review of Plaintiff's medical chart, their clinical interviews with her, and their own professional judgment. The re-assessment of the surgical request should not be based upon nor influenced by the opinions and assertions of the litigants or their agents. The additional materials proposed by Plaintiff, the expert report and declarations, were created for the purpose of advancing Plaintiff's position in this litigation. Indeed, the four declarations arguably contain expert opinions. The thrust of the testimony in the four declarations is that the requested surgery is medically necessary because it would ameliorate or even cure Plaintiff's gender dysphoria. The declarants appear to base these opinions on their specialized education, training, and experience. Thus, these opinions and assertions go well beyond the scope of the factual interactions captured in the contemporaneous

records created through such interactions and well into improper expert opinion territory.[1] Providing the opinions and assertions contained in these additional materials to the new committee could jeopardize the objectivity of the committee, which of course would run counter to its very purpose.

*Second*, the additional materials proposed by Plaintiff are not of the sort that clinicians would ordinarily review in evaluating a request for medical services. As noted, these additional materials consist of opinions and assertions about whether the authors believe surgery is medically necessary. Such materials cannot be said to convey any objective medical or mental health information not already contained in the medical record. As such, these materials have no value in aiding the new committee's determination of whether surgery is medically necessary.

*Third*, contrary to Plaintiff's contention, the materials do not contain more contemporaneous information than the information Defendants proposed that the new committee would review. Plaintiff appears to contend that inclusion of these additional materials is necessary because the "issue here is whether surgery medically necessary *now*, not solely whether what the DTARC decided in February of 2022 was justified." (DE 129 at 4) (emphasis in original) However, these additional materials do not capture more contemporaneous information that is not already captured in the medical records.

For instance, Ms. Croft's declaration indicates that she had one telehealth appointment with Plaintiff in May 2021. *See* DE 62-16 at 5. Similarly, Dr. Figler's declaration describes the one

[1] Defendants reserve their right to move to exclude certain portions of these declarations as improper, undisclosed expert testimony. Plaintiff was required to disclose experts in accordance with Rule 26, which points to either a stipulation of the parties or an order of the Court with respect to the timing of expert disclosures. In this case, by court order, Plaintiff's expert report deadline was February 3, 2023. DE 36. These declarations were filed in support of Plaintiff's motion for partial summary judgment on October 5, 2023 (*see* DE 62-16, 62-17, 62-18, and 62-18), over seven months past the deadline. Moreover, even if Plaintiff contended that these opinions were offered solely for rebuttal purposes, the disclosure is nonetheless untimely. Defendants disclosed their expert reports on July 6, 2023, thereby making the deadline to disclose rebuttal evidence August 7, 2023. *See* Rule 26(a)(2)(D)(ii).

clinical encounter that he had with Plaintiff in July of 2021. (*See* DE 62-17 at 2-5) In her declaration, Jennifer Dula, a licensed clinical social worker, states that she provided mental health services to Plaintiff from October through December 2019, and from January 2022 through April 2022. (DE 62-19 at 2) Dr. Caraccio's declaration reviews his clinical encounters with Plaintiff, which began in July 2020 and ended in May 2023. (*See* DE 62-18 at 4-9) Thus, it is not the case that these declarations provide more timely, objective medical information that can be useful for the new committee's assessment of whether surgery medically necessary *now*. Notably, the committee will already have access to the medical records created at the time that these declarations and report were created. In fact, the committee will have access to Plaintiff's entire health chart, which will necessarily include records of *all* clinical encounters between the four declarants and Plaintiff. What the committee will not have access to is the more recent characterization of these medical records through the declarations and expert report created for purposes of the litigation. For these reasons, the Court should reject Plaintiff's request to provide these additional materials to the new committee.

If the Court concludes that these additional materials should be provided to the new committee members, then Defendants respectfully request that the expert reports of Dr. Penn (DE 65-13) and Dr. Boyd, (DE 65-1), along with Dr. Boyd's videotaped interview of Plaintiff, also be provided. While Plaintiff has moved to exclude Defendants' experts, the Court has not ruled on those motions. Moreover, during the August 16, 2024, hearing, the Court indicated that it did not intend on excluding Defendants' experts. The content of the reports of Drs. Penn and Boyd is at least of the same value as that of Dr. Ettner's report and was created for the same purpose. Thus, fairness and completeness dictate that, if the new committee members are provided the evidence submitted in support of Plaintiff's litigation position, Defendants' evidence also be provided.

## Clinical Interview and Timing

Defendants are presently confirming compliance with the rules regarding clinical interviews conducted by out-of-state physicians. Thus, assuming Drs. Renberg and Simopoulos are able to conduct clinical interviews of Plaintiff, the new committee's reassessment will likely require more time than initially contemplated. Thus, Defendants propose the following timetable for completion of the reevaluation of Plaintiffs' request. Absent any unforeseen developments, Defendants propose that the record review, clinical interview, and the committee meeting occur within 45 days of the entry of an order approving the new committee and that the consensus report or individual reports be submitted to Defendants' counsel within 60 days of the entry of an order approving the new committee. This report will include all materials created or relied upon by the new committee members in reaching their decision(s).

This the 23rd day of August 2024.


**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
NC Bar No. 43167
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendants***

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-191-MOC-DCK

| | | |
|---|---|---|
| **KANAUTICA ZAYRE-BROWN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on its own Order following the parties' submission of supplemental responses following this Court's hearing held on August 16, 2024. (Doc. Nos. 131, 132). The Court makes the following findings and order related to the materials proposed by the parties:

The Court approves Doctors Renberg and Simopoulus as new committee members. As the court found at the August 16 hearing, Doctors Renberg and Simopoulus shall be allowed to re-evaluate Plaintiff's need for gender-affirming surgery, as requested by Plaintiff. Doctors Renberg and Simopoulus shall conduct their review within 14 days from entry of this Order. The new committee shall have 30 days from receiving the reviews Drs. Renberg and Simopoulus in which to meet, prepare a report, and inform the Court and Plaintiff whether Defendants will provide Plaintiff the surgery she seeks. Defendants will have 15 days to respond.

The Court will allow the new committee to have access to submitted materials by any person who personally examined Plaintiff. The parties may not submit materials from any person who did not personally examine, meet, or consult with Plaintiff, at the least through a Telehealth meeting. To this end, neither party may submit expert reports from any persons who did not

personally examine, meet, or consult with Plaintiff.

Signed: September 20, 2024

Max O. Cogburn Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

KANAUTICA ZAYRE-BROWN,

Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,

Defendants.

**DEFENDANTS' NOTICE REGARDING THE COURT'S ORDER (DE 134)**

On September 23, 2024, the Court entered an order regarding the materials to be provided to the new committee (*i.e.*, Drs. Renberg and Simopolous) to facilitate the re-evaluation of Plaintiff's request for gender-affirming surgery. (DE 134) Defendants provide this notice to advise the Court of other certain aspects of the re-evaluation.

**Provision of Materials to Drs. Renberg and Simopolous**

Immediately upon receiving the Court's order, the undersigned counsel contacted Drs. Renberg and Simopolous to inform them of the Court's approval and of the timeline. The undersigned counsel also promptly provided the following materials to the new committee to facilitate their re-evaluation of Plaintiff's request for gender-affirming surgery:

- Selected Health records – entered as Defendants' Exhibit 8 at the February 20, 2024, hearing.
- Plaintiff's entire prison system health record – from 10/2017 through present
- The Declaration of Kathrine Croft (DE 62-16)
- The Declaration of Bradley Figler, MD (DE 62-17)
- The Declaration of Donald Caraccio, MD (DE 62-18)

- The Declaration of Jennifer Dula (DE 62-19)
- Expert Report of Randi C. Ettner, Ph.D. (DE 62-2)
- Expert Report of Sara Boyd, Ph.D. (DE 65-1)
- Video of Dr. Boyd's clinical interview of Plaintiff on June 20, 2023.

In addition, Dr. Boyd will provide the computerized score report narratives of the psychometric testing done by Drs. Ettner and Boyd, which must be sent directly without counsel's involvement.

**Clinical Interviews**

Since the hearing with the Court in August, when the possibility of the reviewers conducting an in-person examination was discussed, Defendants' counsel has worked to help facilitate these examinations, including by consulting with the North Carolina Medical Board and coordinating an affiliation with a local physician to help alleviate any concern with practice of medicine in the state. In the Court's latest order, it did not mandate that one or both of the new committee members conduct a clinical interview of Plaintiff. However, out of an abundance of caution, Defendants wanted to bring to the Court's attention an issue that will preclude one of the two reviewers from personally conducting an examination of Plaintiff.

As to Dr. Simopolous, he intends to conduct a telehealth encounter and clinical interview with Plaintiff, and that has already been scheduled consistent with the Court's timeline.

As to Dr. Renberg, when counsel contacted her to inform her of the recent order from the Court and ask her to commence the review immediately upon receiving it, Dr. Renberg informed the undersigned that she will not be able to conduct a telehealth encounter with Plaintiff in the allotted timeline. Dr. Renberg is presently covered under a malpractice policy through her employer, Centurion. But that policy does not extend to work that she may perform outside of her

position as the Statewide Psychiatric Medical Director for Centurion in Pennsylvania. Thus, Dr. Renberg must procure a separate malpractice insurance. While she began that process well before the most recent order, to date, that process remains ongoing, and she does not yet have an active policy. Moreover, in part because she is currently in Africa and not scheduled to return until September 30, 2024, and because securing such coverage can be a time-consuming process, Dr. Renberg will not be able to secure an appropriate insurance policy in enough time to conduct a clinical interview of Plaintiff during the 14-day timeline set out by the Court.

Defendants do not expect this to impact its ability to complete the re-evaluation of Plaintiff's requested surgery. Dr. Renberg informs counsel that she does not require a personal interview to conduct this evaluation, as she will have access to all of the materials listed above, including the videotaped assessment by Dr. Boyd and Dr. Ettner and Boyd's testing. She will also have the opportunity to consider Dr. Simopolous' assessment during the committee discussion. Therefore, Defendants' intention is to move forward with only one reviewer conducting an examination on the Court's timeline in order to meet the requirements of the Court's order.

**Completion of the Review and Reporting Back to the Court**

Barring unforeseen circumstances and despite Dr. Renberg's travel, the new committee members anticipate completing their initial reviews on the schedule set by the Court, by Monday, October 7, 2024, which is 14 days from entry of the latest order of the Court. Thereafter, by Wednesday, November 6, 2024 (which is 30 days from the completion of the review), the new committee members (Drs. Renberg and Simopolous) will confer with one another, provide either a joint report or individual reports to the undersigned counsel, and Defendants will confer with their clients and advise Plaintiff's counsel and the Court about the results of the review.

This the 25th day of September 2024.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
NC Bar No. 43167
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendants***

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendants. | **DEFENDANTS' NOTICE OF COMPLIANCE WITH THE COURT'S INJUNCTION (DE 116)** |

**Background**

On April 16, 2024, the Court denied Defendants' renewed summary judgment motion, DE 110. *See* DE 116 at 7. The Court also granted in part and denied in part Plaintiff's renewed summary judgment motion, DE 102. *See* DE 116 at 7. More specifically, the Court denied Plaintiff's renewed summary judgment motion "with respect to [her] ADA and *Corum* claims"; but granted Plaintiff's renewed summary judgment motion "insofar as the Court [found] that Defendants' accommodation review process violated Plaintiff's Eighth Amendment rights." DE 116 at 7. Based on the above-referenced conclusions, the Court entered a mandatory injunction, which required Defendants "to, within 30 days, either (1) Notify the Court of DPS' intention to accommodate Plaintiff's surgical request; or (2) Form a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this Court for approval." DE 116 at 7-8.

On May 15, 2024, Defendants filed a timely Notice of Appeal. DE 117. The following day, Defendants sought a stay pending their appeal. DE 118. On July 12, 2024, the Court denied Defendants' motion for a stay and ordered Defendants to submit a new committee to re-assess

Plaintiff's request for gender affirming surgery. DE 126 at 11-12. On July 26, 2024, Defendants timely submitted notice to this Court proposing Drs. Ingrid Renberg and Eugene Simopolous as the new committee members. DE 128. On September 23, 2024, the Court entered an order approving Drs. Renberg and Simopolous as the new committee members, defining the universe of materials to be provided to the new committee members, and setting out a timeline for completion of the re-assessment. DE 134. Defendants timely provide this notice of compliance with the injunction of the Court and its other orders. *See* DE 116 at 7-8, DE 134.

**Provision of Materials to Drs. Renberg and Simopolous**

In accordance with the Court's order, DE 134, the undersigned counsel promptly provided the following materials to the new committee members to facilitate their re-evaluation of Plaintiff's request for gender-affirming surgery:

- Selected Health Records – Defendants' Exhibit 8 at the February 20, 2024, hearing.
- Plaintiff's entire health record – from 10/2017 through present
- The Declaration of Kathrine Croft (DE 62-16)
- The Declaration of Bradley Figler, MD (DE 62-17)
- The Declaration of Donald Caraccio, MD (DE 62-18)
- The Declaration of Jennifer Dula (DE 62-19)
- Expert Report of Randi C. Ettner, Ph.D. (DE 62-2)
- Expert Report of Sara Boyd, Ph.D. (DE 65-1)
- Video of Dr. Boyd's clinical interview of Plaintiff on June 20, 2023.

**Re-assessment of Plaintiff's Request for Gender Affirming Surgery**

After reviewing the above-described materials, conferring with each other, and in the case of Dr. Simopolous, conducting a clinical interview, Drs. Renberg and Simopolous both concluded

that the gender affirming surgery requested by Plaintiff is not medically necessary. Statements from Drs. Simopolous and Renberg, are attached as Exhibits A and B, respectively.

**Update on Other Recent Developments**

Defendants wish to inform the Court of two recent developments. First, Plaintiff was released from custody on November 2, 2024.[1] Second, on November 4, 2024, the U.S. Court of Appeals for the Fourth Circuit issued an order *sua sponte* directing the parties to file a supplemental brief by November 19, 2024, addressing three questions: (1) On what date is Appellee scheduled to be released from custody? (2) Will her release from custody render this appeal moot? (3) If so, does *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), apply? Defendants are preparing a brief to file in response to the Court's order.

This the 6th day of November 2024.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
NC Bar No. 43167
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendants***

[1] NC DAC Offender Public Information Site

Ingrid Renberg, MD, MPH, MSL
4810 Wolf Rd
Erie, PA 16505
Email: ikrenberg@gmail.com
November 1, 2024

Re: ***Kanautica Zayre-Brown, Plaintiff v. North Carolina Department of Public Safety, et al., Defendant***

I have been engaged by attorneys from the North Carolina Department of Justice to review the aforementioned case and provide an expert opinion about whether the plaintiff's request for gender reaffirming surgery is medically necessary. I have extensive knowledge of the WPATH Standards of Care and its criteria. Meeting the WPATH criteria is not the only component for determining medical necessity.

In preparation for this review I was provided previous reports and records as follows:

1) Treatment records from the North Carolina Department of Adult Correction dated October 10, 2017 through September 23, 2024
2) Declaration from Bradley David Figler, MD, Urology, dated October 4, 2023
3) Declaration from Donald Caraccio, MD, dated October 4, 2023
4) Declaration from Jennifer Lynn Dula, MSW, dated July 19, 2023
5) Declaration from Katherine Croft, RN, dated October 2, 2023
6) Report of Sara E. Boyd, Ph.D., dated July 5, 2023
7) Report of Randi Ettner, Ph.D., dated February 2, 2023
8) Video of a clinical interview done by Sara E. Boyd, Ph.D., with the plaintiff, dated June 20, 2023
9) Discussion with Eugene Simopoulos, MD, dated October 23, 2024

A review of these materials does not indicate that the plaintiff has been experiencing recent significant psychiatric symptoms which would support an opinion about imminent medical necessity. She has been functioning well in the correctional facility. She is not prescribed psychiatric medications. She has been motivated and forward-thinking about her plans after her release.

There were some pertinent factors identified in the record that further support my conclusion. She made comments to Dr. Boyd about choosing a vulvoplasty over a vaginoplasty as she thought that would be more attainable in the carceral setting. There were also recommendations made by her consulting surgeon about weight loss to optimize the success of the surgery, showing that delaying surgery to optimize conditions is not only reasonable but indicated. It is my opinion that waiting until the plaintiff was released from prison would allow her to make a fully informed decision about which surgery would be

most appropriate for her affirmation needs and would allow her to do so with the support of her family and treatment team.

After review of the records, discussion with Dr. Simopoulos and review of his report, I am in agreement with his opinion that gender affirming surgery is not presently medically necessary.

Respectfully submitted,



Ingrid K. Renberg, MD, MPH, MSL
Board Certified in General Psychiatry
Board Certified in Child and Adolescent Psychiatry
Board Certified in Forensic Psychiatry

Eugene F. Simopoulos, M.D.
General and Forensic Psychiatry
P.O. Box 1872
Staunton, VA 24401
Phone: (540) 332-8040
E-mail: dreugenesimopoulosmd@gmail.com
Web: http://www.eugenefsimopoulosmd.com

October 28, 2024

***Kanautica Zayre-Brown,***

***Plaintiff,***

***v.***

***North Carolina Department of Public Safety, et al.,***

***Defendant***

## I. Scope of Engagement

I have been engaged by attorneys from the North Carolina Department of Justice to 1) conduct an analysis of the above-captioned plaintiff's health records and 2) perform a mental health evaluation of Kanautica Zayre-Brown to determine whether her requests for gender reaffirming surgery are, in my judgment, medically necessary. The North Carolina Department of Justice is representing the defendants in the matter of Kanautica Zayre-Brown v. North Carolina Department of Adult Correction (DAC), et al., Case No. 3:22-cv-191, which is pending in the United States District Court for the Western District of North Carolina.

## II. Summary Statement of Qualifications

I have attached my curriculum vitae, which sets out my expert qualifications in further detail. By way of summary, I am a Board Certified General and Forensic Psychiatrist licensed to practice medicine in the state of Virginia. I attended medical school and completed my psychiatric residency at the George Washington University School of Medicine in Washington, D.C. from 2004 to 2013 and was employed as a Psychiatrist at the D.C. Jail from 2012 to 2013. I completed Fellowship in Forensic Psychiatry at the University of Virginia in Charlottesville, Virginia in 2014 and served as Director of Mental Health Services at the Albemarle-Charlottesville Regional Jail (ACRJ) from 2015 to 2024, a position that not only involved treating mentally ill inmates but also supervising mid-level providers, e.g., psychiatric nurse practitioners, who provided mental health services. Currently, I am the Forensic Director and an acute forensic admissions unit Psychiatrist at the Western State Hospital in Staunton, Virginia, positions which entail extensive involvement with the jail system throughout the state of Virginia. Moreover, I am a member of the Virginia Forensic Review Panel (FRP), which is a Virginia Department of Behavioral Health and Developmental Services (DBHDS) Commissioner-Appointed position designated for

expertise and training in one's professional discipline and mental health assessments, treatment, and risk management.

I have substantial experience in evaluating, diagnosing, treating, and monitoring psychiatric patients who have been admitted to an inpatient facility under involuntary and voluntary legal statuses, and the correctional system. As part of my daily clinical practice, I treat individuals with severe mental disorders, including schizophrenia, schizoaffective disorder, bipolar disorder; neurodevelopmental conditions, such as autism spectrum disorder; intellectual disabilities; and gender dysphoria. In addition, I have over ten years of experience attending to the unique mental health needs and vulnerabilities of the incarcerated population and have conducted several evaluations of incarcerated inmates in the Virginia Department of Corrections who were requesting gender dysphoria-specific treatment, including hormonal therapy and surgery. I have extensive knowledge and application of the World Professional Association for Transgender Health (WPATH) criteria.

I have contributed to the psychiatric literature, authored research articles and case studies, and presented grand rounds and international lectures on vulnerable patients in both hospital and correctional systems, including the transgender population.[1]

**SOURCES OF INFORMATION**

In addition to the forensic interview with Kanautica Zayre-Brown on September 25, 2024, I relied on the following sources of information for the evaluation:

1. <u>Treatment Records</u>:

    a. North Carolina DAC, dated October 10, 2017 to September 23, 2024

2. <u>Declarations and Expert Reports</u>:

    a. Donald Caraccio, MD, Endocrinology and Metabolism, dated October 4, 2023
    b. Bradley David Figler, MD, Urology, dated October 4, 2023
    c. Katherine Croft, R.N., dated October 2, 2023
    d. Jennifer Lynn Dula, MSW, dated July 19, 2023
    e. Sara E. Boyd, Ph.D., ABPP, dated July 5, 2023

3. <u>Resources</u>:

    a. The World Professional Association for Transgender Health (WPATH): Standards of Care (SOC) for the Health of Transgender and Gender Diverse People, Version 8, 2022

[1] For example, see Simopoulos, Eugene., Khin Khin, Eindra. *Fundamental Principles Inherent in the Comprehensive Care of Transgender Inmates.* JOURNAL OF THE AMERICAN ACADEMY OF PSYCHIATRY AND THE LAW. 2014; 42(1): 26-36; Simopoulos, Eugene., Khin Khin, Eindra. *Issues in the Management of Transgender Inmates.* JOURNAL OF THE AMERICAN ACADEMY OF PSYCHIATRY AND THE LAW, Montreal, PQ, Canada, October 2012; *Solitary Confinement.* Grand Rounds presentation. Western State Hospital, Staunton, VA, August 22, 2018; and *Two Cases of Male Genital Self-Mutilation: An Examination of Liaison Dynamics,* PSYCHOSOMATICS 2012: 53: 178-180

## RELEVANT BACKGROUND INFORMATION[2]

***Family, Developmental, and Social History***

Kanautica Zayre-Brown is a 43-year-old transgender female who was born in Wilson, North Carolina. She related that she was the product of a teen pregnancy, as her mother was 13 years old when she became pregnant with Ms. Zayre-Brown. Ms. Zayre-Brown indicated that, to the extent of her knowledge, her mother experienced no complications associated with her gestation or her birth. She was not exposed in utero to alcohol, tobacco, illicit substances, or other neurotoxins, and she was healthy at birth. She was born as a biological male. Ms. Zayre-Brown achieved her early motor and speech developmental milestone at the age-appropriate times. She has a sister who is ten years younger than her.

She was adopted by her grandparents after her birth and indicated that they are listed as her mother and father on her birth certificate. She acknowledged that she was “rebellious” with her grandparents. Her statements about her childhood and upbringing revealed that [redacted] especially during adolescence when she was “back and forth in foster care and group homes.” She acknowledged, “I haven’t processed it yet. I do have plans to process it.” Ms. Zayre-Brown disclosed that [redacted]. When queried further, Ms. Zayre-Brown expressed that [redacted], remarking that she could “write a book” about the [redacted]. She shared that she left her grandparents’ home around 15, at which point she resided with friends and immersed herself more in the LGBTQ community. She said that she identified as "gay and queer" beginning in high school and learned about gender dysphoria around 2010.[3]

Ms. Zayre-Brown indicated that she had a juvenile criminal record, stating that she once took a teacher’s car and went back to the Boys Home at which she was living. She recounted how the court mandated she remain in the group home setting for a year. She has lived in Texas, Atlanta, Georgia, and Jacksonville, Florida in her adulthood. She is currently being held at the Anson Correctional Institution in Polkton, North Carolina and has a release date of November 2, 2024. Ms. Zayre-Brown indicated that she plans to live with her spouse in New Bern, North Carolina after her release from custody. Regarding relationships, Ms. Zayre-Brown has been with her spouse for approximately thirteen years. She indicated that they communicate via video conferencing weekly and characterized their relationship in positive terms, while acknowledging the negative effect that being incarcerated has had on their relationship. Ms. Zayre-Brown reported that she was a foster parent when she lived in Texas from 2013 to 2016 and raised four children, two of whom remain in her life. With respect to her family of origin, her grandmother is living and remains “[her] rock.” She is “pretty close” with her sister.

### Education and Employment History

Academically, she indicated that she was an A/B student and “very smart” and a “nerd” in her studies. She denied a history of grade retention. She received no special education services for an intellectual or a learning disability, and she did not have an Individualized Education Program (IEP). She graduated from

---

[2] The history below is not intended to be all-encompassing or exhaustive, as the Court is aware of the plaintiff’s background and prior treatment, the treatment has been well-documented, and the focus of this evaluator’s analysis is most pertinent and narrowed to her mental status evaluation, gender dysphoria, and offering an opinion of medical necessity.

[3] Ms. Zayre-Brown appreciated that she was different than others at the time, explaining, "I knew there was something I wasn't seeing, I needed clinical guidance." She recounted how she was "very much sure of what [she] wanted," clarifying, "I knew I wasn't a drag queen, intersex, or a cross-dresser." She was resolute that the legal process of the past few years "made [her] identify as trans."

high school in 2000 and was awarded a standard diploma. Regarding post-secondary education, she attended Michigan State University after she received a “full ride” scholarship because she was a “foster kid.” Ms. Zayre-Brown obtained a Bachelor of Arts degree in Psychology. She received a master’s degree in social work from Louisiana Baptist University but has not completed the licensing process.

Concerning employment, she indicated that she worked as a social worker for Humana TriCare and in home care through DHHS. She functioned as an associate director at a psychosocial rehab center and has had periods of self-employment. She described her work ethic as strong and said she had good overall relationships with her coworkers, commenting, “I have always been described as a breath of fresh air.” She has left positions to seek out other professional opportunities and has never been terminated from any jobs. She has no history of military service.

***Mental Health History***

Ms. Zayre-Brown has a limited mental health history. She related that she has a history of anxiety and ADHD and was previously treated with sertraline (anti-anxiety medication) and Strattera (non-stimulant medication for ADHD). She indicated that she was initially treated with sertraline in December 2020 and was hospitalized for thirty days within the prison system. Ms. Zayre-Brown noted that she remained on the sertraline for two years, but it made her “numb to [her] feelings.” She reported that the Strattera yielded improvement, such that she eventually tapered both medications. She reported no further medication trials and is not currently taking any psychotropic medications.

Regarding outpatient treatment, she participated in psychotherapy with a psychologist in Durham, North Carolina from 2010 to 2014 and saw the provider approximately every ninety to one-hundred and twenty days. Ms. Zayre-Brown was engaged in therapy within the Department of Correction for a period before the treatment ended around December 2022. [4]

With respect to suicidal gestures and non-suicidal self-harm, she reported that there were a “few incidents” in which she “tied objects around [her] phallus” in the past. She denied suicidal intention associated with the gestures. She disclosed that she attempted suicide via overdose while she was housed in a male prison because she perceived she was “not treated fairly.” She recalled, “I was pulling my skin off, I didn’t want to live no more.” When queried further, she identified “mental anguish” and “mental harm” she experienced in the prison system, noting that she feels like a “guinea pig” due to her transgender status. Ms. Zayre-Brown proudly shared that her situation, i.e., seeking transgender services as an inmate in a correctional institution, led to and “created policies and procedures.”

***Medical History***

She was healthy during her formative years and generally considers herself to be in good physical shape now, except to joke that she is “fat and a little bit obese.” She said she is not taking daily medications for

[4] The Declaration from Jennifer Lynn Dula, MSW, reviewed Ms. Zayre-Brown's surgical procedures and use of gender-affirming pronouns. Ms. Dula noted that she had treated her depression and anxiety that was associated with her gender dysphoria, and her symptoms persisted despite treatment. Ms. Dula referenced four self-injury risk assessments that "occur when there are emergent concerns that someone may be at risk of harming themselves." She noted that Ms. Zayre-Brown had dysphoria about having a phallus and expressed a "persistent desire for surgery to remove her phallus and create typical female vulva." Ms. Dula stated that Ms. Zayre-Brown had been intermittently suicidal (including during a session on April 26, 2022) and concluded that "vulvoplasty will help Mrs. Zayre-Brown make significant progress in further treatment of her gender dysphoria and is medically necessary for her." Indeed, Dr. Caraccio offered the opinion that her gender dysphoria was chronic.

any chronic conditions, such as hypertension, high cholesterol, or diabetes. Her health records indicate that she has a history of [redacted]. She endorsed a history of hormone therapy starting in 2010 but indicated that they were "not achieving the drop in testosterone" that she sought. She has had essentially continuous treatment with hormones from 2010 to the present, except for a period of eight months during the early course of her imprisonment. Ms. Zayre-Brown identified physiological changes associated with hormone treatment, including hair growth, softening of her skin, and heightened emotional responses related to her monthly injection of Estradiol. She stated, "They did their job. I've always been in touch with my emotions, am an emotional creature."

Regarding surgeries, Ms. Zayre-Brown reviewed her history of gender-affirming interventions, which has included a bilateral orchiectomy, breast augmentation, reshaping of her ear lobes and chin, bilateral bunion removal to sculpt her feet, facial feminization surgery, and a Brazilian butt lift during the period of October 2011 to July 2017. Records from UNCH Urology from July 2021indicated that she underwent consultation for a possible vaginoplasty versus vulvoplasty.[5] Ms. Zayre-Brown asserted that she plans to have either a vaginoplasty or vulvoplasty in the future, as well as modification of her Adam's apple. She admitted that she had hoped to have more procedures completed around December 2017, noting that she had underwent a bilateral orchiectomy "in preparation for vulvoplasty." However, she indicated that the procedure was repeatedly denied by the prison providers and review board. She was critical of the review process, commenting, "I don't have enough mental health issues to have surgery" [in the opinion of the prison system]. She believed that additional surgery would "alleviate [her] gender dysphoria" and she is interested in ongoing therapy for the rest of her life. She does not wish to see or be exposed to her primary sex characteristics, i.e., male anatomical structures and, hence, a reminder of a sex that was assigned to her at birth, but she does not experience or feel internally.[6] She declared, "No matter what, I'm going to have surgery. I'm very determined."

Regarding head injuries, Ms. Zayre-Brown denied a history of concussions, traumatic head injuries, or seizures.

### *Substance Use History*

She reported no past alcohol or illicit substance abuse, expressing, "I have never been dependent on any type of substance." She has smoked cannabis socially but denied a history of problematic use. Ms. Zayre-Brown has no history of participating in intensive substance abuse treatment. She has no history of probation.

### *Legal History*

Ms. Zayre-Brown reported that she has spent approximately eleven years of her life in custody, which included detention in the juvenile justice system. She indicated that she was incarcerated in October 2017 for "insurance and Medicaid fraud," charges that she received during a period of self-employment. She reported that she has received twelve institutional infractions as an inmate, including possession of

---

[5] The consulting urologist, Dr. Figler, and Ms. Zayre-Brown discussed indications for the procedure according to WPATH standards of care and opined that surgery was medically necessary based on her "persistent gender dysphoria." Dr. Figler stated that the intervention was "necessary to cure or provide significant improvement of the patient's medical problems, and end or significantly diminish the pain and suffering that problem is causing, and the risks in not providing such treatment." Dr. Figler stated that Ms. Zayre-Brown had already socially transitioned and received all other endocrinological and surgical treatment without elimination of her gender dysphoria.

[6] She elaborated that she "shouldn't have to see" genitalia that remind her of being a biological male and emphasized that she has undergone evaluations by specialists. She noted that her residual anatomy "should have been gone seven years ago."

panties and a bra at a male facility and "possession of objects that could aid in escape."

**CURRENT MENTAL STATE**

Ms. Zayre-Brown was interviewed for approximately 1.5 hours using secure video conferencing rather than an in-person interview format. She was at the Anson Correctional Institution while I conducted the evaluation from my office in Staunton, Virginia. She appreciated that our meeting was related to her litigation and started the meeting by expressing a willingness to meet with me, adding, "I don't want you to be biased."[7]

She appeared her stated age and presented to the evaluation in standard prison attire. Her grooming and appearance were normal and tidy. She was heavily tattooed on her neck and upper chest. She was wearing clear-rimmed eyeglasses. Ms. Zayre-Brown exhibited no motor abnormalities, such as agitation or excessive slowing in her movements.

Her speech was normal in rate, rhythm, and volume, and not rapid or pressured. Her thinking was linear and logical, and her thought content reflected no overt paranoia, delusions, obsessions, or compulsions. Her emotional expression was euthymic (normal) and friendly. Her insight and judgment were fair. Cognitively, her processing speed was average. There was no evidence of a receptive or an expressive language disorder, and she was able to engage in reciprocal conversation. Her intelligence was judged to be above average, based on her grammar, vocabulary, and advanced education.

Regarding current psychiatric symptoms, she reported no significant mood or emotional disturbances, or problems with her focus, attention, sleep, appetite, or reality testing, i.e., the capacity to discern reality from unreality. She expressed, "I am a happy go lucky person, I try to find joy in everything." While she attested to a history of trauma during her five-year term of incarceration, she was upbeat and confident, remarking, "I'm not gonna allow it to damper my day, not gonna succumb to the pressure to have mental issues." She has maintained a positive approach to her circumstances, stating, "I avoid drama, people know me for being very flamboyant, not a tomfoolery type of person."

She said that she has her own cell and is sleeping okay, achieving adequate rest most days. She denied any experience of hallucinations and elaborated on the activities she has pursued while in custody, including taking CBT classes, doing work in commissary, janitorial, administrative, and warehouse positions, and studying to be a paralegal. She said that she journals and is writing a book. She was future-oriented and has goals for herself, such as returning to stable housing, ensuring that her credit is satisfactory, going to law school at Elon University in January 2025, having a podcast, and being a content creator. She expressed that she has special insight that others may benefit from, stating, "I'm very well aware I'm a trans woman and about its effects on my life." She concluded, "I'm very appreciative of my prison journey. I'm mentally preparing myself for my transition home." Ultimately, she wished to "share [her] experience," strength, and hope with others.

**A. Diagnostic Impression**

Because one of the goals of my evaluation was to provide an opinion regarding medical necessity for management of Ms. Zayre-Brown's gender dysphoria, I first reviewed criteria for diagnosis of the

---

[7] It is my general practice to review as few records as possible prior to meeting with individuals, to ensure that my approach is objective, focused, and not influenced by previous evaluators and/or clinicians. Any extant records are reviewed after the evaluation and, in some cases, I schedule a second evaluation to clarify any comments and/or gather more history. A second evaluation was not necessary in Ms. Zayre-Brown's case, as the history she provided to me was reliable and confirmed by the records, and because she was completely forthcoming during our encounter.

condition, as specified in the Diagnostic and Statistical Manual of Mental Disorders (DSM)-5 and summarized below.

According to the DSM-5, to meet criteria for a diagnosis of Gender Dysphoria, an individual must experience marked incongruence between her experienced or expressed gender and assigned gender, of at least 6 months duration. This incongruence is demonstrated by *at least two of the following*:

**I.**

1. **Incongruence between experienced gender and primary/secondary sex characteristics**

    a. Ms. Zayre-Brown reported that she considered herself to be a woman and identified some distress around identifying as a woman and still having male sex organs. She stated that she had some understanding of this conflict early on in her life.

2. **Desire to be rid of one's primary/secondary sex characteristics**

    a. Ms. Zayre-Brown has already undergone several operative procedures to align her gender identity with her sexual characteristics, as described above. She expressed her intention of ultimately undergoing further surgery.

3. **Desire for the primary/secondary sex characteristics of the other gender**

    a. Ms. Zayre-Brown has a history of engaging in behaviors for the stated purpose of appearing more feminine. Her gender expression is that of a female.

4. **Desire to be of the other gender**

    a. Ms. Zayre-Brown expressed that she lives as a female and has already been treated with hormonal therapy and surgeries to align her internally experienced gender and sexual characteristics. This is confirmed by her treatment providers. She is interested in continuing the process of transitioning, based on her statements regarding a vaginoplasty versus vulvoplasty.

5. **Desire to be treated as the other gender**

    a. Ms. Zayre-Brown reported that she wished to (and has) lived as a woman and has experienced some internal distress at the lack of acceptance by administrators and staff in the correctional system. She referenced examples of perceived disrespect and indifference to her transgender status and indicated that this experience has been traumatic for her. In addition, she has used female pronouns for several years.

6. **Conviction that one has the typical feelings and reactions of the other gender**

    a. Ms. Zayre-Brown described personal attributes that she identified as more typical of the female gender. She joked that she has always been flamboyant and that this has been observed by others who have contact with her.

**II. The condition is associated with clinically significant distress or impairment in social, school, or other important areas of functioning**

a. Historically, Ms. Zayre-Brown has experienced significant distress associated with her gender dysphoria.

Based on these findings, it is my opinion that _Ms. Zayre-Brown meets criteria for a_ _diagnosis of gender dysphoria_, as specified in the DSM-5. Her life narrative attests to longstanding distress caused by conflict between a deeply rooted conviction of being a woman and physical signs of being a man, and steps she has taken to overcome this distress (e.g., taking hormones and undergoing multiple operative procedures). Further, Ms. Zayre-Brown has experienced some psychiatric co-morbidity in the past, including depression, anxiety, and suicidal ideation, that seem to be at least partially mediated by her struggles with identity and acceptance (primarily from others) as a transgender individual.

**B. Medical Necessity**

According to the history provided by Ms. Zayre-Brown and included in her health records, which contained declarations and consultation notes from her urologic surgeon, therapist, and endocrinologist, she is advanced in the process of transitioning from a biological male to a transgender female. Ms. Zayre-Brown has undergone operative procedures and hormonal therapy to align her internally experienced and expressed gender identity and anatomy and has received treatment with psychotropic medications and psychotherapy to treat the dysphoria associated with her condition and co-morbid depression, anxiety, and suicidal ideation. She has sought additional gender-affirming surgery over the past few years in the North Carolina prison system and is supported by her current and past treatment providers, who assert that the procedures are medically necessary. However, having reviewed all the records and based on my nearly two-hour meeting with Ms. Zayre-Brown, *I have concluded that further gender-affirming surgery while housed as an inmate is not medically necessary at this time, and could be more detrimental to her overall psychological health.* This opinion is offered with a reasonable degree of psychiatric certainty and based on several factors that influenced my analysis.

First, while it is true that Ms. Zayre-Brown meets criteria for gender-affirming surgery, as discussed in the WPATH criteria, meeting criteria for surgery is not equivalent to medical necessity, in my opinion. The WPATH SOC criteria have indicated that candidates for genital surgery should have persistent, well-documented gender dysphoria; have the capacity to make informed decisions and consent to treatment; are age of majority; any significant mental health or medical concerns must be well-controlled; have twelve continuous months of hormone therapy and living in a gender role that is congruent with their gender identity; and have two referrals for surgery, with at least one from a qualified mental health professional. Clearly, Ms. Zayre-Brown meets established criteria for surgery, but the WPATH criteria are _not_ prescriptive. Rather, they identify candidates for whom surgery may be an option and outline steps they should fulfill before surgery is considered. The WPATH criteria do not *mandate* that a surgical procedure be authorized or approved or seek to remove decision-making from medical providers and patients.[8] Indeed, the literature on transgenderism has established that not all persons who identify as

[8] WPATH SOC previously stated, *"The SOC are intended to be flexible in order to meet the diverse health care needs of transsexual, transgender, and gender nonconforming people. While flexible, they offer standards for promoting optimal health care and guiding the treatment of people experiencing gender dysphoria-broadly defined as discomfort or distress that is caused by a discrepancy between a person's gender identity and that person's sex assigned at birth…Clinical departures from the SOC may come about because of a patient's unique anatomic, social, or psychological situation…In addition, this version of the SOC recognizes and validates various expressions of gender that may not necessitate psychological, hormonal, or surgical treatments…Health professionals can use the SOC to help patients consider the full range of health services open to them, in accordance with their clinical*

transgender seek surgery, hormones, or other intensive interventions. In sum, the WPATH criteria are useful, flexible guidelines and recommendations for clinicians and their patients, and form one part of a larger discussion that is unique to the patient's specific circumstances.

Second, in considering questions of medical necessity for gender-affirming surgery, the intensity and frequency of the patient's mental health treatment should be examined and taken into account. In other words, the patient's mental health treatment should reflect some degree of ongoing mental distress, e.g., emotional overwhelm, debilitating anxiety, panic attacks, extreme mood disturbances, behavioral disinhibition, and/or recurrent suicidal ideation and gestures, to fulfill criteria for surgery that is medically necessary. In the case of Ms. Zayre-Brown, she is not (and has not been) taking psychotropic medications for some time. She was previously taking sertraline and Strattera, but discontinued them at least a year ago, with no re-emergence of the mental health symptoms that initially warranted treatment to begin with. Similarly, Ms. Zayre-Brown indicated that she stopped participating in therapy in December 2022. In my opinion, the lack of recent interventions with psychotropic medications and therapy is not consistent with a functionally impairing disorder(s) for which surgery is medically necessary. Indeed, as described further below, Ms. Zayre-Brown's psychological status is stable and her mental status exam was largely benign.

Third, Ms. Zayre-Brown's mental status exam in September 2024 was unremarkable and reflected no urgent mental health symptoms for which surgery might be clinically indicated or expected to alleviate. She reported no depressive symptoms, anxiety, suicidal ideation with plan, neurocognitive dysfunction, or psychotic-level symptoms, including paranoia, delusions, hallucinations, or thought and behavioral disorganization. Her mood and emotional state were euthymic and her insight and judgment were intact. She highlighted several personal and professional goals that reflected an individual who is articulate, linear and logical in her thinking, focused, determined, and seeking to help others. The stability of her mental state, which substantiates that surgery in the DAC is not medically necessary at this time, in my opinion, is contrasted with the two real-life examples this evaluator cited in the Psychosomatics article above. Ms. Zayre-Brown's clinical course and trajectory had not risen to a level of acuity, threat, or danger, for which surgery could be otherwise considered medically necessary and appropriate. In my opinion, any gender-affirming surgery for Ms. Zayre-Brown would not be emergent or immediately necessary, at this time. While she is adamant about her desire to have bottom surgery, she remains resilient and has not permitted the delays in getting this surgery to alter her goals or cause recent psychiatric symptoms. As elucidated above, she is planning to attend law school, is interested in creating content and having a podcast, is writing a book, and has taken classes in CBT and worked various positions while in custody. To be clear, this does not discount evidence-based data that surgery for transgender persons can be effective.

Fourth, the outcomes of any surgical procedure, including those sought by Ms. Zayre-Brown, are optimized when the person undergoing surgery has consistent external supports, ready access to doctors, and a comfortable environment in which to recover. This dynamic is not unlike psychiatric patients who have undergone interventions that are associated with both clinical risks and rewards (like gender surgery), such as electroconvulsive therapy (ECT), ketamine infusion treatment, neurosurgery for mental illness, and eye movement desensitization and reprocessing (EMDR). Presently, Ms. Zayre-Brown is physically separated from her spouse and grandmother, the very two individuals she has championed as some of her biggest supports. She sees her spouse through the artificial means of a videoconferencing format. In my opinion, both preparing for, and recovering from, surgery would be optimized in the familiar and intimate environment of her home and amongst her family unit, as any surgical procedure she undergoes will be an adjustment for all and should best be processed together, rather than isolated from one another. Moreover, Ms. Zayre-Brown's surgeon had advised her to lose a significant amount of weight prior to surgery to optimize the chances of a successful procedure. To my knowledge and

*needs and goals for gender expression."*

understanding, Ms. Zayre-Brown has not lost this weight. Therefore, it may be inferred that if her surgeon advised a delay in surgery due to anatomical considerations and health maintenance factors, it is reasonable and appropriate that it be delayed due to potential *psychological* factors and until Ms. Zayre-Brown is immersed in a healthier, more supportive, and non-carceral/punitive setting. Likewise, Ms. Zayre-Brown asserted to me that she plans to have either a vaginoplasty or vulvoplasty in the future, as well as modification of her Adam's apple. At one point, Ms. Zayre-Brown expressed that she wanted a vulvoplasty because she thought the DAC would be more likely to pay for it, i.e., she felt the DAC would not pay for vaginoplasty, which would be associated with electrolysis. As the exact nature of the surgery she wants is a critically important decision to her overall physical and mental health, I believe that it should be best made alongside family and other supports that cannot be found in the prison system. As surgery can be a life-altering decision and intervention, it is advisable, more respectful, and more affirming to Ms. Zayre-Brown's entire personhood that any decision she makes be the product of a cogent, thorough, and measured research and analysis rather than motivated, partially, by what she thinks she can get in the restrictive setting of a prison.

Finally, community-based surgical management of gender dysphoria often takes years to coordinate and schedule. During the COVID-19 pandemic, gender-affirming surgeries (as well as most elective procedures) were on hold. That persons with gender dysphoria must wait for surgery due to various delays (as is the case with Ms. Zayre-Brown) is not inconsistent with real-world conditions.

In summary, Ms. Zayre-Brown is a highly intelligent and motivated transgender female who is seeking bottom surgery to assist in the management of her gender dysphoria. Her health records clearly support a diagnosis of gender dysphoria, based on the DSM-5 criteria and application of the WPATH criteria to her specific life narrative and treatment. Ms. Zayre-Brown and her treatment providers have posited that gender-affirming surgery would alleviate her gender dysphoria. This may, indeed, be the case for her moving forward and there is no doubt that surgery can be beneficial for many individuals who identify as transgender. However, for the reasons enumerated and discussed above, I have identified no compelling clinical reasons or evidence that gender-affirming surgery must be completed immediately and prior to Ms. Zayre-Brown's scheduled release on November 2, 2024.

I appreciate the opportunity to work with your system, and I hope that this review is useful to you. The opinions above reflect the information available to me at the time of this writing (that is, the sources listed earlier in this report) and may be subject to modification if additional information becomes available. Please do not hesitate to contact me should you have any questions, or if I can be of further assistance.

Respectfully submitted,

Eugene F. Simopoulos, M.D.

Board Certified, (ABPN) Psychiatry
Board Certified, (ABPN) Psychiatry - Forensic Psychiatry

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*,<br><br>Defendants. | No. 3:22-cv-00191-MOC-DCK |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE OF COMPLIANCE WITH THE COURT'S INJUNCTION**

On September 23, 2024, following a hearing, this Court approved Drs. Renberg and Simopoulos to re-evaluate Plaintiff's need for gender-affirming surgery. (Doc. 134 at 1). The Court ordered that a review take place by October 7, 2024, and that in the thirty days thereafter, Drs. Simopoulos and Renberg would, as "the new committee," "meet, prepare a report, and inform the Court and Plaintiff whether Defendants will provide Plaintiff the surgery she seeks." *Id.*

On November 6, 2024, Defendants filed their "Notice of Compliance with the Court's Injunction" and a statement from each doctor. (Docs. 140, 140-1, 140-2). Defendants state that "Drs. Renberg and Simopoulos both concluded that the gender affirming surgery requested by Plaintiff is not medically necessary." (Doc. 140 at 2-3). As explained below, Defendants have failed to comply with basic aspects of the Court's orders, and their submission is ultimately irrelevant because Plaintiff has been released from state custody.

## I. Defendants have not fully complied with the Court's order.

The Court's permanent injunction required Defendants to have new doctors reevaluate whether gender-affirming surgery is medically necessary for Plaintiff, "prepare a report," and "inform the Court and Plaintiff whether Defendants will provide Plaintiff the surgery she seeks." (Doc. 116 at 7; Doc. 134 at 1.) Defendants failed to do that.

Instead, Drs. Renberg and Simopolous addressed whether Plaintiff could wait to have surgery in more "optimal" conditions outside of prison.[1] (*See* Doc. 141 at 8 ("I have concluded that further gender-affirming surgery *while housed as an inmate* is not medically necessary *at this time*."); 9 ("In my opinion, any gender-affirming surgery for Ms. Zayre-Brown would not be *emergent* or *immediately necessary*, *at this time*."); 10 ("I have identified no compelling clinical reasons or evidence that gender-affirming surgery must be completed *immediately and prior to Ms. Zayre-Brown's scheduled release on November 2, 2024*."); Doc. 140-2 at 1 ("A review of these materials does not indicate that the plaintiff has been experiencing *recent* significant psychiatric symptoms which would support an opinion about *imminent* medical necessity.")(emphases added)).

It is legally irrelevant under the Eighth Amendment whether a prisoner could obtain better healthcare outside of prison. "Prison staff cannot bide their time and

[1] Dr. Simopoulos acknowledges that Mrs. Zayre-Brown's "treatment providers have posited that gender-affirming surgery would alleviate her gender dysphoria" and concedes that "[t]his may, indeed be the case for her moving forward and there is no doubt that surgery can be beneficial for many individuals who identify as transgender." (Doc. 141 at 10).

wait for an inmate's sentence to expire before providing necessary treatments." *Mitchell v. Kallas*, 895 F.3d 492, 496 (7th Cir. 2018). The Eighth Amendment asks whether a prisoner is suffering harm that could have been prevented by timely treatment. *See Sharpe v. S.C. Dep't of Corr.*, 621 Fed. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). Whether a patient could obtain better treatment outside of prison is also irrelevant under the WPATH Standards of Care. (*See, e.g.,* Doc. 63 at 5).

Here, the operative question has never been "can Plaintiff survive until the end of her prison term without gender-affirming surgery?" Yet that is the question that Defendants and their experts insist on answering in a transparent attempt to avoid Defendants' constitutional obligations.

What's more, Defendants have failed to satisfy other basic requirements of this Court's September 23 Order. Drs. Simopoulos and Renberg each submitted individual statements, but Defendants have not provided "a report" prepared by both doctors as "the new committee." (Doc. 134 at 1). Dr. Renburg's two-page submission,[2] dated November 1, 2024, which notes "discussion with Dr. Simopoulos" (Doc. 140-2 at 2), is the only indication that these doctors communicated at all. And far from suggesting

---

[2] Dr. Renburg did not meet Plaintiff or conduct a telehealth interview with her before drafting her two-page assessment. (As noted by Plaintiff before, (*see, e.g.* Doc. 68 at 6), and in her Renewed Proposal for Compliance with the Court's Permanent Injunction, an opinion absent an evaluation of Plaintiff is of limited value in assessing her current condition. (Doc. 135 at 2-3; Doc. 131 at 2 n.1, 3.). As such, Dr. Renburg's brief statement should be afforded little weight.

that they reached their conclusions together, Dr. Renburg's statement notes that following her records review and discussion with Dr. Simopoulos, she agreed "with his opinion that gender affirming surgery is not presently medically necessary." *Id.* What's more, while the notice and the individual statements render their conclusions regarding medical necessity, none of these materials inform the court "whether Defendants will provide Plaintiff the surgery she seeks." *Id.* Thus, from the face of the submitted documents, Defendants have not in fact complied with the terms of the Court's order, and most importantly, as discussed below, their reports should have no bearing on this case going forward.

## II. The erroneous conclusion of the new committee is irrelevant to the live claims in this litigation.

Defendants' reevaluation of Plaintiff is also irrelevant because, as noted in their recent filings to the Fourth Circuit, the parties agree that Plaintiff's Eighth Amendment claim for injunctive relief is now moot. (*See* 4th Cir. Docs. 44, 45, 46). Plaintiff is no longer in Defendants' custody, and even had the new committee concluded that surgery *is* medically necessary for Mrs. Zayre-Brown, it is no longer possible for Defendants to coordinate the provision of that care.

Plaintiff's ADA, Rehabilitation Act, and state law damages claims remain outstanding. These claims for damages concern Defendants' past conduct and Plaintiff's state at the time that Defendants denied surgery and Plaintiff brought suit. *See Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994). The new committee members' misguided opinion that Mrs. Zayre-Brown does not need surgery at the time of their

evaluation, on the brink of her release from prison, is not relevant to whether Defendants wrongfully refused to provide her surgery in February 2022, more than two years before her release from prison and at a time when her suffering was obvious—as this Court has acknowledged. (*See* Doc. 92 at 8 & n.5 ("That Defendant's denial caused Plaintiff to suffer significant injury is beyond genuine dispute.")).

## CONCLUSION

Defendants have failed to comply with the Court's permanent injunction. Their submission is irrelevant and should have no bearing on further proceedings before this Court.

Respectfully submitted this the 21st day of November, 2024.


*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)

L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 21, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-191-MOC-DCK

| | | |
|---|---|---|
| **KANAUTICA ZAYRE-BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on its own motion following Plaintiff's Response to Defendants' Notice of Compliance with the Court's Injunction. See (Doc. No. 144).

## I. BACKGROUND

On September 23, 2024, following a hearing, this Court approved Drs. Renberg and Simopoulos to re-evaluate Plaintiff's need for gender-affirming surgery. (Doc. No. 134 at 1). The Court ordered that a review take place by October 7, 2024, and that in the thirty days thereafter, Drs. Simopoulos and Renberg would, as "the new committee," "meet, prepare a report, and inform the Court and Plaintiff whether Defendants will provide Plaintiff the surgery she seeks." (Id.).

On November 6, 2024, Defendants filed their "Notice of Compliance with the Court's Injunction" and a statement from each doctor. (Doc. Nos. 140, 140-1, 140-2). Defendants state that "Drs. Renberg and Simopoulos both concluded that the gender affirming surgery requested by Plaintiff is not medically necessary." (Doc. No. 140 at 2–3).

## II. DISCUSSION

The Court's permanent injunction required Defendants to have new doctors reevaluate whether gender-affirming surgery is medically necessary for Plaintiff, "prepare a report," and "inform the Court and Plaintiff whether Defendants will provide Plaintiff the surgery she seeks." (Doc. No. 116 at 7; Doc. No. 134 at 1). For the following reasons, Defendants have failed to comply with the Court's order.

Here, Drs. Renberg and Simopolous addressed whether Plaintiff could wait to have surgery in more "optimal" conditions outside of prison.[1] (See Doc. No. 141 at 8 ("I have concluded that further gender-affirming surgery while housed as an inmate is not medically necessary at this time."); 9 ("In my opinion, any gender-affirming surgery for Ms. Zayre-Brown would not be emergent or immediately necessary, at this time."); 10 ("I have identified no compelling clinical reasons or evidence that gender-affirming surgery must be completed immediately and prior to Ms. Zayre-Brown's scheduled release on November 2, 2024."); Doc. No. 140-2 at 1 ("A review of these materials does not indicate that the plaintiff has been experiencing recent significant psychiatric symptoms which would support an opinion about imminent medical necessity.")(emphases added)).

The Court agrees with Plaintiff that it is legally irrelevant under the Eighth Amendment whether a prisoner could obtain better healthcare outside of prison. "Prison staff cannot bide their time and wait for an inmate's sentence to expire before providing necessary treatments." Mitchell v. Kallas, 895 F.3d 492, 496 (7th Cir. 2018). In considering whether the Eighth Amendment has been violated, courts ask whether a prisoner is suffering harm that could have been prevented by

[1] Dr. Simopoulos acknowledges that Miss Zayre-Brown's "treatment providers have posited that gender-affirming surgery would alleviate her gender dysphoria" and concedes that "[t]his may, indeed be the case for her moving forward and there is no doubt that surgery can be beneficial for many individuals who identify as transgender." (Doc. No. 141 at 10).

timely treatment. See Sharpe v. S.C. Dep't of Corr., 621 Fed. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). Whether a patient could obtain better treatment outside of prison is also irrelevant under the WPATH Standards of Care. (See, e.g., Doc. No. 63 at 5).

Defendants also failed to satisfy other basic requirements of this Court's September 23 Order. Drs. Simopoulos and Renberg submitted individual statements. Defendants have not provided "a report" prepared by both doctors as "the new committee." (Doc. No. 134 at 1). Dr. Renburg's two-page submission,[2] dated November 1, 2024, which notes "discussion with Dr. Simopoulos" (Doc. No. 140-2 at 2), is the only indication that these doctors communicated at all. Furthermore, far from suggesting that they reached their conclusions together, Dr. Renburg's statement notes that following her records review and discussion with Dr. Simopoulos, she agreed "with his opinion that gender affirming surgery is not presently medically necessary." (Id.) (emphasis added). Additionally, while the notice and the individual statements render their conclusions regarding medical necessity, none of these materials inform the court "whether Defendants will provide Plaintiff the surgery she seeks." (Id.). In sum, Defendants have not in fact complied with the terms of the Court's order.

Defendants' reevaluation of Plaintiff is also irrelevant because the parties agree that Plaintiff's Eighth Amendment claim for injunctive relief is now moot. Plaintiff is no longer in

[2] Dr. Renburg did not meet Plaintiff or conduct a telehealth interview with her before drafting her two-page assessment. (As noted by Plaintiff before, (see, e.g. Doc. 68 at 6), and in her Renewed Proposal for Compliance with the Court's Permanent Injunction, an opinion absent an evaluation of Plaintiff is of limited value in assessing her current condition. (Doc. 135 at 2-3; Doc. 131 at 2 n.1, 3.). As such, Dr. Renburg's brief statement should be afforded little weight.

Defendants' custody, and even had the new committee concluded that surgery is medically necessary for Miss Zayre-Brown, it is no longer possible for Defendants to coordinate the provision of that care.

Plaintiff's ADA, Rehabilitation Act, and state law damages claims remain outstanding. These claims for damages concern Defendants' past conduct and Plaintiff's state at the time that Defendants denied surgery and Plaintiff brought suit. See Farmer v. Brennan, 511 U.S. 825, 846–47 (1994). The new committee members' opinion that Miss Zayre-Brown does not need surgery at the time of their evaluation, on the brink of her release from prison, is not relevant to whether Defendants wrongfully refused to provide her surgery in February 2022, more than two years before her release from prison and at a time when her suffering was obvious—as this Court has acknowledged. (See Doc. No. 92 at 8 & n.5 ("That Defendant's denial caused Plaintiff to suffer significant injury is beyond genuine dispute.")).

In sum, Defendants have failed to comply with the Court's permanent injunction. Therefore, the Court will require Defendants to re-submit a report that complies with the Court's permanent injunction. Defendants shall submit the report within 10 days of the entry of this Order.

**IT IS SO ORDERED**.

Signed: November 22, 2024

Max O. Cogburn Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

KANAUTICA ZAYRE-BROWN,

Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,

Defendants.

**DEFENDANTS' NOTICE OF FOURTH CIRCUIT ORDER**

**Update on Recent Developments**

On November 4, 2024, the U.S. Court of Appeals for the Fourth Circuit issued an order *sua sponte* directing the parties to file a supplemental brief by November 19, 2024, addressing three questions: (1) On what date is Appellee scheduled to be released from custody? (2) Will her release from custody render this appeal moot? (3) If so, does *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), apply? (Doc. 43)[1]

As directed by the Fourth Circuit, the parties filed supplemental briefs addressing these questions on November 19, 2024. (Doc. 44, 46) Plaintiff also filed a motion to dismiss the appeal as moot. (Doc. 45) On November 25, 2024, the Fourth Circuit issued an order granting the motion to dismiss Defendants' appeal as moot. (Doc. 49) Additionally, the Fourth Circuit's order provides that "[s]olely because of happenstance that Plaintiff was released from Defendants' custody, the district court's judgment is vacated." (Doc. 43) The Fourth Circuit then filed a judgment dismissing the appeal and vacating the district court's judgment. (Doc. 50-2)[2]

[1] Defendants use Doc. to refer to the docket entries in the Fourth Circuit.
[2] Defendants use DE to refer to the docket entries in the district court.

**Joint Report of the New Committee and Defendants' Position**

The vacatur by the Fourth Circuit of the district court's injunction necessarily vacates subsequent orders related to execution of that injunction, including DE 146. However, out of respect to this Court and to clarify Defendants' previous notice of compliance with the injunction (DE 144), Defendants wish to inform this Court as follows.

The opinions of Drs. Renberg and Simopolous, which were included in Defendants' previous filing (*see* DE 140-1 and 140-2), were not offered based on Plaintiff's incarcerated status. Instead, the new committee determined that Ms. Zayre-Brown's gender-affirming surgery was not medically necessary and this opinion was offered regardless of whether Ms. Zayre-Brown remained in custody or had been released from the North Carolina Department of Adult Correction. Moreover, Drs. Renberg and Simopolous reached this conclusion jointly as the new committee and based on their consultation with each other. Attached hereto as Exhibit A is a document jointly executed by Drs. Renberg and Simopolous that clarifies the opinion of the new committee as requested by this Court.

Furthermore, Defendants will follow the guidance of the new committee and decline to provide the surgery Plaintiff seeks for the following reasons. First, Plaintiff is no longer in custody as she was released on November 2, 2024. Thus, Defendants do not have the ability to direct her healthcare, and this request for relief is moot as the parties agree and the Fourth Circuit has determined. Second, the new committee's conclusion that the surgery is not medically necessary further confirms Defendants' decision to deny the requested surgery as not medically necessary.

This the 26th day of November 2024.


**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
NC Bar No. 43167
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendants***

November 25, 2024

Re: Kanautica Zayre-Brown v. North Carolina Department of Adult Correction, et al,

Dear Mr. Rodriguez,

Please find this correspondence as a response from Ingrid Renberg, MD, and Eugene F. Simopoulos, M.D., to the Court's order dated November 22, 2024 in the matter of Kanautica Zayre-Brown v. North Carolina Department of Adult Correction, et al,. Dr. Renberg and I were asked to render an opinion as to whether Ms. Zayre-Brown's gender-affirming surgery was medically necessary. In response, we submitted two separate reports which were provided to the Court in a November 6, 2024, filing. We were then provided a copy of the Court's November 22, 2024, order and have been asked to submit one report representative of our collaboration and joint committee determination on the question of medical necessity.

Dr. Renberg and I have reviewed the Court's recent order in its entirety and submit this updated documentation to clarify and communicate our joint position, as the new committee, that Ms. Zayre-Brown's gender-affirming surgery was not medically necessary. This opinion was offered regardless of whether Ms. Zayre-Brown remained in custody or had been released from the North Carolina Department of Adult Correction. The new committee's position was based on our mutual and comprehensive review of the documentation we were each provided and our joint consultation. Our consultation facilitated a robust discussion that included, but was not limited to, Ms. Zayre-Brown's petition, her mental health and other treatment, the WPATH criteria, and an analysis of previous cases in which we had been asked to evaluate transgender patients' requests for hormonal therapy and/or gender-affirming therapy in our respective Commonwealths.

Respectfully submitted,

Eugene Simopoulos, MD

**Eugene F. Simopoulos, M.D.**
Board Certified, (ABPN) Psychiatry
Board Certified, (ABPN) Psychiatry - Forensic Psychiatry

I K Renberg MD

**Ingrid Renberg, MD**
Board Certified, (ABPN) Psychiatry
Board Certified, (ABPN) Psychiatry - Forensic Psychiatry

FILED: November 25, 2024

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 24-6477
(3:22-cv-00191-MOC-DCK)

---

KANAUTICA ZAYRE-BROWN

Plaintiff - Appellee

v.

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS; TODD E. ISHEE, in his official capacity as Secretary of the North Carolina Department of Adult Correction; GARY JUNKER, in his official capacity as Deputy Secretary of the North Carolina Department of Adult Correction; ARTHUR CAMPBELL, in his official capacity as Medical Director III, the North Carolina Department of Adult Correction; BRANDESHAWN HARRIS, in her official capacity as Chief Deputy Secretary, the North Carolina Department of Adult Correction; TERRI CATLETT, in her official capacity as Director of Healthcare Administration, Division of Prisons, the North Carolina Department of Public Safety; JONATHAN PEIPER, in his official capacity as Human Services Director the North Carolina Department of Adult Correction; BRIAN SHEITMAN, Medical Director III, the North Carolina Department of Adult Correction; VALERIE LANGLEY, in her official capacity as Nurse Director the North Carolina Department of Adult Correction; ABHAY AGARWAL, Medical Director II, the North Carolina Department of Adult Correction; SARAH COBB, in her official capacity as Director of Rehabilitative Services, Division of Prisons, the North Carolina Department of Adult Correction; JOSH PANTER, in his official capacity as Correctional Administrator the North Carolina Department of Adult Correction; CHARLOTTE WILLIAMS, in her official capacity as a Program Manager, the North Carolina Department of Adult Correction; ELTON AMOS, in his official capacity as Medical Director II, the North Carolina Department of Adult

Correction

Defendants - Appellants

---

J U D G M E N T

---

In accordance with the decision of this court, this appeal is dismissed and the judgment of the district court is vacated.

This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

/s/ NWAMAKA ANOWI, CLERK

FILED: November 26, 2024

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 24-6477
(3:22-cv-00191-MOC-DCK)

---

KANAUTICA ZAYRE-BROWN

Plaintiff - Appellee

v.

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS; TODD E. ISHEE, in his official capacity as Secretary of the North Carolina Department of Adult Correction; GARY JUNKER, in his official capacity as Deputy Secretary of the North Carolina Department of Adult Correction; ARTHUR CAMPBELL, in his official capacity as Medical Director III, the North Carolina Department of Adult Correction; BRANDESHAWN HARRIS, in her official capacity as Chief Deputy Secretary, the North Carolina Department of Adult Correction; TERRI CATLETT, in her official capacity as Director of Healthcare Administration, Division of Prisons, the North Carolina Department of Public Safety; JONATHAN PEIPER, in his official capacity as Human Services Director the North Carolina Department of Adult Correction; BRIAN SHEITMAN, Medical Director III, the North Carolina Department of Adult Correction; VALERIE LANGLEY, in her official capacity as Nurse Director the North Carolina Department of Adult Correction; ABHAY AGARWAL, Medical Director II, the North Carolina Department of Adult Correction; SARAH COBB, in her official capacity as Director of Rehabilitative Services, Division of Prisons, the North Carolina Department of Adult Correction; JOSH PANTER, in his official capacity as Correctional Administrator the North Carolina Department of Adult Correction; CHARLOTTE WILLIAMS, in her official capacity as a Program Manager, the North Carolina Department of Adult Correction; ELTON AMOS, in his official

capacity as Medical Director II, the North Carolina Department of Adult Correction

Defendants - Appellants

---

AMENDED ORDER

---

Upon consideration of the supplemental briefing, the court grants the motion to dismiss the appeal as moot. Solely because of happenstance that Plaintiff was released from Defendants' custody, the district court's judgment is vacated.

For the Court

/s/ Nwamaka Anowi, Clerk

FILED: December 17, 2024

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 24-6477
(3:22-cv-00191-MOC-DCK)

---

KANAUTICA ZAYRE-BROWN

Plaintiff - Appellee

v.

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS; TODD E. ISHEE, in his official capacity as Secretary of the North Carolina Department of Adult Correction; GARY JUNKER, in his official capacity as Deputy Secretary of the North Carolina Department of Adult Correction; ARTHUR CAMPBELL, in his official capacity as Medical Director III, the North Carolina Department of Adult Correction; BRANDESHAWN HARRIS, in her official capacity as Chief Deputy Secretary, the North Carolina Department of Adult Correction; TERRI CATLETT, in her official capacity as Director of Healthcare Administration, Division of Prisons, the North Carolina Department of Public Safety; JONATHAN PEIPER, in his official capacity as Human Services Director the North Carolina Department of Adult Correction; BRIAN SHEITMAN, Medical Director III, the North Carolina Department of Adult Correction; VALERIE LANGLEY, in her official capacity as Nurse Director the North Carolina Department of Adult Correction; ABHAY AGARWAL, Medical Director II, the North Carolina Department of Adult Correction; SARAH COBB, in her official capacity as Director of Rehabilitative Services, Division of Prisons, the North Carolina Department of Adult Correction; JOSH PANTER, in his official capacity as Correctional Administrator the North Carolina Department of Adult Correction; CHARLOTTE WILLIAMS, in her official capacity as a Program Manager, the North Carolina Department of Adult Correction; ELTON AMOS, in his official capacity as Medical Director II, the North Carolina Department of Adult Correction

Defendants - Appellants

---

M A N D A T E

---

The judgment of this court, entered November 25, 2024, takes effect today.

This constitutes the formal mandate of this court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

*/s/Nwamaka Anowi, Clerk*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*,<br><br>Defendants. | No. 3:22-cv-00191-MOC-DCK |

**JOINT STIPULATION OF DISMISSAL**

All parties to the above-captioned action, acting through counsel and pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), hereby dismiss the remaining claims in this action (Plaintiff's state constitutional *Corum* claim, Americans with Disabilities Act claim, and Rehabilitation Act claim) with prejudice. The parties further agree and stipulate that the court retains jurisdiction to resolve any motion for attorneys' fees and costs with respect to the Eighth Amendment claim,[1] on the timeline set forth in Doc. 151.

Respectfully submitted this the 20th day of June, 2025.

[1] In so stipulating, Defendants do not concede or stipulate to Plaintiff's claim of prevailing-party status for purposes of any fee award and reserve the right to dispute prevailing-party status and otherwise contest the motion for fees.

For Defendants:

**JEFF JACKSON**
**Attorney General**

*<u>/s/ Stephanie A. Brennan</u>*
Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

*<u>/s/ Laura H. McHenry</u>*
Laura H. McHenry
Special Deputy Attorney General
N.C. State Bar No. 45005
lmchenry@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

For Plaintiff:

*<u>/s/ Jaclyn A. Maffetore</u>*
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on June 20, 2025, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*,<br><br>Defendants. | No. 3:22-cv-00191-MOC-DCK |

## PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

Pursuant to Fed. R. Civ. P. 54 and 42 U.S.C. § 1988, and this Court's December 5, 2024 order (Doc. 151), Plaintiff respectfully moves the Court for an award of reasonable attorney's fees, litigation expenses, and costs.

The Court granted Plaintiff summary judgment on her Eighth Amendment claim and entered a permanent injunction against Defendants, entitling Plaintiff to prevailing party status. The costs and fees sought by counsel are reasonable. Plaintiff is represented by counsel with extensive experience in civil rights litigation. Her rights were vindicated, and her victory paves the way for a constitutionally compliant process for all transgender prisoners who seek gender-affirming surgery after her. Plaintiff's counsel expended a reasonable amount of time achieving this result and defending it on appeal, and, in the exercise of billing judgment, counsel have

significantly reduced the total hours for which they seek compensation. Accordingly, the Court should award Plaintiff's counsel's fees and costs as follows:

- $408,843.75 in attorneys' fees to the ACLU of North Carolina Legal Foundation
- $4,138.94 in expenses to the ACLU of North Carolina Legal Foundation
- $117,363.75 in attorneys' fees to the American Civil Liberties Union Foundation
- $6,246.35 in expenses to the American Civil Liberties Union Foundation

Plaintiff is contemporaneously filing a memorandum of law and exhibits in support for this motion, as well as a Bill of Costs for taxable costs of $21,617.90.

Respectfully Submitted this the 21st day of July, 2025.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF CONFERENCE

Pursuant to LR 7.1, I certify that on July 16, 2025 counsel for Plaintiff conferred with counsel for Defendants via email to notify them of Plaintiff's intent to file the instant Motion for Attorneys' Fees and Costs. On that date, counsel for Defendants indicated that they oppose the motion and that they intend to file a response in opposition.

Respectfully submitted this the 21st day of July, 2025.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on July 21, 2025 I filed the foregoing with the Clerk of Court using the CM/ECF system which will effect service on all counsel of record.

Respectfully submitted this the 21st day of July, 2025.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*

Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>*Plaintiff,*<br><br>v.<br><br>THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS, *et al.*,<br><br>*Defendants.* | No. 3:22-cv-00191 |

**DECLARATION OF JON W. DAVIDSON**

1. My name is Jon W. Davidson, and I am a Senior Counsel at the American Civil Liberties Union Foundation ("ACLU") and am one of the counsel for Plaintiff Kanautica Zayre-Brown ("Plaintiff") in the above-captioned case. I am admitted pro hac vice in this case.

2. The ACLU is a non-profit civil rights organization and law firm that works to defend and advance the individual rights and liberties that the Constitution and the laws of the United States guarantee for everyone in this country.

3. The ACLU does not charge its clients for its services.

4. The ACLU is co-counsel in this litigation together with the ACLU of North Carolina and Patterson Harkavy LLP, which assisted in this litigation on a pro bono basis. While the ACLU of North Carolina was lead counsel in this case, the ACLU was actively involved at every point in representing Plaintiff in this litigation,

including drafting pleadings and briefs, taking and defending depositions, drafting and responding to written discovery, and examining witnesses at the evidentiary hearing held in this case.

5. I graduated from Yale Law School in 1979. I then served as a law clerk for the late Hon. Wm. Matthew Byrne, Jr., who was a United States District Court judge for the Central District of California. After my clerkship, I became an associate and subsequently a partner at the Los Angeles law firm of Irell & Manella, specializing in complex civil litigation. I joined the staff of the ACLU Foundation of Southern California as staff counsel in 1988 and thereafter was promoted to senior staff counsel. In 1995, I moved from the ACLU Foundation of Southern California to Lambda Legal Defense and Education Fund ("Lambda Legal"), which is the nation's oldest and largest nonprofit legal organization specializing in the rights of lesbian, gay, bisexual, transgender, queer, and other sexual and gender identity minority ("LGBTQ+") people and people living with HIV. I began at Lambda Legal as a supervising attorney, subsequently was promoted to senior counsel, and then was selected to become the organization's national legal director, a position I served in for more than 12 years. In that position, I ultimately supervised a legal team of 31 attorneys and 16 support staff across Lambda Legal's six offices nationwide. After 22 years at the organization, I departed in 2017 to briefly become a consultant for several nonprofit entities on LGBTQ+ rights issues and then, in 2018, I became Chief Counsel at Freedom for All Americans, a nonprofit organization working to obtain statutory protections against gender identity and sexual orientation discrimination

nationwide. In February of 2022, I left that organization to return full-time to litigation at the national ACLU, working from Los Angeles. I also have served as an adjunct professor at the UCLA School of Law, the University of Southern California Law Center, Loyola Law School, and the former Whittier Law School, teaching classes that, among other matters, addressed the rights of transgender and other LGBTQ+ individuals.

6. During my career, I have been counsel in numerous matters involving the rights of transgender individuals, including, among others, *Orr v. Trump*, 2025 WL 1695941 (D. Mass. June 17, 2025) (granting a preliminary injunction to a nationwide class of transgender, intersex, and nonbinary Americans against a recently adopted federal policy requiring listing one's sex assigned at birth on new, renewed, or replaced passports); *Bridge v. Oklahoma State Dept. of Education,* 2024 WL 150598 (W.D. Okla. Jan 12, 2024), *appeal pending*, No. 24-6072 (10th Cir.) (challenging state law barring use of school restrooms inconsistent with one's sex assigned at birth); *Karnoski v. Trump*, 2017 WL 6311305 (Dec. 11, 2017) (granting a preliminary injunction against an Executive Order that barred transgender individuals from serving in the military); and *Carcaño v. McCrory*, 203 F. Supp. 3d 615 (M.D.N.C. 2016) (granting a preliminary injunction against enforcement of a state law barring transgender individuals from accessing multi-user restrooms and other single-sex facilities unless they have changed the gender marker on their birth certificate). I have also been counsel in multiple cases representing incarcerated people, specifically including litigation involving the right of incarcerated transgender individuals to obtain gender-affirming surgery.

*See*, *e.g.*, *Rosati v. Igbinoso*, 791 F.3d 1037 (9th Cir. 2015) (reversing dismissal of transgender prisoner's complaint seeking gender-affirming surgery).

7. In addition to myself, several other lawyers from the ACLU worked on the instant litigation, including Li Nowlin-Sohl, who is a Senior Staff Attorney at the ACLU. Ms. Nowlin-Sohl graduated from New York University School of Law in 2011. She was in private practice at the firm of Paul Hastings LLP for three years from 2011 to 2014, during which time she handled a wide range of civil litigation matters. She then served as a clerk for the late Hon. Judge Gladys Kessler on the U.S. District Court for the District of Columbia. Prior to joining the staff of the ACLU, she worked for five years at the ACLU of Washington and one year at the firm of Keller Rohrback LLP.

8. During her career, Ms. Nowlin-Sohl has been counsel in many cases involving the rights of transgender individuals, including *Orr v. Trump*, *supra*; *L.E. v. Lee*, 728 F. Supp. 3d 806 (M.D. Tenn. 2024) (granting a preliminary injunction requiring defendants to permit transgender boy to seek to join boys' high school golf team notwithstanding state Gender in Athletics Law); *Poe v. Labrador*, 709 F. Supp. 3d 1169 (D. Idaho 2023) (granting a preliminary injunction in pending challenge to Idaho law criminalizing provision of gender affirming medical care to youth); *Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022) (affirming grant of a preliminary injunction in pending challenge to Arkansas law criminalizing provision of gender affirming medical care to youth); *Enstad v. PeaceHealth*, No. 2:17-cv-01496 (W.D. Wash. 2019) (challenge to medical plan's exclusion of gender affirming care for transgender individuals); and *Robbins v. Swedish Health Services*, No. 17-2-32900-2 (Wash. Superior Ct. 2017) (challenge to discriminatory actions against transgender patient). She has also been counsel in numerous cases representing incarcerated transgender individuals, specifically including litigation seeking the provision of gender affirming

medical care, including surgery. These include *Kingdom v. Trump*, 2025 WL 1568238 (D.D.C. June 3, 2025) (granting class certification of individuals incarcerated in federal prisons who have been or will be diagnosed with gender dysphoria and granting preliminary injunction requiring restoration and maintenance of access to treatment for gender dysphoria); *Keohane v. Dixon*, No. 2:24-cv-4334 (N.D. Fla. 2024) (pending class action challenging Florida Department of Corrections policy prohibiting gender affirming health care to incarcerated individuals); and *Iglesias v. Bureau of Prisons*, 2021 WL 6112790 (S.D. Ill. Dec. 27, 2021) (granting preliminary injunction requiring evaluation of transgender woman's request for gender affirming surgery in case in which a settlement to receive gender affirming surgeries was subsequently achieved).

9. Attached to this declaration as Attachments 1 and 2 are compilations of my and Ms. Nowlin-Sohl's time on this case showing the tasks for which the ACLU seeks fees. In the exercise of billing judgment, entries that may have been duplicative, excessive, redundant, or otherwise unnecessary have been removed. Entries for time spent briefing Plaintiff's motion for a preliminary injunction and that that could be identified as only relating to Plaintiff's unsuccessful claims have been removed. In all, more than 450 hours billed by Ms. Nowlin-Sohl and me have been removed. In addition, the ACLU is only seeking fees for Ms. Nowlin-Sohl and myself even though other lawyers, paralegals, and law students working at the ACLU spent an extremely large number of hours working on this case.

10. All time entries in the Attachments 1 and 2 were recorded contemporaneously in tenth-of-an hour increments with the work being done using a computer-based system, as is the regular practice of attorneys at the ACLU for all cases that are potentially fee-generating.

11. The time entries in the attached exhibits reflect time spent over a period of more than three years investigating this case; drafting the complaint; defeating Defendants' motion to dismiss; conducting extensive discovery, which included reviewing thousands of documents and taking or defending fifteen depositions, including five expert depositions; partially defeating Defendants' Rule 35 motion; routine litigation tasks including legal research, setting legal strategy, client communications, and communications with co-counsel; two rounds of summary judgment briefing; briefing *Daubert* motions to exclude Defendants' expert witnesses; preparing for and participating in an evidentiary hearing; defeating Defendants' motion to stay the Court's permanent injunction before this Court and the Fourth Circuit; merits briefing at the Fourth Circuit; and responding to Defendants' submissions in response to this Court's permanent injunction. As noted above, time spent by Ms. Nowlin-Sohl or me on the case that was duplicative of that spent by our co-counsel (such as attending depositions they took) has been removed. I believe that the work Ms. Nowlin-Sohl and I performed in connection with all these tasks was reasonably necessary to the successful prosecution of this case.

12. The ACLU seeks an hourly rate of $262.50, the maximum currently allowed by the Prison Litigation Reform Act (PLRA), for the work of Ms. Nowlin-Sohl

and me on this case. Based on the skill and experience of Ms. Nowlin Sohl and myself in litigating cases such as this, as well as my understanding of market rates in this District, these rates are reasonable and are significantly lower than those paid to attorneys of comparable experience in the private market without the PLRA's caps.

13. The ACLU's loadstar for 82.8 hours of Ms. Nowlin-Sohl's work and 364.3 hours of my work (totaling 447.1 hours) at the current PLRA rate is $117,363.75. This includes $1,496.25 for 5.7 hours Ms. Nowlin-Sohl and I expended preparing Plaintiff's motion for attorney's fees and supporting materials.

14. The ACLU intends to submit a bill of costs to recover a total of $1,231.40 in recoverable costs that it incurred in this case. In addition, the ACLU seeks to recover $6,246.35 in travel expenses (for airline flights, ground transportation, and lodging), relating either to ACLU attorneys attending the evidentiary hearing in this matter where we examined and cross-examined witnesses or to traveling to be the lead in taking or defending depositions in this case. These expenses are itemized in Attachment 3 hereto.

15. As a non-profit organization with limited resources, the ACLU must be judicious in selecting cases to litigate. Litigating this case over the course of years Ms. Nowlin-Sohl and I were involved limited the ability of Ms. Nowlin-Sohl and myself to take on other matters litigating important civil liberties issues.

16. In my experience, private law firms are rarely willing to devote the significant resources required over a lengthy period of time to adequately represent plaintiffs in cases such as this one involving a transgender woman seeking gender

affirming medical care while in prison. Such cases rarely result in significant financial recoveries that private law firms seek. Obtaining private counsel to represent individuals such as the Plaintiff has become even more challenging in light of the attitudes of government officials and the public regarding the rights of transgender people, which have grown increasing hostile since this case was filed in 2022. The ACLU has tracked more than 1,900 bills introduced during this period in state legislatures and Congress attacking the rights of transgender people in a wide variety of contexts, including the rights of transgender individuals who are incarcerated. Scores of such laws have been enacted during this period. Actual or even purported support for transgender rights have been the focus of sustained attacks on political candidates, with reports of more than $21 million spent on anti-transgender and anti-LGBTQ television ads in 2024. One candidate for president in 2024 was repeatedly vilified for having responded to a candidate questionnaire from the ACLU that, if she were elected, she would support the right of transgender people in prison to have access to comprehensive treatment associated with gender transition including necessary surgical care. Cases such as this one accordingly almost always require the involvement of public interest legal organizations such as the ACLU to vigorously litigate.

17. In my experience, successfully litigating a case such as this one requires substantial amounts of time from highly skilled litigators with experience in constitutional law, the rights of transgender individuals, and the rights of incarcerated individuals.

18. Given the complexity of this case, its subject matter, the degree of success achieved, and the need to incentivize competent attorneys to represent incarcerated and transgender clients, I believe the total amount of fees the ACLU seeks in this matter are reasonable.

Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

Signed this the 21st day of July, 2025.

______________________________
Jon W. Davidson

| | | | |
|---|---|---|---|
| 2/1/2022 | Jon W Davidson | 0.5 | Discuss case with ACLU Legal Director and review case memo |
| 2/9/2022 | Jon W Davidson | 0.5 | Call with ACLU Legal Director and Deputy Legal Director re case status, staffing, and plans for proceeding |
| 2/14/2022 | Jon W Davidson | 0.5 | Call with ACLU Legal Director re complaint, preliminary injunction motion, and exhaustion issues |
| 2/17/2022 | Jon W Davidson | 0.6 | Call with co-counsel re complaint, preliminary injunction motion, expert witness declaration, and timing |
| 2/17/2022 | Jon W Davidson | 0.2 | Review and edit expert engagement agreement |
| 2/18/2022 | Jon W Davidson | 0.2 | Review and edit client retainer and co-counsel agreement |
| 2/23/2022 | Jon W Davidson | 0.2 | Review revised client retainer, co-counsel agreement, and expert engagement letter |
| 2/23/2022 | Jon W Davidson | 1 | Call with co-counsel re co-counsel agreement, complaint, venue, and expert |
| 2/24/2022 | Jon W Davidson | 0.5 | Call with expert witness Dr. Randi Ettner |
| 2/24/2022 | Jon W Davidson | 0.1 | Email Dr. Ettner re expert engagement letter |
| 2/24/2022 | Jon W Davidson | 0.2 | Email legal assistant re preparation and filing of pro hac vice motion |
| 2/27/2022 | Jon W Davidson | 1.5 | Review and edit draft complaint |
| 3/1/2022 | Jon W Davidson | 0.5 | Call with co-counsel re complaint, preliminary injunction motion, retainer, co-counsel agreement, and expert issues |
| 3/1/2022 | Jon W Davidson | 0.3 | Review edits to retainer and co-counsel agreement and make further revisions |
| 3/2/2022 | Jon W Davidson | 1.4 | Review and edit draft motion for preliminary injunction |
| 3/2/2022 | Jon W Davidson | 0.1 | Email co-counsel re client declaration |
| 3/3/2022 | Jon W Davidson | 1 | Call with client and co-counsel re filing of complaint and preliminary injunction motion |
| 3/4/2022 | Jon W Davidson | 0.3 | Review and edit further revised client retainer and co-counsel agreement |
| 3/8/2022 | Jon W Davidson | 0.3 | Call with co-counsel re status of retainer, co-counsel agreement, complaint, preliminary injunction motion, medical records review, and client declaration |
| 3/8/2022 | Jon W Davidson | 0.2 | Finalize co-counsel agreement, and email executed version to team |
| 3/8/2022 | Jon W Davidson | 0.2 | Review local rules re pro hac vice requirements and email co-counsel |
| 3/9/2022 | Jon W Davidson | 0.3 | Review edits to complaint and respond |
| 3/17/2022 | Jon W Davidson | 0.7 | Research Prison Litigation Reform Act issues and email co-counsel re how to address them |
| 3/20/2022 | Jon W Davidson | 0.5 | Review and edit client declaration and email to co-counsel |
| 3/21/2022 | Jon W Davidson | 0.2 | Emails with ACLU National Prison Project attorneys re review of complaint |
| 3/22/2022 | Jon W Davidson | 1 | Call with co-counsel re client declaration, upcoming call with client, and status of complaint and preliminary injunction motion |
| 3/23/2022 | Jon W Davidson | 0.3 | Call with client re her declaration and case status |
| 3/23/2022 | Jon W Davidson | 0.2 | Emails with co-counsel re prison records and timeline |
| 3/28/2022 | Jon W Davidson | 0.8 | Call with client re finalization of complaint and preliminary injunction motion and anticipated plans for the lawsuit |
| 3/29/2022 | Jon W Davidson | 0.2 | Research medical exam issues and email co-counsel regarding them |
| 4/4/2022 | Jon W Davidson | 0.1 | Review and respond to co-counsel emails re client release date |
| 4/4/2022 | Jon W Davidson | 0.8 | Research provision of gender-affirming surgery to prisoners |
| 4/4/2022 | Jon W Davidson | 0.8 | Review and edit motion to compel and emails with opposing counsel re status and outstanding tasks |
| 4/6/2022 | Jon W Davidson | 3.3 | Edit revised complaint and email co-counsel regarding it |
| 4/7/2022 | Jon W Davidson | 0.5 | Further edit revised complaint |
| 4/7/2022 | Jon W Davidson | 0.1 | Email ACLU National Prison Project attorneys re review of complaint |
| 4/12/2022 | Jon W Davidson | 1.1 | Research damages available under 8th Amendment and Prison Litigation Reform Act and email co-counsel re research |
| 4/12/2022 | Jon W Davidson | 1.5 | Call with client followed by call with co-counsel re further amendments to complaint and outstanding tasks |
| 4/12/2022 | Jon W Davidson | 0.3 | Research issues re verification of complaint and email co-counsel re research |
| 4/15/2022 | Jon W Davidson | 0.1 | Email co-counsel re client retainer |
| 4/19/2022 | Jon W Davidson | 0.2 | Email co-counsel re vulvoplasty allegations |
| 4/19/2022 | Jon W Davidson | 0.9 | Call with co-counsel re complaint, preliminary injunction motion, and motion to compel |
| 4/19/2022 | Jon W Davidson | 0.7 | Review and edit further revised complaint and email co-counsel regarding it |
| 4/19/2022 | Jon W Davidson | 0.6 | Research qualified immunity issues and email co-counsel re research |
| 4/20/2022 | Jon W Davidson | 0.6 | Review and revise complaint allegations re vulvoplasty |
| 4/21/2022 | Jon W Davidson | 1.2 | Review and edit revised preliminary injunction motion and email co-counsel regarding it |
| 5/2/2022 | Jon W Davidson | 0.1 | Review Rule 34 request and email co-counsel |
| 5/3/2022 | Jon W Davidson | 0.6 | Redact draft preliminary injunction motion and email DOJ attorneys re statement of interest and draft preliminary injunction motion |
| 5/5/2022 | Jon W Davidson | 0.2 | Revise pro hac vice motion and email executed version to co-counsel |
| 5/10/2022 | Jon W Davidson | 0.6 | Call with co-counsel re outstanding tasks |
| 5/16/2022 | Jon W Davidson | 0.6 | Review and edit revised brief in support of motion for preliminary injunction |
| 5/17/2022 | Jon W Davidson | 0.5 | Call with client and co-counsel re next steps |
| 5/26/2022 | Jon W Davidson | 0.4 | Emails with co-counsel re Dr. Ettner's examination of client and Ettner expert declaration |
| 5/31/2022 | Jon W Davidson | 0.8 | Call with co-counsel re preliminary injunction motion, expert declaration, and contacting Jennifer Doula and Dr. Figler |
| 6/1/2022 | Jon W Davidson | 0.5 | Edit client's declaration in support of preliminary injunction motion |
| 6/8/2022 | Jon W Davidson | 0.3 | Call with client re status of litigation |
| 6/9/2022 | Jon W Davidson | 2.9 | Review Dr. Ettner's declaration and draft possible edits to discuss with her and send to co-counsel |
| 6/13/2022 | Jon W Davidson | 0.3 | Call with co-counsel re finalizing components of preliminary injunction motion |
| 6/23/2022 | Jon W Davidson | 0.2 | Review and edit client declaration in support of preliminary injunction motion |
| 6/24/2022 | Jon W Davidson | 0.3 | Draft and review email to Dr. Ettner re her declaration |
| 6/24/2022 | Jon W Davidson | 0.5 | Review motion to dismiss and email co-counsel re opposition arguments |
| 6/27/2022 | Jon W Davidson | 0.4 | Review and further edit revised motion for preliminary injunction |
| 6/28/2022 | Jon W Davidson | 0.2 | Final review of motion, brief, and declarations in support of preliminary injunction |
| 6/28/2022 | Jon W Davidson | 0.5 | Call with co-counsel re opposition to motion to dismiss |

| | | | |
|---|---|---|---|
| 7/6/2022 | Jon W Davidson | 1 | Review and edit opposition to motion to dismiss |
| 7/12/2022 | Jon W Davidson | 0.5 | Review and edit revised opposition to motion to dismiss |
| 7/19/2022 | Jon W Davidson | 0.3 | Call with co-counsel re response to opposition to preliminary injunction motion |
| 7/19/2022 | Jon W Davidson | 0.5 | Analyze opposition to preliminary injunction and supporting documents |
| 7/20/2022 | Jon W Davidson | 0.5 | Review outline of reply to opposition to motion for preliminary injunction and email co-counsel re additional arguments to consider |
| 7/26/2022 | Jon W Davidson | 0.3 | Review and edit draft reply to opposition to motion for preliminary injunction |
| 1/3/2023 | Jon W Davidson | 0.5 | Call with co-counsel re expert issues |
| 1//4/23 | Jon W Davidson | 0.7 | Review amicus brief in Edmo litigation and email co-counsel re them and re potential additional experts |
| 1/5/2023 | Jon W Davidson | 0.8 | Call with client re status of litigation |
| 1/5/2023 | Jon W Davidson | 0.1 | Call with counsel in Fields v. Smith re experts |
| 1/5/2023 | Jon W Davidson | 1.8 | Work on Dr. Ettner expert report |
| 1/5/2023 | Jon W Davidson | 0.1 | Email Dr. Ettner re phone interview with client |
| 1/7/2023 | Jon W Davidson | 0.2 | Review and edit responses to document requests |
| 1/8/2023 | Jon W Davidson | 2.4 | Work on Dr. Ettner expert report and email to co-counsel |
| 1/9/2023 | Jon W Davidson | 0.1 | Call with Dr. Ettner re interview of client |
| 1/9/2023 | Jon W Davidson | 0.9 | Call with co-counsel re outstanding tasks |
| 1/10/2023 | Jon W Davidson | 0.2 | Review and edit Exhibit A to subpoena to UNC Health Systems |
| 1/12/2023 | Jon W Davidson | 0.2 | Review and edit revised response to request for production of documents |
| 1/12/2023 | Jon W Davidson | 0.2 | Review and edit client deposition preparation questions |
| 1/17/2023 | Jon W Davidson | 0.1 | Emails with co-counsel re marking documents in production as confidential |
| 1/17/2023 | Jon W Davidson | 0.8 | Review defendants' supplemental document production for red flags for client deposition |
| 1/18/2023 | Jon W Davidson | 1.1 | Further review defendants' supplemental document production for red flags for client deposition |
| 1/23/2023 | Jon W Davidson | 0.1 | Review edits to Dr. Ettner expert report and email co-counsel |
| 1/24/2023 | Jon W Davidson | 1.3 | Work on Dr. Ettner expert report |
| 1/24/2023 | Jon W Davidson | 0.8 | Call with co-counsel re client deposition, Dr. Ettner expert report, document review, and client custody issues |
| 1/24/2023 | Jon W Davidson | 2.1 | Work on Dr. Ettner expert report |
| 1/24/2023 | Jon W Davidson | 0.3 | Email Dr. Ettner re expert report |
| 1/27/2023 | Jon W Davidson | 2.4 | Work on revised Etner expert report |
| 1/31/2023 | Jon W Davidson | 1.2 | Further work on revised expert report |
| 1/31/2023 | Jon W Davidson | 0.6 | Call with co-counsel re Ettner expert report, depositions, and document review |
| 2/1/2023 | Jon W Davidson | 0.7 | Further work on revisions to Dr. Ettner expert report |
| 2/7/2023 | Jon W Davidson | 0.2 | Review and edit 30(b)(6) notice |
| 2/7/2023 | Jon W Davidson | 0.2 | Call with co-counsel re rebuttal expert and 30(b)(6) notice |
| 2/13/2023 | Jon W Davidson | 2.5 | Review and code produced documents |
| 2/14/2023 | Jon W Davidson | 2.6 | Review and code produced documents |
| 2/25/2023 | Jon W Davidson | 0.2 | Research Rule 35 examination issues and email co-counsel |
| 2/17/2023 | Jon W Davidson | 0.4 | Call with client re Rule 35 examination |
| 2/21/2023 | Jon W Davidson | 0.6 | Call with co-counsel re Rule 35 motion and document review |
| 2/21/2023 | Jon W Davidson | 0.2 | Edit opposition to Rule 35 motion |
| 2/23/2023 | Jon W Davidson | 1 | Emails with co-counsel re Rule 35 motion and expert reports deadline |
| 2/27/2023 | Jon W Davidson | 4.1 | Review and code produced documents |
| 2/28/2023 | Jon W Davidson | 5.3 | Review and code produced documents |
| 2/28/2023 | Jon W Davidson | 0.1 | Email Dr. Ettner re interrogatories and document requests |
| 3/1/2023 | Jon W Davidson | 2.9 | Review and code produced documents |
| 3/2/2023 | Jon W Davidson | 0.6 | Call with client re case status |
| 3/3/2023 | Jon W Davidson | 2.1 | Review and code produced documents |
| 3/7/2023 | Jon W Davidson | 0.4 | Call with Dr. Ettner re discovery requests |
| 3/7/2023 | Jon W Davidson | 0.2 | Draft email to co-counsel re 30(b)(6) deposition |
| 3/7/2023 | Jon W Davidson | 0.3 | Call with opposing counsel re 30(b)(6) deposition |
| 3/7/2023 | Jon W Davidson | 0.8 | Call with co-counsel re discovery and settlement issues |
| 3/7/2023 | Jon W Davidson | 0.5 | Research Illinois law re psychometric tests and copyright issues and email Dr. Ettner and co-counsel re research |
| 3/7/2023 | Jon W Davidson | 0.2 | Add hot documents to deposition preparation document and email co-counsel regarding this |
| 3/8/2023 | Jon W Davidson | 1.6 | Review and code produced documents |
| 3/9/2023 | Jon W Davidson | 0.5 | Meet with co-counsel re 30(b)(6) depositions |
| 3/9/2023 | Jon W Davidson | 4 | Review and code produced documents |
| 3/10/2023 | Jon W Davidson | 0.5 | Review newly produced documents and email co-counsel re them |
| 3//14/23 | Jon W Davidson | 1 | Emails and call with co-counsel re depositions and discovery deficiencies |
| 3/15/2023 | Jon W Davidson | 0.1 | Emails with Dr. Ettner re her availability for deposition |
| 3/16/2023 | Jon W Davidson | 0.1 | Review summary judgment motion |
| 3/17/2023 | Jon W Davidson | 2.2 | Draft responses to first set of interrogatories and second set of document requests |
| 3/21/2023 | Jon W Davidson | 0.6 | Call with client re case developments |
| 3/21/2023 | Jon W Davidson | 0.9 | Call with co-counsel re discovery issues |
| 3/21/2023 | Jon W Davidson | 1.1 | Draft and edit responses to first set of interrogatories and second set of document requests |
| 3/22/2023 | Jon W Davidson | 0.1 | Email co-counsel re updating initial disclosures |
| 3/22/2023 | Jon W Davidson | 0.2 | Review and edit supplemental disclosures |
| 3/22/2023 | Jon W Davidson | 0.1 | Email co-counsel re deposition scheduling |

| | | | |
|---|---|---|---|
| 3/23/2023 | Jon W Davidson | 0.3 | Compile Dr. Ettner invoices and expert engagement letter and email to Jaclyn Maffetore |
| 3/27/2023 | Jon W Davidson | 0.5 | Finalize responses to first set of interrogatories and second set of document requests |
| 3/27/2023 | Jon W Davidson | 0.2 | Review documents to be produced re confidentiality designations |
| 3/28/2023 | Jon W Davidson | 1 | Call with co-counsel re discovery issues |
| 3/28/2023 | Jon W Davidson | 0.1 | Emails with Dr. Ettner re her availability for deposition |
| 3/29/2023 | Jon W Davidson | 2.2 | Research issues re production of psychometric tests and email Dr. Ettner re this |
| 3/29/2023 | Jon W Davidson | 0.5 | Emails with co-counsel re deposition outlines, settlement conference, and meet and confer letter |
| 3/29/2023 | Jon W Davidson | 0.8 | Research rules re personal attendance at mediation and email counsel re this |
| 3/29/2023 | Jon W Davidson | 1.7 | Further research issues re production of psychometric tests |
| 3/20/2023 | Jon W Davidson | 0.5 | Emails re responses to defendants' counsel re discovery issues and re production of psychometric tests |
| 4/3/2023 | Jon W Davidson | 1.2 | Prepare for and participate in call with Dr. Ettner and Jaclyn Maffetore |
| 4/4/2023 | Jon W Davidson | 0.1 | Call with co-counsel re meet and confer meeting |
| 4/4/2023 | Jon W Davidson | 0.1 | Email opposing counsel re meet and confer meeting |
| 4/4/2023 | Jon W Davidson | 0.2 | Call with co-counsel re meet and confer meeting |
| 4/4/2023 | Jon W Davidson | 0.5 | Email co-counsel re Dr. Peiper 30(b)(6) deposition |
| 4/4/2023 | Jon W Davidson | 0.1 | Meet and confer re psychometric test forms |
| 4/4/2023 | Jon W Davidson | 0.1 | Draft email to opposing counsel meet and confer position and proposal and email co-counsel re reviewing it |
| 4/5/2023 | Jon W Davidson | 0.2 | Review discovery deficiency letter and email co-counsel re it |
| 4/5/2023 | Jon W Davidson | 0.9 | Draft response to opposing counsel re discovery deficiency and email with co-counsel regarding it |
| 4/5/2023 | Jon W Davidson | 0.2 | Draft supplemental response to second set of document production requests |
| 4/12/2023 | Jon W Davidson | 0.5 | Email co-counsel re case management issues |
| 4/12/2023 | Jon W Davidson | 0.5 | Research responsibility for payment of deposition travel costs and email co-counsel re research |
| 4/13/2023 | Jon W Davidson | 0.3 | Call with DOJ attorney re potential statement of interest |
| 4/13/2023 | Jon W Davidson | 0.7 | Call with co-counsel re upcoming depositions and outstanding discovery issues |
| 4/14/2023 | Jon W Davidson | 0.4 | Emails and calls with co-counsel re Dr. Campbell deposition |
| 4/19/2023 | Jon W Davidson | 0.3 | Edit second request for production of documents and email co-counsel re it |
| 4/20/2023 | Jon W Davidson | 2.8 | Work on declaration of Dr. Figler and review supporting documents |
| 4/20/2023 | Jon W Davidson | 1 | Call with co-counsel re discovery issues |
| 4/20/2023 | Jon W Davidson | 1.2 | Draft outline for Dr. Peiper individual deposition |
| 4/20.23 | Jon W Davidson | 0.5 | Emails and call with attorney Ace Factor re Dr. Penn |
| 4/21/2023 | Jon W Davidson | 0.1 | Email National Prison Project attorney re Dr. Penn |
| 4/24/2023 | Jon W Davidson | 0.2 | Review and edit draft Caraccio declaration and email co-counsel re it |
| 4/26/2023 | Jon W Davidson | 0.1 | Draft notice of Dr. Peiper individual deposition |
| 4/27/2023 | Jon W Davidson | 0.8 | Call with client re case status |
| 4/27/2023 | Jon W Davidson | 0.4 | Call with co-counsel re discovery issues |
| 4/27/2023 | Jon W Davidson | 7.2 | Further draft outline for Dr. Peiper individual deposition and collect documents for it |
| 5/1/2023 | Jon W Davidson | 5 | Take Dr. Peiper individual deposition |
| 5/2/2023 | Jon W Davidson | 1 | Call with co-counsel re outstanding discovery issues |
| 5/2/2023 | Jon W Davidson | 1.3 | Review documents to potentially use at Dr. Junker deposition and email co-counsel re them |
| 5/5/2023 | Jon W Davidson | 0.5 | Call with client re litigation update |
| 5/5/2023 | Jon W Davidson | 0.1 | Email opposing counsel re responding to proposed modifications to case management schedule |
| 5/9/2023 | Jon W Davidson | 0.8 | Call with co-counsel re depositions and third party witness issues |
| 5/10/2023 | Jon W Davidson | 0.5 | Research 8th Amendment application to community placements |
| 5/10/2023 | Jon W Davidson | 2.6 | Draft outline for Dr. Sheitman deposition |
| 5/10/2023 | Jon W Davidson | 0.1 | Draft notice of Dr. Sheitman deposition |
| 5/11/2023 | Jon W Davidson | 0.1 | Email opposing counsel with notice of Dr. Sheiman deposition |
| 5/11/2023 | Jon W Davidson | 0.2 | Research information re Emmerita Foster |
| 5/12/2023 | Jon W Davidson | 4.8 | Further draft outline for Dr. Sheitman deposition |
| 5/12/2023 | Jon W Davidson | 0.6 | Review court order modifying deadlines and compare to previous orders and email co-counsel re this |
| 5/14/2023 | Jon W Davidson | 0.2 | Prepare list of exhibits for Dr. Sheitman deposition |
| 5/15/2023 | Jon W Davidson | 1.3 | Emails with co-counsel re depositing Marvella Boman, UNCH documents, Catlett deposition, and discovery extension |
| 5/15/2023 | Jon W Davidson | 0.1 | Call with Jennifer Dula and call with co-counsel re it |
| 5/16/2023 | Jon W Davidson | 0.8 | Email co-counsel re Bowman deposition and discovery cutoff |
| 5/16/2023 | Jon W Davidson | 0.9 | Call with co-counsel re discovery issues |
| 5/16/2023 | Jon W Davidson | 0.2 | Draft email to opposing counsel re discovery deadline and Bowman deposition |
| 5/17/2023 | Jon W Davidson | 0.5 | Prepare for deposition of Dr. Sheiman |
| 5/17/2023 | Jon W Davidson | 5.2 | Take deposition of Dr. Sheitman |
| 5/31/2023 | Jon W Davidson | 0.2 | Work on Dula Declaration |
| 6/1/2023 | Jon W Davidson | 0.2 | Review and respond to emails with co-counsel re defendants' counteroffer re discovery |
| 6/1/2023 | Jon W Davidson | 0.2 | Review second supplemental productions and emails with co-counsel re them |
| 6/4/2023 | Jon W Davidson | 0.9 | Review Peiper individual deposition transcript and email co-counsel re confidentiality designations |
| 6/5/2023 | Jon W Davidson | 1.2 | Review Dula documents and work on Dula declaration |
| 6/6/2023 | Jon W Davidson | 0.7 | Edit Dula declaration |
| 6/6/2023 | Jon W Davidson | 1 | Meet with co-counsel re outstanding tasks |
| 6/7/2023 | Jon W Davidson | 0.2 | Review Clark v. Quiros mediation brief and send to co-counsel |
| 6/7/2023 | Jon W Davidson | 0.1 | Review magistrate's ruling on Rule 35 motion |
| 6/13/2023 | Jon W Davidson | 0.5 | Call with co-counsel re outstanding tasks |

| | | | |
|---|---|---|---|
| 6/14/2023 | Jon W Davidson | 0.3 | Revise draft Dula declaration |
| 6/15/2023 | Jon W Davidson | 0.1 | Email Dr. Ettner re deposition availability |
| 6/16/2023 | Jon W Davidson | 0.5 | Review Dr. Sheitman deposition re confidentiality designations |
| 6/20/2023 | Jon W Davidson | 0.4 | Call with co-counsel re outstanding tasks |
| 6/21/2023 | Jon W Davidson | 0.1 | Email opposing counsel with confidentiality designations for Dr. Sheitman deposition transcript |
| 6/27/2023 | Jon W Davidson | 1 | Call with client re litigation update |
| 6/27/2023 | Jon W Davidson | 1.1 | Call with co-counsel re outstanding tasks |
| 6/27/2023 | Jon W Davidson | 0.1 | Email Jennifer Dula re review of her declaration |
| 6/28/2023 | Jon W Davidson | 0.3 | Review settlements in other transgender prisoner cases and email co-counsel re them |
| 7/9/2023 | Jon W Davidson | 2.2 | Review defendants' expert reports and prepare for call with Dr. Ettner |
| 7/10/2023 | Jon W Davidson | 0.8 | Call with Dr. Ettner re rebuttal expert report |
| 7/11/2023 | Jon W Davidson | 0.1 | Emails with co-counsel re rebuttal experts |
| 7/11.23 | Jon W Davidson | 1 | Call with co-counsel re rebuttal experts, Ettner declaration, and other upcoming tasks |
| 7/11/2023 | Jon W Davidson | 0.5 | Call with Dr. Ettner re rebuttal declaration |
| 7/11/2023 | Jon W Davidson | 0.1 | Emails with opposing counsel with Dr. Ettner deposition |
| 7/11`/23 | Jon W Davidson | 0.4 | Call with Jennifer Dula re declaration |
| 7/12/2023 | Jon W Davidson | 0.8 | Review defendants' expert reports and analyze topics to be addressed in rebuttal |
| 7/13/2023 | Jon W Davidson | 1.5 | Further review defendants' expert reports and further analyze topics to be addressed in rebuttal |
| 7/13/2023 | Jon W Davidson | 0.1 | Email Dr. Ettner re her rebuttal declaration |
| 7/18/2023 | Jon W Davidson | 1.4 | Work on Dr. Ettner rebuttal declaration based on her draft |
| 7/18/2023 | Jon W Davidson | 0.8 | Call with co-counsel re upcoming tasks |
| 7/19/2023 | Jon W Davidson | 0.1 | Draft Dr. Antommaria expert engagement letter |
| 7/20/2023 | Jon W Davidson | 0.7 | Edit Dr. Ettner expert rebuttal report draft and email her |
| 7/23/2023 | Jon W Davidson | 0.8 | Revise Dr. Ettner expert rebuttal based on her email |
| 7/26/2023 | Jon W Davidson | 0.7 | Further revise Dr. Ettner expert rebuttal report |
| 8/1/2023 | Jon W Davidson | 0.9 | Call with co-counsel re next steps |
| 8/2/2023 | Jon W Davidson | 0.6 | Call with client re potential settlement |
| 8/10/2023 | Jon W Davidson | 0.1 | Emails with co-counsel re defendants' proposal to postpone trial date |
| 8/14/2023 | Jon W Davidson | 1.2 | Prepare for deposition preparation session with Dr. Ettner |
| 8/15/2023 | Jon W Davidson | 2.6 | Further prepare for deposition preparation session with Dr. Ettner |
| 8/16/2023 | Jon W Davidson | 2.1 | Call with Dr. Ettner to prepare her for her deposition |
| 8/17/2023 | Jon W Davidson | 2.4 | Call with Dr. Ettner to further prepare her for her deposition |
| 8/20/2023 | Jon W Davidson | 6.7 | Travel to Chicago for Dr. Ettner deposition |
| 8/21/2023 | Jon W Davidson | 6.6 | Defend deposition of Dr. Ettner |
| 8/22/2023 | Jon W Davidson | 8.3 | Travel back to Los Angeles from Dr. Ettner deposition |
| 8/23/2023 | Jon W Davidson | 0.5 | Call with client re litigation updates |
| 8/23/2023 | Jon W Davidson | 1 | Call with co-counsel re case status and upcoming tasks |
| 8/24/2023 | Jon W Davidson | 0.9 | Work on Croft declaration |
| 8/25/2023 | Jon W Davidson | 0.8 | Further work on Croft declaration |
| 8/28/2023 | Jon W Davidson | 0.4 | Call with co-counsel re upcoming tasks |
| 9/5/2023 | Jon W Davidson | 0.3 | Incorporate edits to Croft declaration |
| 9/7/2023 | Jon W Davidson | 0.2 | Edit revised Dr. Figler declaration |
| 9/7/2023 | Jon W Davidson | 0.2 | Edit revised Dr. Caraccio declaration |
| 9/12/2023 | Jon W Davidson | 0.8 | Call with co-counsel re summary judgment motion and trial |
| 9/12/2023 | Jon W Davidson | 0.2 | Research issues re partial summary judgment and email co-counsel re that |
| 9/14/2023 | Jon W Davidson | 0.5 | Review Dr. Ettner deposition transcript for confidentiality designations |
| 9/14/2023 | Jon W Davidson | 0.5 | Call with client re litigation developments |
| 9/14/2023 | Jon W Davidson | 0.2 | Draft joint motion for extension of summary judgment page limits |
| 9/14/2023 | Jon W Davidson | 0.2 | Prepare Dr. Ettner errata sheet and emails with Dr. Ettner |
| 9/15/2023 | Jon W Davidson | 1.7 | Review Dr. Peiper deposition for summary judgment motion support |
| 9/15/2023 | Jon W Davidson | 0.2 | Research issues re payment of expert witnesses and email co-counsel re that |
| 9/19/2023 | Jon W Davidson | 1.5 | Further review Dr. Peiper deposition for summary judgment motion support |
| 9/19/2023 | Jon W Davidson | 2.1 | Review Dr. Sheitman deposition for summary judgment motion support |
| 9/20/2023 | Jon W Davidson | 1.4 | Further review Dr. Sheitman deposition for summary judgment motion support |
| 9/26/2023 | Jon W Davidson | 0.1 | Review protection order and local rules re filing under seal and email co-counsel re these |
| 9/27/2023 | Jon W Davidson | 1.5 | Draft second client declaration |
| 9/27/2023 | Jon W Davidson | 1.5 | Edit brief in support of motion for partial summary judgment |
| 9/28/2023 | Jon W Davidson | 0.2 | Edit second client declaration |
| 9/28/2023 | Jon W Davidson | 1 | Call with co-counsel re motion for partial summary judgment |
| 9/28/2023 | Jon W Davidson | 0.8 | Review expert reports and depositions for necessary redactions |
| 9/28/2023 | Jon W Davidson | 1.3 | Prepare list of deposition references from Drs. Peiper and Sheitman depositions for motion for partial summary judgment |
| 9/3/2023 | Jon W Davidson | 2.7 | Edit brief in support motion for partial summary judgment |
| 10/2/2023 | Jon W Davidson | 1.9 | Further edit brief in support of motion for summary judgment |
| 10/2/2023 | Jon W Davidson | 0.6 | Call with client re second declaration |
| 10/3/2023 | Jon W Davidson | 2.5 | Review confidential documents defendants want to cite for necessary redaction |
| 10/4/2023 | Jon W Davidson | 1.1 | Further edit brief in support of motion for partial summary judgment |

| | | | |
|---|---|---|---|
| 10/4/2023 | Jon W Davidson | 1 | Cite check documents re facts relied on in brief in support of motion for partial summary judgment |
| 10/10/2023 | Jon W Davidson | 0.5 | Review and analyze defendants' motion for summary judgment |
| 10/10/2023 | Jon W Davidson | 0.5 | Call with co-counsel re opposition to defendants' motion for summary judgment |
| 10/10/2023 | Jon W Davidson | 2.4 | Research "low-quality" evidence issues and draft memo to co-counsel re those |
| 10/16/2023 | Jon W Davidson | 1.9 | Edit opposition to defendants' motion for summary judgment |
| 10/19/2023 | Jon W Davidson | 0.6 | Eidt further revised opposition to defendant's motion for summary judgment |
| 10/19/2023 | Jon W Davidson | 0.7 | Review and analyze defendants' opposition to plaintiff's motion for partial summary judgment |
| 10/20/2023 | Jon W Davidson | 0.5 | Further analyze defendants' opposition to plaintiff's motion for partial summary judgment |
| 10/24/2023 | Jon W Davidson | 0.4 | Edit revised reply to opposition to plaintiff's motion for partial summary judgment |
| 10/25/2023 | Jon W Davidson | 0.7 | Cite-check reply to opposition to reply to opposition to plaintiff's motion for partial summary judgment |
| 11/6/2023 | Jon W Davidson | 2.2 | Prepare questions for moot of summary judgment motions argument |
| 11/7/2023 | Jon W Davidson | 1.2 | Moot argument of summary judgment motions |
| 11/30/2023 | Jon W Davidson | 0.7 | Call with client re litigation status |
| 2/2/2024 | Jon W Davidson | 0.1 | Review court order re summary judgment motions and evidentiary hearing |
| 2/2/2024 | Jon W Davidson | 0.6 | Call with co-counsel re evidentiary hearing |
| 2/2/2024 | Jon W Davidson | 0.2 | Review Dr. Ettner deposition and expert reports in preparation for evidentiary hearing |
| 2/3/2024 | Jon W Davidson | 0.7 | Email co-counsel re Ettner testimony for evidentiary hearing |
| 2/3/2024 | Jon W Davidson | 1.6 | Prepare for call with Dr. Ettner re evidentiary hearing testimony |
| 2/5/2024 | Jon W Davidson | 1.2 | Call with Dr. Ettner re draft declaration regarding remote testimony |
| 2/5/2024 | Jon W Davidson | 0.5 | Call with co-counsel re medical necessity issues |
| 2/5/2023 | Jon W Davidson | 0.5 | Review WPATH SOC 7 and email co-counsel re medical necessity issues |
| 2/5/2023 | Jon W Davidson | 1.3 | Further review WPATH SOC 7 and email co-counsel with helpful quotes |
| 2/6/2023 | Jon W Davidson | 1.1 | Call with co-counsel re evidentiary tasks |
| 2/6/2023 | Jon W Davidson | 1.5 | Review WPATH materials re testimony of Dr. Ettner at evidentiary hearing |
| 2/7/2023 | Jon W Davidson | 2.2 | Prepare questions for Dr. Ettner direct testimony at evidentiary hearing |
| 2/8/2023 | Jon W Davidson | 0.3 | Edit motion to permit remote testimony of Dr. Ettner and memo in support |
| 2/8/2024 | Jon W Davidson | 0.4 | Call with opposing counsel re evidentiary hearing logistics |
| 2/8/2024 | Jon W Davidson | 0.4 | Call with co-counsel re evidentiary hearing and potential settlement |
| 2/8/2024 | Jon W Davidson | 0.2 | Call with client re evidentiary hearing and potential settlement |
| 2/8/2024 | Jon W Davidson | 0.5 | Review Peiper and Junker depositions re case summary |
| 2/8/2024 | Jon W Davidson | 0.5 | Call with co-counsel re defendants' proposal re evidentiary hearing |
| 2/8/2024 | Jon W Davidson | 0.2 | Email co-counsel re admissions in testimony of Dr. Peiper |
| 2/8/2024 | Jon W Davidson | 2.6 | Prepare questions for Dr. Ettner direct at evidentiary hearing |
| 2/9/2024 | Jon W Davidson | 0.1 | Emails with Dr. Ettner re remote testimony at evidentiary hearing |
| 2/9/2024 | Jon W Davidson | 2.8 | Prepare further questions for Dr. Ettner direct at evidentiary hearing |
| 2/10/2024 | Jon W Davidson | 2 | Prepare direct examination of Dr. Ettner for evidentiary hearing |
| 2/11/2024 | Jon W Davidson | 2.9 | Further prepare direct examination of Dr. Ettner for evidentiary hearing |
| 2/13/2024 | Jon W Davidson | 1.1 | Revise Dr. Ettner direct testimony questions for evidentiary hearing |
| 2/13/2024 | Jon W Davidson | 1.2 | Call with co-counsel re evidentiary hearing issues |
| 2/14/2024 | Jon W Davidson | 0.9 | Prepare for evidentiary hearing preparation session with Dr. Ettner |
| 2/14/2024 | Jon W Davidson | 2 | Call with Dr. Ettner to prepare for evidentiary hearing |
| 2/14/2024 | Jon W Davidson | 0.8 | Review Edmo transcript in preparation for evidentiary hearing |
| 2/14/2024 | Jon W Davidson | 2.5 | Revise direct examination questions for evidentiary hearing |
| 2/15/2024 | Jon W Davidson | 4.1 | Draft potential cross-examination questions for preparation session with Dr. Ettner |
| 2/16/2024 | Jon W Davidson | 0.5 | Prepare for cross preparation for Dr. Ettner |
| 2/16/2024 | Jon W Davidson | 2.8 | Call with Dr. Ettner and co-counsel re direct and cross-examination at evidentiary hearing |
| 2/16/2024 | Jon W Davidson | 1.9 | Prepare for evidentiary hearing |
| 2/17/2024 | Jon W Davidson | 0.7 | Call with co-counsel re evidentiary hearing |
| 2/17/2024 | Jon W Davidson | 3.4 | Review defendants' compilation of medical records to prepare Dr. Ettner and note necessary redactions |
| 2/18/2024 | Jon W Davidson | 1.5 | Call with Dr. Ettner re evidentiary hearing testimony |
| 2/18/2024 | Jon W Davidson | 3.8 | Prepare for evidentiary hearing, draft timeline, and email co-counsel |
| 2/19/2024 | Jon W Davidson | 9.5 | Travel to Charlotte for evidentiary hearing |
| 2/20/2024 | Jon W Davidson | 2 | Go to courthouse and test technology for remote testimony |
| 2/20/2024 | Jon W Davidson | 1.2 | Meet with co-counsel for final preparation for evidentiary hearing |
| 2/20/2024 | Jon W Davidson | 4 | Attend evidentiary hearing and conduct direct examination and respond to cross-examination at it |
| 2/21/2024 | Jon W Davidson | 9 | Travel to Los Angeles after evidentiary hearing |
| 2/28/2024 | Jon W Davidson | 1.4 | Edit brief in support or renewed motion for summary judgment |
| 2/29/2024 | Jon W Davidson | 0.4 | Cite check renewed motion for summary judgment |
| 3/21/2024 | Jon W Davidson | 0.6 | Review and analyze defendants' opposition to plaintiff's motion for summary judgment and defendants' motion for summary judgment |
| 3/22/2024 | Jon W Davidson | 0.4 | Call with co-counsel re reply to opposition to plaintiff's motion for summary judgment and settlement issues |
| 3/22/2024 | Jon W Davidson | 0.8 | Draft email to co-counsel re reply to opposition to plaintiff's motion for summary judgment |
| 3/25/2024 | Jon W Davidson | 0.7 | Edit reply to opposition to plaintiff's motion for summary judgment |
| 4/1/2024 | Jon W Davidson | 0.2 | Edit revised opposition to defendants' renewed motion for summary judgment |
| 4/16/2024 | Jon W Davidson | 0.4 | Review summary judgment order and email co-counsel |
| 4/17/2024 | Jon W Davidson | 0.7 | Call with client re summary judgment order |
| 4/18/2024 | Jon W Davidson | 0.5 | Call with co-counsel re summary judgment order |

| | | | |
|---|---|---|---|
| 5/16/2024 | Jon W Davidson | 0.5 | Review defendants' motion for stay and email co-counsel re opposition |
| 5/28/2024 | Jon W Davidson | 0.5 | Emails re notice of appearance and prepare and file notice of appearance |
| 5/28/2024 | Jon W Davidson | 0.2 | Call with co-counsel re appeal |
| 5/31/2024 | Jon W Davidson | 0.7 | Review defendants' reply to opposition motion for stay and email co-counsel |
| 6/4/2024 | Jon W Davidson | 0.6 | Call with co-counsel re stay motion and appeal |
| 6/6/2024 | Jon W Davidson | 0.8 | Research re motion to vacate stay |
| 6/14/2024 | Jon W Davidson | 0.2 | Edit motion to vacate stay |
| 6/17/2024 | Jon W Davidson | 0.3 | Edit revised motion to stay |
| 7/3/2024 | Jon W Davidson | 0.2 | Edite draft of opposition to defendants' motion to extend opening brief deadline |
| 7/10/2024 | Jon W Davidson | 0.4 | Research and emails re mandamus |
| 7/16/2024 | Jon W Davidson | 1 | Call with client re litigation developments |
| 7/16/2024 | Jon W Davidson | 0.9 | Call with co-counsel re stay pending appeal, appellate briefing, and necessary research |
| 7/17/2024 | Jon W Davidson | 0.1 | Call Fourth Circuit clerk re opposition to stay and temporary stay motion |
| 7/19/2024 | Jon W Davidson | 0.2 | Edit opposition to stay motion |
| 7/20/2024 | Jon W Davidson | 0.2 | Edit revised opposition to stay motion |
| 7/21/2024 | Jon W Davidson | 0.2 | Edit further revised opposition to stay motion |
| 7/24/2024 | Jon W Davidson | 0.1 | Emails with co-counsel re joint appendix |
| 7/26/2024 | Jon W Davidson | 2 | Review Fourth Circuit order denying stay and emails with co-counsel re it |
| 7/29/2024 | Jon W Davidson | 0.6 | Review and edits response to defendants' proposal for compliance with injunction |
| 7/30/2024 | Jon W Davidson | 1.3 | Review defendants' Fourth Circuit brief and analyze opposing arguments |
| 7/30/2024 | Jon W Davidson | 0.8 | Meet with co-counsel re response to defendants' Fourth Circuit Brief |
| 8/1/2024 | Jon W Davidson | 0.3 | Call with client re appeal |
| 8/5/2024 | Jon W Davidson | 0.8 | Research issues re appealability of denial of summary judgment as part of appeal of grant to other party of summary judgment and email co-counsel re research |
| 8/13/2024 | Jon W Davidson | 0.2 | Call with co-counsel re Fourth Circuit brief |
| 8/14/2024 | Jon W Davidson | 1.3 | Edit Fourth Circuit brief |
| 8/15/2024 | Jon W Davidson | 2.9 | Research issues raised in Fourth Circuit brief and further edit it |
| 8/20/2024 | Jon W Davidson | 1.2 | Edit revised Fourth Circuit brief |
| 8/21/2024 | Jon W Davidson | 1.6 | Cite check Fourth Circuit brief |
| 9/22/2024 | Jon W Davidson | 0.5 | Call with client re appeal |
| 9/10/2024 | Jon W Davidson | 0.4 | Call with co-counsel re Fourth Circuit argument and potential mootness |
| 9/16/2024 | Jon W Davidson | 0.2 | Review defendants' Fourth Circuit reply brief |
| 10/22/2024 | Jon W Davidson | 0.2 | Call with co-counsel re motion to dismiss appeal as moot |
| 10/30/2024 | Jon W Davidson | 0.3 | Edit motion to dismiss appeal |
| 10/31/2024 | Jon W Davidson | 1.1 | Research vacatur and email co-counsel re research |
| 11/4/2024 | Jon W Davidson | 0.1 | Review Fourth Circuit order re supplemental briefing re mootness |
| 11/6/2024 | Jon W Davidson | 0.2 | Review defendants' notice of compliance with injunction and report of Drs. Renberg and Simopoulis and email co-counsel re non-compliance |
| 11/7/2024 | Jon W Davidson | 0.6 | Call with co-counsel re response to defendants' notice of compliance with injunction |
| 11/7/2024 | Jon W Davidson | 0.7 | Further research vacatur and email co-counsel re research |
| 11/11/2024 | Jon W Davidson | 2.3 | Research and draft section of Fourth Circuit brief re vacatur |
| 11/14/2024 | Jon W Davidson | 0.1 | Edit Fourth Circuit brief re mootness and vacatur |
| 11/18/2024 | Jon W Davidson | 0.5 | Cite check Fourth Circuit brief re mootness and vacatur |
| 11/20/2024 | Jon W Davidson | 0.2 | Review and edit response to defendants' notice of compliance with injunction |
| 11/26/2024 | Jon W Davidson | 0.1 | Review order re dismissal of appeal |
| 6/29/2025 | Jon W Davidson | 2.8 | Compile time for fee motion |
| 7/14/2025 | Jon W Davidson | 1.8 | Draft declaration in support of fee motion |
| 7/14/2025 | Jon W Davidson | 0.3 | Edit brief in support of fee motion |
| 7/17/2025 | Jon W Davidson | 0.1 | Edit draft declaration in support of fee motion |

**Total hours:** **364.3**

# Attachment 2

| Project/Time entry | User | Start date | Time (decimal) |
|---|---|---|---|
| Review documents and prepare notes on documents | Li Nowlin-Sohl | 03/02/2023 | 1.000 |
| Team call re 30b6 deposition, depositions, and discovery | Li Nowlin-Sohl | 03/07/2023 | 0.800 |
| Team call re 30b6 deposition strategy and outlines | Li Nowlin-Sohl | 03/09/2023 | 0.500 |
| Review documents from Defendants and prepare notes on documents | Li Nowlin-Sohl | 03/09/2023 | 1.900 |
| Call with team re discovery and depositions | Li Nowlin-Sohl | 03/14/2023 | 1.000 |
| Team call re discovery, depositions, and mediation | Li Nowlin-Sohl | 03/28/2023 | 1.000 |
| Review documents for Hahn deposition and prepare deposition outline | Li Nowlin-Sohl | 04/02/2023 | 3.000 |
| Prepare Dr. Hahn deposition outline | Li Nowlin-Sohl | 04/04/2023 | 2.900 |
| Prepare Dr. Hahn deposition outline | Li Nowlin-Sohl | 04/06/2023 | 3.300 |
| Revise and finalize Dr. Hahn deposition outline | Li Nowlin-Sohl | 04/10/2023 | 2.300 |
| Conduct Dr. Hahn Deposition | Li Nowlin-Sohl | 04/11/2023 | 7.800 |
| Team call regarding discovery, depositions, and litigation strategy | Li Nowlin-Sohl | 05/09/2023 | 0.800 |
| Team call re mediation and discovery | Li Nowlin-Sohl | 06/28/2023 | 0.300 |
| Review Dr. Li report and prepare notes re same | Li Nowlin-Sohl | 07/15/2023 | 2.700 |
| Review and comment on Antommaria rebuttal report | Li Nowlin-Sohl | 08/01/2023 | 1.500 |
| Review and comment on Antommaria rebuttal report | Li Nowlin-Sohl | 08/02/2023 | 0.800 |
| Prepare outline for Dr. Li Deposition | Li Nowlin-Sohl | 08/03/2023 | 5.600 |
| Review and provide final comments to Antommaria rebuttal report | Li Nowlin-Sohl | 08/06/2023 | 1.300 |
| Prepare outline for Dr. Li Deposition | Li Nowlin-Sohl | 08/07/2023 | 4.600 |
| Team call re litigation strategy, summary judgment, and depositions | Li Nowlin-Sohl | 08/23/2023 | 1.000 |
| Prepare Dr. Antommaria for deposition | Li Nowlin-Sohl | 09/05/2023 | 1.100 |
| Defend deposition of Dr. Antommaria | Li Nowlin-Sohl | 09/07/2023 | 2.000 |
| Prepare Daubert motion re Dr. Li | Li Nowlin-Sohl | 10/21/2023 | 4.000 |
| Prepare Daubert motion re Dr. Li | Li Nowlin-Sohl | 10/22/2023 | 3.500 |
| Revise Daubert motion re Dr. Li | Li Nowlin-Sohl | 10/23/2023 | 4.800 |
| Review and take notes on Sheitman deposition in preparation for cross examination | Li Nowlin-Sohl | 02/08/2024 | 2.900 |
| Prepare Sheitman cross examination outline | Li Nowlin-Sohl | 02/12/2024 | 1.500 |
| Prepare Sheitman cross examination outline | Li Nowlin-Sohl | 02/13/2024 | 4.400 |
| Review and revise direct examination outline for Dr. Ettner | Li Nowlin-Sohl | 02/14/2024 | 2.100 |
| Hearing preparation meeting with Dr. Ettner | Li Nowlin-Sohl | 02/14/2024 | 2.000 |
| Revise Sheitman cross examination outline | Li Nowlin-Sohl | 02/15/2024 | 2.700 |
| Hearing prep call with team | Li Nowlin-Sohl | 02/17/2024 | 0.900 |

# Attachment 2

| Project/Time entry | User | Start date | Time (decimal) |
|---|---|---|---|
| Prepare for evidentiary hearing | Li Nowlin-Sohl | 02/20/2024 | 1.000 |
| Evidentiary Hearing | Li Nowlin-Sohl | 02/20/2024 | 3.800 |
| Review and revise renewed motion for summary judgment | Li Nowlin-Sohl | 02/27/2024 | 0.700 |
| Team call re response to motion for summary judgment strategy | Li Nowlin-Sohl | 03/22/2024 | 0.600 |
| Compile time for fee motion | Li Nowlin-Sohl | 07/14/2025 | 0.700 |
| **Total** | | | **82.800** |

**Attachment 3**
*Zayre-Brown v. North Carolina Department of Adult Correction*
American Civil Liberties Union Foundation Travel Expenses

| Date | Expense Description | Attorney | Purpose | Amount |
|---|---|---|---|---|
| 4/16-18/23 | Airfare | Brown | Take Peiper 30(b)(6) deposition in Raleigh, NC | $417.70 |
| 4/16-18/23 | Ground transportation | Brown | Take Peiper 30(b)(6) deposition in Raleigh, NC | $199.82 |
| 4/16-18/23 | Lodging | Brown | Take Peiper 30(b)(6) deposition in Raleigh, NC | $985.49 |
| 8/20-22/23 | Airfare | Davidson | Defend Ettner deposition in Chicago, IL | $591.15 |
| 8/20-22/23 | Airport parking and ground transportation | Davidson | Defend Ettner deposition in Chicago, IL | $177.34 |
| 8/20-22/23 | Lodging | Davidson | Defend Ettner deposition in Chicago, IL | $407.14 |
| 2/19-21/24 | Airfare | Davidson | Evidentiary hearing in Charlotte, NC | $1,434.70 |
| 8/20-22/23 | Airfare | Nowlin-Sohl | Evidentiary hearing in Charlotte, NC | $988.70 |
| 8/20-22/23 | Airport parking and ground transportation | Davidson | Evidentiary hearing in Charlotte, NC | $193.85 |
| 8/20-22/23 | Ground transportation | Nowlin-Sohl | Evidentiary hearing in Charlotte, NC | $67.67 |

| | | | | |
|---|---|---|---|---|
| 8/20-22/23 | Lodging | Davidson | Evidentiary hearing in Charlotte, NC | $416.36 |
| 8/20-22/23 | Lodging | Nowlin-Sohl | Evidentiary hearing in Charlotte, NC | $352.08 |
| **TOTAL** | | | | **$6,246.35** |

EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**Case No. 3:22cv191**

**KANAUTICA ZAYRE-BROWN,**

**Plaintiff,**

**v.**

**N.C. DEPARTMENT OF ADULT CORRECTION, et al.,**

**Defendants.**

## DECLARATION OF DANIEL K. SIEGEL

1. My name is Daniel K. Siegel. I am an attorney with the ACLU of North Carolina Legal Foundation (ACLU-NC), where I am employed as the Deputy Legal Director. In that position, I supervise staff attorneys, paralegals, and law students. I represent the plaintiff in this matter.

2. ACLU-NC is a non-profit civil rights organization and law firm dedicated to protecting the civil rights and liberties of all North Carolinians. ACLU-NC does not charge clients for its services.

3. I have expertise in civil rights litigation generally and prison litigation specifically. I graduated from the University of North Carolina School of Law in 2013. Afterwards, I clerked for Justice Cheri Beasley at the Supreme Court of North Carolina and worked in private practice before joining North Carolina Prisoner Legal Services in 2017, where I exclusively represented incarcerated clients in civil litigation. I joined ACLU-NC in 2019 and have continued to work on prison cases as

well LGBTQ+ issues.

4. My co-counsel Jaclyn Maffetore is a Senior Staff Attorney with ACLU-NC. She graduated from Elon University School of Law in 2016. She then practiced voting rights law with the Southern Coalition for Social Justice for three years before joining ACLU-NC in 2019. Ms. Maffetore is the lead attorney in this case.

5. My co-counsel Michele Delgado is a Staff Attorney with ACLU-NC. She graduated from North Carolina Central University School of Law in 2016. She then worked as a public defender and the U.S. Department of Health and Human Services before joining ACLU-NC in 2021.

6. ACLU-NC has maintained a relationship with Plaintiff since before her transfer to a women's prison, and Ms. Maffetore has maintained a relationship with her since 2019. Plaintiff's counsel with ACLU-NC have maintained close contact with Plaintiff through letters, prison phone calls, family members, visitations, and regular email and phone contact since her release from prison. This included complaint and declaration review and witness preparation as well as regular updates and strategy discussions regarding her case and transmission of all major filings through legal mail.

7. ACLU-NC requests an hourly rate of $262.50 for its attorneys, which I understand to be the maximum currently allowed by the Prison Litigation Reform Act (PLRA). I believe this rate to be reasonable given the skill and experience of Ms. Maffetore, Ms. Delgado, and myself, and that, but for the PLRA, we would likely be entitled to a significantly higher hourly market rate.

8. Attached to this declaration as Attachments 1, 2, and 3 are timesheets indicating the time spent by Ms. Maffetore, Ms. Delgado, and myself on tasks associated with this litigation. In accordance with ACLU-NC's regular practice, the time indicated on these timesheets was recorded contemporaneously with the work being done and rounded down to tenth of an hour increments.

9. In the exercise of billing judgment, Ms. Maffetore, Ms. Delgado, and I have reviewed these timesheets and removed entries that may be duplicative, vague, excessive, or otherwise not recoverable. We have also removed entries for time spent briefing Plaintiff's motion for a preliminary injunction, and time that we could identify as only relating to Plaintiff's unsuccessful claims. We are not seeking fees for time spent on administrative tasks, or by paralegals and law students. In all, we have removed approximately 1,000 hours of time billed to this case.

10. The timesheets attached here reflect time spent over a period of more than three years investigating this case; drafting the complaint; defeating Defendants' motion to dismiss; conducting extensive discovery, which included reviewing thousands of documents and taking or defending fifteen depositions, including five expert depositions; partially defeating Defendants' Rule 35 motion; routine litigation tasks including legal research, setting legal strategy, client communications, and communications with co-counsel; two rounds of summary judgment briefing; briefing *Daubert* motions to exclude Defendants' expert witnesses; preparing for and participating in an evidentiary hearing; defeating Defendants' motions to stay the Court's permanent injunction before this Court and the Fourth

Circuit; merits briefing at the Fourth Circuit; and responding to Defendants' submissions in response to this Court's permanent injunction. I believe that all these tasks were reasonably necessary for the successful prosecution of this case.

11. ACLU-NC is a non-profit with limited resources and so must be judicious in selecting cases to litigate. The time ACLU-NC attorneys spent on this case had an associated opportunity cost for the attorneys involved—especially the case's lead attorney, Jaclyn Maffetore—who had less time to investigate and litigate other civil rights matters.

12. In my experience, private law firms in North Carolina are rarely willing to devote significant resources to representing incarcerated plaintiffs seeking injunctive relief, which often require significant resources over a long period of time—including the engagement of expert witnesses—and are unlikely to produce a financial windfall. These cases almost always require the active involvement of public interest organizations such as ACLU-NC.

13. Plaintiff's counsel with ACLU-NC seek to recover for a total of 1,557.5 hours. At the current PLRA rate, ACLU-NC's lodestar is $408,843.75.[1]

14. As detailed in Attachment 4 to this declaration, Plaintiff's counsel seek to recover a total of $4,138.94 in non-taxable expenses.

15. Given the complexity of this case, its subject matter, the degree of success achieved, and the need to incentivize competent attorneys to represent incarcerated and transgender clients who have meritorious claims, I believe the

[1] This figure includes $5,853.75 for 22.3 hours spent preparing this petition.

amount of costs, fees, and expenses sought by Plaintiff's counsel at ACLU-NC is reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this the 21st day of July, 2025.

Daniel K. Siegel

# ATTACHMENT 1 - Timesheet for Jaclyn Maffetore

| fname | lname | local_date | hours | notes |
|---|---|---|---|---|
| Jaclyn | Maffetore | 1/4/2022 | 0.2 | email to litigation team re: factual updates from client, call agenda |
| Jaclyn | Maffetore | 1/4/2022 | 0.4 | litigation team call re: case opening |
| Jaclyn | Maffetore | 1/18/2022 | 1 | litigation team call re: case opening |
| Jaclyn | Maffetore | 1/21/2022 | 0.9 | legal call w/ client |
| Jaclyn | Maffetore | 1/24/2022 | 0.4 | conf/email to secure legal mail |
| Jaclyn | Maffetore | 1/24/2022 | 0.6 | reviewing expert declaration shell |
| Jaclyn | Maffetore | 1/25/2022 | 1.1 | litigation team call re: case opening |
| Jaclyn | Maffetore | 1/25/2022 | 2.7 | reviewing co-counsel edits to draft complaint, conf w/ DS re: same |
| Jaclyn | Maffetore | 2/8/2022 | 0.9 | litigation team call + internal conf |
| Jaclyn | Maffetore | 2/15/2022 | 2 | editing complaint |
| Jaclyn | Maffetore | 2/17/2022 | 0.5 | litigation team call re: case opening |
| Jaclyn | Maffetore | 2/21/2022 | 4.9 | editing complaint |
| Jaclyn | Maffetore | 2/23/2022 | 1.1 | litigation team call re: case opening |
| Jaclyn | Maffetore | 2/24/2022 | 0.5 | call w/ expert witness |
| Jaclyn | Maffetore | 2/24/2022 | 0.5 | reviewing/finalizing complaint edits and circulating draft to team |
| Jaclyn | Maffetore | 3/1/2022 | 0.5 | litigation team call |
| Jaclyn | Maffetore | 3/3/2022 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 3/8/2022 | 0.9 | litigation team call re: case opening |
| Jaclyn | Maffetore | 3/16/2022 | 1.2 | compiling resources for draft declaration; drafting declaration |
| Jaclyn | Maffetore | 3/17/2022 | 2.2 | drafting client declaration |
| Jaclyn | Maffetore | 3/18/2022 | 5.2 | drafting client declaration |
| Jaclyn | Maffetore | 3/22/2022 | 1 | lit team call |
| Jaclyn | Maffetore | 3/24/2022 | 1 | editing declaration |
| Jaclyn | Maffetore | 3/25/2022 | 0.2 | email to team re: next steps in light of Ettner visitation request denial |
| Jaclyn | Maffetore | 3/28/2022 | 0.7 | editing declaration/prepping for legal call w/ client |
| Jaclyn | Maffetore | 3/29/2022 | 0.6 | litigation team call |
| Jaclyn | Maffetore | 3/29/2022 | 1.3 | editing complaint |
| Jaclyn | Maffetore | 3/30/2022 | 0.3 | emails w/ expert witness re: next steps in light of visitation denial |
| Jaclyn | Maffetore | 4/4/2022 | 2.8 | editing complaint |
| Jaclyn | Maffetore | 4/5/2022 | 3.4 | editing complaint |
| Jaclyn | Maffetore | 4/11/2022 | 0.9 | reviewing complaint edits |
| Jaclyn | Maffetore | 4/12/2022 | 0.5 | legal call w/ client Kanautica Zayre-Brown |
| Jaclyn | Maffetore | 4/12/2022 | 1.1 | litigation team call re: unresolved complaint issues, case opening |
| Jaclyn | Maffetore | 4/15/2022 | 2.6 | editing complaint |
| Jaclyn | Maffetore | 4/19/2022 | 1.1 | Litigation team call |
| Jaclyn | Maffetore | 4/19/2022 | 1.2 | reviewing/incorporating complaint edits |
| Jaclyn | Maffetore | 4/22/2022 | 0.2 | drafting complaint verification; emailing same to team |
| Jaclyn | Maffetore | 4/22/2022 | 0.2 | conf w/ DS, MD re: complaint verification |
| Jaclyn | Maffetore | 4/22/2022 | 0.3 | incorporating complaint edits; emailing same to team |
| Jaclyn | Maffetore | 4/25/2022 | 0.9 | finalizing and printing documents for client review and signature |
| Jaclyn | Maffetore | 4/25/2022 | 1.7 | visit with Kanautica Zayre-Brown to review/verify documents |
| Jaclyn | Maffetore | 4/25/2022 | 4.7 | travel to/from Anson CI |
| Jaclyn | Maffetore | 4/26/2022 | 0.2 | research re: medical records |
| Jaclyn | Maffetore | 4/26/2022 | 0.2 | call w/ DS re: next steps in light of denial of surgery |
| Jaclyn | Maffetore | 4/26/2022 | 0.4 | emails w/ legal team re: immediate next steps in light of formal denial of surgery |
| Jaclyn | Maffetore | 4/26/2022 | 0.4 | drafting/emailing expedited request for medical records |
| Jaclyn | Maffetore | 4/26/2022 | 0.5 | research re: local rules; summonses/waiver of service |
| Jaclyn | Maffetore | 4/26/2022 | 1.5 | editing complaint |
| Jaclyn | Maffetore | 4/28/2022 | 0.3 | finalizing complaint for filing |
| Jaclyn | Maffetore | 4/28/2022 | 0.7 | preparing and emailing request for waiver, complaint, and partially completed waivers to defendants' counsel |
| Jaclyn | Maffetore | 4/28/2022 | 0.9 | filing complaint |
| Jaclyn | Maffetore | 4/28/2022 | 1 | finalizing and submitting summonses |
| Jaclyn | Maffetore | 4/29/2022 | 0.2 | filing waivers of service |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 4/29/2022 | 0.6 | internal confs, emails re: scheduling evaluation with expert |
| Jaclyn | Maffetore | 4/29/2022 | 0.7 | drafting letter to client; email to team re: same |
| Jaclyn | Maffetore | 5/10/2022 | 0.6 | KZB lit team call |
| Jaclyn | Maffetore | 5/19/2022 | 1 | legal call w/ Kanautica + internal huddle |
| Jaclyn | Maffetore | 5/23/2022 | 2.7 | editing declaration |
| Jaclyn | Maffetore | 5/25/2022 | 3.2 | navigating security + client visit at Anson CI |
| Jaclyn | Maffetore | 5/25/2022 | 6.8 | travel from Raleigh to CLT airport to pick up expert, from CLT airport to Anson CI, and back. |
| Jaclyn | Maffetore | 5/31/2022 | 0.9 | litigation team call |
| Jaclyn | Maffetore | 5/31/2022 | 1.8 | editing client declaration |
| Jaclyn | Maffetore | 6/1/2022 | 1.5 | editing client decl and circulating same to team |
| Jaclyn | Maffetore | 6/8/2022 | 1 | legal call w/ client |
| Jaclyn | Maffetore | 6/9/2022 | 1.3 | reviewing and processing client correspondence |
| Jaclyn | Maffetore | 6/13/2022 | 0.5 | legal team call |
| Jaclyn | Maffetore | 6/14/2022 | 2.2 | editing expert declaration |
| Jaclyn | Maffetore | 6/17/2022 | 0.2 | email to opposing counsel re: ongoing issues |
| Jaclyn | Maffetore | 6/18/2022 | 3.1 | editing client declaration |
| Jaclyn | Maffetore | 6/21/2022 | 0.3 | finalizing KZB declaration and circulating to team |
| Jaclyn | Maffetore | 6/21/2022 | 0.7 | team call |
| Jaclyn | Maffetore | 6/21/2022 | 1 | legal call w/ KZB |
| Jaclyn | Maffetore | 6/22/2022 | 0.5 | preparing for meeting with client |
| Jaclyn | Maffetore | 6/22/2022 | 1.5 | meeting with client |
| Jaclyn | Maffetore | 6/22/2022 | 4.5 | travel to/from Anson CI for client visit |
| Jaclyn | Maffetore | 6/24/2022 | 0.2 | finalizing KZB declaration |
| Jaclyn | Maffetore | 6/24/2022 | 0.7 | reviewing defs' motion to dismiss brief |
| Jaclyn | Maffetore | 6/24/2022 | 1.4 | editing Ettner declaration |
| Jaclyn | Maffetore | 6/27/2022 | 1.8 | finalizing Ettner declaration; compiling + redacting appendices |
| Jaclyn | Maffetore | 6/28/2022 | 0.4 | litigation team call |
| Jaclyn | Maffetore | 6/29/2022 | 0.2 | drafting letter to client |
| Jaclyn | Maffetore | 6/29/2022 | 1.8 | reviewing and analyzing defts MTD |
| Jaclyn | Maffetore | 6/30/2022 | 3.9 | planning/drafting MTD facts section |
| Jaclyn | Maffetore | 7/1/2022 | 0.3 | reviewing draft + emails w/ opposing counsel re: request for extension |
| Jaclyn | Maffetore | 7/1/2022 | 3.5 | drafting MTD facts section |
| Jaclyn | Maffetore | 7/5/2022 | 3.9 | editing MTD response draft |
| Jaclyn | Maffetore | 7/12/2022 | 1.1 | editing motion to dismiss response brief |
| Jaclyn | Maffetore | 7/15/2022 | 0.8 | finalizing/filing MTD |
| Jaclyn | Maffetore | 7/19/2022 | 0.4 | litigation team call |
| Jaclyn | Maffetore | 7/21/2022 | 0.2 | call w/ MD re: extension filing |
| Jaclyn | Maffetore | 7/21/2022 | 0.2 | editing extension motion |
| Jaclyn | Maffetore | 7/22/2022 | 0.9 | reviewing defs MTD reply |
| Jaclyn | Maffetore | 7/25/2022 | 0.7 | legal call w/ KZB and follow-up w/ team re: same |
| Jaclyn | Maffetore | 7/28/2022 | 0.5 | correcting redaction errors and preparing document for correction w/ clerk |
| Jaclyn | Maffetore | 7/29/2022 | 0.2 | finalizing corrected doc 13-1 and emailing to court |
| Jaclyn | Maffetore | 7/29/2022 | 2.2 | reviewing/editing 2nd Ettner decl |
| Jaclyn | Maffetore | 8/2/2022 | 2.1 | editing/finalizing Ettner Decl. and appendix |
| Jaclyn | Maffetore | 8/3/2022 | 0.5 | conf w/ team re: opposing counsel request to move hearing date |
| Jaclyn | Maffetore | 8/4/2022 | 0.2 | conferring re: response to opposing counsel |
| Jaclyn | Maffetore | 8/5/2022 | 0.2 | email to opposing counsel re: ongoing medical care issues |
| Jaclyn | Maffetore | 8/8/2022 | 1.5 | reviewing/analyzing MTD reply |
| Jaclyn | Maffetore | 8/9/2022 | 0.7 | litigation team call |
| Jaclyn | Maffetore | 8/9/2022 | 4.6 | planning for MTD hearing |
| Jaclyn | Maffetore | 8/10/2022 | 4.2 | reviewing cases and formulating argument outline in preparation for MTD hearing |
| Jaclyn | Maffetore | 8/11/2022 | 3.7 | reviewing cases and formulating argument outline in preparation for MTD hearing |
| Jaclyn | Maffetore | 8/12/2022 | 4.4 | reviewing cases and formulating argument outline in preparation for MTD hearing |
| Jaclyn | Maffetore | 8/15/2022 | 3.2 | reviewing cases and formulating argument outline in preparation for MTD hearing |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 8/16/2022 | 0.5 | lit team call |
| Jaclyn | Maffetore | 8/16/2022 | 1 | reviewing/analyzing newly released 4th cir case for implications on MTD |
| Jaclyn | Maffetore | 8/16/2022 | 1.5 | first hearing moot |
| Jaclyn | Maffetore | 8/16/2022 | 3.2 | finalizing MTD hearing outline and preparing for moot |
| Jaclyn | Maffetore | 8/17/2022 | 0.4 | finalizing and filing notice of subsequent authority |
| Jaclyn | Maffetore | 8/17/2022 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 8/18/2022 | 0.2 | call from Kanautica with factual updates |
| Jaclyn | Maffetore | 8/18/2022 | 0.4 | email to team re: call from Kanautica w/ factual updates and next steps |
| Jaclyn | Maffetore | 8/18/2022 | 2.8 | prepping for MTD hearing with eye toward incorporating feedback from first moot |
| Jaclyn | Maffetore | 8/19/2022 | 2 | second hearing moot |
| Jaclyn | Maffetore | 8/19/2022 | 3.6 | prepping for MTD hearing/second moot with eye toward incorporating feedback from first moot |
| Jaclyn | Maffetore | 8/20/2022 | 1.6 | revising argument outline/preparing for hearing with eye toward feedback from second moot |
| Jaclyn | Maffetore | 8/22/2022 | 1.2 | legal research in prep for hearing |
| Jaclyn | Maffetore | 8/22/2022 | 1.2 | finalizing outline for hearing |
| Jaclyn | Maffetore | 8/22/2022 | 2.2 | reviewing cases and outline in prep for hearing |
| Jaclyn | Maffetore | 8/23/2022 | 1.5 | appear/argue at MTD/PI hearing |
| Jaclyn | Maffetore | 8/23/2022 | 2.9 | traveling back from Charlotte for hearing and returning rental car |
| Jaclyn | Maffetore | 8/24/2022 | 0.3 | call w/ Kanautica to provide factual-only update re: hearing |
| Jaclyn | Maffetore | 9/1/2022 | 1 | legal call w/ client |
| Jaclyn | Maffetore | 9/6/2022 | 0.7 | litigation team call |
| Jaclyn | Maffetore | 9/23/2022 | 1 | reviewing MTD/PI decision, communications w/ team & client's husband re: same |
| Jaclyn | Maffetore | 9/27/2022 | 0.3 | coordinating w/ team re: availability to propose r. 26 f conf |
| Jaclyn | Maffetore | 9/27/2022 | 0.6 | finalizing documents to request UNC provider interviews |
| Jaclyn | Maffetore | 9/27/2022 | 1 | lit team call re: decision, discovery planning |
| Jaclyn | Maffetore | 9/27/2022 | 1 | reviewing updated client medical records |
| Jaclyn | Maffetore | 9/28/2022 | 0.2 | email re: interview request for UNC providers |
| Jaclyn | Maffetore | 9/28/2022 | 0.7 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 9/28/2022 | 1.7 | drafting rule 26f report |
| Jaclyn | Maffetore | 9/29/2022 | 0.3 | emails to opposing counsel re: setting up 26f conf |
| Jaclyn | Maffetore | 9/29/2022 | 2.1 | drafting r 26f report + circulating to team for review/comment |
| Jaclyn | Maffetore | 10/5/2022 | 0.3 | editing draft rule 26f report |
| Jaclyn | Maffetore | 10/6/2022 | 1.4 | Reviewing draftg discovery requests/306b notice |
| Jaclyn | Maffetore | 10/7/2022 | 0.5 | reviewing answer |
| Jaclyn | Maffetore | 10/11/2022 | 0.7 | lit team call re: discovery planning; answer |
| Jaclyn | Maffetore | 10/11/2022 | 0.7 | drafting outline for Caraccio interview +circulating to team |
| Jaclyn | Maffetore | 10/11/2022 | 1.2 | reviewing defs' answer |
| Jaclyn | Maffetore | 10/12/2022 | 0.2 | internal meeting after Caraccio interview |
| Jaclyn | Maffetore | 10/12/2022 | 0.2 | finalizing draft 26f report and circulating same to opposing counsel |
| Jaclyn | Maffetore | 10/12/2022 | 0.3 | internal meeting before Caraccio interview |
| Jaclyn | Maffetore | 10/12/2022 | 1.1 | interview w/ Dr. Caraccio, UNC Health |
| Jaclyn | Maffetore | 10/13/2022 | 0.5 | 26f conf w/ defs |
| Jaclyn | Maffetore | 10/14/2022 | 0.7 | reviewing defs 26f report edits |
| Jaclyn | Maffetore | 10/14/2022 | 1.1 | interview w/ Jennifer Dula |
| Jaclyn | Maffetore | 10/18/2022 | 0.5 | litigation team call re: discovery |
| Jaclyn | Maffetore | 10/19/2022 | 0.3 | finalizing and filing certificate of initial attorney conference |
| Jaclyn | Maffetore | 10/20/2022 | 0.2 | reviewing court's changes to proposed discovery schedule |
| Jaclyn | Maffetore | 10/25/2022 | 0.3 | editing draft disco requests |
| Jaclyn | Maffetore | 10/25/2022 | 0.6 | reviewing/editing initial disclosures |
| Jaclyn | Maffetore | 10/25/2022 | 0.7 | litigation team call re: discovery, initial disclosures |
| Jaclyn | Maffetore | 10/25/2022 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 10/26/2022 | 0.2 | editing draft disco requests |
| Jaclyn | Maffetore | 10/27/2022 | 0.2 | reviewing defs initial disclosures |
| Jaclyn | Maffetore | 10/27/2022 | 0.7 | editing/finalizing/serving initial disclosures |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 11/1/2022 | 1 | reviewing/editing draft discovery |
| Jaclyn | Maffetore | 11/15/2022 | 0.4 | lit team call |
| Jaclyn | Maffetore | 11/22/2022 | 0.8 | lit team call |
| Jaclyn | Maffetore | 11/22/2022 | 2.4 | reviewing/editing draft PO and motion |
| Jaclyn | Maffetore | 11/28/2022 | 1.4 | finalizing edits to draft PO & motion; email to opposing counsel re: same |
| Jaclyn | Maffetore | 12/5/2022 | 1.2 | reviewing Defs' discovery responses; conf w/ DS, MD re: same |
| Jaclyn | Maffetore | 12/8/2022 | 0.5 | Figler interview |
| Jaclyn | Maffetore | 12/9/2022 | 0.2 | follow-up call w/ team after legal call |
| Jaclyn | Maffetore | 12/9/2022 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 12/13/2022 | 0.4 | reviewing supplemental production |
| Jaclyn | Maffetore | 12/13/2022 | 0.8 | lit team call |
| Jaclyn | Maffetore | 12/15/2022 | 0.2 | emails w/ team, opposing counsel re: deposition scheduling |
| Jaclyn | Maffetore | 12/19/2022 | 0.9 | drafting client letter with substantive updates to send with documents |
| Jaclyn | Maffetore | 12/20/2022 | 0.2 | preparing for Croft interview |
| Jaclyn | Maffetore | 12/20/2022 | 0.8 | preparing for call w/ Dr. Ettner |
| Jaclyn | Maffetore | 12/20/2022 | 0.8 | drafting discovery review coding protocol |
| Jaclyn | Maffetore | 12/20/2022 | 1 | call w/ Dr. Ettner |
| Jaclyn | Maffetore | 12/20/2022 | 1 | litigation team call |
| Jaclyn | Maffetore | 12/20/2022 | 1.2 | call w/ Katherine Croft |
| Jaclyn | Maffetore | 1/4/2023 | 0.2 | conf, emails w/ team re: extension negotiations |
| Jaclyn | Maffetore | 1/4/2023 | 0.5 | drafting discovery responses |
| Jaclyn | Maffetore | 1/5/2023 | 0.2 | emails with opposing counsel re: extension request |
| Jaclyn | Maffetore | 1/5/2023 | 0.3 | editing motion for extension and proposed order |
| Jaclyn | Maffetore | 1/5/2023 | 0.4 | conf w/ DS re: depo prep |
| Jaclyn | Maffetore | 1/5/2023 | 0.8 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 1/5/2023 | 2.6 | drafting KZB discovery responses |
| Jaclyn | Maffetore | 1/6/2023 | 0.2 | filing motion for extension and submitting proposed order |
| Jaclyn | Maffetore | 1/6/2023 | 1.5 | reviewing documents for discovery |
| Jaclyn | Maffetore | 1/6/2023 | 3.9 | drafting KZB discovery responses, circulating same to team |
| Jaclyn | Maffetore | 1/9/2023 | 0.3 | connecting Dr. Ettner to client; follow-up convo after client call |
| Jaclyn | Maffetore | 1/10/2023 | 1.1 | lit team call |
| Jaclyn | Maffetore | 1/10/2023 | 5.7 | doc review for production |
| Jaclyn | Maffetore | 1/11/2023 | 0.5 | conf w/ internal team re: depo prep |
| Jaclyn | Maffetore | 1/11/2023 | 4.5 | reviewing docs for production |
| Jaclyn | Maffetore | 1/12/2023 | 0.4 | finalizing production + hosting on FTP for defendants |
| Jaclyn | Maffetore | 1/12/2023 | 1.9 | editing/finalizing discovery responses |
| Jaclyn | Maffetore | 1/12/2023 | 4.1 | preparing for client deposition prep session |
| Jaclyn | Maffetore | 1/13/2023 | 2.3 | client deposition prep session |
| Jaclyn | Maffetore | 1/13/2023 | 5 | travel to/from Anson CI for client depo prep |
| Jaclyn | Maffetore | 1/16/2023 | 3.7 | preparing to defend deposition |
| Jaclyn | Maffetore | 1/17/2023 | 0.2 | emails w/ UNC Health paralegal re: subpoena |
| Jaclyn | Maffetore | 1/17/2023 | 1.8 | reviewing documents in advance of client deposition |
| Jaclyn | Maffetore | 1/18/2023 | 5.3 | travel to/from client deposition |
| Jaclyn | Maffetore | 1/18/2023 | 5.9 | client deposition + pre/break/post meetings |
| Jaclyn | Maffetore | 1/23/2023 | 0.4 | finalizing and serving subpoena on UNC Health |
| Jaclyn | Maffetore | 1/24/2023 | 1 | litigation team meeting |
| Jaclyn | Maffetore | 1/27/2023 | 2.6 | editing ettner report draft |
| Jaclyn | Maffetore | 1/31/2023 | 0.2 | follow-up w/ UNC health re: subpoena |
| Jaclyn | Maffetore | 1/31/2023 | 0.6 | reviewing edits to Ettner report, conf w/ DS re same |
| Jaclyn | Maffetore | 1/31/2023 | 0.8 | lit team call |
| Jaclyn | Maffetore | 2/2/2023 | 1.7 | document review of defendants' production |
| Jaclyn | Maffetore | 2/3/2023 | 1.6 | finalizing/serving Ettner expert report |
| Jaclyn | Maffetore | 2/6/2023 | 0.4 | reviewing/editing 30(b)(6) notice |
| Jaclyn | Maffetore | 2/6/2023 | 0.7 | reviewing UNC subpoena responses + accessing documents |
| Jaclyn | Maffetore | 2/6/2023 | 1 | defs doc review |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 2/7/2023 | 0.4 | lit team call |
| Jaclyn | Maffetore | 2/7/2023 | 1.2 | editing/finalizing 30(b)(6) notice |
| Jaclyn | Maffetore | 2/9/2023 | 1 | document review |
| Jaclyn | Maffetore | 2/14/2023 | 3.5 | document review |
| Jaclyn | Maffetore | 2/15/2023 | 0.3 | emails to opposing counsel re: 30(b)(6), R. 35 |
| Jaclyn | Maffetore | 2/15/2023 | 1 | emails to team, internal confs re: R. 35 request |
| Jaclyn | Maffetore | 2/15/2023 | 2.2 | research re: R. 35 |
| Jaclyn | Maffetore | 2/16/2023 | 0.3 | internal huddle with team following call w/ opposing counsel |
| Jaclyn | Maffetore | 2/16/2023 | 0.5 | call w/ opposing counsel re: R.35 |
| Jaclyn | Maffetore | 2/16/2023 | 0.8 | document review |
| Jaclyn | Maffetore | 2/16/2023 | 1.2 | research re: R. 35 |
| Jaclyn | Maffetore | 2/17/2023 | 0.2 | email w/ opposing counsel re: R. 35 position |
| Jaclyn | Maffetore | 2/17/2023 | 0.4 | emails to team  re: client call |
| Jaclyn | Maffetore | 2/17/2023 | 0.5 | document review |
| Jaclyn | Maffetore | 2/17/2023 | 0.7 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 2/21/2023 | 2.4 | reviewing/editing opp to R.35 motion |
| Jaclyn | Maffetore | 2/22/2023 | 0.3 | follow up email to team re: call w/ opposing counsel |
| Jaclyn | Maffetore | 2/22/2023 | 0.7 | call w/ opposing counsel re: 30(b)(6), settlement, extension |
| Jaclyn | Maffetore | 2/22/2023 | 2.2 | document review |
| Jaclyn | Maffetore | 2/23/2023 | 0.2 | email to opposing counsel re: extension |
| Jaclyn | Maffetore | 2/23/2023 | 0.3 | emails w/ team re: R. 35 |
| Jaclyn | Maffetore | 2/23/2023 | 1.6 | document review |
| Jaclyn | Maffetore | 2/24/2023 | 1.1 | final review of R. 35 opp |
| Jaclyn | Maffetore | 2/24/2023 | 1.4 | document review |
| Jaclyn | Maffetore | 2/24/2023 | 1.4 | reviewing dep transcript for errors |
| Jaclyn | Maffetore | 2/28/2023 | 0.2 | reviewing discovery requests |
| Jaclyn | Maffetore | 2/28/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 2/28/2023 | 2 | reviewing deposition transcript for errors |
| Jaclyn | Maffetore | 3/1/2023 | 0.7 | reviewing deposition transcript |
| Jaclyn | Maffetore | 3/2/2023 | 0.5 | team call re: 30(b)(6) deposition planning |
| Jaclyn | Maffetore | 3/2/2023 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 3/2/2023 | 2.4 | document review |
| Jaclyn | Maffetore | 3/3/2023 | 0.2 | email to opposing counsel re: time to discuss deposition logistics |
| Jaclyn | Maffetore | 3/3/2023 | 0.7 | editing 30(b)(6) notice |
| Jaclyn | Maffetore | 3/6/2023 | 1.9 | document review |
| Jaclyn | Maffetore | 3/7/2023 | 0.4 | finalizing and sending revised 30(b)(6) notice to opposing counsel |
| Jaclyn | Maffetore | 3/7/2023 | 0.5 | call w/ opposing counsel re: 30(b)(6) objections, logistics |
| Jaclyn | Maffetore | 3/7/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 3/7/2023 | 1.2 | drafting campbell 30(b)(6) deposition outline |
| Jaclyn | Maffetore | 3/7/2023 | 1.5 | document review w/ eye toward deposition prep |
| Jaclyn | Maffetore | 3/8/2023 | 1.5 | drafting deposition outline |
| Jaclyn | Maffetore | 3/9/2023 | 0.8 | team call re: 30(b)(6) depo |
| Jaclyn | Maffetore | 3/9/2023 | 4.3 | drafting deposition outline |
| Jaclyn | Maffetore | 3/10/2023 | 0.2 | reviewing emails from opposing counsel re: depo, late arriving production |
| Jaclyn | Maffetore | 3/10/2023 | 6.2 | deposition outline/exhibit prep |
| Jaclyn | Maffetore | 3/14/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 3/14/2023 | 4 | document review |
| Jaclyn | Maffetore | 3/20/2023 | 0.2 | sharing client update with team |
| Jaclyn | Maffetore | 3/21/2023 | 0.6 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 3/21/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 3/22/2023 | 0.6 | finalizing and serving supplemented initial disclosures |
| Jaclyn | Maffetore | 3/22/2023 | 1.1 | reviewing documents in preparation of Campbell/30(b)(6) deposition |
| Jaclyn | Maffetore | 3/23/2023 | 0.9 | reviewing/editing discovery responses |
| Jaclyn | Maffetore | 3/23/2023 | 2.2 | reviewing documents/drafting/editing outline in preparation of Campbell/30(b)(6) deposition |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 3/27/2023 | 0.2 | serving discovery responses and password for document access via emails to opposing counsel; providing documents via fileshare |
| Jaclyn | Maffetore | 3/27/2023 | 0.4 | finalizing written discovery responses |
| Jaclyn | Maffetore | 3/27/2023 | 1.5 | compiling and finalizing second production of documents |
| Jaclyn | Maffetore | 3/27/2023 | 3.4 | reviewing and compiling documents for/drafting/editing Campbell/30(b)(6) outline |
| Jaclyn | Maffetore | 3/28/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 4/3/2023 | 0.5 | call w/ Dr. Ettner re: test materials and discovery dispute |
| Jaclyn | Maffetore | 4/3/2023 | 0.6 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 4/4/2023 | 0.7 | litigation team call |
| Jaclyn | Maffetore | 4/5/2023 | 0.9 | finalizing/sending deficiency letter to opposing counsel |
| Jaclyn | Maffetore | 4/6/2023 | 1.2 | finalizing and serving supplemental disco responses |
| Jaclyn | Maffetore | 4/6/2023 | 3.2 | editing campbell depo outline |
| Jaclyn | Maffetore | 4/13/2023 | 0.5 | finalizing and serving updated notices of deposition for campbell and peiper |
| Jaclyn | Maffetore | 4/13/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 4/13/2023 | 3.2 | drafting/editing Campbell depo outline |
| Jaclyn | Maffetore | 4/14/2023 | 0.2 | emails w/ opposing counsel re: mediation, deposition scheduling |
| Jaclyn | Maffetore | 4/17/2023 | 0.6 | emails w/ opposing counsel re: reaching compromise on discovery/deposition dispute |
| Jaclyn | Maffetore | 4/17/2023 | 1.6 | editing Campbell deposition outline |
| Jaclyn | Maffetore | 4/18/2023 | 2.5 | finalizing Campbell/30(b)(6) deposition outline and exhibits |
| Jaclyn | Maffetore | 4/18/2023 | 10 | taking Dr. Campbell/30(b)(6) deposition + meetings to confer re: depo on breaks |
| Jaclyn | Maffetore | 4/19/2023 | 0.2 | reviewing second requests for production |
| Jaclyn | Maffetore | 4/20/2023 | 1 | lit team call |
| Jaclyn | Maffetore | 4/20/2023 | 3.7 | reviewing/compiling documents with eye toward drafting Junker deposition outline |
| Jaclyn | Maffetore | 4/21/2023 | 1.7 | drafting Junker deposition outline |
| Jaclyn | Maffetore | 4/23/2023 | 2.5 | drafting Junker deposition outline |
| Jaclyn | Maffetore | 4/27/2023 | 0.6 | litigation team call and follow-up email |
| Jaclyn | Maffetore | 4/27/2023 | 1 | legal call with Kanautica |
| Jaclyn | Maffetore | 5/1/2023 | 0.2 | emails w/ team re: R. 35 |
| Jaclyn | Maffetore | 5/2/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 5/2/2023 | 2.2 | drafting/editing Junker depo outline |
| Jaclyn | Maffetore | 5/3/2023 | 3.8 | drafting/editing Junker depo outline |
| Jaclyn | Maffetore | 5/4/2023 | 0.5 | finalizing Junker depo outline |
| Jaclyn | Maffetore | 5/4/2023 | 7.5 | taking Junker depo and conferring w/ co-counsel on breaks |
| Jaclyn | Maffetore | 5/8/2023 | 0.7 | reviewing UNC declaration drafts |
| Jaclyn | Maffetore | 5/8/2023 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 5/9/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 5/9/2023 | 2.6 | reviwing UNC declaration drafts |
| Jaclyn | Maffetore | 5/10/2023 | 0.2 | emails w/ opposing counsel re: depos, mx to extend |
| Jaclyn | Maffetore | 5/10/2023 | 0.7 | editing mx to extend and discussion re: same w/ team |
| Jaclyn | Maffetore | 5/11/2023 | 0.2 | emails w/ opposing counsel re: depo scheduling, conf w/ team re: same |
| Jaclyn | Maffetore | 5/12/2023 | 0.3 | emails w/ team re: court order |
| Jaclyn | Maffetore | 5/16/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 5/18/2023 | 0.5 | conf and emails w/ team re: discovery |
| Jaclyn | Maffetore | 5/19/2023 | 0.3 | finalizing and serving supplemental discovery |
| Jaclyn | Maffetore | 5/19/2023 | 0.3 | emails to opposing counsel re: discovery conf |
| Jaclyn | Maffetore | 5/19/2023 | 0.4 | drafting supplemental discovery responses |
| Jaclyn | Maffetore | 5/19/2023 | 1.8 | Peiper 30(b)(6) confidentiality designation |
| Jaclyn | Maffetore | 5/19/2023 | 4.6 | reviewing for privilege + redacting first supplemental production |
| Jaclyn | Maffetore | 5/21/2023 | 3.2 | Peiper 30(b)(6) confidentiality designations |
| Jaclyn | Maffetore | 5/23/2023 | 1 | lit team call |
| Jaclyn | Maffetore | 5/24/2023 | 0.2 | emails to opposing counsel re: discovery |
| Jaclyn | Maffetore | 5/25/2023 | 0.2 | looking into expert report issue raised, email to opposing re: same |
| Jaclyn | Maffetore | 5/25/2023 | 0.5 | call w/ opposing counsel re: R. 35, discovery; circulating notes re: same |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 5/26/2023 | 0.2 | drafting email and serving Zayre-Brown confidentiality designations on opposing counsel |
| Jaclyn | Maffetore | 5/26/2023 | 4.6 | reviewing Campbell 30(b)(6) and individual capacity depos for confidentiality designations |
| Jaclyn | Maffetore | 5/30/2023 | 0.5 | lit team call |
| Jaclyn | Maffetore | 5/31/2023 | 1 | emails w/ team & opposing counsel re: R. 35, discovery |
| Jaclyn | Maffetore | 6/1/2023 | 0.2 | conferring w/ team re: opposing counsel's discovery positions |
| Jaclyn | Maffetore | 6/1/2023 | 0.4 | emails to opposing counsel re: outstanding discovery issues |
| Jaclyn | Maffetore | 6/1/2023 | 1.1 | finalizing and serving second supplemental production + written responses |
| Jaclyn | Maffetore | 6/6/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 6/8/2023 | 2.6 | reviewing Junker depostion transcript w/ attention to confidentiality designations |
| Jaclyn | Maffetore | 6/13/2023 | 0.6 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 6/13/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 6/14/2023 | 0.4 | drafting response to opposing counsel re: discovery |
| Jaclyn | Maffetore | 6/14/2023 | 0.6 | editing draft Dula declaration |
| Jaclyn | Maffetore | 6/20/2023 | 0.2 | reviewing emails from opposing counsel re: discovery issues |
| Jaclyn | Maffetore | 6/20/2023 | 0.5 | litigation team call |
| Jaclyn | Maffetore | 6/21/2023 | 0.6 | reviewing documents with eye toward bowman deposition prep |
| Jaclyn | Maffetore | 6/22/2023 | 3.2 | reviewing documents w/ eye toward Bowman deposition prep |
| Jaclyn | Maffetore | 6/23/2023 | 3.4 | Bowman depo outline/doc review |
| Jaclyn | Maffetore | 6/26/2023 | 0.2 | drafting bowman notice of deposition |
| Jaclyn | Maffetore | 6/26/2023 | 3.8 | drafting Bowman deposition outline & compiling documents |
| Jaclyn | Maffetore | 6/27/2023 | 1.2 | litigation team call |
| Jaclyn | Maffetore | 6/29/2023 | 3 | Bowman deposition and internal confs during breaks |
| Jaclyn | Maffetore | 7/7/2023 | 1.6 | reviewing expert reports; conf w/ DS re: same |
| Jaclyn | Maffetore | 7/10/2023 | 0.6 | huddle with DS re: expert discovery, SJ |
| Jaclyn | Maffetore | 7/11/2023 | 0.7 | legal call w/ KZB |
| Jaclyn | Maffetore | 7/11/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 7/17/2023 | 1.2 | reviewing/analyzing expert reports |
| Jaclyn | Maffetore | 7/18/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 7/20/2023 | 0.2 | emails w/ opposing counsel re: depos |
| Jaclyn | Maffetore | 7/25/2023 | 0.7 | reviewing/editing Ettner rebuttal |
| Jaclyn | Maffetore | 7/27/2023 | 0.3 | reviewing/OCR-ing final version of Ettner rebuttal |
| Jaclyn | Maffetore | 7/27/2023 | 2.3 | bowman confidentiality designations |
| Jaclyn | Maffetore | 7/31/2023 | 0.2 | conf w/ DS re: Penn subpoena |
| Jaclyn | Maffetore | 7/31/2023 | 0.4 | drafting/editing/circulating/serving updated initial disclosures |
| Jaclyn | Maffetore | 7/31/2023 | 0.8 | drafting/circulating/editing/serving Penn subpoena + attachment, notice of deposition |
| Jaclyn | Maffetore | 7/31/2023 | 1.8 | planning Penn depo outline |
| Jaclyn | Maffetore | 7/31/2023 | 2.3 | reviewing Boyd examination video |
| Jaclyn | Maffetore | 8/1/2023 | 0.5 | reviewing/editing Antommaria rebuttal report |
| Jaclyn | Maffetore | 8/1/2023 | 0.9 | lit team call |
| Jaclyn | Maffetore | 8/1/2023 | 1.8 | reviewing documents/drafting Penn depo outline |
| Jaclyn | Maffetore | 8/2/2023 | 0.7 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 8/2/2023 | 2.5 | reviewing docs w/ eye toward and drafting Penn deposition outline |
| Jaclyn | Maffetore | 8/4/2023 | 5.8 | reviewing documents/drafting Penn deposition outline |
| Jaclyn | Maffetore | 8/5/2023 | 3.7 | reviewing documents/drafting Penn deposition outline |
| Jaclyn | Maffetore | 8/6/2023 | 1.8 | reviewing documents/drafting Penn deposition outline |
| Jaclyn | Maffetore | 8/7/2023 | 0.2 | finalizing/serving expert rebuttal reports |
| Jaclyn | Maffetore | 8/7/2023 | 0.3 | reviewing Penn subpoena documents |
| Jaclyn | Maffetore | 8/7/2023 | 0.8 | finalizing Penn deposition outline |
| Jaclyn | Maffetore | 8/8/2023 | 8.5 | taking deposition of Dr. Penn + conf w/ team on breaks |
| Jaclyn | Maffetore | 8/10/2023 | 1.2 | reviewing defs' mot. for continuance, emails w/ co- and opposing counsel re: same |
| Jaclyn | Maffetore | 8/11/2023 | 0.3 | editing revised mot for trial continuance, email of same to opposing counsel |
| Jaclyn | Maffetore | 8/11/2023 | 0.5 | drafting mot to take deposition out of time |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 8/15/2023 | 0.3 | client call & email to team re: same |
| Jaclyn | Maffetore | 8/15/2023 | 0.5 | circulating, finalizing, filing motion to take deposition out of time |
| Jaclyn | Maffetore | 8/17/2023 | 1.5 | reviewing Penn depo rough w/ eye toward Daubert |
| Jaclyn | Maffetore | 8/17/2023 | 2 | planning SJ |
| Jaclyn | Maffetore | 8/18/2023 | 1 | reviewing Penn depo rough w/ eye toward Daubert |
| Jaclyn | Maffetore | 8/18/2023 | 1.2 | reviewing Daubert research from extern |
| Jaclyn | Maffetore | 8/22/2023 | 0.5 | reviewing Penn rough w/ eye towards Daubert |
| Jaclyn | Maffetore | 8/23/2023 | 0.2 | conf w/ DS re Daubert, SJ |
| Jaclyn | Maffetore | 8/23/2023 | 0.5 | legal call w/ KZB |
| Jaclyn | Maffetore | 8/23/2023 | 0.8 | Daubert planning |
| Jaclyn | Maffetore | 8/23/2023 | 1.1 | KZB lit team call |
| Jaclyn | Maffetore | 8/29/2023 | 0.4 | Litigation team call |
| Jaclyn | Maffetore | 8/30/2023 | 1.1 | reviewing/editing Croft declaration |
| Jaclyn | Maffetore | 8/30/2023 | 1.1 | SJ planning |
| Jaclyn | Maffetore | 8/31/2023 | 1.2 | planning for summary judgment |
| Jaclyn | Maffetore | 9/5/2023 | 1 | SJ outline |
| Jaclyn | Maffetore | 9/7/2023 | 1.2 | finalizing third party declarations |
| Jaclyn | Maffetore | 9/8/2023 | 0.3 | correspondence re: 3rd party declarants |
| Jaclyn | Maffetore | 9/11/2023 | 1.3 | SJ outline |
| Jaclyn | Maffetore | 9/11/2023 | 1.7 | Penn confidentiality designations |
| Jaclyn | Maffetore | 9/12/2023 | 0.8 | lit team call |
| Jaclyn | Maffetore | 9/12/2023 | 1.7 | Penn confidentiality designations |
| Jaclyn | Maffetore | 9/13/2023 | 1.8 | SJ outline |
| Jaclyn | Maffetore | 9/13/2023 | 3.4 | reviewing deposition transcripts/compiling facts for SJ |
| Jaclyn | Maffetore | 9/14/2023 | 0.7 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 9/14/2023 | 3.9 | reviewing deposition transcripts/compiling facts for SJ |
| Jaclyn | Maffetore | 9/15/2023 | 0.2 | reviewing/editing draft motion to extend SJ page limits |
| Jaclyn | Maffetore | 9/15/2023 | 0.3 | follow-up call and email to potential third party witness |
| Jaclyn | Maffetore | 9/15/2023 | 0.4 | emails w/ opposing, co-counsel re: draft motion to extend |
| Jaclyn | Maffetore | 9/15/2023 | 4.1 | reviewing deposition transcripts/compiling facts for SJ |
| Jaclyn | Maffetore | 9/18/2023 | 0.2 | correspondence w/ opposing counsel re: motion to extend |
| Jaclyn | Maffetore | 9/18/2023 | 0.2 | finalizing/filing mot to extend |
| Jaclyn | Maffetore | 9/19/2023 | 1.5 | legal research/SJ planning |
| Jaclyn | Maffetore | 9/20/2023 | 2.2 | legal research/SJ planning/drafting |
| Jaclyn | Maffetore | 9/21/2023 | 3.8 | legal research/SJ planning/drafting |
| Jaclyn | Maffetore | 9/22/2023 | 7.3 | SJ research/drafting |
| Jaclyn | Maffetore | 9/26/2023 | 0.2 | emails w/ team re: Penn invoices, responding re: rates |
| Jaclyn | Maffetore | 9/26/2023 | 6.2 | SJ brief drafting |
| Jaclyn | Maffetore | 9/27/2023 | 8 | SJ brief drafting |
| Jaclyn | Maffetore | 9/28/2023 | 0.3 | reviewing/editing second KZB declaration |
| Jaclyn | Maffetore | 9/28/2023 | 0.6 | evidence planning re: SJ |
| Jaclyn | Maffetore | 9/28/2023 | 1 | lit team call re: SJ |
| Jaclyn | Maffetore | 9/29/2023 | 0.3 | reviewing edits to 3rd party declaration, communications w/ UNC paralegal, co-counsel re: same |
| Jaclyn | Maffetore | 9/29/2023 | 6.7 | editing SJ brief |
| Jaclyn | Maffetore | 9/30/2023 | 5.6 | editing SJ brief |
| Jaclyn | Maffetore | 10/2/2023 | 0.3 | finalizing declaration |
| Jaclyn | Maffetore | 10/2/2023 | 0.5 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 10/2/2023 | 5.6 | SJ brief drafting/editing |
| Jaclyn | Maffetore | 10/4/2023 | 0.2 | email to opposing counsel re: confidentiality designations |
| Jaclyn | Maffetore | 10/4/2023 | 1.5 | declaration designations in support of SJ |
| Jaclyn | Maffetore | 10/4/2023 | 8.7 | SJ brief editing/fact-cite checking |
| Jaclyn | Maffetore | 10/5/2023 | 6.3 | finalizing and filing SJ motion, brief, and exhibits |
| Jaclyn | Maffetore | 10/6/2023 | 1.2 | reviewing/analyzing defs SJ filings |
| Jaclyn | Maffetore | 10/10/2023 | 1.3 | legal team call and follow-up call w/ Dan re: response division of labor |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 10/10/2023 | 1.4 | reviewing/analyizing defs mot for SJ |
| Jaclyn | Maffetore | 10/11/2023 | 2.2 | planning/researching SJ response |
| Jaclyn | Maffetore | 10/12/2023 | 7.2 | planning/researching SJ response |
| Jaclyn | Maffetore | 10/16/2023 | 6.6 | response section research/drafting |
| Jaclyn | Maffetore | 10/17/2023 | 1 | reviewing confidentiality designations for redaction |
| Jaclyn | Maffetore | 10/17/2023 | 1 | reviewing SJ response brief edits |
| Jaclyn | Maffetore | 10/17/2023 | 2.2 | research/drafting Daubert of Penn |
| Jaclyn | Maffetore | 10/18/2023 | 4.8 | editing response brief |
| Jaclyn | Maffetore | 10/19/2023 | 0.2 | filing response brief |
| Jaclyn | Maffetore | 10/19/2023 | 1.2 | response brief final proofread/finalization |
| Jaclyn | Maffetore | 10/20/2023 | 0.2 | correcting filing of exhibit |
| Jaclyn | Maffetore | 10/20/2023 | 0.6 | lit team call re: SJ |
| Jaclyn | Maffetore | 10/20/2023 | 1.5 | reviewing/analyzing defs response brief |
| Jaclyn | Maffetore | 10/20/2023 | 4.2 | research/drafting Penn Daubert |
| Jaclyn | Maffetore | 10/22/2023 | 6.5 | drafting Penn Daubert |
| Jaclyn | Maffetore | 10/23/2023 | 2.5 | editing draft reply br. |
| Jaclyn | Maffetore | 10/23/2023 | 3.8 | drafting/editing Penn Daubert |
| Jaclyn | Maffetore | 10/24/2023 | 1.7 | editing reply br |
| Jaclyn | Maffetore | 10/24/2023 | 2.4 | editing Penn Daubert |
| Jaclyn | Maffetore | 10/25/2023 | 0.3 | reviewing/editing draft motion to strike |
| Jaclyn | Maffetore | 10/25/2023 | 1.9 | drafting new section of Penn brief |
| Jaclyn | Maffetore | 10/25/2023 | 2.2 | editing Penn brief |
| Jaclyn | Maffetore | 10/26/2023 | 0.7 | filing SJ reply + 3 motions to strike and supporting materials |
| Jaclyn | Maffetore | 10/26/2023 | 0.7 | final proofread of reply brief |
| Jaclyn | Maffetore | 10/26/2023 | 0.9 | final proofread and citation input for memos ISO motion to strike |
| Jaclyn | Maffetore | 10/26/2023 | 1.6 | cite-checking Penn brief |
| Jaclyn | Maffetore | 10/30/2023 | 0.2 | email to Kanautica sharing filings |
| Jaclyn | Maffetore | 10/30/2023 | 0.4 | finalizing and filing opposition to motion for extension |
| Jaclyn | Maffetore | 10/31/2023 | 1 | lit team call |
| Jaclyn | Maffetore | 11/1/2023 | 0.2 | call w/ Kanautica |
| Jaclyn | Maffetore | 11/1/2023 | 0.3 | conf w/ team re: upcoming hearing |
| Jaclyn | Maffetore | 11/1/2023 | 0.8 | hearing prep |
| Jaclyn | Maffetore | 11/2/2023 | 4.2 | hearing prep |
| Jaclyn | Maffetore | 11/3/2023 | 6.2 | hearing prep |
| Jaclyn | Maffetore | 11/6/2023 | 6.2 | hearing prep (case review, record review, reviewing briefs, drafting outline) |
| Jaclyn | Maffetore | 11/7/2023 | 1.2 | argument moot |
| Jaclyn | Maffetore | 11/7/2023 | 7.7 | hearing prep (case review, record review, refining outline, argument practice) |
| Jaclyn | Maffetore | 11/8/2023 | 0.6 | conf w/ DS re: hearing |
| Jaclyn | Maffetore | 11/8/2023 | 2.7 | travelling to charlotte hearing |
| Jaclyn | Maffetore | 11/8/2023 | 6.2 | hearing prep (case review, record review, refining outline, argument practice) |
| Jaclyn | Maffetore | 11/9/2023 | 0.4 | argument debrief |
| Jaclyn | Maffetore | 11/9/2023 | 0.7 | meeting with client prior to argument |
| Jaclyn | Maffetore | 11/9/2023 | 1.7 | SJ oral argument |
| Jaclyn | Maffetore | 11/9/2023 | 2.7 | traveling home from charlotte hearing |
| Jaclyn | Maffetore | 11/16/2023 | 1 | litigation team meeting |
| Jaclyn | Maffetore | 11/30/2023 | 0.8 | legal call w/ Kanautica and follow-up w/ team |
| Jaclyn | Maffetore | 12/4/2023 | 0.5 | reviewing draft motion to continue; emails with co- and opposing counsel re: same |
| Jaclyn | Maffetore | 12/6/2023 | 0.5 | drafting email response re: third party witnesses, email to team re: same |
| Jaclyn | Maffetore | 12/12/2023 | 1 | reviewing/analyzing defs resps to motions to strike |
| Jaclyn | Maffetore | 12/13/2023 | 2.2 | reviewing/analyzing defs resps to motions to strike |
| Jaclyn | Maffetore | 12/15/2023 | 3 | reviewing/editing reply brief and discussions w/ DS re: same |
| Jaclyn | Maffetore | 12/18/2023 | 1 | cite-checking reply ISO motions to strike |
| Jaclyn | Maffetore | 12/19/2023 | 0.7 | lit team call |
| Jaclyn | Maffetore | 1/2/2024 | 1 | lit team meeting |
| Jaclyn | Maffetore | 1/9/2024 | 0.2 | email to opposing counsel |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 1/9/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 1/10/2024 | 0.2 | emails w/ opposing counsel re: setting up call |
| Jaclyn | Maffetore | 1/10/2024 | 0.3 | clarifying email to 3rd party witnesses |
| Jaclyn | Maffetore | 1/16/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 2/1/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 2/2/2024 | 0.2 | call w/ DS discussing order |
| Jaclyn | Maffetore | 2/2/2024 | 0.3 | email to client w/ update re: order |
| Jaclyn | Maffetore | 2/2/2024 | 0.4 | team call re: order |
| Jaclyn | Maffetore | 2/2/2024 | 0.5 | reviewing order |
| Jaclyn | Maffetore | 2/3/2024 | 1 | team call re: order, hearing |
| Jaclyn | Maffetore | 2/5/2024 | 0.6 | call w/ Expert re: order, medical situation |
| Jaclyn | Maffetore | 2/6/2024 | 0.2 | drafting email to opposing counsel re: remote testimony, clerk outreach, client attendance issue |
| Jaclyn | Maffetore | 2/6/2024 | 0.4 | review Ettner declaration |
| Jaclyn | Maffetore | 2/6/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 2/7/2024 | 1.2 | Campbell outline |
| Jaclyn | Maffetore | 2/7/2024 | 1.6 | editing motion + memo ISO remote testimony of Dr. Ettner |
| Jaclyn | Maffetore | 2/8/2024 | 0.2 | call w/ Cogburn judicial assistant re: hearing |
| Jaclyn | Maffetore | 2/8/2024 | 0.2 | filing motion, memo, declaration ISO remote testimony |
| Jaclyn | Maffetore | 2/8/2024 | 0.3 | finalizing remote testimony materials; circulating to opposing counsel |
| Jaclyn | Maffetore | 2/8/2024 | 0.5 | lit team call |
| Jaclyn | Maffetore | 2/8/2024 | 0.5 | call conferring w/ opposing counsel |
| Jaclyn | Maffetore | 2/8/2024 | 0.5 | drafting, getting input, sending email to opposing counsel re: stipulated hearing procedure. |
| Jaclyn | Maffetore | 2/8/2024 | 1 | legal call w/ client |
| Jaclyn | Maffetore | 2/9/2024 | 0.5 | legal call w/ client |
| Jaclyn | Maffetore | 2/9/2024 | 2.2 | Campbell outline |
| Jaclyn | Maffetore | 2/11/2024 | 2.5 | Campbell outline |
| Jaclyn | Maffetore | 2/12/2024 | 0.2 | filing habeas petition for client appearance |
| Jaclyn | Maffetore | 2/12/2024 | 0.5 | reviewing/editing habeas petition, emails to team re: same |
| Jaclyn | Maffetore | 2/12/2024 | 6.7 | reviewing depo transcripts with eye toward drafting Campbell outline; drafting campbell outline |
| Jaclyn | Maffetore | 2/13/2024 | 0.3 | emails w/ opposing counsel re: stipulated procedure for filing |
| Jaclyn | Maffetore | 2/13/2024 | 0.3 | communications w/ opposing counsel, facility, re: client transport to hearing |
| Jaclyn | Maffetore | 2/13/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 2/13/2024 | 1.6 | Peiper outline |
| Jaclyn | Maffetore | 2/13/2024 | 3.2 | reviewing depo transcripts with eye toward drafting Campbell outline; drafting campbell outline |
| Jaclyn | Maffetore | 2/14/2024 | 0.5 | call w/ courtroom deputy re: tech logistics/training; emails to team, opposing counsel re: same |
| Jaclyn | Maffetore | 2/14/2024 | 1 | editing campbell outline |
| Jaclyn | Maffetore | 2/14/2024 | 4 | reviewing depo transcripts with eye toward drafting Peiper outline; simultaneously drafting Peiper outline |
| Jaclyn | Maffetore | 2/15/2024 | 5 | reviewing depo trasncripts with eye toward drafting Peiper outline; simultaneously drafting Peiper outline |
| Jaclyn | Maffetore | 2/16/2024 | 1.8 | editing Peiper and Campbell outlines |
| Jaclyn | Maffetore | 2/17/2024 | 1 | reviewing defs' ex for necessary redactions - email to opposing counsel re: same |
| Jaclyn | Maffetore | 2/17/2024 | 1 | lit team call re: hearing |
| Jaclyn | Maffetore | 2/18/2024 | 2.2 | finalizing Campbell and Peiper outlines |
| Jaclyn | Maffetore | 2/19/2024 | 1.2 | reviewing outlines and documents in preparation for hearing |
| Jaclyn | Maffetore | 2/19/2024 | 2.5 | traveling to CLT for evidentiary hearing |
| Jaclyn | Maffetore | 2/20/2024 | 0.5 | technology training |
| Jaclyn | Maffetore | 2/20/2024 | 1 | team huddles re: hearing strategy |
| Jaclyn | Maffetore | 2/20/2024 | 2 | reviewing documents and outline in preparation for hearing |
| Jaclyn | Maffetore | 2/20/2024 | 2.5 | traveling home from evidentiary hearing |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 2/20/2024 | 3.4 | evidentiary hearing |
| Jaclyn | Maffetore | 2/26/2024 | 1.8 | reviewing/editing draft brief ISO renewed mot for SJ |
| Jaclyn | Maffetore | 2/28/2024 | 0.8 | reviewing renewed SJ motion and memo ISO |
| Jaclyn | Maffetore | 2/29/2024 | 1.2 | cite-checking/reviewing memo ISO renewed motion for SJ |
| Jaclyn | Maffetore | 3/7/2024 | 0.3 | email outreach to client w/ briefing and updates |
| Jaclyn | Maffetore | 3/12/2024 | 0.2 | email to client re: order w/ expedited briefing schedule for renewed MSJ |
| Jaclyn | Maffetore | 3/12/2024 | 0.4 | legal call w/ client re: continuance |
| Jaclyn | Maffetore | 3/15/2024 | 0.6 | finalizing + filing motion to continue trial |
| Jaclyn | Maffetore | 3/21/2024 | 0.8 | reviewing defs MSJ filings |
| Jaclyn | Maffetore | 3/22/2024 | 0.5 | lit team call re: drafting plan for reply/response |
| Jaclyn | Maffetore | 3/22/2024 | 3.5 | reviewing defs motion for renewed MSJ and opposition to Ps renewed MSJ |
| Jaclyn | Maffetore | 3/23/2024 | 3 | drafting reply ISO renewed MSJ |
| Jaclyn | Maffetore | 3/24/2024 | 4 | drafting reply ISO renewed MSJ |
| Jaclyn | Maffetore | 3/25/2024 | 4.1 | revising renewed MSJ reply brief |
| Jaclyn | Maffetore | 3/26/2024 | 2.1 | planning response in opp to defs renewed MSJ |
| Jaclyn | Maffetore | 3/26/2024 | 4 | finalizing + filing reply ISO renewed MSJ |
| Jaclyn | Maffetore | 3/27/2024 | 5 | planning/drafting opposition to defs MSJ |
| Jaclyn | Maffetore | 3/29/2024 | 3.7 | drafting opp to defs renewed MSJ |
| Jaclyn | Maffetore | 3/30/2024 | 2.1 | editing draft response in opp to defs' renewed MSJ |
| Jaclyn | Maffetore | 4/1/2024 | 0.2 | filing response in opp to defs renewed msj |
| Jaclyn | Maffetore | 4/1/2024 | 2.2 | editing/finalizing response in opp to defs renewed MSJ |
| Jaclyn | Maffetore | 4/4/2024 | 0.5 | reviewing defendants reply ISO renewed MSJ |
| Jaclyn | Maffetore | 4/16/2024 | 1.6 | reviewing SJ order, emails to team re: same |
| Jaclyn | Maffetore | 4/18/2024 | 0.5 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 4/18/2024 | 0.5 | litigation team call |
| Jaclyn | Maffetore | 4/23/2024 | 0.2 | litigation team call |
| Jaclyn | Maffetore | 4/26/2024 | 0.5 | legal call w/ client |
| Jaclyn | Maffetore | 5/3/2024 | 0.5 | client legal call |
| Jaclyn | Maffetore | 5/10/2024 | 0.5 | legal call w/ client |
| Jaclyn | Maffetore | 5/14/2024 | 0.6 | litigation team call |
| Jaclyn | Maffetore | 5/15/2024 | 0.3 | emails w/ team, opposing counsel re: intent to file notice of appeal and motion to stay |
| Jaclyn | Maffetore | 5/15/2024 | 0.7 | research for stay opp |
| Jaclyn | Maffetore | 5/16/2024 | 0.9 | reviewing/analyzing motion to stay |
| Jaclyn | Maffetore | 5/16/2024 | 3.6 | legal research/planning resp. in opp to mot to stay |
| Jaclyn | Maffetore | 5/17/2024 | 0.5 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 5/17/2024 | 0.5 | reviewing co-counsel analysis re: mot to stay opp |
| Jaclyn | Maffetore | 5/18/2024 | 4.4 | legal research/drafting stay opp |
| Jaclyn | Maffetore | 5/19/2024 | 4.2 | legal research/drafting stay opp |
| Jaclyn | Maffetore | 5/20/2024 | 5.2 | research/drafting stay opp |
| Jaclyn | Maffetore | 5/28/2024 | 0.5 | client legal call and team huddle to debrief client call |
| Jaclyn | Maffetore | 6/3/2024 | 0.2 | email to team re: stay, mot to expedite |
| Jaclyn | Maffetore | 6/4/2024 | 0.5 | lit team meeting |
| Jaclyn | Maffetore | 6/6/2024 | 1.2 | stay-related research |
| Jaclyn | Maffetore | 6/12/2024 | 0.5 | client communications |
| Jaclyn | Maffetore | 6/26/2024 | 0.3 | conf w/ DS re: plan for appellate briefing |
| Jaclyn | Maffetore | 7/1/2024 | 0.2 | call w/ client and update to team re: same |
| Jaclyn | Maffetore | 7/1/2024 | 0.3 | procedural research re: timeline for JA/record on appeal |
| Jaclyn | Maffetore | 7/8/2024 | 0.5 | finalizing and filing letter to court requesting case status |
| Jaclyn | Maffetore | 7/9/2024 | 0.8 | lit team meeting |
| Jaclyn | Maffetore | 7/11/2024 | 0.2 | communication w/ client, email update to team re: same |
| Jaclyn | Maffetore | 7/12/2024 | 0.3 | emails w/ opposing counsel re: JA, issues on appeal, procedural research to include in same |
| Jaclyn | Maffetore | 7/12/2024 | 1 | reviewing court order re: stay; emails to/confs w/ team re: same |
| Jaclyn | Maffetore | 7/16/2024 | 0.5 | legal call w/ client |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 7/16/2024 | 0.9 | litigation team meeting |
| Jaclyn | Maffetore | 7/18/2024 | 0.2 | calls/emails re: communications w/ 4th cir clerk re: admin stay, deadlines |
| Jaclyn | Maffetore | 7/18/2024 | 1.2 | reviewing defs' stay motion |
| Jaclyn | Maffetore | 7/18/2024 | 6.2 | drafting stay opposition brief background section |
| Jaclyn | Maffetore | 7/19/2024 | 6.4 | combining/editing stay opp brief for circulation to team |
| Jaclyn | Maffetore | 7/20/2024 | 1.2 | reviewing team edits to stay opp brief |
| Jaclyn | Maffetore | 7/21/2024 | 7.1 | editing, finalizing, and filing 4th cir stay opposition |
| Jaclyn | Maffetore | 7/24/2024 | 0.2 | call w/ opposing counsel re: length of JA, emails with team re: same |
| Jaclyn | Maffetore | 7/25/2024 | 0.4 | reviewing stay denial |
| Jaclyn | Maffetore | 7/25/2024 | 0.8 | reviewing JA designations for cuts for length, emails to team re: same |
| Jaclyn | Maffetore | 7/26/2024 | 0.8 | reviewing defs filings re: experts, email confs w/ team re: same |
| Jaclyn | Maffetore | 7/28/2024 | 0.5 | reviewing draft objex |
| Jaclyn | Maffetore | 7/28/2024 | 1.8 | reviewing research/feedback re: proposed GAS "experts" |
| Jaclyn | Maffetore | 7/29/2024 | 0.6 | lit team call re: objex |
| Jaclyn | Maffetore | 7/29/2024 | 1.8 | reviewing research/feedback re: proposed GAS "experts" |
| Jaclyn | Maffetore | 7/29/2024 | 2.6 | editing draft response to defs designations |
| Jaclyn | Maffetore | 7/30/2024 | 1 | finalizing and filing response to defs' expert filing |
| Jaclyn | Maffetore | 7/30/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 7/30/2024 | 2.7 | reviewing defs opening appeal brief |
| Jaclyn | Maffetore | 7/31/2024 | 1.8 | planning response br |
| Jaclyn | Maffetore | 7/31/2024 | 2 | reviewing defs opening br |
| Jaclyn | Maffetore | 7/31/2024 | 2.2 | legal research re: PLRA issues |
| Jaclyn | Maffetore | 8/1/2024 | 0.5 | legal call w/ KZB |
| Jaclyn | Maffetore | 8/1/2024 | 2.6 | legal research/planning for appellate response br. |
| Jaclyn | Maffetore | 8/2/2024 | 1 | Planning/research re: appellate brief |
| Jaclyn | Maffetore | 8/5/2024 | 1.9 | legal research/planning appellate brief |
| Jaclyn | Maffetore | 8/6/2024 | 2.5 | drafting appellate response brief |
| Jaclyn | Maffetore | 8/7/2024 | 3.5 | drafting appellate response brief |
| Jaclyn | Maffetore | 8/9/2024 | 3.2 | drafting appellate response brief |
| Jaclyn | Maffetore | 8/12/2024 | 4.3 | drafting appellate response brief |
| Jaclyn | Maffetore | 8/13/2024 | 0.6 | lit team meeting re: hearing |
| Jaclyn | Maffetore | 8/13/2024 | 5.1 | drafting/editing appellate response brief for circulation of draft to full team |
| Jaclyn | Maffetore | 8/15/2024 | 2.2 | drafting hearing prep document and sharing to team |
| Jaclyn | Maffetore | 8/16/2024 | 0.2 | team meeting following hearing |
| Jaclyn | Maffetore | 8/16/2024 | 0.8 | remote hearing before J. Cogburn |
| Jaclyn | Maffetore | 8/16/2024 | 1.5 | Hearing prep |
| Jaclyn | Maffetore | 8/19/2024 | 2.1 | editing appellate brief |
| Jaclyn | Maffetore | 8/20/2024 | 1 | drafting revised response re: permanent injunction |
| Jaclyn | Maffetore | 8/20/2024 | 3.4 | editing appellate brief |
| Jaclyn | Maffetore | 8/21/2024 | 3.8 | editing appeal brief |
| Jaclyn | Maffetore | 8/22/2024 | 0.5 | legal call |
| Jaclyn | Maffetore | 8/22/2024 | 5.9 | cite-checking/incorporating others' cite-checks/edits into near-final draft of appellate resp brief |
| Jaclyn | Maffetore | 8/23/2024 | 0.5 | finalizing and filing notice re: permanent injunction order |
| Jaclyn | Maffetore | 8/26/2024 | 4.2 | finalizing appellate response br and filing |
| Jaclyn | Maffetore | 9/10/2024 | 0.5 | lit team call |
| Jaclyn | Maffetore | 9/13/2024 | 0.5 | draft letter to Cogburn re: case status |
| Jaclyn | Maffetore | 9/17/2024 | 2 | reviewing reply brief |
| Jaclyn | Maffetore | 9/23/2024 | 0.5 | reviewing order from court re: remedial process, conf w team re: same |
| Jaclyn | Maffetore | 9/24/2024 | 0.5 | lit team call |
| Jaclyn | Maffetore | 9/24/2024 | 0.7 | emails to team re: court order, scheduling legal call |
| Jaclyn | Maffetore | 9/27/2024 | 0.5 | draft mot to continue |
| Jaclyn | Maffetore | 10/1/2024 | 0.5 | legal call w/ KZB |
| Jaclyn | Maffetore | 10/7/2024 | 0.3 | outreach to opposing counsel/conf w/ team re: pretrial deadlines |
| Jaclyn | Maffetore | 10/22/2024 | 0.6 | litigation team call |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 10/25/2024 | 0.5 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 10/25/2024 | 1.5 | research/drafting MTD appeal (became supplemental brief) |
| Jaclyn | Maffetore | 10/30/2024 | 2.5 | research/drafting MTD appeal (became supplemental brief) |
| Jaclyn | Maffetore | 11/1/2024 | 0.4 | finalizing draft continuance; sending same to opposing counsel; filing same |
| Jaclyn | Maffetore | 11/7/2024 | 0.2 | emails w/ opposing counsel re: missing redactions |
| Jaclyn | Maffetore | 11/7/2024 | 0.8 | lit team call |
| Jaclyn | Maffetore | 11/7/2024 | 2 | reviewing/collecting thoughts re: defs filings; reviewing teams circulated thoughts re: same |
| Jaclyn | Maffetore | 11/8/2024 | 2.5 | planning response |
| Jaclyn | Maffetore | 11/12/2024 | 2.2 | draft/edit 4th cir filing |
| Jaclyn | Maffetore | 11/13/2024 | 3.7 | drafting/editing 4th cir supplemental brief |
| Jaclyn | Maffetore | 11/14/2024 | 0.2 | draft email to opposing counsel re: motion to dismiss appeal |
| Jaclyn | Maffetore | 11/14/2024 | 0.4 | reviewing edits to 4th cir filing |
| Jaclyn | Maffetore | 11/15/2024 | 0.2 | further emails to opposing counsel re: motion to dismiss |
| Jaclyn | Maffetore | 11/15/2024 | 3.5 | plan/draft response to notice of compliance |
| Jaclyn | Maffetore | 11/17/2024 | 3.2 | draft response to notice of compliance |
| Jaclyn | Maffetore | 11/18/2024 | 3.8 | editing/cite-checking 4th cir filing |
| Jaclyn | Maffetore | 11/19/2024 | 0.2 | finalizing motion to dismiss |
| Jaclyn | Maffetore | 11/19/2024 | 0.2 | filing mot to dismiss and supplemental brief |
| Jaclyn | Maffetore | 11/19/2024 | 1 | reviewing tables for 4th cir finalization |
| Jaclyn | Maffetore | 11/19/2024 | 1.4 | revising draft response to notice of compliance |
| Jaclyn | Maffetore | 11/20/2024 | 2.2 | revising draft response to notice of compliance |
| Jaclyn | Maffetore | 6/25/2025 | 2 | compiling my hours for fee petition; culling vague/duplicative entries |
| Jaclyn | Maffetore | 7/2/2025 | 1.8 | researching/drafting fee petition memo |
| Jaclyn | Maffetore | 7/3/2025 | 2.1 | researching/drafting fee petition memo |
| Jaclyn | Maffetore | 7/7/2025 | 2.8 | researching/drafting fee petition memo |
| Jaclyn | Maffetore | 7/8/2025 | 1.1 | legal research re: fee awards similar cases |
| Jaclyn | Maffetore | 7/8/2025 | 3.5 | drafting fee petition memo |
| Jaclyn | Maffetore | 7/9/2025 | 1.2 | drafting fee petition memo;circulating same to team |
| Jaclyn | Maffetore | 7/15/2025 | 2 | further culling time entries for fee petition |
| Jaclyn | Maffetore | 7/16/2025 | 2.2 | editing fee petition |
| Jaclyn | Maffetore | 7/18/2025 | 0.5 | drafting attorney fee motion; circulating same to team |
| | TOTAL: | | 1011.1 | |
| | Fee Petition: | | 19.2 | |

| First Name | Last Name | Date | Hours | Description |
|---|---|---|---|---|
| Daniel | Siegel | 1/18/2022 | 1 | Team meeting |
| Daniel | Siegel | 1/21/2022 | 1 | Call with client |
| Daniel | Siegel | 1/25/2022 | 0.8 | Review Taylor's complaint edits |
| Daniel | Siegel | 1/25/2022 | 1 | team call |
| Daniel | Siegel | 3/3/2022 | 1 | Client call |
| Daniel | Siegel | 3/8/2022 | 1 | Team meeting |
| Daniel | Siegel | 3/22/2022 | 1.5 | Call with client re case status |
| Daniel | Siegel | 3/24/2022 | 0.2 | Emails with team re arranging in-person visit with client |
| Daniel | Siegel | 3/25/2022 | 0.3 | Emails with team concerning prison denial of Dr. Ettner's visit and potential need for motion to compel |
| Daniel | Siegel | 3/29/2022 | 1 | Team meeting |
| Daniel | Siegel | 4/5/2022 | 0.2 | Review updated complaint |
| Daniel | Siegel | 4/6/2022 | 2.8 | Edit complaint and emails to team re same |
| Daniel | Siegel | 4/12/2022 | 1 | Call with client |
| Daniel | Siegel | 4/19/2022 | 1 | Team meeting |
| Daniel | Siegel | 4/28/2022 | 0.5 | Final review of complaint |
| Daniel | Siegel | 6/24/2022 | 7 | Draft response to defendants' motion to dismiss |
| Daniel | Siegel | 6/27/2022 | 2.8 | Draft response to Defendants' motion to dismiss |
| Daniel | Siegel | 6/28/2022 | 3 | Draft response to Defendants' motion to dismiss |
| Daniel | Siegel | 7/5/2022 | 3.4 | Edit response to MTD |
| Daniel | Siegel | 7/11/2022 | 1.7 | Edit MTD response brief |
| Daniel | Siegel | 8/16/2022 | 2 | Moot for hearing |
| Daniel | Siegel | 8/19/2022 | 2 | Moot for hearing |
| Daniel | Siegel | 9/30/2022 | 0.3 | Review and edit discovery requests |
| Daniel | Siegel | 10/12/2022 | 1 | Interview with Dr. Caraccio |
| Daniel | Siegel | 12/13/2022 | 0.5 | Litigation team meeting |
| Daniel | Siegel | 1/10/2023 | 0.5 | Team meeting |
| Daniel | Siegel | 1/13/2023 | 7 | Depo prep with client; travel to and from Anson CI |
| Daniel | Siegel | 1/24/2023 | 0.5 | Team call |
| Daniel | Siegel | 1/30/2023 | 2 | Edit Ettner expert report |
| Daniel | Siegel | 1/31/2023 | 0.6 | Edit Ettner expert report |
| Daniel | Siegel | 2/1/2023 | 3 | Review Defendants' document production |
| Daniel | Siegel | 2/6/2023 | 0.5 | Review Defendants' document production |
| Daniel | Siegel | 2/14/2023 | 2.5 | Review Defendants' document production |
| Daniel | Siegel | 2/16/2023 | 0.5 | Call with opposing counsel re Rule 35 examination |
| Daniel | Siegel | 2/17/2023 | 0.5 | Review Defendants' Rule 35 motion and brief |
| Daniel | Siegel | 2/18/2023 | 5 | Draft response to Rule 35 motion |
| Daniel | Siegel | 2/19/2023 | 3.7 | Draft response to Rule 35 motion |
| Daniel | Siegel | 2/20/2023 | 1.2 | Revise and circulate Rule 35 response |
| Daniel | Siegel | 2/21/2023 | 1 | Revise Rule 35 response |
| Daniel | Siegel | 2/22/2023 | 0.4 | Call with opposing counsel re 30(b)(6) objections |
| Daniel | Siegel | 2/22/2023 | 2.3 | Revise Rule 35 response |
| Daniel | Siegel | 2/23/2023 | 1 | Revise Rule 35 response |
| Daniel | Siegel | 2/24/2023 | 2.2 | Finalize and file Rule 35 response |
| Daniel | Siegel | 2/27/2023 | 2.8 | Review Defendants' document production |
| Daniel | Siegel | 2/28/2023 | 1 | Team call |
| Daniel | Siegel | 3/1/2023 | 1.5 | Document review |
| Daniel | Siegel | 3/2/2023 | 1.2 | Document review |
| Daniel | Siegel | 3/3/2023 | 1.2 | Document review |
| Daniel | Siegel | 3/27/2023 | 1 | Doc review |
| Daniel | Siegel | 3/28/2023 | 1 | team meeting |
| Daniel | Siegel | 4/12/2023 | 0.5 | Team call re |
| Daniel | Siegel | 5/3/2023 | 0.2 | Edit email to opposing counsel re Rule 35 proposal |
| Daniel | Siegel | 5/5/2023 | 1.5 | Prepare for Harris depo |
| Daniel | Siegel | 5/11/2023 | 3 | Prepare for Harris depo |
| Daniel | Siegel | 5/12/2023 | 2 | Prepare for Harris depo |
| Daniel | Siegel | 5/15/2023 | 1.5 | Prepare for Harris deposition |
| Daniel | Siegel | 5/16/2023 | 3 | Take deposition of Brandeshawn Harris |
| Daniel | Siegel | 5/25/2023 | 0.4 | Meet and confer with opposing counsel re Rule 35 motion and fact discovery issues |
| Daniel | Siegel | 6/26/2023 | 1.7 | Revise mediation statement |

| | | | | |
|---|---|---|---|---|
| Daniel | Siegel | 6/27/2023 | 1 | Team meeting |
| Daniel | Siegel | 6/27/2023 | 1 | Legal call with client |
| Daniel | Siegel | 7/7/2023 | 2.5 | Review Boyd, Penn, and Li expert reports |
| Daniel | Siegel | 7/10/2023 | 1.3 | Review Li report |
| Daniel | Siegel | 7/10/2023 | 1.8 | Review Boyd report |
| Daniel | Siegel | 7/10/2023 | 2 | Review Penn report |
| Daniel | Siegel | 7/11/2023 | 0.5 | Review Boyd report |
| Daniel | Siegel | 7/11/2023 | 0.5 | Review Penn report |
| Daniel | Siegel | 7/11/2023 | 0.5 | Review Li report |
| Daniel | Siegel | 7/21/2023 | 3.5 | Review Boyd report and prepare deposition outline |
| Daniel | Siegel | 7/24/2023 | 1.5 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/25/2023 | 2.7 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/26/2023 | 1.2 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/27/2023 | 2.8 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/28/2023 | 3 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/29/2023 | 2.7 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/30/2023 | 2 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/31/2023 | 3.3 | Prepare deposition outline |
| Daniel | Siegel | 8/1/2023 | 0.5 | Prepare for Boyd deposition |
| Daniel | Siegel | 8/2/2023 | 0.6 | Prepare for Boyd deposition |
| Daniel | Siegel | 8/3/2023 | 1.5 | Prepare for Boyd deposition |
| Daniel | Siegel | 8/4/2023 | 5.5 | Take deposition of Dr. Sara Boyd |
| Daniel | Siegel | 8/21/2023 | 5.5 | Draft Daubert brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 8/22/2023 | 2.3 | Draft Boyd Daubert brief |
| Daniel | Siegel | 8/23/2023 | 0.5 | Edit Boyd Daubert brief |
| Daniel | Siegel | 8/24/2023 | 0.5 | Edit Boyd Daubert brief |
| Daniel | Siegel | 8/29/2023 | 0.5 | Team call |
| Daniel | Siegel | 9/18/2023 | 2.5 | Review Junker deposition for summary judgment brief |
| Daniel | Siegel | 9/19/2023 | 1.5 | Review Harris deposition transcript for summary judgment brief |
| Daniel | Siegel | 9/19/2023 | 1.8 | Review Boyd deposition transcript for summary judgment brief |
| Daniel | Siegel | 9/27/2023 | 2.3 | Edit argument section of MSJ brief |
| Daniel | Siegel | 9/28/2023 | 1 | Team call |
| Daniel | Siegel | 9/28/2023 | 1.7 | Edit facts section of MSJ brief |
| Daniel | Siegel | 9/29/2023 | 0.6 | Edit argument section of MSJ brief |
| Daniel | Siegel | 9/29/2023 | 2 | Edit facts section of MSJ brief |
| Daniel | Siegel | 10/2/2023 | 2 | Edit brief in support of summary judgment |
| Daniel | Siegel | 10/3/2023 | 1.8 | Edit brief in support of summary judgment |
| Daniel | Siegel | 10/4/2023 | 2.7 | Edit brief in support of summary judgment |
| Daniel | Siegel | 10/5/2023 | 1.5 | Edit brief in support of summary judgment |
| Daniel | Siegel | 10/6/2023 | 2 | Review Defendants' motion/brief for summary judgment and supporting materials |
| Daniel | Siegel | 10/9/2023 | 3.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/10/2023 | 4.2 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/11/2023 | 3.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/12/2023 | 2.2 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/13/2023 | 0.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/14/2023 | 2 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/15/2023 | 2.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/16/2023 | 1.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/17/2023 | 2.4 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/18/2023 | 1.8 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/19/2023 | 1.3 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/20/2023 | 2.5 | Review Defendants' response in opposition to plaintiff's motion for summary judgment |
| Daniel | Siegel | 10/20/2023 | 2.8 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/21/2023 | 1 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/21/2023 | 3 | Draft reply brief in support of motion for summary judgment |
| Daniel | Siegel | 10/22/2023 | 0.5 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/22/2023 | 3.3 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/23/2023 | 0.8 | Edit brief to exclude testimony of Dr. Penn |
| Daniel | Siegel | 10/23/2023 | 1.3 | Edit brief to exclude testimony of Dr. Li |
| Daniel | Siegel | 10/23/2023 | 2.2 | Draft response in opposition to defendants' motion for summary judgment |

| | | | | |
|---|---|---|---|---|
| Daniel | Siegel | 10/23/2023 | 3.5 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/24/2023 | 0.3 | Edit brief to exclude testimony of Dr. Li |
| Daniel | Siegel | 10/24/2023 | 1.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/24/2023 | 1.5 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/24/2023 | 2.3 | Edit brief to exclude testimony of Dr. Penn |
| Daniel | Siegel | 10/25/2023 | 1 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/25/2023 | 1 | Edit brief to exclude testimony of Dr. Penn |
| Daniel | Siegel | 10/25/2023 | 2.4 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/26/2023 | 1.4 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/26/2023 | 2.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/27/2023 | 0.7 | Review Defendants' reply brief in support of motion for summary judgment |
| Daniel | Siegel | 11/7/2023 | 1.5 | Prepare for and participate in moot court for summary judgment hearing |
| Daniel | Siegel | 11/8/2023 | 0.5 | Discuss summary judgment hearing with J Maffetore |
| Daniel | Siegel | 11/8/2023 | 2.5 | Travel from Chapel Hill to Charlotte for summary judgment hearing |
| Daniel | Siegel | 11/9/2023 | 1.5 | Second chair hearing on motions for summary judgment |
| Daniel | Siegel | 11/9/2023 | 2.5 | Travel from Charlotte summary judgment hearing back to Chapel Hill |
| Daniel | Siegel | 12/11/2023 | 0.5 | Review response in opposition to motion to exclude Li |
| Daniel | Siegel | 12/11/2023 | 0.7 | Review response in opposition to motion to exclude Penn |
| Daniel | Siegel | 12/11/2023 | 0.7 | Review response in opposition to motion to exclude Boyd |
| Daniel | Siegel | 12/12/2023 | 0.3 | Review response brief to Boyd Daubert motion |
| Daniel | Siegel | 12/12/2023 | 0.4 | Review Li response to Daubert motion |
| Daniel | Siegel | 12/12/2023 | 2.5 | Outline reply brief in support of Daubert motions |
| Daniel | Siegel | 12/13/2023 | 3.8 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/14/2023 | 3 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/15/2023 | 4 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/16/2023 | 3.5 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/17/2023 | 3.3 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/18/2023 | 1 | Finalize and file reply brief in support of Daubert motions |
| Daniel | Siegel | 2/2/2024 | 1 | Review order on summary judgment and discuss with team |
| Daniel | Siegel | 2/21/2024 | 3.3 | Draft brief in support of renewed motion for summary judgment. |
| Daniel | Siegel | 2/22/2024 | 5.5 | Draft brief in support of renewed motion for summary judgment. |
| Daniel | Siegel | 2/23/2024 | 5 | Draft brief in support of renewed motion for summary judgment. |
| Daniel | Siegel | 2/24/2024 | 0.5 | Draft brief in support of renewed motion for summary judgment. |
| Daniel | Siegel | 2/26/2024 | 0.5 | Revise brief in support of renewed MSJ |
| Daniel | Siegel | 2/27/2024 | 0.3 | Revise brief in support of renewed MSJ |
| Daniel | Siegel | 2/29/2024 | 0.1 | Review email from opposing counsel requesting extension of time |
| Daniel | Siegel | 2/29/2024 | 0.6 | Finalize and file renewed MSJ and supporting docs |
| Daniel | Siegel | 3/1/2024 | 0.5 | Draft and file response to defendant's motion for extension of time |
| Daniel | Siegel | 3/22/2024 | 0.5 | Team call re renewed MSJ briefing |
| Daniel | Siegel | 3/22/2024 | 0.6 | Review defendants' opposition to plaintiff's renewed MSJ and defendants' renewed MSJ brief |
| Daniel | Siegel | 3/25/2024 | 1 | Edit reply brief in support of renewed MSJ |
| Daniel | Siegel | 3/29/2024 | 1.5 | Edit opposition to defendants' renewed MSJ |
| Daniel | Siegel | 3/30/2024 | 0.5 | Edit opposition to defendants' renewed MSJ |
| Daniel | Siegel | 3/31/2024 | 0.4 | Edit opposition to defendants' renewed MSJ |
| Daniel | Siegel | 4/16/2024 | 0.3 | Review SJ order |
| Daniel | Siegel | 5/21/2024 | 0.5 | Edit response to motion to stay |
| Daniel | Siegel | 5/22/2024 | 2 | Edit response to motion to stay |
| Daniel | Siegel | 7/18/2024 | 0.5 | Review motion for stay pending appeal |
| Daniel | Siegel | 7/18/2024 | 3.4 | Draft response to stay motion |
| Daniel | Siegel | 7/19/2024 | 4 | Draft response to stay motion |
| Daniel | Siegel | 7/20/2024 | 3.3 | Draft response to stay motion |
| Daniel | Siegel | 7/21/2024 | 3.3 | Edit and cite-check response to stay motion |
| Daniel | Siegel | 7/25/2024 | 0.2 | Review order denying stay motion |
| Daniel | Siegel | 7/26/2024 | 0.3 | Review Defendants' proposal for compliance with the permanent injunction |
| Daniel | Siegel | 7/27/2024 | 0.5 | Draft objections to defendants' proposal for evaluating plaintiff |
| Daniel | Siegel | 7/28/2024 | 0.3 | Draft objections to defendants' proposal for evaluating plaintiff |
| Daniel | Siegel | 7/29/2024 | 0.3 | Draft objections to defendants' proposal for evaluating plaintiff |
| Daniel | Siegel | 7/29/2024 | 1 | Review defendants' opening brief |
| Daniel | Siegel | 7/30/2024 | 0.5 | Review defendants opening brief |
| Daniel | Siegel | 7/31/2024 | 2.5 | Outline appellee's brief |

| | | | | |
|---|---|---|---|---|
| Daniel | Siegel | 8/1/2024 | 3 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/2/2024 | 1.5 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/5/2024 | 2.5 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/6/2024 | 4 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/7/2024 | 3.6 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/8/2024 | 3.3 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/9/2024 | 4 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/10/2024 | 0.5 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/12/2024 | 2 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/14/2024 | 1.5 | Edit facts section of appellee's brief |
| Daniel | Siegel | 8/19/2024 | 2.2 | Edit appellee's brief |
| Daniel | Siegel | 8/20/2024 | 1.4 | Edit appellee's brief |
| Daniel | Siegel | 8/21/2024 | 0.4 | cite check appellee's brief |
| Daniel | Siegel | 8/22/2024 | 2 | cite check appellee's brief |
| Daniel | Siegel | 8/26/2024 | 1.5 | Final review of appellee's brief |
| Daniel | Siegel | 11/15/2024 | 1 | Edit supplemental brief |
| Daniel | Siegel | 11/19/2024 | 0.8 | Edit response to Defs notice of compliance |
| Daniel | Siegel | 7/10/2025 | 1.3 | Edit brief in support of motion for fees |
| Daniel | Siegel | 7/10/2025 | 1 | Draft declaration in support of motion for fees |
| Daniel | Siegel | 7/17/2025 | 0.5 | Edit brief in support of motion for fees |
| Daniel | Siegel | 7/18/2025 | 0.3 | Edit brief in support of motion for fees |
| | | TOTAL | 346.6 | |

ATTACHMENT 3 - Timesheet for Michele Delgado

| First Name | Last Name | Date | Hours | Notes |
|---|---|---|---|---|
| Michele | Delgado | 4/8/2022 | 2.2 | Drafted Declaration of Jaclyn |
| Michele | Delgado | 4/15/2022 | 3 | Legal research on PRLA physical injury requirement as it relates to supplemental claims |
| Michele | Delgado | 4/18/2022 | 2 | Legal research on PRLA physical injury requirement as it relates to supplemental claims |
| Michele | Delgado | 4/19/2022 | 2 | Legal research on PRLA physical injury requirement as it relates to supplemental claims |
| Michele | Delgado | 4/21/2022 | 0.3 | Adopted edits for the declaration and did a final review |
| Michele | Delgado | 6/29/2022 | 6.7 | Draft my section of the Response to the MTD brief |
| Michele | Delgado | 6/30/2022 | 7.5 | Continued to draft and conduct research for my portion of the response brief for the MTD |
| Michele | Delgado | 7/1/2022 | 7.4 | Draft response brief for the MTD |
| Michele | Delgado | 7/5/2022 | 3 | Edit brief responding to MTD |
| Michele | Delgado | 7/11/2022 | 1.5 | Final review and edits to response to MTD |
| Michele | Delgado | 7/20/2022 | 1 | Drafted Motion for Extension |
| Michele | Delgado | 7/21/2022 | 1 | Edit and file Motion for Extension and Proposed Order |
| Michele | Delgado | 10/21/2022 | 1 | Draft initial disclosures |
| Michele | Delgado | 10/24/2022 | 1 | Research for initial disclosures |
| Michele | Delgado | 10/25/2022 | 1 | Finalize initial disclosure |
| Michele | Delgado | 10/27/2022 | 1 | Edit initial disclosures |
| Michele | Delgado | 1/5/2023 | 3 | Drafted joint motion to extend for dispositive motions |
| Michele | Delgado | 2/2/2023 | 3 | Doc Review |
| Michele | Delgado | 2/3/2023 | 3 | Reviwed Discovery |
| Michele | Delgado | 2/6/2023 | 3 | Doc review |
| Michele | Delgado | 2/7/2023 | 3 | Doc review |
| Michele | Delgado | 2/9/2023 | 2 | Doc review. |
| Michele | Delgado | 2/10/2023 | 2.5 | Doc review. |
| Michele | Delgado | 2/13/2023 | 3 | Doc review |
| Michele | Delgado | 2/14/2023 | 3 | Doc Review |
| Michele | Delgado | 2/15/2023 | 2 | Doc review. |
| Michele | Delgado | 2/16/2023 | 5.8 | Doc review |
| Michele | Delgado | 2/17/2023 | 5.8 | Doc Review |
| Michele | Delgado | 2/23/2023 | 6.1 | Doc Review |
| Michele | Delgado | 2/27/2023 | 6 | Doc Review |
| Michele | Delgado | 2/28/2023 | 5 | Doc Review |
| Michele | Delgado | 3/1/2023 | 4.7 | Doc Review |
| Michele | Delgado | 3/2/2023 | 3.4 | Doc Review |
| Michele | Delgado | 3/3/2023 | 7.5 | Doc Review |
| Michele | Delgado | 3/6/2023 | 4.5 | Doc Review |
| Michele | Delgado | 3/7/2023 | 4.8 | Doc Review |
| Michele | Delgado | 3/8/2023 | 6.4 | 30(B)(6) Outline drafting |
| Michele | Delgado | 3/9/2023 | 5.7 | Doc review for Outline for 30(b)(6) |
| Michele | Delgado | 5/10/2023 | 3 | Drafting catlett depo outline |
| Michele | Delgado | 5/11/2023 | 2.5 | draft catlett depo outline |
| Michele | Delgado | 5/12/2023 | 0.1 | Draft notice of deposition |
| Michele | Delgado | 5/12/2023 | 3.5 | draft catlett depo outline |
| Michele | Delgado | 5/15/2023 | 3 | Review of additional discovery documents in preparation of catlett depo |
| Michele | Delgado | 5/17/2023 | 1 | final review and edits of catlett depo outline |
| Michele | Delgado | 5/18/2023 | 4 | Deposition of Terri Catlett |
| Michele | Delgado | 5/18/2023 | 4 | Catlett Deposition |
| Michele | Delgado | 5/19/2023 | 3.4 | Reviewed Kanautica's transcript for confidential designations |
| Michele | Delgado | 6/22/2023 | 0.6 | Reviewed docs and outlined questions for Bowman deposition |
| Michele | Delgado | 6/29/2023 | 0.7 | Catlett transcript review and designations |
| Michele | Delgado | 6/29/2023 | 3.5 | Bowman deposition |
| Michele | Delgado | 9/26/2023 | 1.3 | Drafted Motion for SJ |
| Michele | Delgado | 9/26/2023 | 1.6 | Reviewed Catlett's Transcript for quotes for SJ outline |
| Michele | Delgado | 9/27/2023 | 1.9 | Reviewed Bowman's Transcript for quotes for SJ outline |
| Michele | Delgado | 9/28/2023 | 0.2 | Edit draft motion for partial SJ |
| Michele | Delgado | 9/28/2023 | 0.5 | Reviewed legal portion of SJ brief |
| Michele | Delgado | 9/28/2023 | 0.9 | Marked designations from Catlett and Bowman transcripts |

| | | | | |
|---|---|---|---|---|
| Michele | Delgado | 9/28/2023 | 1.5 | Add to and edited facts section of SJ brief |
| Michele | Delgado | 10/4/2023 | 0.1 | Edit SJ motion |
| Michele | Delgado | 10/5/2023 | 0.9 | Edit SJ brief |
| Michele | Delgado | 10/25/2023 | 2.2 | Cite checking reply to MSJ brief |
| Michele | Delgado | 12/18/2023 | 1.2 | Cite checking reply brief |
| Michele | Delgado | 1/4/2024 | 1.8 | Drafting stipulation of facts |
| Michele | Delgado | 1/9/2024 | 4.1 | Drafting Stipulations of Fact |
| Michele | Delgado | 1/16/2024 | 0.2 | Edit Stipulation of Facts |
| Michele | Delgado | 2/12/2024 | 1 | Research and draft writ |
| Michele | Delgado | 3/14/2024 | 0.8 | Drafted a motion to continue trial |
| Michele | Delgado | 7/18/2024 | 0.3 | Research moot question |
| Michele | Delgado | 8/22/2024 | 3.6 | Cite checked 4th circuit brief |
| Michele | Delgado | 9/16/2024 | 3.1 | Researched prevailing party status |
| Michele | Delgado | 9/17/2024 | 5 | Researched prevailing party status |
| Michele | Delgado | 10/30/2024 | 0.5 | Draft Joint MTC |
| Michele | Delgado | 11/18/2024 | 0.6 | Cite checked supplemental brief |
| Michele | Delgado | 11/20/2024 | 0.9 | Cite checked response to notice of compliance |
| Michele | Delgado | 12/2/2024 | 1.5 | Draft motion to extend time for attorneys fees |
| | | | **199.8** | |

| Fee Petition (Non-Taxable Items) | | | |
|---|---|---|---|
| **Category** | **Item** | **Date** | **Cost** |
| Attorney travel expenses | | | |
| Transportation, Mileage, & Parking | Jaclyn Maffetore, Budget Rent-A-Car - rental car for client visit at Anson CI (124 miles away 1 way) | 4/30/2022 | $123.49 |
| | Jaclyn Maffetore, GAS - Sheetz: gas to top up rental car for trip to Anson CI for client visit | 4/30/2022 | $19.51 |
| | Jaclyn Maffetore, GAS - Sheetz, Incgas to top up rental car for return following trip to Charlotte Airport and Anson CI | 5/31/2022 | $16.83 |
| | Jaclyn Maffetore, GAS - Circle K: gas for rental car for trip to Charlotte Airport and Anson CI | 5/31/2022 | $32.98 |
| | Jaclyn Maffetore, Enterprise Rent A Car - rental car for trip to pick up expert at Charlotte Airport and drive to client evaluation at Anson CI | 5/31/2022 | $86.83 |
| | Jaclyn Maffetore, Enterprise Rent-A-Car - rental receipt for trip to Anson CI to have client sign documents | 6/30/2022 | $121.88 |
| | Jaclyn Maffetore, GAS - Sheetz: gas to top up rental car for trip to Anson CI to have client sign documents | 6/30/2022 | $40.14 |
| | Jaclyn Maffetore, Hertz Rent A Car - rental car to drive to CLT for hearing | 8/31/2022 | $97.56 |
| | Jaclyn Maffetore, GAS - Sheetz #647: gas to fill up rental car to CLT prior to return | 8/31/2022 | $31.22 |
| | Michele Delgado, MILEAGE - 188.2 mi @ $0.625 / mi: MTD and PI Hearing | 8/31/2022 | $117.63 |
| | Jaclyn Maffetore, PARKING - Epicentre - Preferred Parking: overnight deck parking in downtown CLT for hearing | 8/31/2022 | $30.00 |
| | Michele Delgado, MILEAGE - 186.29 mi @ $0.625 / mi; MTD and PI Hearing | 8/31/2022 | $116.43 |
| | Michele Delgado, Parking - MTD and PI Hearing | 8/31/2022 | $13.00 |
| | Dan Siegel, MILEAGE - 247.33 mi @ $0.625 / mi: Travel to and from prison for depo prep | 1/31/2023 | $154.58 |
| | Dan Siegel, MILEAGE - 233.26 mi @ $0.625 / mi: Trip to and from deposition | 1/31/2023 | $152.79 |
| | M.Delgado CC, Uber - Uber to Dan's for Carpooling to Prison for Depo | 1/31/2023 | $58.62 |
| | M.Delgado CC, Uber - Uber back from Dan's for KZB Depo | 1/31/2023 | $63.23 |
| | M.Delgado CC, Uber - Uber Tip Charged Separately (KZB Depo) | 1/31/2023 | $15.80 |
| | D.Siegel CC, PARKING - Cityparking Inc.: Parking in Richmond | 1/31/2023 | $15.00 |
| | J. Maffetore CC, PARKING - State Parking Div Visito; parking for Peiper deposition | 5/31/2023 | $12.00 |
| | J. Maffetore CC, PARKING - State Parking Div Visito; parking for Junker deposition | 5/31/2023 | $16.00 |
| | D. Siegel CC, PARKING - Daniel S. Mclaurin Parking Municipaparking for Junker depo | 5/31/2023 | $14.00 |
| | M. Delgado CC, PARKING - State Parking Div Visito: Parking Deck | 5/31/2023 | $8.00 |
| | M. Delgado CC, PARKING - State Parking Div Visito; Parking Deck | 5/31/2023 | $8.00 |
| | J. Maffetore CC, PARKING - State Parking Div Visito: parking for Catlett deposition | 5/31/2023 | $12.00 |
| | M. Delgado CC, PARKING - State Parking Div Visito; Parking Deck | 5/31/2023 | $12.00 |
| | M. Delgado CC, Parking - Parking Deck Expense for Deposition | 6/30/2023 | $8.00 |
| | Maffetore CC, PARKING - State Parking Div VisitorParking for Michele Delgado for mediation m | 7/31/2023 | $16.00 |
| | Maffetore CC, PARKING - Hilton Palmer Houser: Parking for mediation | 7/31/2023 | $16.00 |
| | Siegel CC, PARKING - The Carpark Munici: Parking for mediation | 7/31/2023 | $14.00 |
| | Maffetore CC, PARKING - parking for deposition of Dr. Boyd at DOJ | 8/31/2023 | $10.00 |
| | Siegel CC, PARKING - Parking for Dr. Boyd depo | 8/31/2023 | $12.00 |
| | Delgado CC, PARKING - State Parking Div Visito: Parking Deck - Dr. Penn's Deposition | 8/31/2023 | $18.00 |
| | Siegel CC, PARKING - parking for Penn depo | 8/31/2023 | $16.00 |
| | Maffetore CC, PARKING - Parking for deposition of Dr. Penn at DOJ | 8/31/2023 | $18.00 |
| | Maffetore CC, PARKING - State Parking Div Visitor: Parking for deposition of Dr. Li at DOJ | 8/31/2023 | $12.00 |
| | Dan Siegel, MILEAGE - 289.31 mi @ $0.655 / mi: Travel to and from Charlotte for summary judgment hearing | 11/30/2023 | $150.00 |
| | M. Delgado CC, Parking - Parking Lot Expense for SJ Hearing | 11/30/2023 | $17.00 |
| | D. Siegel CC, Parking - Overnight parking | 11/30/2023 | $42.00 |
| | Jaclyn Maffetore, Mileage - mileage to/from hearing in wdnc - permission from KG to drive own car alone due to illness and logistical difficulty getting rental | 11/30/2023 | $213.15 |
| | Dan Siegel, MILEAGE - 288.36 mi @ $0.67 / mi: Travel to and from Charlotte for SJ hearing | 2/29/2024 | $150.00 |
| | M.Delgado CC, PARKING - Parking Lot - Evidentiary Hearing | 2/29/2024 | $17.00 |
| | L.Robbins CC, PARKING - Pps - Surface Lot":Parking for KZB Hearing | 2/29/2024 | $17.00 |
| | Jaclyn Maffetore, MILEAGE - 313.57 mi @ $0.67 / mi: max $150 in mileage for using own car for evidentiary hearing at WDNC, resubmitted due to not attaching map | 2/29/2024 | $150.00 |
| | J.Maffetore CC, Parking - Parking for KZB evidentiary hearing | 2/29/2024 | $17.00 |
| | J. Maffetore CC, PARKING - Doa State Parking Div: parking for mediation | 3/31/2025 | $10.00 |
| | J. Maffetore CC, PARKING - Doa State Parking Div:client parking for mediation | 3/31/2025 | $10.00 |
| | J. Maffetore CC, PARKING - Doa State Parking Div: parking for mediation | 3/31/2025 | $4.00 |
| | D. Siegel CC, PARKING - Doa State Parking Div: | 3/31/2025 | $10.00 |
| | M. Delgado CC, PARKING - Parking Deck - KZB Mediation | 3/31/2025 | $10.00 |
| | M. Delgado CC, PARKING - Parking - Status Conference | 4/30/2025 | $14.00 |
| | D. Siegel CC, PARKING - Pps - Surface Lot: Parking for status conference | 4/30/2025 | $15.00 |
| | Michele Delgado, MILEAGE - 360.07 mi @ $0.70 / mi: Mileage - Status Conference | 4/30/2025 | $150.00 |
| | Jaclyn Maffetore, MILEAGE - 313.75 mi @ $0.70 / mi: travel to/from status fonference at WDNC courthouse | 5/31/2025 | $150.00 |
| Accommodations & Hotels | Jaclyn Maffetore, HOTEL - Aloft: hotel for morning hearing in Charlotte | 8/31/2022 | $165.55 |
| | J. Maffetore CC, HOTEL - Residence Inn for summary judgment hearing at wdnc | 11/30/2023 | $273.14 |
| | D. Siegel CC, Hotel - Hotel | 11/30/2023 | $295.04 |
| | J. Maffetore CC, HOTEL - Residence Inn overnight parking | 11/30/2023 | $29.00 |
| | L.Robbins CC, HOTEL - Doubletree Hotels: Hotel stay for Michele Delgado for hearing | 2/29/2024 | $214.56 |
| | L.Robbins CC, HOTEL - Doubletree Hotels: Hotel stay for Jaclyn Maffetore for hearing | 2/29/2024 | $200.67 |
| | L.Robbins CC, HOTEL - Doubletree Hotels: Hotel stay for Dan Siegel for hearing | 2/29/2024 | $214.56 |
| Postage for client communications | L.Robbins CC, USPS - Mailing of SJ to KZB | 5/31/2024 | $9.85 |
| | L.Robbins CC, USPS - Overnight mailing docs back to KZB | 5/31/2024 | $30.45 |
| | J.Maffetore CC, USPS - mailing appeal document overnight to client due to emergency deadline | 5/29/2024 | $30.45 |
| **TOTAL** | | | **$4,138.94** |

# UNITED STATES DISTRICT COURT

for the

Western District of North Carolina

| | | |
|---|---|---|
| Kanautica Zayre-Brown, Plaintiff v. North Carolina Department of Adult Correction, et al., Defendants | ) ) ) ) ) | Case No.: 3:22-cv-00191-MOC-DCK |

## BILL OF COSTS

Judgment having been entered in the above entitled action on 04/16/2024 (*Date*) against Defendants,

the Clerk is requested to tax the following as costs:

| | |
|---|---|
| Fees of the Clerk | $ 402.00 |
| Fees for service of summons and subpoena | |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case | 20,667.90 |
| Fees and disbursements for printing | |
| Fees for witnesses *(itemize on page two)* | 0.00 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. | |
| Docket fees under 28 U.S.C. 1923 | |
| Costs as shown on Mandate of Court of Appeals | |
| Compensation of court-appointed experts | |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 | |
| Other costs *(please itemize)* | 548.00 |
| TOTAL | $ 21,617.90 |

*SPECIAL NOTE:* Attach to your bill an itemization and documentation for requested costs in all categories.

### Declaration

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

☑ Electronic service ☐ First class mail, postage prepaid

☐ Other:

s/ Attorney: [signature]

Name of Attorney: Jaclyn A. Maffetore

For: Kanautica Zayre-Brown (*Name of Claiming Party*) Date: 07/21/2025

### Taxation of Costs

Costs are taxed in the amount of ______ and included in the judgment.

______ By: ______ ______

*Clerk of Court* *Deputy Clerk* *Date*

# UNITED STATES DISTRICT COURT

**Witness Fees (computation, cf. 28 U.S.C. 1821 for statutory fees)**

| NAME , CITY AND STATE OF RESIDENCE | ATTENDANCE | | SUBSISTENCE | | MILEAGE | | Total Cost Each Witness |
|---|---|---|---|---|---|---|---|
| | Days | Total Cost | Days | Total Cost | Miles | Total Cost | |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | TOTAL | | $0.00 |

**NOTICE**

**Section 1924, Title 28, U.S. Code (effective September 1, 1948) provides:**
"Sec. 1924. Verification of bill of costs."
"Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."

**See also Section 1920 of Title 28, which reads in part as follows:**
"A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

**The Federal Rules of Civil Procedure contain the following provisions:**
**RULE 54(d)(1)**

Costs Other than Attorneys' Fees.
Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 day's notice. On motion served within the next 7 days, the court may review the clerk's action.

**RULE 6**

(d) Additional Time After Certain Kinds of Service.

When a party may or must act within a specified time after service and service is made under Rule5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a).

**RULE 58(e)**

Cost or Fee Awards:

Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.

| Itemized Bill of Costs (Taxable Items) - *Zayre-Brown v. NC DAC*, 3:22-cv-00191-MOC-DCK | | | | |
|---|---|---|---|---|
| **Category** | **Rule Source** | **Item** | **Date** | **Cost** |
| Fees of the Clerk | BOC Form | K.Graunke CC, COURTS - US District Court case filing fee | 4/30/2022 | $402.00 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case | BOC Form, LR 54.1(f)(1) | L.Robbins CC, Litigation Services - Deborah Cohen-roja; Ordered Transcript of 8/23 hearing | 2/28/2023 | $166.60 |
| | | Michelle A McGirr - Court Stenographer services | 1/6/2024 | $360.00 |
| | | Court Reporter - Huseby Global Litigation - Kanautica Brown's Deposition | 2/8/2023 | $1,432.05 |
| | | Discovery Court Reporters - Lewis Peiper (30(b)(6)) | 5/8/2023 | $1,742.00 |
| | | Discovery Court Reporters - Patricia Hahn, Ph.D | 5/8/2023 | $1,756.25 |
| | | Discovery Court Reporters - Arthur Campbell, M.D. (individual) | 5/16/2023 | $1,575.00 |
| | | Discovery Court Reporters - Arthur Campbell, M.D. (30(b)(6)) | 5/16/2023 | $666.25 |
| | | Discovery Court Reporters - Lewis Peiper (individual) | 5/18/2023 | $1,185.00 |
| | | Discovery Court Reporters - Gary Junker, Ph.D. | 5/24/2023 | $1,655.00 |
| | | Discovery Court Reporters - Brian Sheitman, M.D. | 6/8/2023 | $1,250.00 |
| | | Discovery Court Reporters - Terri Catlett | 6/20/2023 | $900.00 |
| | | Discovery Court Reporters - Marvella Bowman | 7/12/2023 | $1,000.00 |
| | | Discovery Court Reporters - Brandeshawn Harris | 8/18/2023 | $765.00 |
| | | Discovery Court Reporters - Sarah Boyd, Ph.D. | 8/18/2023 | $1,375.00 |
| | | Discovery Court Reporters - Fan Li, Ph.D. | 8/22/203 | $1,250.00 |
| | | Discovery Court Reporters - Joseph V. Penn, M.D. | 8/25/2023 | $1,745.00 |
| | | Veritext Legal Solutions - Randi C. Ettner, Ph.D. | 9/14/2023 | $1,231.40 |
| | | Veritext Legal Solutions - Armand H. Antommaria, M.D., Ph.D. | 9/21/2023 | $613.35 |
| Other costs | | | | |
| ______Deposition: Costs of the videotape and appearance fee of a videographer | LR 54.1(f)(7) | Court Reporter - Huseby Global Litigation - Kanautica Brown's Deposition video | 2/8/2023 | $548.00 |
| **TOTAL** | | | | **$21,617.90** |

# Pay.gov Payment Confirmation: NORTH CAROLINA WESTERN DISTRICT COURT

do_not_reply@psc.uscourts.gov <do_not_reply@psc.uscourts.gov>
Thu 4/28/2022 4:02 PM
To: Kristi Graunke <kgraunke@acluofnc.org>

**This Message Is From an External Sender**
This message came from outside your organization.

Your payment has been successfully processed and the details are below. If you have any questions or you wish to cancel this payment, please contact: Antonietta Basile at 704-350-7419.

Account Number: 5198634
Court: NORTH CAROLINA WESTERN DISTRICT COURT
Amount: $402.00
Tracking Id: ANCWDC-5549958
Approval Code: 555081
Card Number: ************3896
Date/Time: 04/28/2022 04:02:36 ET

Person Completing Transaction: Jaclyn A. Maffetore
Attorney Name: Jaclyn A. Maffetore
Attorney Phone: 9193545070

NOTE: This is an automated message. Please do not reply

ST44 Rev. 04/18
Derived from AO44 Rev. 04/18

# UNITED STATES DISTRICT COURT
**For the**

INVOICE 132

| | |
|---|---|
| American Civil Liberties Union<br>PO Box 28004<br>Raleigh, NC 27611<br>(919) 834-3466 | **MAKE CHECKS PAYABLE TO:**<br>Deborah Cohen-Rojas, RMR, RDR, CRR, FCRR<br>6413 Creft Circle<br>Indian Trail, NC 28079<br>(704) 350-7497<br>Deborah.CohenRojas@ncwd.uscourts.gov |

| | | |
|---|---|---|
| __ CRIMINAL X CIVIL | DATE ORDERED: 01-24-2023 | DATE DELIVERED: 01-27-2023 |

**In the matter of:** 3:22-CV-191, Kanautica Zayre-Brown v NC Department of Public Safety

8/23/2022 motion hearing

| CATEGORY | ORIGINAL | | | 1ST COPY | | | 2ND COPY | | | TOTAL CHARGES |
|---|---|---|---|---|---|---|---|---|---|---|
| | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | |
| Ordinary | 44 | 3.65 | 160.60 | | | | | | | 160.60 |
| 14-Day | | | | | | | | | | |
| Expedited | | | | | | | | | | |
| 3-Day | | | | | | | | | | |
| Daily | | | | | | | | | | |
| Hourly | | | | | | | | | | |
| Realtime | | | | | | | | | | |
| Misc. | | | | | | | | | Misc. Charges | |
| | | | | | | | | | **Subtotal** | 160.60 |
| | | | | | | | | | Less Discount for Late Delivery | |
| | | | | | | | | | Tax (If Applicable) | |
| | | | | | | | | | Less Amount of Deposit | |
| | | | | | | | | | Total Refund | |
| | | | | | | | | | **Total Due** | 160.60 |

ADDITIONAL INFORMATION

Full price may be charged only if the transcript is delivered within the required time frame. For example, if an order for expedited transcript is not completed and delivered within (7) calendar days, payment would be at the 14-day delivery rate, and if not completed and delivered within 14 days, payment would be at the ordinary delivery rate.

CERTIFICATION

I certify that the transcript fees charged and page format used comply with the requirements of this court and the Judicial Conference of the United States.

SIGNATURE: Deborah Cohen-Rojas

DATE: 01-27-2023

**DISTRIBUTION:** TO PARTY (2 copies - 1 to be returned with payment) COURT REPORTER COURT REPORTER SUPERVISOR

Delete Archive Report Reply Reply all Forward

# Receipt from Deborah Cohen-Rojas

**This Message Is From an External Sender**

This message came from outside your organization.

## Deborah Cohen-Rojas

Let Deborah Cohen-Rojas know how your experience was

# $166.60

| | |
|---|---|
| **Custom Amount × 1** | **$166.60** |
| Total | **$166.60** |




Deborah Cohen-Rojas
596 SHAKESPEARE DR
GRAYSLAKE, IL 60030-3369

ST44 Rev. 10/23
Derived from AO44 Rev. 10/23

# UNITED STATES DISTRICT COURT
## For the Western District of North Carolina

INVOICE 20240001

Jaclyn Maffetore
American Civil Liberties Union of NC
PO Box 28004
Raleigh, NC 27611

**MAKE CHECKS PAYABLE TO:**
Michelle McGirr, RMR, CRR, RPR
Official Court Stenographer
339 Huntington Drive
Pittsboro, NC 27312
michelle_mcgirr@ncwd.uscourts.gov

__ CRIMINAL X CIVIL

DATE ORDERED: 01-06-2024

DATE DELIVERED: 01-06-2024

**In the matter of:** 3:22-CV-191-MOC-DCK, Zayre-Brown v NC Department of Adult Corrections, et al

ESTIMATE
11/9/23 Motions Hearing

| CATEGORY | ORIGINAL | | | 1ST COPY | | | ADDITIONAL COPY | | | TOTAL CHARGES |
|---|---|---|---|---|---|---|---|---|---|---|
| | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | |
| 30-Day | 90 | 4.00 | 360.00 | | | | | | | 360.00 |
| 14-Day | | | | | | | | | | |
| 7-Day | | | | | | | | | | |
| 3-Day | | | | | | | | | | |
| Next-Day | | | | | | | | | | |
| 2-Hour | | | | | | | | | | |
| Realtime | | | | | | | | | | |
| Misc. | | | | | | | | | Misc. Charges | |
| | | | | | | | | | **Subtotal** | 360.00 |
| | | | | | | | | | Less Discount for Late Delivery | |
| | | | | | | | | | Tax (If Applicable) | |
| | | | | | | | | | Less Amount of Deposit | |
| | | | | | | | | | Total Refund | |
| | | | | | | | | | **Total Due** | 360.00 |

ADDITIONAL INFORMATION

Full price may be charged only if the transcript is delivered within the required time frame. For example, if an order for expedited transcript is not completed and delivered within (7) calendar days, payment would be at the 14-day delivery rate, and if not completed and delivered within 14 days, payment would be at the ordinary delivery rate.

CERTIFICATION

I certify that the transcript fees charged and page format used comply with the requirements of this court and the Judicial Conference of the United States.

SIGNATURE: Michelle A. McGirr

DATE: 01-07-2024

**DISTRIBUTION:** TO PARTY (2 copies - 1 to be returned with payment) COURT REPORTER COURT REPORTER SUPERVISOR

# INVOICE

Huseby.com
Corporate Headquarters
1230 West Morehead St., Suite 408
Charlotte, NC 28208
Questions? Call (800) 333-2082

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 775406 | 2/8/2023 | 433362 |
| **Job Date** | **Case No.** | |
| 1/18/2023 | 3:22-cv-191 | |
| **Case Name** | | |
| Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al. | | |
| **Payment Terms** | | |
| Due upon receipt, after 30 days 1.5% fee | | |

Jaclyn A. Maffetore, Esq.
ACLU OF NORTH CAROLINA LEGAL FOUNDATION
Post Office Box 28004
Raleigh, NC 27611

1 COPY OF TRANSCRIPT OF:
Kanautica Zayre-Brown 1,432.05

**TOTAL DUE >>> $1,432.05**

Location of Job : Anson Correctional Institution
552 Prison Camp Road
Polkton, NC 28135

Thank you for choosing Huseby!

If you would like to pay your invoice(s) securely online by credit card, please visit www.huseby.com. Click the "Make a Payment" button located at the top of the page. If you prefer to complete the attached credit card form, please scan and email the completed form to: AR@huseby.com. Please DO NOT MAIL the credit card information to the P O Box 6180, Hermitage, PA 16148.

Schedule with us anywhere nationally today! To learn more about the services and technology we provide for both depositions and trial, visit us online at www.huseby.com.

**Tax ID:** 31-1763752

*Please detach bottom portion and return with payment.*

Jaclyn A. Maffetore, Esq.
ACLU OF NORTH CAROLINA LEGAL FOUNDATION
Post Office Box 28004
Raleigh, NC 27611

Job No. : 433362 BU ID : 1-MAIN
Case No. : 3:22-cv-191
Case Name : Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Invoice No. : 775406 Invoice Date : 2/8/2023
**Total Due : $1,432.05**

**PAYMENT WITH CREDIT CARD** AMEX MasterCard VISA

Cardholder's Name:
Card Number:
Exp. Date: Phone#:
Billing Address:
Zip: Card Security Code:
Amount to Charge:
Cardholder's Signature:
Email:

Remit To: **Huseby Global Litigation**
**P.O. Box 6180**
**Hermitage, PA 16148-0922**

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Jon Davidson, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202677**
Invoice Date: 05/18/2023
Job Number: 302100

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 05/01/2023, 11:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Lewis Peiper, M.D.** | |
| 177 | Original & 1 Certified Transcript | 885.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 79 | Exhibits Copied/Scanned (B/W) | 55.30 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 70.00 |
| | Invoice Total: | 1435.30 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Li Nowlin-Sohl, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202626**
Invoice Date: 05/08/2023
Job Number: 302056

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 04/11/2023, 11:00 a.m.

| Qty | Description | Amount |
| --- | --- | --- |
| | **Patricia Hahn, Ph.D.** | |
| 265 | Original & 1 Certified Transcript | 1325.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 1.75 | After 5:00pm/Before 9:00am Hourly Rate | 131.25 |
| 130 | Exhibits Copied/Scanned (B/W) | 91.00 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 75.00 |
| | Invoice Total: | 2047.25 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union Foundation
ATTN: Leslie Cooper, Esq.
125 Broad Street
18th Floor
New York, NY 10004

**Invoice Number:** **202644**
Invoice Date: 05/16/2023
Job Number: 302063

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 04/18/2023, 9:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Arthur Campbell, M.D.** | |
| 107 | Original & 1 Certified Transcript | 535.00 |
| 1.75 | After 5:00pm Hourly Rate | 131.25 |
| 109 | Exhibits Copied/Scanned (B/W) | 76.30 |
| 85 | Rough ASCII | 148.75 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Postage & Handling (O+1) | 60.00 |

Invoice Total: 1001.30

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union Foundation
ATTN: Leslie Cooper, Esq.
125 Broad Street
18th Floor
New York, NY 10004

**Invoice Number:** **202641**
Invoice Date: 05/16/2023
Job Number: 302063

---

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 04/18/2023, 9:00 a.m.

---

| Qty | Description | Amount |
|---|---|---|
| | **Arthur Campbell, M.D. - 30(b)(6)** | |
| 255 | Original & 1 Certified Transcript | 1275.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 59 | Exhibits Copied/Scanned (B/W) | 41.30 |
| 209 | Rough ASCII | 365.75 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 60.00 |

Invoice Total: 2167.05

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Invoice 202624 - Dr. Lewis Peiper - Zayre-Brown vs. NC Department of Public Safety, et al. - 04/17/2023



Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

approved for payment

Kanautica Zayre-Brown v. NCDPS case

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Taylor Brown, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202624**
Invoice Date: 05/08/2023
Job Number: 302062

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 04/17/2023, 9:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Dr. Lewis Peiper** | |
| 266 | Original & 1 Certified Transcript | 1330.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 1.5 | After 5:00pm/Before 9:00am Hourly Rate | 112.50 |
| 74 | Exhibits Copied/Scanned (B/W) | 51.80 |
| 224 | Rough ASCII | 392.00 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 75.00 |
| | Invoice Total: | 2386.30 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Jaclyn Maffetore, Esq.
PO Box 28004
Raleigh, NC  27611

**Invoice Number:** **202706**
Invoice Date: 05/24/2023
Job Number: 302101

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 05/04/2023, 9:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Gary Junker, Ph.D.** | |
| 271 | Original & 1 Certified Transcript | 1355.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 150 | Exhibits Copied/Scanned (B/W) | 105.00 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 70.00 |

Invoice Total: 1955.00

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Jon Davidson, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202737**
Invoice Date: 06/08/2023
Job Number: 302126

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 05/17/2023, 11:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Brian Sheitman, M.D.** | |
| 190 | Original & 1 Certified Transcript | 950.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 111 | Exhibits Copied/Scanned (B/W) | 77.70 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 70.00 |
| | Invoice Total: | 1522.70 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Jon Davidson, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202766**
Invoice Date: 06/20/2023
Job Number: 302127

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 05/18/2023, 9:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Terri Catlett** | |
| 120 | Original & 1 Certified Transcript | 600.00 |
| 1 | Appearance Fee (Over 2 hours) | 300.00 |
| 82 | Exhibits Copied/Scanned (B/W) | 57.40 |
| 43 | Exhibits Copied/Scanned (Color) | 53.75 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 60.00 |
| | Invoice Total: | 1196.15 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Jaclyn Maffetore, Esq.
PO Box 28004
Raleigh, NC  27611

**Invoice Number:** **202814**
Invoice Date: 07/12/2023
Job Number: 302221

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 06/29/2023, 10:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Dr. Marvella Bowman** | |
| 140 | Original & 1 Certified Transcript | 700.00 |
| 1 | Appearance Fee (Over 2 hours) | 300.00 |
| 47 | Exhibits Copied/Scanned (B/W) | 32.90 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Postage & Handling (O+1) | 60.00 |
| | Invoice Total: | 1142.90 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Jon Davidson, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202721**
Invoice Date: 06/06/2023
Job Number: 302115

**Past Due**

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 05/16/2023, 10:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Brandeshawn Harris** | |
| 98 | Original & 1 Certified Transcript | 465.50 |
| 1 | Appearance Fee (Over 2 hours) | 300.00 |
| 62 | Exhibits Copied/Scanned (B/W) | 43.40 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) | 60.00 |
| | Invoice Total: | 993.90 |
| | Interest/Late Fee: | 99.39 |
| | Total Amount Due: | 1093.29 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

*Please detach bottom portion and return with payment*

Invoice Number: 202721
Invoice Date: 06/06/2023
Amount Due: **$1093.29**
Amount Enclosed: $____________________

**CREDIT CARDS ACCEPTED**

Cardholder`s Name:
Card Number:
Exp. Date: Phone:
Billing Address:
Zip: Security Code:
Signature:



Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Dan Siegel, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202922**
Invoice Date: 08/21/2023
Job Number: 302274

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 08/04/2023, 9:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Sarah Boyd, Ph.D.** | |
| 215 | Original & 1 Certified Transcript | 1075.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 56 | Exhibits Copied/Scanned (B/W) | 39.20 |
| 179 | Rough ASCII | 313.25 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 70.00 |

Invoice Total: 1847.45

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Li Nowlin-Sohl, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202920**
Invoice Date: 08/22/2023
Job Number: 302282

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 08/11/2023, 10:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Fan Li, Ph.D.** | |
| 190 | Original & 1 Certified Transcript | 950.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 189 | Exhibits Copied/Scanned (B/W) | 132.30 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 70.00 |
| | Invoice Total: | 1502.30 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

Discovery Court Reporters & Legal Videographers
4208 Six Forks Road, Suite 1000
Raleigh, NC 27609
919-424-8242

approved for payment

# INVOICE

American Civil Liberties Union of North Carolina
ATTN: Jaclyn Maffetore, Esq.
PO Box 28004
Raleigh, NC 27611

**Invoice Number:** **202930**
Invoice Date: 08/25/2023
Job Number: 302280

In Re: Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Case Number: 3:22-CV-00191
Attendance Date: 08/08/2023, 9:00 a.m.

| Qty | Description | Amount |
|---|---|---|
| | **Joseph V. Penn, M.D.** | |
| 289 | Original & 1 Certified Transcript | 1445.00 |
| 1 | Appearance Fee (Over 3 hours) | 300.00 |
| 278 | Exhibits Copied/Scanned (B/W) | 194.60 |
| 237 | Rough ASCII | 414.75 |
| 1 | E-Tran/Litigation Support Pack (O+1) | |
| 1 | Signature Letter/Processing Sealed Orig (Code Compliance) | 50.00 |
| 1 | Zoom/Remote Counsel/Laptop Services | 75.00 |
| 1 | Postage & Handling (O+1) (Oversized) | 70.00 |
| | Invoice Total: | 2549.35 |

We Appreciate Your Business!

**PAYMENT DUE UPON RECEIPT**

**To Insure Proper Credit, Include the Invoice Number on Your Check.**

A 10% late fee will be applied to all invoices after 30 days.

Tax ID: 35-2480397

Please Note: If you wish to pay by credit card, a 3.5% convenience fee will apply. No credit is extended to attorney's clients or other third parties. In accepting performance of our services, attorney acknowledges and agrees to pay all costs of collection, including attorney's fees and court costs.

## Veritext, LLC - Southeast Region

Tel. 800.743.3376 Email: billing-carolinas@veritext.com
Fed. Tax ID: 20-3132569

VERITEXT LEGAL SOLUTIONS

Bill To: Jon Davidson
American Civil Liberties Union (ACLU)
125 Broad Street
18th Floor
New York, NY, 10004

| | |
|---|---|
| **Invoice #:** | **6838105** |
| **Invoice Date:** | **9/14/2023** |
| **Balance Due:** | **$1,231.40** |

**Case: Zayre-Brown, Kanautica v. North Carolina Department Of Public Safety, Et Al. (322cv191)** — **Proceeding Type: Depositions**

Job #: 6011081 | Job Date: 8/21/2023 | Delivery: Normal

Location: Chicago, IL

Billing Atty: Jon Davidson

Scheduling Atty: Orlando L. Rodriguez | North Carolina Department of Justice

| Witness: Randi C. Ettner , PhD | Amount |
|---|---|
| Transcript Services | $1,231.40 |

Notes:

| | |
|---|---|
| **Invoice Total:** | **$1,231.40** |
| **Payment:** | **$0.00** |
| **Credit:** | **$0.00** |
| **Interest:** | **$0.00** |
| **Balance Due:** | **$1,231.40** |

TERMS: Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

---

**Remit to:**
Veritext
P.O. Box 71303
Chicago IL 60694-1303
Fed. Tax ID: 20-3132569

**Pay By ACH (Include invoice numbers):**
**A/C Name:**Veritext
**Bank Name:**BMO Harris Bank
**Bank Addr:**311 W. Monroe Chicago, IL 60606
**Account No:**4353454 **ABA:**071000288
**Swift:** HATRUS44

Pay by Credit Card: www.veritext.com

**Invoice #:** **6838105**
**Invoice Date:** **9/14/2023**
**Balance Due:** **$1,231.40**

B420230915

## Veritext, LLC - Southeast Region

Tel. 800.743.3376 Email: billing-carolinas@veritext.com
Fed. Tax ID: 20-3132569

VERITEXT LEGAL SOLUTIONS

Bill To: Li Nowlin-Sohl
American Civil Liberties Union (ACLU)
125 Broad Street
18th Floor
New York, NY, 10004

| | |
|---|---|
| **Invoice #:** | **6850330** |
| **Invoice Date:** | **9/21/2023** |
| **Balance Due:** | **$613.35** |

**Case: Zayre-Brown, Kanautica v. North Carolina Department Of Public Safety, Et Al. (3:22cv191)** — **Proceeding Type: Depositions**

Job #: 6064741 | Job Date: 9/7/2023 | Delivery: Normal

Location: Cincinnati, OH

Billing Atty: Li Nowlin-Sohl

Scheduling Atty: Orlando L. Rodriguez | North Carolina Department of Justice

| Witness: Armand H. Antommaria , M.D., Ph. D. | Amount |
|---|---|
| Transcript Services | $613.35 |

Notes:

| | |
|---|---|
| **Invoice Total:** | **$613.35** |
| **Payment:** | **$0.00** |
| **Credit:** | **$0.00** |
| **Interest:** | **$0.00** |
| **Balance Due:** | **$613.35** |

TERMS: Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors. No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

**Remit to:**
Veritext
P.O. Box 71303
Chicago IL 60694-1303
Fed. Tax ID: 20-3132569

**Pay By ACH (Include invoice numbers):**
**A/C Name:**Veritext
**Bank Name:**BMO Harris Bank
**Bank Addr:**311 W. Monroe Chicago, IL 60606
**Account No:**4353454 **ABA:**071000288
**Swift:** HATRUS44

Pay by Credit Card: www.veritext.com

**Invoice #:** **6850330**
**Invoice Date:** **9/21/2023**
**Balance Due:** **$613.35**

B420230922

# INVOICE

Huseby.com
Corporate Headquarters
1230 West Morehead St., Suite 408
Charlotte, NC 28208
Questions? Call (800) 333-2082

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 775407 | 2/8/2023 | 433363 |

| Job Date | Case No. |
|---|---|
| 1/18/2023 | 3:22-cv-191 |

| Case Name |
|---|
| Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al. |

| Payment Terms |
|---|
| Due upon receipt, after 30 days 1.5% fee |

Jaclyn A. Maffetore, Esq.
ACLU OF NORTH CAROLINA LEGAL FOUNDATION
Post Office Box 28004
Raleigh, NC 27611

Video Copy
Kanautica Zayre-Brown 548.00

**TOTAL DUE >>> $548.00**

Location of Job : Anson Correctional Institution
552 Prison Camp Road
Polkton, NC 28135

Thank you for choosing Huseby!

If you would like to pay your invoice(s) securely online by credit card, please visit www.huseby.com. Click the "Make a Payment" button located at the top of the page. If you prefer to complete the attached credit card form, please scan and email the completed form to: AR@huseby.com. Please DO NOT MAIL the credit card information to the P O Box 6180, Hermitage, PA 16148.

Schedule with us anywhere nationally today! To learn more about the services and technology we provide for both depositions and trial, visit us online at www.huseby.com.

**Tax ID:** 31-1763752

*Please detach bottom portion and return with payment.*

Job No. : 433363 BU ID : 1-MAIN
Case No. : 3:22-cv-191
Case Name : Kanautica Zayre-Brown vs. North Carolina Department of Public Safety, et al.
Invoice No. : 775407 Invoice Date : 2/8/2023
**Total Due : $548.00**

Jaclyn A. Maffetore, Esq.
ACLU OF NORTH CAROLINA LEGAL FOUNDATION
Post Office Box 28004
Raleigh, NC 27611

**PAYMENT WITH CREDIT CARD**

Cardholder's Name:
Card Number:
Exp. Date: Phone#:
Billing Address:
Zip: Card Security Code:
Amount to Charge:
Cardholder's Signature:
Email:

Remit To: **Huseby Global Litigation**
**P.O. Box 6180**
**Hermitage, PA 16148-0922**

# Exhibit A

Attachment 1

| | | | |
|---|---|---|---|
| 2/1/2022 | Jon W Davidson | 0.5 | Discuss case with ACLU Legal Director and review case memo |
| 2/9/2022 | Jon W Davidson | 0.5 | Call with ACLU Legal Director and Deputy Legal Director re case status, staffing, and plans for proceeding |
| 2/14/2022 | Jon W Davidson | 0.5 | Call with ACLU Legal Director re complaint, preliminary injunction motion, and exhaustion issues |
| 2/17/2022 | Jon W Davidson | 0.6 | Call with co-counsel re complaint, preliminary injunction motion, expert witness declaration, and timing |
| 2/17/2022 | Jon W Davidson | 0.2 | Review and edit expert engagement agreement |
| 2/18/2022 | Jon W Davidson | 0.2 | Review and edit client retainer and co-counsel agreement |
| 2/23/2022 | Jon W Davidson | 0.2 | Review revised client retainer, co-counsel agreement, and expert engagement letter |
| 2/23/2022 | Jon W Davidson | 1 | Call with co-counsel re co-counsel agreement, complaint, venue, and expert |
| 2/24/2022 | Jon W Davidson | 0.5 | Call with expert witness Dr. Randi Ettner |
| 2/24/2022 | Jon W Davidson | 0.1 | Email Dr. Ettner re expert engagement letter |
| 2/24/2022 | Jon W Davidson | 0.2 | Email legal assistant re preparation and filing of pro hac vice motion |
| 2/27/2022 | Jon W Davidson | 1.5 | Review and edit draft complaint |
| 3/1/2022 | Jon W Davidson | 0.5 | Call with co-counsel re complaint, preliminary injunction motion, retainer, co-counsel agreement, and expert issues |
| 3/1/2022 | Jon W Davidson | 0.3 | Review edits to retainer and co-counsel agreement and make further revisions |
| 3/2/2022 | Jon W Davidson | 1.4 | Review and edit draft motion for preliminary injunction |
| 3/2/2022 | Jon W Davidson | 0.1 | Email co-counsel re client declaration |
| 3/3/2022 | Jon W Davidson | 1 | Call with client and co-counsel re filing of complaint and preliminary injunction motion |
| 3/4/2022 | Jon W Davidson | 0.3 | Review and edit further revised client retainer and co-counsel agreement |
| 3/8/2022 | Jon W Davidson | 0.3 | Call with co-counsel re status of retainer, co-counsel agreement, complaint, preliminary injunction motion, medical records review, and client declaration |
| 3/8/2022 | Jon W Davidson | 0.2 | Finalize co-counsel agreement, and email executed version to team |
| 3/8/2022 | Jon W Davidson | 0.2 | Review local rules re pro hac vice requirements and email co-counsel |
| 3/9/2022 | Jon W Davidson | 0.3 | Review edits to complaint and respond |
| 3/17/2022 | Jon W Davidson | 0.7 | Research Prison Litigation Reform Act issues and email co-counsel re how to address them |
| 3/20/2022 | Jon W Davidson | 0.5 | Review and edit client declaration and email to co-counsel |
| 3/21/2022 | Jon W Davidson | 0.2 | Emails with ACLU National Prison Project attorneys re review of complaint |
| 3/22/2022 | Jon W Davidson | 1 | Call with co-counsel re client declaration, upcoming call with client, and status of complaint and preliminary injunction motion |
| 3/23/2022 | Jon W Davidson | 0.3 | Call with client re her declaration and case status |
| 3/23/2022 | Jon W Davidson | 0.2 | Emails with co-counsel re prison records and timeline |
| 3/28/2022 | Jon W Davidson | 0.8 | Call with client re finalization of complaint and preliminary injunction motion and anticipated plans for the lawsuit |
| 3/29/2022 | Jon W Davidson | 0.2 | Research medical exam issues and email co-counsel regarding them |
| 4/4/2022 | Jon W Davidson | 0.1 | Review and respond to co-counsel emails re client release date |
| 4/4/2022 | Jon W Davidson | 0.8 | Research provision of gender-affirming surgery to prisoners |
| 4/4/2022 | Jon W Davidson | 0.8 | Review and edit motion to compel and emails with opposing counsel re status and outstanding tasks |
| 4/6/2022 | Jon W Davidson | 3.3 | Edit revised complaint and email co-counsel regarding it |
| 4/7/2022 | Jon W Davidson | 0.5 | Further edit revised complaint |
| 4/7/2022 | Jon W Davidson | 0.1 | Email ACLU National Prison Project attorneys re review of complaint |
| 4/12/2022 | Jon W Davidson | 1.1 | Research damages available under 8th Amendment and Prison Litigation Reform Act and email co-counsel re research |
| 4/12/2022 | Jon W Davidson | 1.5 | Call with client followed by call with co-counsel re further amendments to complaint and outstanding tasks |
| 4/12/2022 | Jon W Davidson | 0.3 | Research issues re verification of complaint and email co-counsel re research |
| 4/15/2022 | Jon W Davidson | 0.1 | Email co-counsel re client retainer |
| 4/19/2022 | Jon W Davidson | 0.2 | Email co-counsel re vulvoplasty allegations |
| 4/19/2022 | Jon W Davidson | 0.9 | Call with co-counsel re complaint, preliminary injunction motion, and motion to compel |
| 4/19/2022 | Jon W Davidson | 0.7 | Review and edit further revised complaint and email co-counsel regarding it |
| 4/19/2022 | Jon W Davidson | 0.6 | Research qualified immunity issues and email co-counsel re research |
| 4/20/2022 | Jon W Davidson | 0.6 | Review and revise complaint allegations re vulvoplasty |
| 4/21/2022 | Jon W Davidson | 1.2 | Review and edit revised preliminary injunction motion and email co-counsel regarding it |
| 5/2/2022 | Jon W Davidson | 0.1 | Review Rule 34 request and email co-counsel |
| 5/3/2022 | Jon W Davidson | 0.6 | Redact draft preliminary injunction motion and email DOJ attorneys re statement of interest and draft preliminary injunction motion |
| 5/5/2022 | Jon W Davidson | 0.2 | Revise pro hac vice motion and email executed version to co-counsel |
| 5/10/2022 | Jon W Davidson | 0.6 | Call with co-counsel re outstanding tasks |
| 5/16/2022 | Jon W Davidson | 0.6 | Review and edit revised brief in support of motion for preliminary injunction |
| 5/17/2022 | Jon W Davidson | 0.5 | Call with client and co-counsel re next steps |
| 5/26/2022 | Jon W Davidson | 0.4 | Emails with co-counsel re Dr. Ettner's examination of client and Ettner expert declaration |
| 5/31/2022 | Jon W Davidson | 0.8 | Call with co-counsel re preliminary injunction motion, expert declaration, and contacting Jennifer Doula and Dr. Figler |
| 6/1/2022 | Jon W Davidson | 0.5 | Edit client's declaration in support of preliminary injunction motion |
| 6/8/2022 | Jon W Davidson | 0.3 | Call with client re status of litigation |
| 6/9/2022 | Jon W Davidson | 2.9 | Review Dr. Ettner's declaration and draft possible edits to discuss with her and send to co-counsel |
| 6/13/2022 | Jon W Davidson | 0.3 | Call with co-counsel re finalizing components of preliminary injunction motion |
| 6/23/2022 | Jon W Davidson | 0.2 | Review and edit client declaration in support of preliminary injunction motion |
| 6/24/2022 | Jon W Davidson | 0.3 | Draft and review email to Dr. Ettner re her declaration |
| 6/24/2022 | Jon W Davidson | 0.5 | Review motion to dismiss and email co-counsel re opposition arguments |
| 6/27/2022 | Jon W Davidson | 0.4 | Review and further edit revised motion for preliminary injunction |
| 6/28/2022 | Jon W Davidson | 0.2 | Final review of motion, brief, and declarations in support of preliminary injunction |
| 6/28/2022 | Jon W Davidson | 0.5 | Call with co-counsel re opposition to motion to dismiss |

| | | | |
|---|---|---|---|
| 7/6/2022 | Jon W Davidson | 1 | Review and edit opposition to motion to dismiss |
| 7/12/2022 | Jon W Davidson | 0.5 | Review and edit revised opposition to motion to dismiss |
| 7/19/2022 | Jon W Davidson | 0.3 | Call with co-counsel re response to opposition to preliminary injunction motion |
| 7/19/2022 | Jon W Davidson | 0.5 | Analyze opposition to preliminary injunction and supporting documents |
| 7/20/2022 | Jon W Davidson | 0.5 | Review outline of reply to opposition to motion for preliminary injunction and email co-counsel re additional arguments to consider |
| 7/26/2022 | Jon W Davidson | 0.3 | Review and edit draft reply to opposition to motion for preliminary injunction |
| 1/3/2023 | Jon W Davidson | 0.5 | Call with co-counsel re expert issues |
| 1//4/23 | Jon W Davidson | 0.7 | Review amicus brief in Edmo litigation and email co-counsel re them and re potential additional experts |
| 1/5/2023 | Jon W Davidson | 0.8 | Call with client re status of litigation |
| 1/5/2023 | Jon W Davidson | 0.1 | Call with counsel in Fields v. Smith re experts |
| 1/5/2023 | Jon W Davidson | 1.8 | Work on Dr. Ettner expert report |
| 1/5/2023 | Jon W Davidson | 0.1 | Email Dr. Ettner re phone interview with client |
| 1/7/2023 | Jon W Davidson | 0.2 | Review and edit responses to document requests |
| 1/8/2023 | Jon W Davidson | 2.4 | Work on Dr. Ettner expert report and email to co-counsel |
| 1/9/2023 | Jon W Davidson | 0.1 | Call with Dr. Ettner re interview of client |
| 1/9/2023 | Jon W Davidson | 0.9 | Call with co-counsel re outstanding tasks |
| 1/10/2023 | Jon W Davidson | 0.2 | Review and edit Exhibit A to subpoena to UNC Health Systems |
| 1/12/2023 | Jon W Davidson | 0.2 | Review and edit revised response to request for production of documents |
| 1/12/2023 | Jon W Davidson | 0.2 | Review and edit client deposition preparation questions |
| 1/17/2023 | Jon W Davidson | 0.1 | Emails with co-counsel re marking documents in production as confidential |
| 1/17/2023 | Jon W Davidson | 0.8 | Review defendants' supplemental document production for red flags for client deposition |
| 1/18/2023 | Jon W Davidson | 1.1 | Further review defendants' supplemental document production for red flags for client deposition |
| 1/23/2023 | Jon W Davidson | 0.1 | Review edits to Dr. Ettner expert report and email co-counsel |
| 1/24/2023 | Jon W Davidson | 1.3 | Work on Dr. Ettner expert report |
| 1/24/2023 | Jon W Davidson | 0.8 | Call with co-counsel re client deposition, Dr. Ettner expert report, document review, and client custody issues |
| 1/24/2023 | Jon W Davidson | 2.1 | Work on Dr. Ettner expert report |
| 1/24/2023 | Jon W Davidson | 0.3 | Email Dr. Ettner re expert report |
| 1/27/2023 | Jon W Davidson | 2.4 | Work on revised Etner expert report |
| 1/31/2023 | Jon W Davidson | 1.2 | Further work on revised expert report |
| 1/31/2023 | Jon W Davidson | 0.6 | Call with co-counsel re Ettner expert report, depositions, and document review |
| 2/1/2023 | Jon W Davidson | 0.7 | Further work on revisions to Dr. Ettner expert report |
| 2/7/2023 | Jon W Davidson | 0.2 | Review and edit 30(b)(6) notice |
| 2/7/2023 | Jon W Davidson | 0.2 | Call with co-counsel re rebuttal expert and 30(b)(6) notice |
| 2/13/2023 | Jon W Davidson | 2.5 | Review and code produced documents |
| 2/14/2023 | Jon W Davidson | 2.6 | Review and code produced documents |
| 2/25/2023 | Jon W Davidson | 0.2 | Research Rule 35 examination issues and email co-counsel |
| 2/17/2023 | Jon W Davidson | 0.4 | Call with client re Rule 35 examination |
| 2/21/2023 | Jon W Davidson | 0.6 | Call with co-counsel re Rule 35 motion and document review |
| 2/21/2023 | Jon W Davidson | 0.2 | Edit opposition to Rule 35 motion |
| 2/23/2023 | Jon W Davidson | 1 | Emails with co-counsel re Rule 35 motion and expert reports deadline |
| 2/27/2023 | Jon W Davidson | 4.1 | Review and code produced documents |
| 2/28/2023 | Jon W Davidson | 5.3 | Review and code produced documents |
| 2/28/2023 | Jon W Davidson | 0.1 | Email Dr. Ettner re interrogatories and document requests |
| 3/1/2023 | Jon W Davidson | 2.9 | Review and code produced documents |
| 3/2/2023 | Jon W Davidson | 0.6 | Call with client re case status |
| 3/3/2023 | Jon W Davidson | 2.1 | Review and code produced documents |
| 3/7/2023 | Jon W Davidson | 0.4 | Call with Dr. Ettner re discovery requests |
| 3/7/2023 | Jon W Davidson | 0.2 | Draft email to co-counsel re 30(b)(6) deposition |
| 3/7/2023 | Jon W Davidson | 0.3 | Call with opposing counsel re 30(b)(6) deposition |
| 3/7/2023 | Jon W Davidson | 0.8 | Call with co-counsel re discovery and settlement issues |
| 3/7/2023 | Jon W Davidson | 0.5 | Research Illinois law re psychometric tests and copyright issues and email Dr. Ettner and co-counsel re research |
| 3/7/2023 | Jon W Davidson | 0.2 | Add hot documents to deposition preparation document and email co-counsel regarding this |
| 3/8/2023 | Jon W Davidson | 1.6 | Review and code produced documents |
| 3/9/2023 | Jon W Davidson | 0.5 | Meet with co-counsel re 30(b)(6) depositions |
| 3/9/2023 | Jon W Davidson | 4 | Review and code produced documents |
| 3/10/2023 | Jon W Davidson | 0.5 | Review newly produced documents and email co-counsel re them |
| 3//14/23 | Jon W Davidson | 1 | Emails and call with co-counsel re depositions and discovery deficiencies |
| 3/15/2023 | Jon W Davidson | 0.1 | Emails with Dr. Ettner re her availability for deposition |
| 3/16/2023 | Jon W Davidson | 0.1 | Review summary judgment motion |
| 3/17/2023 | Jon W Davidson | 2.2 | Draft responses to first set of interrogatories and second set of document requests |
| 3/21/2023 | Jon W Davidson | 0.6 | Call with client re case developments |
| 3/21/2023 | Jon W Davidson | 0.9 | Call with co-counsel re discovery issues |
| 3/21/2023 | Jon W Davidson | 1.1 | Draft and edit responses to first set of interrogatories and second set of document requests |
| 3/22/2023 | Jon W Davidson | 0.1 | Email co-counsel re updating initial disclosures |
| 3/22/2023 | Jon W Davidson | 0.2 | Review and edit supplemental disclosures |
| 3/22/2023 | Jon W Davidson | 0.1 | Email co-counsel re deposition scheduling |

| | | | |
|---|---|---|---|
| 3/23/2023 | Jon W Davidson | 0.3 | Compile Dr. Ettner invoices and expert engagement letter and email to Jaclyn Maffetore |
| 3/27/2023 | Jon W Davidson | 0.5 | Finalize responses to first set of interrogatories and second set of document requests |
| 3/27/2023 | Jon W Davidson | 0.2 | Review documents to be produced re confidentiality designations |
| 3/28/2023 | Jon W Davidson | 1 | Call with co-counsel re discovery issues |
| 3/28/2023 | Jon W Davidson | 0.1 | Emails with Dr. Ettner re her availability for deposition |
| 3/29/2023 | Jon W Davidson | 2.2 | Research issues re production of psychometric tests and email Dr. Ettner re this |
| 3/29/2023 | Jon W Davidson | 0.5 | Emails with co-counsel re deposition outlines, settlement conference, and meet and confer letter |
| 3/29/2023 | Jon W Davidson | 0.8 | Research rules re personal attendance at mediation and email counsel re this |
| 3/29/2023 | Jon W Davidson | 1.7 | Further research issues re production of psychometric tests |
| 3/20/2023 | Jon W Davidson | 0.5 | Emails re responses to defendants' counsel re discovery issues and re production of psychometric tests |
| 4/3/2023 | Jon W Davidson | 1.2 | Prepare for and participate in call with Dr. Ettner and Jaclyn Maffetore |
| 4/4/2023 | Jon W Davidson | 0.1 | Call with co-counsel re meet and confer meeting |
| 4/4/2023 | Jon W Davidson | 0.1 | Email opposing counsel re meet and confer meeting |
| 4/4/2023 | Jon W Davidson | 0.2 | Call with co-counsel re meet and confer meeting |
| 4/4/2023 | Jon W Davidson | 0.5 | Email co-counsel re Dr. Peiper 30(b)(6) deposition |
| 4/4/2023 | Jon W Davidson | 0.1 | Meet and confer re psychometric test forms |
| 4/4/2023 | Jon W Davidson | 0.1 | Draft email to opposing counsel meet and confer position and proposal and email co-counsel re reviewing it |
| 4/5/2023 | Jon W Davidson | 0.2 | Review discovery deficiency letter and email co-counsel re it |
| 4/5/2023 | Jon W Davidson | 0.9 | Draft response to opposing counsel re discovery deficiency and email with co-counsel regarding it |
| 4/5/2023 | Jon W Davidson | 0.2 | Draft supplemental response to second set of document production requests |
| 4/12/2023 | Jon W Davidson | 0.5 | Email co-counsel re case management issues |
| 4/12/2023 | Jon W Davidson | 0.5 | Research responsibility for payment of deposition travel costs and email co-counsel re research |
| 4/13/2023 | Jon W Davidson | 0.3 | Call with DOJ attorney re potential statement of interest |
| 4/13/2023 | Jon W Davidson | 0.7 | Call with co-counsel re upcoming depositions and outstanding discovery issues |
| 4/14/2023 | Jon W Davidson | 0.4 | Emails and calls with co-counsel re Dr. Campbell deposition |
| 4/19/2023 | Jon W Davidson | 0.3 | Edit second request for production of documents and email co-counsel re it |
| 4/20/2023 | Jon W Davidson | 2.8 | Work on declaration of Dr. Figler and review supporting documents |
| 4/20/2023 | Jon W Davidson | 1 | Call with co-counsel re discovery issues |
| 4/20/2023 | Jon W Davidson | 1.2 | Draft outline for Dr. Peiper individual deposition |
| 4/20.23 | Jon W Davidson | 0.5 | Emails and call with attorney Ace Factor re Dr. Penn |
| 4/21/2023 | Jon W Davidson | 0.1 | Email National Prison Project attorney re Dr. Penn |
| 4/24/2023 | Jon W Davidson | 0.2 | Review and edit draft Caraccio declaration and email co-counsel re it |
| 4/26/2023 | Jon W Davidson | 0.1 | Draft notice of Dr. Peiper individual deposition |
| 4/27/2023 | Jon W Davidson | 0.8 | Call with client re case status |
| 4/27/2023 | Jon W Davidson | 0.4 | Call with co-counsel re discovery issues |
| 4/27/2023 | Jon W Davidson | 7.2 | Further draft outline for Dr. Peiper individual deposition and collect documents for it |
| 5/1/2023 | Jon W Davidson | 5 | Take Dr. Peiper individual deposition |
| 5/2/2023 | Jon W Davidson | 1 | Call with co-counsel re outstanding discovery issues |
| 5/2/2023 | Jon W Davidson | 1.3 | Review documents to potentially use at Dr. Junker deposition and email co-counsel re them |
| 5/5/2023 | Jon W Davidson | 0.5 | Call with client re litigation update |
| 5/5/2023 | Jon W Davidson | 0.1 | Email opposing counsel re responding to proposed modifications to case management schedule |
| 5/9/2023 | Jon W Davidson | 0.8 | Call with co-counsel re depositions and third party witness issues |
| 5/10/2023 | Jon W Davidson | 0.5 | Research 8th Amendment application to community placements |
| 5/10/2023 | Jon W Davidson | 2.6 | Draft outline for Dr. Sheitman deposition |
| 5/10/2023 | Jon W Davidson | 0.1 | Draft notice of Dr. Sheitman deposition |
| 5/11/2023 | Jon W Davidson | 0.1 | Email opposing counsel with notice of Dr. Sheiman deposition |
| 5/11/2023 | Jon W Davidson | 0.2 | Research information re Emmerita Foster |
| 5/12/2023 | Jon W Davidson | 4.8 | Further draft outline for Dr. Sheitman deposition |
| 5/12/2023 | Jon W Davidson | 0.6 | Review court order modifying deadlines and compare to previous orders and email co-counsel re this |
| 5/14/2023 | Jon W Davidson | 0.2 | Prepare list of exhibits for Dr. Sheitman deposition |
| 5/15/2023 | Jon W Davidson | 1.3 | Emails with co-counsel re depositing Marvella Boman, UNCH documents, Catlett deposition, and discovery extension |
| 5/15/2023 | Jon W Davidson | 0.1 | Call with Jennifer Dula and call with co-counsel re it |
| 5/16/2023 | Jon W Davidson | 0.8 | Email co-counsel re Bowman deposition and discovery cutoff |
| 5/16/2023 | Jon W Davidson | 0.9 | Call with co-counsel re discovery issues |
| 5/16/2023 | Jon W Davidson | 0.2 | Draft email to opposing counsel re discovery deadline and Bowman deposition |
| 5/17/2023 | Jon W Davidson | 0.5 | Prepare for deposition of Dr. Sheiman |
| 5/17/2023 | Jon W Davidson | 5.2 | Take deposition of Dr. Sheitman |
| 5/31/2023 | Jon W Davidson | 0.2 | Work on Dula Declaration |
| 6/1/2023 | Jon W Davidson | 0.2 | Review and respond to emails with co-counsel re defendants' counteroffer re discovery |
| 6/1/2023 | Jon W Davidson | 0.2 | Review second supplemental productions and emails with co-counsel re them |
| 6/4/2023 | Jon W Davidson | 0.9 | Review Peiper individual deposition transcript and email co-counsel re confidentiality designations |
| 6/5/2023 | Jon W Davidson | 1.2 | Review Dula documents and work on Dula declaration |
| 6/6/2023 | Jon W Davidson | 0.7 | Edit Dula declaration |
| 6/6/2023 | Jon W Davidson | 1 | Meet with co-counsel re outstanding tasks |
| 6/7/2023 | Jon W Davidson | 0.2 | Review Clark v. Quiros mediation brief and send to co-counsel |
| 6/7/2023 | Jon W Davidson | 0.1 | Review magistrate's ruling on Rule 35 motion |
| 6/13/2023 | Jon W Davidson | 0.5 | Call with co-counsel re outstanding tasks |

| | | | |
|---|---|---|---|
| 6/14/2023 | Jon W Davidson | 0.3 | Revise draft Dula declaration |
| 6/15/2023 | Jon W Davidson | 0.1 | Email Dr. Ettner re deposition availability |
| 6/16/2023 | Jon W Davidson | 0.5 | Review Dr. Sheitman deposition re confidentiality designations |
| 6/20/2023 | Jon W Davidson | 0.4 | Call with co-counsel re outstanding tasks |
| 6/21/2023 | Jon W Davidson | 0.1 | Email opposing counsel with confidentiality designations for Dr. Sheitman deposition transcript |
| 6/27/2023 | Jon W Davidson | 1 | Call with client re litigation update |
| 6/27/2023 | Jon W Davidson | 1.1 | Call with co-counsel re outstanding tasks |
| 6/27/2023 | Jon W Davidson | 0.1 | Email Jennifer Dula re review of her declaration |
| 6/28/2023 | Jon W Davidson | 0.3 | Review settlements in other transgender prisoner cases and email co-counsel re them |
| 7/9/2023 | Jon W Davidson | 2.2 | Review defendants' expert reports and prepare for call with Dr. Ettner |
| 7/10/2023 | Jon W Davidson | 0.8 | Call with Dr. Ettner re rebuttal expert report |
| 7/11/2023 | Jon W Davidson | 0.1 | Emails with co-counsel re rebuttal experts |
| 7/11.23 | Jon W Davidson | 1 | Call with co-counsel re rebuttal experts, Ettner declaration, and other upcoming tasks |
| 7/11/2023 | Jon W Davidson | 0.5 | Call with Dr. Ettner re rebuttal declaration |
| 7/11/2023 | Jon W Davidson | 0.1 | Emails with opposing counsel with Dr. Ettner deposition |
| 7/11`/23 | Jon W Davidson | 0.4 | Call with Jennifer Dula re declaration |
| 7/12/2023 | Jon W Davidson | 0.8 | Review defendants' expert reports and analyze topics to be addressed in rebuttal |
| 7/13/2023 | Jon W Davidson | 1.5 | Further review defendants' expert reports and further analyze topics to be addressed in rebuttal |
| 7/13/2023 | Jon W Davidson | 0.1 | Email Dr. Ettner re her rebuttal declaration |
| 7/18/2023 | Jon W Davidson | 1.4 | Work on Dr. Ettner rebuttal declaration based on her draft |
| 7/18/2023 | Jon W Davidson | 0.8 | Call with co-counsel re upcoming tasks |
| 7/19/2023 | Jon W Davidson | 0.1 | Draft Dr. Antommaria expert engagement letter |
| 7/20/2023 | Jon W Davidson | 0.7 | Edit Dr. Ettner expert rebuttal report draft and email her |
| 7/23/2023 | Jon W Davidson | 0.8 | Revise Dr. Ettner expert rebuttal based on her email |
| 7/26/2023 | Jon W Davidson | 0.7 | Further revise Dr. Ettner expert rebuttal report |
| 8/1/2023 | Jon W Davidson | 0.9 | Call with co-counsel re next steps |
| 8/2/2023 | Jon W Davidson | 0.6 | Call with client re potential settlement |
| 8/10/2023 | Jon W Davidson | 0.1 | Emails with co-counsel re defendants' proposal to postpone trial date |
| 8/14/2023 | Jon W Davidson | 1.2 | Prepare for deposition preparation session with Dr. Ettner |
| 8/15/2023 | Jon W Davidson | 2.6 | Further prepare for deposition preparation session with Dr. Ettner |
| 8/16/2023 | Jon W Davidson | 2.1 | Call with Dr. Ettner to prepare her for her deposition |
| 8/17/2023 | Jon W Davidson | 2.4 | Call with Dr. Ettner to further prepare her for her deposition |
| 8/20/2023 | Jon W Davidson | 6.7 | Travel to Chicago for Dr. Ettner deposition |
| 8/21/2023 | Jon W Davidson | 6.6 | Defend deposition of Dr. Ettner |
| 8/22/2023 | Jon W Davidson | 8.3 | Travel back to Los Angeles from Dr. Ettner deposition |
| 8/23/2023 | Jon W Davidson | 0.5 | Call with client re litigation updates |
| 8/23/2023 | Jon W Davidson | 1 | Call with co-counsel re case status and upcoming tasks |
| 8/24/2023 | Jon W Davidson | 0.9 | Work on Croft declaration |
| 8/25/2023 | Jon W Davidson | 0.8 | Further work on Croft declaration |
| 8/28/2023 | Jon W Davidson | 0.4 | Call with co-counsel re upcoming tasks |
| 9/5/2023 | Jon W Davidson | 0.3 | Incorporate edits to Croft declaration |
| 9/7/2023 | Jon W Davidson | 0.2 | Edit revised Dr. Figler declaration |
| 9/7/2023 | Jon W Davidson | 0.2 | Edit revised Dr. Caraccio declaration |
| 9/12/2023 | Jon W Davidson | 0.8 | Call with co-counsel re summary judgment motion and trial |
| 9/12/2023 | Jon W Davidson | 0.2 | Research issues re partial summary judgment and email co-counsel re that |
| 9/14/2023 | Jon W Davidson | 0.5 | Review Dr. Ettner deposition transcript for confidentiality designations |
| 9/14/2023 | Jon W Davidson | 0.5 | Call with client re litigation developments |
| 9/14/2023 | Jon W Davidson | 0.2 | Draft joint motion for extension of summary judgment page limits |
| 9/14/2023 | Jon W Davidson | 0.2 | Prepare Dr. Ettner errata sheet and emails with Dr. Ettner |
| 9/15/2023 | Jon W Davidson | 1.7 | Review Dr. Peiper deposition for summary judgment motion support |
| 9/15/2023 | Jon W Davidson | 0.2 | Research issues re payment of expert witnesses and email co-counsel re that |
| 9/19/2023 | Jon W Davidson | 1.5 | Further review Dr. Peiper deposition for summary judgment motion support |
| 9/19/2023 | Jon W Davidson | 2.1 | Review Dr. Sheitman deposition for summary judgment motion support |
| 9/20/2023 | Jon W Davidson | 1.4 | Further review Dr. Sheitman deposition for summary judgment motion support |
| 9/26/2023 | Jon W Davidson | 0.1 | Review protection order and local rules re filing under seal and email co-counsel re these |
| 9/27/2023 | Jon W Davidson | 1.5 | Draft second client declaration |
| 9/27/2023 | Jon W Davidson | 1.5 | Edit brief in support of motion for partial summary judgment |
| 9/28/2023 | Jon W Davidson | 0.2 | Edit second client declaration |
| 9/28/2023 | Jon W Davidson | 1 | Call with co-counsel re motion for partial summary judgment |
| 9/28/2023 | Jon W Davidson | 0.8 | Review expert reports and depositions for necessary redactions |
| 9/28/2023 | Jon W Davidson | 1.3 | Prepare list of deposition references from Drs. Peiper and Sheitman depositions for motion for partial summary judgment |
| 9/3/2023 | Jon W Davidson | 2.7 | Edit brief in support motion for partial summary judgment |
| 10/2/2023 | Jon W Davidson | 1.9 | Further edit brief in support of motion for summary judgment |
| 10/2/2023 | Jon W Davidson | 0.6 | Call with client re second declaration |
| 10/3/2023 | Jon W Davidson | 2.5 | Review confidential documents defendants want to cite for necessary redaction |
| 10/4/2023 | Jon W Davidson | 1.1 | Further edit brief in support of motion for partial summary judgment |

| | | | |
|---|---|---|---|
| 10/4/2023 | Jon W Davidson | 1 | Cite check documents re facts relied on in brief in support of motion for partial summary judgment |
| 10/10/2023 | Jon W Davidson | 0.5 | Review and analyze defendants' motion for summary judgment |
| 10/10/2023 | Jon W Davidson | 0.5 | Call with co-counsel re opposition to defendants' motion for summary judgment |
| 10/10/2023 | Jon W Davidson | 2.4 | Research "low-quality" evidence issues and draft memo to co-counsel re those |
| 10/16/2023 | Jon W Davidson | 1.9 | Edit opposition to defendants' motion for summary judgment |
| 10/19/2023 | Jon W Davidson | 0.6 | Eidt further revised opposition to defendant's motion for summary judgment |
| 10/19/2023 | Jon W Davidson | 0.7 | Review and analyze defendants' opposition to plaintiff's motion for partial summary judgment |
| 10/20/2023 | Jon W Davidson | 0.5 | Further analyze defendants' opposition to plaintiff's motion for partial summary judgment |
| 10/24/2023 | Jon W Davidson | 0.4 | Edit revised reply to opposition to plaintiff's motion for partial summary judgment |
| 10/25/2023 | Jon W Davidson | 0.7 | Cite-check reply to opposition to reply to opposition to plaintiff's motion for partial summary judgment |
| 11/6/2023 | Jon W Davidson | 2.2 | Prepare questions for moot of summary judgment motions argument |
| 11/7/2023 | Jon W Davidson | 1.2 | Moot argument of summary judgment motions |
| 11/30/2023 | Jon W Davidson | 0.7 | Call with client re litigation status |
| 2/2/2024 | Jon W Davidson | 0.1 | Review court order re summary judgment motions and evidentiary hearing |
| 2/2/2024 | Jon W Davidson | 0.6 | Call with co-counsel re evidentiary hearing |
| 2/2/2024 | Jon W Davidson | 0.2 | Review Dr. Ettner deposition and expert reports in preparation for evidentiary hearing |
| 2/3/2024 | Jon W Davidson | 0.7 | Email co-counsel re Ettner testimony for evidentiary hearing |
| 2/3/2024 | Jon W Davidson | 1.6 | Prepare for call with Dr. Ettner re evidentiary hearing testimony |
| 2/5/2024 | Jon W Davidson | 1.2 | Call with Dr. Ettner re draft declaration regarding remote testimony |
| 2/5/2024 | Jon W Davidson | 0.5 | Call with co-counsel re medical necessity issues |
| 2/5/2023 | Jon W Davidson | 0.5 | Review WPATH SOC 7 and email co-counsel re medical necessity issues |
| 2/5/2023 | Jon W Davidson | 1.3 | Further review WPATH SOC 7 and email co-counsel with helpful quotes |
| 2/6/2023 | Jon W Davidson | 1.1 | Call with co-counsel re evidentiary tasks |
| 2/6/2023 | Jon W Davidson | 1.5 | Review WPATH materials re testimony of Dr. Ettner at evidentiary hearing |
| 2/7/2023 | Jon W Davidson | 2.2 | Prepare questions for Dr. Ettner direct testimony at evidentiary hearing |
| 2/8/2023 | Jon W Davidson | 0.3 | Edit motion to permit remote testimony of Dr. Ettner and memo in support |
| 2/8/2024 | Jon W Davidson | 0.4 | Call with opposing counsel re evidentiary hearing logistics |
| 2/8/2024 | Jon W Davidson | 0.4 | Call with co-counsel re evidentiary hearing and potential settlement |
| 2/8/2024 | Jon W Davidson | 0.2 | Call with client re evidentiary hearing and potential settlement |
| 2/8/2024 | Jon W Davidson | 0.5 | Review Peiper and Junker depositions re case summary |
| 2/8/2024 | Jon W Davidson | 0.5 | Call with co-counsel re defendants' proposal re evidentiary hearing |
| 2/8/2024 | Jon W Davidson | 0.2 | Email co-counsel re admissions in testimony of Dr. Peiper |
| 2/8/2024 | Jon W Davidson | 2.6 | Prepare questions for Dr. Ettner direct at evidentiary hearing |
| 2/9/2024 | Jon W Davidson | 0.1 | Emails with Dr. Ettner re remote testimony at evidentiary hearing |
| 2/9/2024 | Jon W Davidson | 2.8 | Prepare further questions for Dr. Ettner direct at evidentiary hearing |
| 2/10/2024 | Jon W Davidson | 2 | Prepare direct examination of Dr. Ettner for evidentiary hearing |
| 2/11/2024 | Jon W Davidson | 2.9 | Further prepare direct examination of Dr. Ettner for evidentiary hearing |
| 2/13/2024 | Jon W Davidson | 1.1 | Revise Dr. Ettner direct testimony questions for evidentiary hearing |
| 2/13/2024 | Jon W Davidson | 1.2 | Call with co-counsel re evidentiary hearing issues |
| 2/14/2024 | Jon W Davidson | 0.9 | Prepare for evidentiary hearing preparation session with Dr. Ettner |
| 2/14/2024 | Jon W Davidson | 2 | Call with Dr. Ettner to prepare for evidentiary hearing |
| 2/14/2024 | Jon W Davidson | 0.8 | Review Edmo transcript in preparation for evidentiary hearing |
| 2/14/2024 | Jon W Davidson | 2.5 | Revise direct examination questions for evidentiary hearing |
| 2/15/2024 | Jon W Davidson | 4.1 | Draft potential cross-examination questions for preparation session with Dr. Ettner |
| 2/16/2024 | Jon W Davidson | 0.5 | Prepare for cross preparation for Dr. Ettner |
| 2/16/2024 | Jon W Davidson | 2.8 | Call with Dr. Ettner and co-counsel re direct and cross-examination at evidentiary hearing |
| 2/16/2024 | Jon W Davidson | 1.9 | Prepare for evidentiary hearing |
| 2/17/2024 | Jon W Davidson | 0.7 | Call with co-counsel re evidentiary hearing |
| 2/17/2024 | Jon W Davidson | 3.4 | Review defendants' compilation of medical records to prepare Dr. Ettner and note necessary redactions |
| 2/18/2024 | Jon W Davidson | 1.5 | Call with Dr. Ettner re evidentiary hearing testimony |
| 2/18/2024 | Jon W Davidson | 3.8 | Prepare for evidentiary hearing, draft timeline, and email co-counsel |
| 2/19/2024 | Jon W Davidson | 9.5 | Travel to Charlotte for evidentiary hearing |
| 2/20/2024 | Jon W Davidson | 2 | Go to courthouse and test technology for remote testimony |
| 2/20/2024 | Jon W Davidson | 1.2 | Meet with co-counsel for final preparation for evidentiary hearing |
| 2/20/2024 | Jon W Davidson | 4 | Attend evidentiary hearing and conduct direct examination and respond to cross-examination at it |
| 2/21/2024 | Jon W Davidson | 9 | Travel to Los Angeles after evidentiary hearing |
| 2/28/2024 | Jon W Davidson | 1.4 | Edit brief in support or renewed motion for summary judgment |
| 2/29/2024 | Jon W Davidson | 0.4 | Cite check renewed motion for summary judgment |
| 3/21/2024 | Jon W Davidson | 0.6 | Review and analyze defendants' opposition to plaintiff's motion for summary judgment and defendants' motion for summary judgment |
| 3/22/2024 | Jon W Davidson | 0.4 | Call with co-counsel re reply to opposition to plaintiff's motion for summary judgment and settlement issues |
| 3/22/2024 | Jon W Davidson | 0.8 | Draft email to co-counsel re reply to opposition to plaintiff's motion for summary judgment |
| 3/25/2024 | Jon W Davidson | 0.7 | Edit reply to opposition to plaintiff's motion for summary judgment |
| 4/1/2024 | Jon W Davidson | 0.2 | Edit revised opposition to defendants' renewed motion for summary judgment |
| 4/16/2024 | Jon W Davidson | 0.4 | Review summary judgment order and email co-counsel |
| 4/17/2024 | Jon W Davidson | 0.7 | Call with client re summary judgment order |
| 4/18/2024 | Jon W Davidson | 0.5 | Call with co-counsel re summary judgment order |

| | | | |
|---|---|---|---|
| 5/16/2024 | Jon W Davidson | 0.5 | Review defendants' motion for stay and email co-counsel re opposition |
| 5/28/2024 | Jon W Davidson | 0.5 | Emails re notice of appearance and prepare and file notice of appearance |
| 5/28/2024 | Jon W Davidson | 0.2 | Call with co-counsel re appeal |
| 5/31/2024 | Jon W Davidson | 0.7 | Review defendants' reply to opposition motion for stay and email co-counsel |
| 6/4/2024 | Jon W Davidson | 0.6 | Call with co-counsel re stay motion and appeal |
| 6/6/2024 | Jon W Davidson | 0.8 | Research re motion to vacate stay |
| 6/14/2024 | Jon W Davidson | 0.2 | Edit motion to vacate stay |
| 6/17/2024 | Jon W Davidson | 0.3 | Edit revised motion to stay |
| 7/3/2024 | Jon W Davidson | 0.2 | Edite draft of opposition to defendants' motion to extend opening brief deadline |
| 7/10/2024 | Jon W Davidson | 0.4 | Research and emails re mandamus |
| 7/16/2024 | Jon W Davidson | 1 | Call with client re litigation developments |
| 7/16/2024 | Jon W Davidson | 0.9 | Call with co-counsel re stay pending appeal, appellate briefing, and necessary research |
| 7/17/2024 | Jon W Davidson | 0.1 | Call Fourth Circuit clerk re opposition to stay and temporary stay motion |
| 7/19/2024 | Jon W Davidson | 0.2 | Edit opposition to stay motion |
| 7/20/2024 | Jon W Davidson | 0.2 | Edit revised opposition to stay motion |
| 7/21/2024 | Jon W Davidson | 0.2 | Edit further revised opposition to stay motion |
| 7/24/2024 | Jon W Davidson | 0.1 | Emails with co-counsel re joint appendix |
| 7/26/2024 | Jon W Davidson | 2 | Review Fourth Circuit order denying stay and emails with co-counsel re it |
| 7/29/2024 | Jon W Davidson | 0.6 | Review and edits response to defendants' proposal for compliance with injunction |
| 7/30/2024 | Jon W Davidson | 1.3 | Review defendants' Fourth Circuit brief and analyze opposing arguments |
| 7/30/2024 | Jon W Davidson | 0.8 | Meet with co-counsel re response to defendants' Fourth Circuit Brief |
| 8/1/2024 | Jon W Davidson | 0.3 | Call with client re appeal |
| 8/5/2024 | Jon W Davidson | 0.8 | Research issues re appealability of denial of summary judgment as part of appeal of grant to other party of summary judgment and email co-counsel re research |
| 8/13/2024 | Jon W Davidson | 0.2 | Call with co-counsel re Fourth Circuit brief |
| 8/14/2024 | Jon W Davidson | 1.3 | Edit Fourth Circuit brief |
| 8/15/2024 | Jon W Davidson | 2.9 | Research issues raised in Fourth Circuit brief and further edit it |
| 8/20/2024 | Jon W Davidson | 1.2 | Edit revised Fourth Circuit brief |
| 8/21/2024 | Jon W Davidson | 1.6 | Cite check Fourth Circuit brief |
| 9/22/2024 | Jon W Davidson | 0.5 | Call with client re appeal |
| 9/10/2024 | Jon W Davidson | 0.4 | Call with co-counsel re Fourth Circuit argument and potential mootness |
| 9/16/2024 | Jon W Davidson | 0.2 | Review defendants' Fourth Circuit reply brief |
| 10/22/2024 | Jon W Davidson | 0.2 | Call with co-counsel re motion to dismiss appeal as moot |
| 10/30/2024 | Jon W Davidson | 0.3 | Edit motion to dismiss appeal |
| 10/31/2024 | Jon W Davidson | 1.1 | Research vacatur and email co-counsel re research |
| 11/4/2024 | Jon W Davidson | 0.1 | Review Fourth Circuit order re supplemental briefing re mootness |
| 11/6/2024 | Jon W Davidson | 0.2 | Review defendants' notice of compliance with injunction and report of Drs. Renberg and Simopoulis and email co-counsel re non-compliance |
| 11/7/2024 | Jon W Davidson | 0.6 | Call with co-counsel re response to defendants' notice of compliance with injunction |
| 11/7/2024 | Jon W Davidson | 0.7 | Further research vacatur and email co-counsel re research |
| 11/11/2024 | Jon W Davidson | 2.3 | Research and draft section of Fourth Circuit brief re vacatur |
| 11/14/2024 | Jon W Davidson | 0.1 | Edit Fourth Circuit brief re mootness and vacatur |
| 11/18/2024 | Jon W Davidson | 0.5 | Cite check Fourth Circuit brief re mootness and vacatur |
| 11/20/2024 | Jon W Davidson | 0.2 | Review and edit response to defendants' notice of compliance with injunction |
| 11/26/2024 | Jon W Davidson | 0.1 | Review order re dismissal of appeal |
| 6/29/2025 | Jon W Davidson | 2.8 | Compile time for fee motion |
| 7/14/2025 | Jon W Davidson | 1.8 | Draft declaration in support of fee motion |
| 7/14/2025 | Jon W Davidson | 0.3 | Edit brief in support of fee motion |
| 7/17/2025 | Jon W Davidson | 0.1 | Edit draft declaration in support of fee motion |

**Total hours:** **364.3**

# ATTACHMENT 1 - Timesheet for Jaclyn Maffetore

| fname | lname | local_date | hours | notes |
|---|---|---|---|---|
| Jaclyn | Maffetore | 1/4/2022 | 0.2 | email to litigation team re: factual updates from client, call agenda |
| Jaclyn | Maffetore | 1/4/2022 | 0.4 | litigation team call re: case opening |
| Jaclyn | Maffetore | 1/18/2022 | 1 | litigation team call re: case opening |
| Jaclyn | Maffetore | 1/21/2022 | 0.9 | legal call w/ client |
| Jaclyn | Maffetore | 1/24/2022 | 0.4 | conf/email to secure legal mail |
| Jaclyn | Maffetore | 1/24/2022 | 0.6 | reviewing expert declaration shell |
| Jaclyn | Maffetore | 1/25/2022 | 1.1 | litigation team call re: case opening |
| Jaclyn | Maffetore | 1/25/2022 | 2.7 | reviewing co-counsel edits to draft complaint, conf w/ DS re: same |
| Jaclyn | Maffetore | 2/8/2022 | 0.9 | litigation team call + internal conf |
| Jaclyn | Maffetore | 2/15/2022 | 2 | editing complaint |
| Jaclyn | Maffetore | 2/17/2022 | 0.5 | litigation team call re: case opening |
| Jaclyn | Maffetore | 2/21/2022 | 4.9 | editing complaint |
| Jaclyn | Maffetore | 2/23/2022 | 1.1 | litigation team call re: case opening |
| Jaclyn | Maffetore | 2/24/2022 | 0.5 | call w/ expert witness |
| Jaclyn | Maffetore | 2/24/2022 | 0.5 | reviewing/finalizing complaint edits and circulating draft to team |
| Jaclyn | Maffetore | 3/1/2022 | 0.5 | litigation team call |
| Jaclyn | Maffetore | 3/3/2022 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 3/8/2022 | 0.9 | litigation team call re: case opening |
| Jaclyn | Maffetore | 3/16/2022 | 1.2 | compiling resources for draft declaration; drafting declaration |
| Jaclyn | Maffetore | 3/17/2022 | 2.2 | drafting client declaration |
| Jaclyn | Maffetore | 3/18/2022 | 5.2 | drafting client declaration |
| Jaclyn | Maffetore | 3/22/2022 | 1 | lit team call |
| Jaclyn | Maffetore | 3/24/2022 | 1 | editing declaration |
| Jaclyn | Maffetore | 3/25/2022 | 0.2 | email to team re: next steps in light of Ettner visitation request denial |
| Jaclyn | Maffetore | 3/28/2022 | 0.7 | editing declaration/prepping for legal call w/ client |
| Jaclyn | Maffetore | 3/29/2022 | 0.6 | litigation team call |
| Jaclyn | Maffetore | 3/29/2022 | 1.3 | editing complaint |
| Jaclyn | Maffetore | 3/30/2022 | 0.3 | emails w/ expert witness re: next steps in light of visitation denial |
| Jaclyn | Maffetore | 4/4/2022 | 2.8 | editing complaint |
| Jaclyn | Maffetore | 4/5/2022 | 3.4 | editing complaint |
| Jaclyn | Maffetore | 4/11/2022 | 0.9 | reviewing complaint edits |
| Jaclyn | Maffetore | 4/12/2022 | 0.5 | legal call w/ client Kanautica Zayre-Brown |
| Jaclyn | Maffetore | 4/12/2022 | 1.1 | litigation team call re: unresolved complaint issues, case opening |
| Jaclyn | Maffetore | 4/15/2022 | 2.6 | editing complaint |
| Jaclyn | Maffetore | 4/19/2022 | 1.1 | Litigation team call |
| Jaclyn | Maffetore | 4/19/2022 | 1.2 | reviewing/incorporating complaint edits |
| Jaclyn | Maffetore | 4/22/2022 | 0.2 | drafting complaint verification; emailing same to team |
| Jaclyn | Maffetore | 4/22/2022 | 0.2 | conf w/ DS, MD re: complaint verification |
| Jaclyn | Maffetore | 4/22/2022 | 0.3 | incorporating complaint edits; emailing same to team |
| Jaclyn | Maffetore | 4/25/2022 | 0.9 | finalizing and printing documents for client review and signature |
| Jaclyn | Maffetore | 4/25/2022 | 1.7 | visit with Kanautica Zayre-Brown to review/verify documents |
| Jaclyn | Maffetore | 4/25/2022 | 4.7 | travel to/from Anson CI |
| Jaclyn | Maffetore | 4/26/2022 | 0.2 | research re: medical records |
| Jaclyn | Maffetore | 4/26/2022 | 0.2 | call w/ DS re: next steps in light of denial of surgery |
| Jaclyn | Maffetore | 4/26/2022 | 0.4 | emails w/ legal team re: immediate next steps in light of formal denial of surgery |
| Jaclyn | Maffetore | 4/26/2022 | 0.4 | drafting/emailing expedited request for medical records |
| Jaclyn | Maffetore | 4/26/2022 | 0.5 | research re: local rules; summonses/waiver of service |
| Jaclyn | Maffetore | 4/26/2022 | 1.5 | editing complaint |
| Jaclyn | Maffetore | 4/28/2022 | 0.3 | finalizing complaint for filing |
| Jaclyn | Maffetore | 4/28/2022 | 0.7 | preparing and emailing request for waiver, complaint, and partially completed waivers to defendants' counsel |
| Jaclyn | Maffetore | 4/28/2022 | 0.9 | filing complaint |
| Jaclyn | Maffetore | 4/28/2022 | 1 | finalizing and submitting summonses |
| Jaclyn | Maffetore | 4/29/2022 | 0.2 | filing waivers of service |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 4/29/2022 | 0.6 | internal confs, emails re: scheduling evaluation with expert |
| Jaclyn | Maffetore | 4/29/2022 | 0.7 | drafting letter to client; email to team re: same |
| Jaclyn | Maffetore | 5/10/2022 | 0.6 | KZB lit team call |
| Jaclyn | Maffetore | 5/19/2022 | 1 | legal call w/ Kanautica + internal huddle |
| Jaclyn | Maffetore | 5/23/2022 | 2.7 | editing declaration |
| Jaclyn | Maffetore | 5/25/2022 | 3.2 | navigating security + client visit at Anson CI |
| Jaclyn | Maffetore | 5/25/2022 | 6.8 | travel from Raleigh to CLT airport to pick up expert, from CLT airport to Anson CI, and back. |
| Jaclyn | Maffetore | 5/31/2022 | 0.9 | litigation team call |
| Jaclyn | Maffetore | 5/31/2022 | 1.8 | editing client declaration |
| Jaclyn | Maffetore | 6/1/2022 | 1.5 | editing client decl and circulating same to team |
| Jaclyn | Maffetore | 6/8/2022 | 1 | legal call w/ client |
| Jaclyn | Maffetore | 6/9/2022 | 1.3 | reviewing and processing client correspondence |
| Jaclyn | Maffetore | 6/13/2022 | 0.5 | legal team call |
| Jaclyn | Maffetore | 6/14/2022 | 2.2 | editing expert declaration |
| Jaclyn | Maffetore | 6/17/2022 | 0.2 | email to opposing counsel re: ongoing issues |
| Jaclyn | Maffetore | 6/18/2022 | 3.1 | editing client declaration |
| Jaclyn | Maffetore | 6/21/2022 | 0.3 | finalizing KZB declaration and circulating to team |
| Jaclyn | Maffetore | 6/21/2022 | 0.7 | team call |
| Jaclyn | Maffetore | 6/21/2022 | 1 | legal call w/ KZB |
| Jaclyn | Maffetore | 6/22/2022 | 0.5 | preparing for meeting with client |
| Jaclyn | Maffetore | 6/22/2022 | 1.5 | meeting with client |
| Jaclyn | Maffetore | 6/22/2022 | 4.5 | travel to/from Anson CI for client visit |
| Jaclyn | Maffetore | 6/24/2022 | 0.2 | finalizing KZB declaration |
| Jaclyn | Maffetore | 6/24/2022 | 0.7 | reviewing defs' motion to dismiss brief |
| Jaclyn | Maffetore | 6/24/2022 | 1.4 | editing Ettner declaration |
| Jaclyn | Maffetore | 6/27/2022 | 1.8 | finalizing Ettner declaration; compiling + redacting appendices |
| Jaclyn | Maffetore | 6/28/2022 | 0.4 | litigation team call |
| Jaclyn | Maffetore | 6/29/2022 | 0.2 | drafting letter to client |
| Jaclyn | Maffetore | 6/29/2022 | 1.8 | reviewing and analyzing defts MTD |
| Jaclyn | Maffetore | 6/30/2022 | 3.9 | planning/drafting MTD facts section |
| Jaclyn | Maffetore | 7/1/2022 | 0.3 | reviewing draft + emails w/ opposing counsel re: request for extension |
| Jaclyn | Maffetore | 7/1/2022 | 3.5 | drafting MTD facts section |
| Jaclyn | Maffetore | 7/5/2022 | 3.9 | editing MTD response draft |
| Jaclyn | Maffetore | 7/12/2022 | 1.1 | editing motion to dismiss response brief |
| Jaclyn | Maffetore | 7/15/2022 | 0.8 | finalizing/filing MTD |
| Jaclyn | Maffetore | 7/19/2022 | 0.4 | litigation team call |
| Jaclyn | Maffetore | 7/21/2022 | 0.2 | call w/ MD re: extension filing |
| Jaclyn | Maffetore | 7/21/2022 | 0.2 | editing extension motion |
| Jaclyn | Maffetore | 7/22/2022 | 0.9 | reviewing defs MTD reply |
| Jaclyn | Maffetore | 7/25/2022 | 0.7 | legal call w/ KZB and follow-up w/ team re: same |
| Jaclyn | Maffetore | 7/28/2022 | 0.5 | correcting redaction errors and preparing document for correction w/ clerk |
| Jaclyn | Maffetore | 7/29/2022 | 0.2 | finalizing corrected doc 13-1 and emailing to court |
| Jaclyn | Maffetore | 7/29/2022 | 2.2 | reviewing/editing 2nd Ettner decl |
| Jaclyn | Maffetore | 8/2/2022 | 2.1 | editing/finalizing Ettner Decl. and appendix |
| Jaclyn | Maffetore | 8/3/2022 | 0.5 | conf w/ team re: opposing counsel request to move hearing date |
| Jaclyn | Maffetore | 8/4/2022 | 0.2 | conferring re: response to opposing counsel |
| Jaclyn | Maffetore | 8/5/2022 | 0.2 | email to opposing counsel re: ongoing medical care issues |
| Jaclyn | Maffetore | 8/8/2022 | 1.5 | reviewing/analyzing MTD reply |
| Jaclyn | Maffetore | 8/9/2022 | 0.7 | litigation team call |
| Jaclyn | Maffetore | 8/9/2022 | 4.6 | planning for MTD hearing |
| Jaclyn | Maffetore | 8/10/2022 | 4.2 | reviewing cases and formulating argument outline in preparation for MTD hearing |
| Jaclyn | Maffetore | 8/11/2022 | 3.7 | reviewing cases and formulating argument outline in preparation for MTD hearing |
| Jaclyn | Maffetore | 8/12/2022 | 4.4 | reviewing cases and formulating argument outline in preparation for MTD hearing |
| Jaclyn | Maffetore | 8/15/2022 | 3.2 | reviewing cases and formulating argument outline in preparation for MTD hearing |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 8/16/2022 | 0.5 | lit team call |
| Jaclyn | Maffetore | 8/16/2022 | 1 | reviewing/analyzing newly released 4th cir case for implications on MTD |
| Jaclyn | Maffetore | 8/16/2022 | 1.5 | first hearing moot |
| Jaclyn | Maffetore | 8/16/2022 | 3.2 | finalizing MTD hearing outline and preparing for moot |
| Jaclyn | Maffetore | 8/17/2022 | 0.4 | finalizing and filing notice of subsequent authority |
| Jaclyn | Maffetore | 8/17/2022 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 8/18/2022 | 0.2 | call from Kanautica with factual updates |
| Jaclyn | Maffetore | 8/18/2022 | 0.4 | email to team re: call from Kanautica w/ factual updates and next steps |
| Jaclyn | Maffetore | 8/18/2022 | 2.8 | prepping for MTD hearing with eye toward incorporating feedback from first moot |
| Jaclyn | Maffetore | 8/19/2022 | 2 | second hearing moot |
| Jaclyn | Maffetore | 8/19/2022 | 3.6 | prepping for MTD hearing/second moot with eye toward incorporating feedback from first moot |
| Jaclyn | Maffetore | 8/20/2022 | 1.6 | revising argument outline/preparing for hearing with eye toward feedback from second moot |
| Jaclyn | Maffetore | 8/22/2022 | 1.2 | legal research in prep for hearing |
| Jaclyn | Maffetore | 8/22/2022 | 1.2 | finalizing outline for hearing |
| Jaclyn | Maffetore | 8/22/2022 | 2.2 | reviewing cases and outline in prep for hearing |
| Jaclyn | Maffetore | 8/23/2022 | 1.5 | appear/argue at MTD/PI hearing |
| Jaclyn | Maffetore | 8/23/2022 | 2.9 | traveling back from Charlotte for hearing and returning rental car |
| Jaclyn | Maffetore | 8/24/2022 | 0.3 | call w/ Kanautica to provide factual-only update re: hearing |
| Jaclyn | Maffetore | 9/1/2022 | 1 | legal call w/ client |
| Jaclyn | Maffetore | 9/6/2022 | 0.7 | litigation team call |
| Jaclyn | Maffetore | 9/23/2022 | 1 | reviewing MTD/PI decision, communications w/ team & client's husband re: same |
| Jaclyn | Maffetore | 9/27/2022 | 0.3 | coordinating w/ team re: availability to propose r. 26 f conf |
| Jaclyn | Maffetore | 9/27/2022 | 0.6 | finalizing documents to request UNC provider interviews |
| Jaclyn | Maffetore | 9/27/2022 | 1 | lit team call re: decision, discovery planning |
| Jaclyn | Maffetore | 9/27/2022 | 1 | reviewing updated client medical records |
| Jaclyn | Maffetore | 9/28/2022 | 0.2 | email re: interview request for UNC providers |
| Jaclyn | Maffetore | 9/28/2022 | 0.7 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 9/28/2022 | 1.7 | drafting rule 26f report |
| Jaclyn | Maffetore | 9/29/2022 | 0.3 | emails to opposing counsel re: setting up 26f conf |
| Jaclyn | Maffetore | 9/29/2022 | 2.1 | drafting r 26f report + circulating to team for review/comment |
| Jaclyn | Maffetore | 10/5/2022 | 0.3 | editing draft rule 26f report |
| Jaclyn | Maffetore | 10/6/2022 | 1.4 | Reviewing draftg discovery requests/306b notice |
| Jaclyn | Maffetore | 10/7/2022 | 0.5 | reviewing answer |
| Jaclyn | Maffetore | 10/11/2022 | 0.7 | lit team call re: discovery planning; answer |
| Jaclyn | Maffetore | 10/11/2022 | 0.7 | drafting outline for Caraccio interview +circulating to team |
| Jaclyn | Maffetore | 10/11/2022 | 1.2 | reviewing defs' answer |
| Jaclyn | Maffetore | 10/12/2022 | 0.2 | internal meeting after Caraccio interview |
| Jaclyn | Maffetore | 10/12/2022 | 0.2 | finalizing draft 26f report and circulating same to opposing counsel |
| Jaclyn | Maffetore | 10/12/2022 | 0.3 | internal meeting before Caraccio interview |
| Jaclyn | Maffetore | 10/12/2022 | 1.1 | interview w/ Dr. Caraccio, UNC Health |
| Jaclyn | Maffetore | 10/13/2022 | 0.5 | 26f conf w/ defs |
| Jaclyn | Maffetore | 10/14/2022 | 0.7 | reviewing defs 26f report edits |
| Jaclyn | Maffetore | 10/14/2022 | 1.1 | interview w/ Jennifer Dula |
| Jaclyn | Maffetore | 10/18/2022 | 0.5 | litigation team call re: discovery |
| Jaclyn | Maffetore | 10/19/2022 | 0.3 | finalizing and filing certificate of initial attorney conference |
| Jaclyn | Maffetore | 10/20/2022 | 0.2 | reviewing court's changes to proposed discovery schedule |
| Jaclyn | Maffetore | 10/25/2022 | 0.3 | editing draft disco requests |
| Jaclyn | Maffetore | 10/25/2022 | 0.6 | reviewing/editing initial disclosures |
| Jaclyn | Maffetore | 10/25/2022 | 0.7 | litigation team call re: discovery, initial disclosures |
| Jaclyn | Maffetore | 10/25/2022 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 10/26/2022 | 0.2 | editing draft disco requests |
| Jaclyn | Maffetore | 10/27/2022 | 0.2 | reviewing defs initial disclosures |
| Jaclyn | Maffetore | 10/27/2022 | 0.7 | editing/finalizing/serving initial disclosures |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 11/1/2022 | 1 | reviewing/editing draft discovery |
| Jaclyn | Maffetore | 11/15/2022 | 0.4 | lit team call |
| Jaclyn | Maffetore | 11/22/2022 | 0.8 | lit team call |
| Jaclyn | Maffetore | 11/22/2022 | 2.4 | reviewing/editing draft PO and motion |
| Jaclyn | Maffetore | 11/28/2022 | 1.4 | finalizing edits to draft PO & motion; email to opposing counsel re: same |
| Jaclyn | Maffetore | 12/5/2022 | 1.2 | reviewing Defs' discovery responses; conf w/ DS, MD re: same |
| Jaclyn | Maffetore | 12/8/2022 | 0.5 | Figler interview |
| Jaclyn | Maffetore | 12/9/2022 | 0.2 | follow-up call w/ team after legal call |
| Jaclyn | Maffetore | 12/9/2022 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 12/13/2022 | 0.4 | reviewing supplemental production |
| Jaclyn | Maffetore | 12/13/2022 | 0.8 | lit team call |
| Jaclyn | Maffetore | 12/15/2022 | 0.2 | emails w/ team, opposing counsel re: deposition scheduling |
| Jaclyn | Maffetore | 12/19/2022 | 0.9 | drafting client letter with substantive updates to send with documents |
| Jaclyn | Maffetore | 12/20/2022 | 0.2 | preparing for Croft interview |
| Jaclyn | Maffetore | 12/20/2022 | 0.8 | preparing for call w/ Dr. Ettner |
| Jaclyn | Maffetore | 12/20/2022 | 0.8 | drafting discovery review coding protocol |
| Jaclyn | Maffetore | 12/20/2022 | 1 | call w/ Dr. Ettner |
| Jaclyn | Maffetore | 12/20/2022 | 1 | litigation team call |
| Jaclyn | Maffetore | 12/20/2022 | 1.2 | call w/ Katherine Croft |
| Jaclyn | Maffetore | 1/4/2023 | 0.2 | conf, emails w/ team re: extension negotiations |
| Jaclyn | Maffetore | 1/4/2023 | 0.5 | drafting discovery responses |
| Jaclyn | Maffetore | 1/5/2023 | 0.2 | emails with opposing counsel re: extension request |
| Jaclyn | Maffetore | 1/5/2023 | 0.3 | editing motion for extension and proposed order |
| Jaclyn | Maffetore | 1/5/2023 | 0.4 | conf w/ DS re: depo prep |
| Jaclyn | Maffetore | 1/5/2023 | 0.8 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 1/5/2023 | 2.6 | drafting KZB discovery responses |
| Jaclyn | Maffetore | 1/6/2023 | 0.2 | filing motion for extension and submitting proposed order |
| Jaclyn | Maffetore | 1/6/2023 | 1.5 | reviewing documents for discovery |
| Jaclyn | Maffetore | 1/6/2023 | 3.9 | drafting KZB discovery responses, circulating same to team |
| Jaclyn | Maffetore | 1/9/2023 | 0.3 | connecting Dr. Ettner to client; follow-up convo after client call |
| Jaclyn | Maffetore | 1/10/2023 | 1.1 | lit team call |
| Jaclyn | Maffetore | 1/10/2023 | 5.7 | doc review for production |
| Jaclyn | Maffetore | 1/11/2023 | 0.5 | conf w/ internal team re: depo prep |
| Jaclyn | Maffetore | 1/11/2023 | 4.5 | reviewing docs for production |
| Jaclyn | Maffetore | 1/12/2023 | 0.4 | finalizing production + hosting on FTP for defendants |
| Jaclyn | Maffetore | 1/12/2023 | 1.9 | editing/finalizing discovery responses |
| Jaclyn | Maffetore | 1/12/2023 | 4.1 | preparing for client deposition prep session |
| Jaclyn | Maffetore | 1/13/2023 | 2.3 | client deposition prep session |
| Jaclyn | Maffetore | 1/13/2023 | 5 | travel to/from Anson CI for client depo prep |
| Jaclyn | Maffetore | 1/16/2023 | 3.7 | preparing to defend deposition |
| Jaclyn | Maffetore | 1/17/2023 | 0.2 | emails w/ UNC Health paralegal re: subpoena |
| Jaclyn | Maffetore | 1/17/2023 | 1.8 | reviewing documents in advance of client deposition |
| Jaclyn | Maffetore | 1/18/2023 | 5.3 | travel to/from client deposition |
| Jaclyn | Maffetore | 1/18/2023 | 5.9 | client deposition + pre/break/post meetings |
| Jaclyn | Maffetore | 1/23/2023 | 0.4 | finalizing and serving subpoena on UNC Health |
| Jaclyn | Maffetore | 1/24/2023 | 1 | litigation team meeting |
| Jaclyn | Maffetore | 1/27/2023 | 2.6 | editing ettner report draft |
| Jaclyn | Maffetore | 1/31/2023 | 0.2 | follow-up w/ UNC health re: subpoena |
| Jaclyn | Maffetore | 1/31/2023 | 0.6 | reviewing edits to Ettner report, conf w/ DS re same |
| Jaclyn | Maffetore | 1/31/2023 | 0.8 | lit team call |
| Jaclyn | Maffetore | 2/2/2023 | 1.7 | document review of defendants' production |
| Jaclyn | Maffetore | 2/3/2023 | 1.6 | finalizing/serving Ettner expert report |
| Jaclyn | Maffetore | 2/6/2023 | 0.4 | reviewing/editing 30(b)(6) notice |
| Jaclyn | Maffetore | 2/6/2023 | 0.7 | reviewing UNC subpoena responses + accessing documents |
| Jaclyn | Maffetore | 2/6/2023 | 1 | defs doc review |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 2/7/2023 | 0.4 | lit team call |
| Jaclyn | Maffetore | 2/7/2023 | 1.2 | editing/finalizing 30(b)(6) notice |
| Jaclyn | Maffetore | 2/9/2023 | 1 | document review |
| Jaclyn | Maffetore | 2/14/2023 | 3.5 | document review |
| Jaclyn | Maffetore | 2/15/2023 | 0.3 | emails to opposing counsel re: 30(b)(6), R. 35 |
| Jaclyn | Maffetore | 2/15/2023 | 1 | emails to team, internal confs re: R. 35 request |
| Jaclyn | Maffetore | 2/15/2023 | 2.2 | research re: R. 35 |
| Jaclyn | Maffetore | 2/16/2023 | 0.3 | internal huddle with team following call w/ opposing counsel |
| Jaclyn | Maffetore | 2/16/2023 | 0.5 | call w/ opposing counsel re: R.35 |
| Jaclyn | Maffetore | 2/16/2023 | 0.8 | document review |
| Jaclyn | Maffetore | 2/16/2023 | 1.2 | research re: R. 35 |
| Jaclyn | Maffetore | 2/17/2023 | 0.2 | email w/ opposing counsel re: R. 35 position |
| Jaclyn | Maffetore | 2/17/2023 | 0.4 | emails to team re: client call |
| Jaclyn | Maffetore | 2/17/2023 | 0.5 | document review |
| Jaclyn | Maffetore | 2/17/2023 | 0.7 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 2/21/2023 | 2.4 | reviewing/editing opp to R.35 motion |
| Jaclyn | Maffetore | 2/22/2023 | 0.3 | follow up email to team re: call w/ opposing counsel |
| Jaclyn | Maffetore | 2/22/2023 | 0.7 | call w/ opposing counsel re: 30(b)(6), settlement, extension |
| Jaclyn | Maffetore | 2/22/2023 | 2.2 | document review |
| Jaclyn | Maffetore | 2/23/2023 | 0.2 | email to opposing counsel re: extension |
| Jaclyn | Maffetore | 2/23/2023 | 0.3 | emails w/ team re: R. 35 |
| Jaclyn | Maffetore | 2/23/2023 | 1.6 | document review |
| Jaclyn | Maffetore | 2/24/2023 | 1.1 | final review of R. 35 opp |
| Jaclyn | Maffetore | 2/24/2023 | 1.4 | document review |
| Jaclyn | Maffetore | 2/24/2023 | 1.4 | reviewing dep transcript for errors |
| Jaclyn | Maffetore | 2/28/2023 | 0.2 | reviewing discovery requests |
| Jaclyn | Maffetore | 2/28/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 2/28/2023 | 2 | reviewing deposition transcript for errors |
| Jaclyn | Maffetore | 3/1/2023 | 0.7 | reviewing deposition transcript |
| Jaclyn | Maffetore | 3/2/2023 | 0.5 | team call re: 30(b)(6) deposition planning |
| Jaclyn | Maffetore | 3/2/2023 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 3/2/2023 | 2.4 | document review |
| Jaclyn | Maffetore | 3/3/2023 | 0.2 | email to opposing counsel re: time to discuss deposition logistics |
| Jaclyn | Maffetore | 3/3/2023 | 0.7 | editing 30(b)(6) notice |
| Jaclyn | Maffetore | 3/6/2023 | 1.9 | document review |
| Jaclyn | Maffetore | 3/7/2023 | 0.4 | finalizing and sending revised 30(b)(6) notice to opposing counsel |
| Jaclyn | Maffetore | 3/7/2023 | 0.5 | call w/ opposing counsel re: 30(b)(6) objections, logistics |
| Jaclyn | Maffetore | 3/7/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 3/7/2023 | 1.2 | drafting campbell 30(b)(6) deposition outline |
| Jaclyn | Maffetore | 3/7/2023 | 1.5 | document review w/ eye toward deposition prep |
| Jaclyn | Maffetore | 3/8/2023 | 1.5 | drafting deposition outline |
| Jaclyn | Maffetore | 3/9/2023 | 0.8 | team call re: 30(b)(6) depo |
| Jaclyn | Maffetore | 3/9/2023 | 4.3 | drafting deposition outline |
| Jaclyn | Maffetore | 3/10/2023 | 0.2 | reviewing emails from opposing counsel re: depo, late arriving production |
| Jaclyn | Maffetore | 3/10/2023 | 6.2 | deposition outline/exhibit prep |
| Jaclyn | Maffetore | 3/14/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 3/14/2023 | 4 | document review |
| Jaclyn | Maffetore | 3/20/2023 | 0.2 | sharing client update with team |
| Jaclyn | Maffetore | 3/21/2023 | 0.6 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 3/21/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 3/22/2023 | 0.6 | finalizing and serving supplemented initial disclosures |
| Jaclyn | Maffetore | 3/22/2023 | 1.1 | reviewing documents in preparation of Campbell/30(b)(6) deposition |
| Jaclyn | Maffetore | 3/23/2023 | 0.9 | reviewing/editing discovery responses |
| Jaclyn | Maffetore | 3/23/2023 | 2.2 | reviewing documents/drafting/editing outline in preparation of Campbell/30(b)(6) deposition |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 3/27/2023 | 0.2 | serving discovery responses and password for document access via emails to opposing counsel; providing documents via fileshare |
| Jaclyn | Maffetore | 3/27/2023 | 0.4 | finalizing written discovery responses |
| Jaclyn | Maffetore | 3/27/2023 | 1.5 | compiling and finalizing second production of documents |
| Jaclyn | Maffetore | 3/27/2023 | 3.4 | reviewing and compiling documents for/drafting/editing Campbell/30(b)(6) outline |
| Jaclyn | Maffetore | 3/28/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 4/3/2023 | 0.5 | call w/ Dr. Ettner re: test materials and discovery dispute |
| Jaclyn | Maffetore | 4/3/2023 | 0.6 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 4/4/2023 | 0.7 | litigation team call |
| Jaclyn | Maffetore | 4/5/2023 | 0.9 | finalizing/sending deficiency letter to opposing counsel |
| Jaclyn | Maffetore | 4/6/2023 | 1.2 | finalizing and serving supplemental disco responses |
| Jaclyn | Maffetore | 4/6/2023 | 3.2 | editing campbell depo outline |
| Jaclyn | Maffetore | 4/13/2023 | 0.5 | finalizing and serving updated notices of deposition for campbell and peiper |
| Jaclyn | Maffetore | 4/13/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 4/13/2023 | 3.2 | drafting/editing Campbell depo outline |
| Jaclyn | Maffetore | 4/14/2023 | 0.2 | emails w/ opposing counsel re: mediation, deposition scheduling |
| Jaclyn | Maffetore | 4/17/2023 | 0.6 | emails w/ opposing counsel re: reaching compromise on discovery/deposition dispute |
| Jaclyn | Maffetore | 4/17/2023 | 1.6 | editing Campbell deposition outline |
| Jaclyn | Maffetore | 4/18/2023 | 2.5 | finalizing Campbell/30(b)(6) deposition outline and exhibits |
| Jaclyn | Maffetore | 4/18/2023 | 10 | taking Dr. Campbell/30(b)(6) deposition + meetings to confer re: depo on breaks |
| Jaclyn | Maffetore | 4/19/2023 | 0.2 | reviewing second requests for production |
| Jaclyn | Maffetore | 4/20/2023 | 1 | lit team call |
| Jaclyn | Maffetore | 4/20/2023 | 3.7 | reviewing/compiling documents with eye toward drafting Junker deposition outline |
| Jaclyn | Maffetore | 4/21/2023 | 1.7 | drafting Junker deposition outline |
| Jaclyn | Maffetore | 4/23/2023 | 2.5 | drafting Junker deposition outline |
| Jaclyn | Maffetore | 4/27/2023 | 0.6 | litigation team call and follow-up email |
| Jaclyn | Maffetore | 4/27/2023 | 1 | legal call with Kanautica |
| Jaclyn | Maffetore | 5/1/2023 | 0.2 | emails w/ team re: R. 35 |
| Jaclyn | Maffetore | 5/2/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 5/2/2023 | 2.2 | drafting/editing Junker depo outline |
| Jaclyn | Maffetore | 5/3/2023 | 3.8 | drafting/editing Junker depo outline |
| Jaclyn | Maffetore | 5/4/2023 | 0.5 | finalizing Junker depo outline |
| Jaclyn | Maffetore | 5/4/2023 | 7.5 | taking Junker depo and conferring w/ co-counsel on breaks |
| Jaclyn | Maffetore | 5/8/2023 | 0.7 | reviewing UNC declaration drafts |
| Jaclyn | Maffetore | 5/8/2023 | 1 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 5/9/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 5/9/2023 | 2.6 | reviwing UNC declaration drafts |
| Jaclyn | Maffetore | 5/10/2023 | 0.2 | emails w/ opposing counsel re: depos, mx to extend |
| Jaclyn | Maffetore | 5/10/2023 | 0.7 | editing mx to extend and discussion re: same w/ team |
| Jaclyn | Maffetore | 5/11/2023 | 0.2 | emails w/ opposing counsel re: depo scheduling, conf w/ team re: same |
| Jaclyn | Maffetore | 5/12/2023 | 0.3 | emails w/ team re: court order |
| Jaclyn | Maffetore | 5/16/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 5/18/2023 | 0.5 | conf and emails w/ team re: discovery |
| Jaclyn | Maffetore | 5/19/2023 | 0.3 | finalizing and serving supplemental discovery |
| Jaclyn | Maffetore | 5/19/2023 | 0.3 | emails to opposing counsel re: discovery conf |
| Jaclyn | Maffetore | 5/19/2023 | 0.4 | drafting supplemental discovery responses |
| Jaclyn | Maffetore | 5/19/2023 | 1.8 | Peiper 30(b)(6) confidentiality designation |
| Jaclyn | Maffetore | 5/19/2023 | 4.6 | reviewing for privilege + redacting first supplemental production |
| Jaclyn | Maffetore | 5/21/2023 | 3.2 | Peiper 30(b)(6) confidentiality designations |
| Jaclyn | Maffetore | 5/23/2023 | 1 | lit team call |
| Jaclyn | Maffetore | 5/24/2023 | 0.2 | emails to opposing counsel re: discovery |
| Jaclyn | Maffetore | 5/25/2023 | 0.2 | looking into expert report issue raised, email to opposing re: same |
| Jaclyn | Maffetore | 5/25/2023 | 0.5 | call w/ opposing counsel re: R. 35, discovery; circulating notes re: same |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 5/26/2023 | 0.2 | drafting email and serving Zayre-Brown confidentiality designations on opposing counsel |
| Jaclyn | Maffetore | 5/26/2023 | 4.6 | reviewing Campbell 30(b)(6) and individual capacity depos for confidentiality designations |
| Jaclyn | Maffetore | 5/30/2023 | 0.5 | lit team call |
| Jaclyn | Maffetore | 5/31/2023 | 1 | emails w/ team & opposing counsel re: R. 35, discovery |
| Jaclyn | Maffetore | 6/1/2023 | 0.2 | conferring w/ team re: opposing counsel's discovery positions |
| Jaclyn | Maffetore | 6/1/2023 | 0.4 | emails to opposing counsel re: outstanding discovery issues |
| Jaclyn | Maffetore | 6/1/2023 | 1.1 | finalizing and serving second supplemental production + written responses |
| Jaclyn | Maffetore | 6/6/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 6/8/2023 | 2.6 | reviewing Junker depostion transcript w/ attention to confidentiality designations |
| Jaclyn | Maffetore | 6/13/2023 | 0.6 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 6/13/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 6/14/2023 | 0.4 | drafting response to opposing counsel re: discovery |
| Jaclyn | Maffetore | 6/14/2023 | 0.6 | editing draft Dula declaration |
| Jaclyn | Maffetore | 6/20/2023 | 0.2 | reviewing emails from opposing counsel re: discovery issues |
| Jaclyn | Maffetore | 6/20/2023 | 0.5 | litigation team call |
| Jaclyn | Maffetore | 6/21/2023 | 0.6 | reviewing documents with eye toward bowman deposition prep |
| Jaclyn | Maffetore | 6/22/2023 | 3.2 | reviewing documents w/ eye toward Bowman deposition prep |
| Jaclyn | Maffetore | 6/23/2023 | 3.4 | Bowman depo outline/doc review |
| Jaclyn | Maffetore | 6/26/2023 | 0.2 | drafting bowman notice of deposition |
| Jaclyn | Maffetore | 6/26/2023 | 3.8 | drafting Bowman deposition outline & compiling documents |
| Jaclyn | Maffetore | 6/27/2023 | 1.2 | litigation team call |
| Jaclyn | Maffetore | 6/29/2023 | 3 | Bowman deposition and internal confs during breaks |
| Jaclyn | Maffetore | 7/7/2023 | 1.6 | reviewing expert reports; conf w/ DS re: same |
| Jaclyn | Maffetore | 7/10/2023 | 0.6 | huddle with DS re: expert discovery, SJ |
| Jaclyn | Maffetore | 7/11/2023 | 0.7 | legal call w/ KZB |
| Jaclyn | Maffetore | 7/11/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 7/17/2023 | 1.2 | reviewing/analyzing expert reports |
| Jaclyn | Maffetore | 7/18/2023 | 1 | litigation team call |
| Jaclyn | Maffetore | 7/20/2023 | 0.2 | emails w/ opposing counsel re: depos |
| Jaclyn | Maffetore | 7/25/2023 | 0.7 | reviewing/editing Ettner rebuttal |
| Jaclyn | Maffetore | 7/27/2023 | 0.3 | reviewing/OCR-ing final version of Ettner rebuttal |
| Jaclyn | Maffetore | 7/27/2023 | 2.3 | bowman confidentiality designations |
| Jaclyn | Maffetore | 7/31/2023 | 0.2 | conf w/ DS re: Penn subpoena |
| Jaclyn | Maffetore | 7/31/2023 | 0.4 | drafting/editing/circulating/serving updated initial disclosures |
| Jaclyn | Maffetore | 7/31/2023 | 0.8 | drafting/circulating/editing/serving Penn subpoena + attachment, notice of deposition |
| Jaclyn | Maffetore | 7/31/2023 | 1.8 | planning Penn depo outline |
| Jaclyn | Maffetore | 7/31/2023 | 2.3 | reviewing Boyd examination video |
| Jaclyn | Maffetore | 8/1/2023 | 0.5 | reviewing/editing Antommaria rebuttal report |
| Jaclyn | Maffetore | 8/1/2023 | 0.9 | lit team call |
| Jaclyn | Maffetore | 8/1/2023 | 1.8 | reviewing documents/drafting Penn depo outline |
| Jaclyn | Maffetore | 8/2/2023 | 0.7 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 8/2/2023 | 2.5 | reviewing docs w/ eye toward and drafting Penn deposition outline |
| Jaclyn | Maffetore | 8/4/2023 | 5.8 | reviewing documents/drafting Penn deposition outline |
| Jaclyn | Maffetore | 8/5/2023 | 3.7 | reviewing documents/drafting Penn deposition outline |
| Jaclyn | Maffetore | 8/6/2023 | 1.8 | reviewing documents/drafting Penn deposition outline |
| Jaclyn | Maffetore | 8/7/2023 | 0.2 | finalizing/serving expert rebuttal reports |
| Jaclyn | Maffetore | 8/7/2023 | 0.3 | reviewing Penn subpoena documents |
| Jaclyn | Maffetore | 8/7/2023 | 0.8 | finalizing Penn deposition outline |
| Jaclyn | Maffetore | 8/8/2023 | 8.5 | taking deposition of Dr. Penn + conf w/ team on breaks |
| Jaclyn | Maffetore | 8/10/2023 | 1.2 | reviewing defs' mot. for continuance, emails w/ co- and opposing counsel re: same |
| Jaclyn | Maffetore | 8/11/2023 | 0.3 | editing revised mot for trial continuance, email of same to opposing counsel |
| Jaclyn | Maffetore | 8/11/2023 | 0.5 | drafting mot to take deposition out of time |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 8/15/2023 | 0.3 | client call & email to team re: same |
| Jaclyn | Maffetore | 8/15/2023 | 0.5 | circulating, finalizing, filing motion to take deposition out of time |
| Jaclyn | Maffetore | 8/17/2023 | 1.5 | reviewing Penn depo rough w/ eye toward Daubert |
| Jaclyn | Maffetore | 8/17/2023 | 2 | planning SJ |
| Jaclyn | Maffetore | 8/18/2023 | 1 | reviewing Penn depo rough w/ eye toward Daubert |
| Jaclyn | Maffetore | 8/18/2023 | 1.2 | reviewing Daubert research from extern |
| Jaclyn | Maffetore | 8/22/2023 | 0.5 | reviewing Penn rough w/ eye towards Daubert |
| Jaclyn | Maffetore | 8/23/2023 | 0.2 | conf w/ DS re Daubert, SJ |
| Jaclyn | Maffetore | 8/23/2023 | 0.5 | legal call w/ KZB |
| Jaclyn | Maffetore | 8/23/2023 | 0.8 | Daubert planning |
| Jaclyn | Maffetore | 8/23/2023 | 1.1 | KZB lit team call |
| Jaclyn | Maffetore | 8/29/2023 | 0.4 | Litigation team call |
| Jaclyn | Maffetore | 8/30/2023 | 1.1 | reviewing/editing Croft declaration |
| Jaclyn | Maffetore | 8/30/2023 | 1.1 | SJ planning |
| Jaclyn | Maffetore | 8/31/2023 | 1.2 | planning for summary judgment |
| Jaclyn | Maffetore | 9/5/2023 | 1 | SJ outline |
| Jaclyn | Maffetore | 9/7/2023 | 1.2 | finalizing third party declarations |
| Jaclyn | Maffetore | 9/8/2023 | 0.3 | correspondence re: 3rd party declarants |
| Jaclyn | Maffetore | 9/11/2023 | 1.3 | SJ outline |
| Jaclyn | Maffetore | 9/11/2023 | 1.7 | Penn confidentiality designations |
| Jaclyn | Maffetore | 9/12/2023 | 0.8 | lit team call |
| Jaclyn | Maffetore | 9/12/2023 | 1.7 | Penn confidentiality designations |
| Jaclyn | Maffetore | 9/13/2023 | 1.8 | SJ outline |
| Jaclyn | Maffetore | 9/13/2023 | 3.4 | reviewing deposition transcripts/compiling facts for SJ |
| Jaclyn | Maffetore | 9/14/2023 | 0.7 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 9/14/2023 | 3.9 | reviewing deposition transcripts/compiling facts for SJ |
| Jaclyn | Maffetore | 9/15/2023 | 0.2 | reviewing/editing draft motion to extend SJ page limits |
| Jaclyn | Maffetore | 9/15/2023 | 0.3 | follow-up call and email to potential third party witness |
| Jaclyn | Maffetore | 9/15/2023 | 0.4 | emails w/ opposing, co-counsel re: draft motion to extend |
| Jaclyn | Maffetore | 9/15/2023 | 4.1 | reviewing deposition transcripts/compiling facts for SJ |
| Jaclyn | Maffetore | 9/18/2023 | 0.2 | correspondence w/ opposing counsel re: motion to extend |
| Jaclyn | Maffetore | 9/18/2023 | 0.2 | finalizing/filing mot to extend |
| Jaclyn | Maffetore | 9/19/2023 | 1.5 | legal research/SJ planning |
| Jaclyn | Maffetore | 9/20/2023 | 2.2 | legal research/SJ planning/drafting |
| Jaclyn | Maffetore | 9/21/2023 | 3.8 | legal research/SJ planning/drafting |
| Jaclyn | Maffetore | 9/22/2023 | 7.3 | SJ research/drafting |
| Jaclyn | Maffetore | 9/26/2023 | 0.2 | emails w/ team re: Penn invoices, responding re: rates |
| Jaclyn | Maffetore | 9/26/2023 | 6.2 | SJ brief drafting |
| Jaclyn | Maffetore | 9/27/2023 | 8 | SJ brief drafting |
| Jaclyn | Maffetore | 9/28/2023 | 0.3 | reviewing/editing second KZB declaration |
| Jaclyn | Maffetore | 9/28/2023 | 0.6 | evidence planning re: SJ |
| Jaclyn | Maffetore | 9/28/2023 | 1 | lit team call re: SJ |
| Jaclyn | Maffetore | 9/29/2023 | 0.3 | reviewing edits to 3rd party declaration, communications w/ UNC paralegal, co-counsel re: same |
| Jaclyn | Maffetore | 9/29/2023 | 6.7 | editing SJ brief |
| Jaclyn | Maffetore | 9/30/2023 | 5.6 | editing SJ brief |
| Jaclyn | Maffetore | 10/2/2023 | 0.3 | finalizing declaration |
| Jaclyn | Maffetore | 10/2/2023 | 0.5 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 10/2/2023 | 5.6 | SJ brief drafting/editing |
| Jaclyn | Maffetore | 10/4/2023 | 0.2 | email to opposing counsel re: confidentiality designations |
| Jaclyn | Maffetore | 10/4/2023 | 1.5 | declaration designations in support of SJ |
| Jaclyn | Maffetore | 10/4/2023 | 8.7 | SJ brief editing/fact-cite checking |
| Jaclyn | Maffetore | 10/5/2023 | 6.3 | finalizing and filing SJ motion, brief, and exhibits |
| Jaclyn | Maffetore | 10/6/2023 | 1.2 | reviewing/analyzing defs SJ filings |
| Jaclyn | Maffetore | 10/10/2023 | 1.3 | legal team call and follow-up call w/ Dan re: response division of labor |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 10/10/2023 | 1.4 | reviewing/analyizing defs mot for SJ |
| Jaclyn | Maffetore | 10/11/2023 | 2.2 | planning/researching SJ response |
| Jaclyn | Maffetore | 10/12/2023 | 7.2 | planning/researching SJ response |
| Jaclyn | Maffetore | 10/16/2023 | 6.6 | response section research/drafting |
| Jaclyn | Maffetore | 10/17/2023 | 1 | reviewing confidentiality designations for redaction |
| Jaclyn | Maffetore | 10/17/2023 | 1 | reviewing SJ response brief edits |
| Jaclyn | Maffetore | 10/17/2023 | 2.2 | research/drafting Daubert of Penn |
| Jaclyn | Maffetore | 10/18/2023 | 4.8 | editing response brief |
| Jaclyn | Maffetore | 10/19/2023 | 0.2 | filing response brief |
| Jaclyn | Maffetore | 10/19/2023 | 1.2 | response brief final proofread/finalization |
| Jaclyn | Maffetore | 10/20/2023 | 0.2 | correcting filing of exhibit |
| Jaclyn | Maffetore | 10/20/2023 | 0.6 | lit team call re: SJ |
| Jaclyn | Maffetore | 10/20/2023 | 1.5 | reviewing/analyzing defs response brief |
| Jaclyn | Maffetore | 10/20/2023 | 4.2 | research/drafting Penn Daubert |
| Jaclyn | Maffetore | 10/22/2023 | 6.5 | drafting Penn Daubert |
| Jaclyn | Maffetore | 10/23/2023 | 2.5 | editing draft reply br. |
| Jaclyn | Maffetore | 10/23/2023 | 3.8 | drafting/editing Penn Daubert |
| Jaclyn | Maffetore | 10/24/2023 | 1.7 | editing reply br |
| Jaclyn | Maffetore | 10/24/2023 | 2.4 | editing Penn Daubert |
| Jaclyn | Maffetore | 10/25/2023 | 0.3 | reviewing/editing draft motion to strike |
| Jaclyn | Maffetore | 10/25/2023 | 1.9 | drafting new section of Penn brief |
| Jaclyn | Maffetore | 10/25/2023 | 2.2 | editing Penn brief |
| Jaclyn | Maffetore | 10/26/2023 | 0.7 | filing SJ reply + 3 motions to strike and supporting materials |
| Jaclyn | Maffetore | 10/26/2023 | 0.7 | final proofread of reply brief |
| Jaclyn | Maffetore | 10/26/2023 | 0.9 | final proofread and citation input for memos ISO motion to strike |
| Jaclyn | Maffetore | 10/26/2023 | 1.6 | cite-checking Penn brief |
| Jaclyn | Maffetore | 10/30/2023 | 0.2 | email to Kanautica sharing filings |
| Jaclyn | Maffetore | 10/30/2023 | 0.4 | finalizing and filing opposition to motion for extension |
| Jaclyn | Maffetore | 10/31/2023 | 1 | lit team call |
| Jaclyn | Maffetore | 11/1/2023 | 0.2 | call w/ Kanautica |
| Jaclyn | Maffetore | 11/1/2023 | 0.3 | conf w/ team re: upcoming hearing |
| Jaclyn | Maffetore | 11/1/2023 | 0.8 | hearing prep |
| Jaclyn | Maffetore | 11/2/2023 | 4.2 | hearing prep |
| Jaclyn | Maffetore | 11/3/2023 | 6.2 | hearing prep |
| Jaclyn | Maffetore | 11/6/2023 | 6.2 | hearing prep (case review, record review, reviewing briefs, drafting outline) |
| Jaclyn | Maffetore | 11/7/2023 | 1.2 | argument moot |
| Jaclyn | Maffetore | 11/7/2023 | 7.7 | hearing prep (case review, record review, refining outline, argument practice) |
| Jaclyn | Maffetore | 11/8/2023 | 0.6 | conf w/ DS re: hearing |
| Jaclyn | Maffetore | 11/8/2023 | 2.7 | travelling to charlotte hearing |
| Jaclyn | Maffetore | 11/8/2023 | 6.2 | hearing prep (case review, record review, refining outline, argument practice) |
| Jaclyn | Maffetore | 11/9/2023 | 0.4 | argument debrief |
| Jaclyn | Maffetore | 11/9/2023 | 0.7 | meeting with client prior to argument |
| Jaclyn | Maffetore | 11/9/2023 | 1.7 | SJ oral argument |
| Jaclyn | Maffetore | 11/9/2023 | 2.7 | traveling home from charlotte hearing |
| Jaclyn | Maffetore | 11/16/2023 | 1 | litigation team meeting |
| Jaclyn | Maffetore | 11/30/2023 | 0.8 | legal call w/ Kanautica and follow-up w/ team |
| Jaclyn | Maffetore | 12/4/2023 | 0.5 | reviewing draft motion to continue; emails with co- and opposing counsel re: same |
| Jaclyn | Maffetore | 12/6/2023 | 0.5 | drafting email response re: third party witnesses, email to team re: same |
| Jaclyn | Maffetore | 12/12/2023 | 1 | reviewing/analyzing defs resps to motions to strike |
| Jaclyn | Maffetore | 12/13/2023 | 2.2 | reviewing/analyzing defs resps to motions to strike |
| Jaclyn | Maffetore | 12/15/2023 | 3 | reviewing/editing reply brief and discussions w/ DS re: same |
| Jaclyn | Maffetore | 12/18/2023 | 1 | cite-checking reply ISO motions to strike |
| Jaclyn | Maffetore | 12/19/2023 | 0.7 | lit team call |
| Jaclyn | Maffetore | 1/2/2024 | 1 | lit team meeting |
| Jaclyn | Maffetore | 1/9/2024 | 0.2 | email to opposing counsel |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 1/9/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 1/10/2024 | 0.2 | emails w/ opposing counsel re: setting up call |
| Jaclyn | Maffetore | 1/10/2024 | 0.3 | clarifying email to 3rd party witnesses |
| Jaclyn | Maffetore | 1/16/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 2/1/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 2/2/2024 | 0.2 | call w/ DS discussing order |
| Jaclyn | Maffetore | 2/2/2024 | 0.3 | email to client w/ update re: order |
| Jaclyn | Maffetore | 2/2/2024 | 0.4 | team call re: order |
| Jaclyn | Maffetore | 2/2/2024 | 0.5 | reviewing order |
| Jaclyn | Maffetore | 2/3/2024 | 1 | team call re: order, hearing |
| Jaclyn | Maffetore | 2/5/2024 | 0.6 | call w/ Expert re: order, medical situation |
| Jaclyn | Maffetore | 2/6/2024 | 0.2 | drafting email to opposing counsel re: remote testimony, clerk outreach, client attendance issue |
| Jaclyn | Maffetore | 2/6/2024 | 0.4 | review Ettner declaration |
| Jaclyn | Maffetore | 2/6/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 2/7/2024 | 1.2 | Campbell outline |
| Jaclyn | Maffetore | 2/7/2024 | 1.6 | editing motion + memo ISO remote testimony of Dr. Ettner |
| Jaclyn | Maffetore | 2/8/2024 | 0.2 | call w/ Cogburn judicial assistant re: hearing |
| Jaclyn | Maffetore | 2/8/2024 | 0.2 | filing motion, memo, declaration ISO remote testimony |
| Jaclyn | Maffetore | 2/8/2024 | 0.3 | finalizing remote testimony materials; circulating to opposing counsel |
| Jaclyn | Maffetore | 2/8/2024 | 0.5 | lit team call |
| Jaclyn | Maffetore | 2/8/2024 | 0.5 | call conferring w/ opposing counsel |
| Jaclyn | Maffetore | 2/8/2024 | 0.5 | drafting, getting input, sending email to opposing counsel re: stipulated hearing procedure. |
| Jaclyn | Maffetore | 2/8/2024 | 1 | legal call w/ client |
| Jaclyn | Maffetore | 2/9/2024 | 0.5 | legal call w/ client |
| Jaclyn | Maffetore | 2/9/2024 | 2.2 | Campbell outline |
| Jaclyn | Maffetore | 2/11/2024 | 2.5 | Campbell outline |
| Jaclyn | Maffetore | 2/12/2024 | 0.2 | filing habeas petition for client appearance |
| Jaclyn | Maffetore | 2/12/2024 | 0.5 | reviewing/editing habeas petition, emails to team re: same |
| Jaclyn | Maffetore | 2/12/2024 | 6.7 | reviewing depo transcripts with eye toward drafting Campbell outline; drafting campbell outline |
| Jaclyn | Maffetore | 2/13/2024 | 0.3 | emails w/ opposing counsel re: stipulated procedure for filing |
| Jaclyn | Maffetore | 2/13/2024 | 0.3 | communications w/ opposing counsel, facility, re: client transport to hearing |
| Jaclyn | Maffetore | 2/13/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 2/13/2024 | 1.6 | Peiper outline |
| Jaclyn | Maffetore | 2/13/2024 | 3.2 | reviewing depo transcripts with eye toward drafting Campbell outline; drafting campbell outline |
| Jaclyn | Maffetore | 2/14/2024 | 0.5 | call w/ courtroom deputy re: tech logistics/training; emails to team, opposing counsel re: same |
| Jaclyn | Maffetore | 2/14/2024 | 1 | editing campbell outline |
| Jaclyn | Maffetore | 2/14/2024 | 4 | reviewing depo transcripts with eye toward drafting Peiper outline; simultaneously drafting Peiper outline |
| Jaclyn | Maffetore | 2/15/2024 | 5 | reviewing depo trasncripts with eye toward drafting Peiper outline; simultaneously drafting Peiper outline |
| Jaclyn | Maffetore | 2/16/2024 | 1.8 | editing Peiper and Campbell outlines |
| Jaclyn | Maffetore | 2/17/2024 | 1 | reviewing defs' ex for necessary redactions - email to opposing counsel re: same |
| Jaclyn | Maffetore | 2/17/2024 | 1 | lit team call re: hearing |
| Jaclyn | Maffetore | 2/18/2024 | 2.2 | finalizing Campbell and Peiper outlines |
| Jaclyn | Maffetore | 2/19/2024 | 1.2 | reviewing outlines and documents in preparation for hearing |
| Jaclyn | Maffetore | 2/19/2024 | 2.5 | traveling to CLT for evidentiary hearing |
| Jaclyn | Maffetore | 2/20/2024 | 0.5 | technology training |
| Jaclyn | Maffetore | 2/20/2024 | 1 | team huddles re: hearing strategy |
| Jaclyn | Maffetore | 2/20/2024 | 2 | reviewing documents and outline in preparation for hearing |
| Jaclyn | Maffetore | 2/20/2024 | 2.5 | traveling home from evidentiary hearing |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 2/20/2024 | 3.4 | evidentiary hearing |
| Jaclyn | Maffetore | 2/26/2024 | 1.8 | reviewing/editing draft brief ISO renewed mot for SJ |
| Jaclyn | Maffetore | 2/28/2024 | 0.8 | reviewing renewed SJ motion and memo ISO |
| Jaclyn | Maffetore | 2/29/2024 | 1.2 | cite-checking/reviewing memo ISO renewed motion for SJ |
| Jaclyn | Maffetore | 3/7/2024 | 0.3 | email outreach to client w/ briefing and updates |
| Jaclyn | Maffetore | 3/12/2024 | 0.2 | email to client re: order w/ expedited briefing schedule for renewed MSJ |
| Jaclyn | Maffetore | 3/12/2024 | 0.4 | legal call w/ client re: continuance |
| Jaclyn | Maffetore | 3/15/2024 | 0.6 | finalizing + filing motion to continue trial |
| Jaclyn | Maffetore | 3/21/2024 | 0.8 | reviewing defs MSJ filings |
| Jaclyn | Maffetore | 3/22/2024 | 0.5 | lit team call re: drafting plan for reply/response |
| Jaclyn | Maffetore | 3/22/2024 | 3.5 | reviewing defs motion for renewed MSJ and opposition to Ps renewed MSJ |
| Jaclyn | Maffetore | 3/23/2024 | 3 | drafting reply ISO renewed MSJ |
| Jaclyn | Maffetore | 3/24/2024 | 4 | drafting reply ISO renewed MSJ |
| Jaclyn | Maffetore | 3/25/2024 | 4.1 | revising renewed MSJ reply brief |
| Jaclyn | Maffetore | 3/26/2024 | 2.1 | planning response in opp to defs renewed MSJ |
| Jaclyn | Maffetore | 3/26/2024 | 4 | finalizing + filing reply ISO renewed MSJ |
| Jaclyn | Maffetore | 3/27/2024 | 5 | planning/drafting opposition to defs MSJ |
| Jaclyn | Maffetore | 3/29/2024 | 3.7 | drafting opp to defs renewed MSJ |
| Jaclyn | Maffetore | 3/30/2024 | 2.1 | editing draft response in opp to defs' renewed MSJ |
| Jaclyn | Maffetore | 4/1/2024 | 0.2 | filing response in opp to defs renewed msj |
| Jaclyn | Maffetore | 4/1/2024 | 2.2 | editing/finalizing response in opp to defs renewed MSJ |
| Jaclyn | Maffetore | 4/4/2024 | 0.5 | reviewing defendants reply ISO renewed MSJ |
| Jaclyn | Maffetore | 4/16/2024 | 1.6 | reviewing SJ order, emails to team re: same |
| Jaclyn | Maffetore | 4/18/2024 | 0.5 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 4/18/2024 | 0.5 | litigation team call |
| Jaclyn | Maffetore | 4/23/2024 | 0.2 | litigation team call |
| Jaclyn | Maffetore | 4/26/2024 | 0.5 | legal call w/ client |
| Jaclyn | Maffetore | 5/3/2024 | 0.5 | client legal call |
| Jaclyn | Maffetore | 5/10/2024 | 0.5 | legal call w/ client |
| Jaclyn | Maffetore | 5/14/2024 | 0.6 | litigation team call |
| Jaclyn | Maffetore | 5/15/2024 | 0.3 | emails w/ team, opposing counsel re: intent to file notice of appeal and motion to stay |
| Jaclyn | Maffetore | 5/15/2024 | 0.7 | research for stay opp |
| Jaclyn | Maffetore | 5/16/2024 | 0.9 | reviewing/analyzing motion to stay |
| Jaclyn | Maffetore | 5/16/2024 | 3.6 | legal research/planning resp. in opp to mot to stay |
| Jaclyn | Maffetore | 5/17/2024 | 0.5 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 5/17/2024 | 0.5 | reviewing co-counsel analysis re: mot to stay opp |
| Jaclyn | Maffetore | 5/18/2024 | 4.4 | legal research/drafting stay opp |
| Jaclyn | Maffetore | 5/19/2024 | 4.2 | legal research/drafting stay opp |
| Jaclyn | Maffetore | 5/20/2024 | 5.2 | research/drafting stay opp |
| Jaclyn | Maffetore | 5/28/2024 | 0.5 | client legal call and team huddle to debrief client call |
| Jaclyn | Maffetore | 6/3/2024 | 0.2 | email to team re: stay, mot to expedite |
| Jaclyn | Maffetore | 6/4/2024 | 0.5 | lit team meeting |
| Jaclyn | Maffetore | 6/6/2024 | 1.2 | stay-related research |
| Jaclyn | Maffetore | 6/12/2024 | 0.5 | client communications |
| Jaclyn | Maffetore | 6/26/2024 | 0.3 | conf w/ DS re: plan for appellate briefing |
| Jaclyn | Maffetore | 7/1/2024 | 0.2 | call w/ client and update to team re: same |
| Jaclyn | Maffetore | 7/1/2024 | 0.3 | procedural research re: timeline for JA/record on appeal |
| Jaclyn | Maffetore | 7/8/2024 | 0.5 | finalizing and filing letter to court requesting case status |
| Jaclyn | Maffetore | 7/9/2024 | 0.8 | lit team meeting |
| Jaclyn | Maffetore | 7/11/2024 | 0.2 | communication w/ client, email update to team re: same |
| Jaclyn | Maffetore | 7/12/2024 | 0.3 | emails w/ opposing counsel re: JA, issues on appeal, procedural research to include in same |
| Jaclyn | Maffetore | 7/12/2024 | 1 | reviewing court order re: stay; emails to/confs w/ team re: same |
| Jaclyn | Maffetore | 7/16/2024 | 0.5 | legal call w/ client |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 7/16/2024 | 0.9 | litigation team meeting |
| Jaclyn | Maffetore | 7/18/2024 | 0.2 | calls/emails re: communications w/ 4th cir clerk re: admin stay, deadlines |
| Jaclyn | Maffetore | 7/18/2024 | 1.2 | reviewing defs' stay motion |
| Jaclyn | Maffetore | 7/18/2024 | 6.2 | drafting stay opposition brief background section |
| Jaclyn | Maffetore | 7/19/2024 | 6.4 | combining/editing stay opp brief for circulation to team |
| Jaclyn | Maffetore | 7/20/2024 | 1.2 | reviewing team edits to stay opp brief |
| Jaclyn | Maffetore | 7/21/2024 | 7.1 | editing, finalizing, and filing 4th cir stay opposition |
| Jaclyn | Maffetore | 7/24/2024 | 0.2 | call w/ opposing counsel re: length of JA, emails with team re: same |
| Jaclyn | Maffetore | 7/25/2024 | 0.4 | reviewing stay denial |
| Jaclyn | Maffetore | 7/25/2024 | 0.8 | reviewing JA designations for cuts for length, emails to team re: same |
| Jaclyn | Maffetore | 7/26/2024 | 0.8 | reviewing defs filings re: experts, email confs w/ team re: same |
| Jaclyn | Maffetore | 7/28/2024 | 0.5 | reviewing draft objex |
| Jaclyn | Maffetore | 7/28/2024 | 1.8 | reviewing research/feedback re: proposed GAS "experts" |
| Jaclyn | Maffetore | 7/29/2024 | 0.6 | lit team call re: objex |
| Jaclyn | Maffetore | 7/29/2024 | 1.8 | reviewing research/feedback re: proposed GAS "experts" |
| Jaclyn | Maffetore | 7/29/2024 | 2.6 | editing draft response to defs designations |
| Jaclyn | Maffetore | 7/30/2024 | 1 | finalizing and filing response to defs' expert filing |
| Jaclyn | Maffetore | 7/30/2024 | 1 | lit team call |
| Jaclyn | Maffetore | 7/30/2024 | 2.7 | reviewing defs opening appeal brief |
| Jaclyn | Maffetore | 7/31/2024 | 1.8 | planning response br |
| Jaclyn | Maffetore | 7/31/2024 | 2 | reviewing defs opening br |
| Jaclyn | Maffetore | 7/31/2024 | 2.2 | legal research re: PLRA issues |
| Jaclyn | Maffetore | 8/1/2024 | 0.5 | legal call w/ KZB |
| Jaclyn | Maffetore | 8/1/2024 | 2.6 | legal research/planning for appellate response br. |
| Jaclyn | Maffetore | 8/2/2024 | 1 | Planning/research re: appellate brief |
| Jaclyn | Maffetore | 8/5/2024 | 1.9 | legal research/planning appellate brief |
| Jaclyn | Maffetore | 8/6/2024 | 2.5 | drafting appellate response brief |
| Jaclyn | Maffetore | 8/7/2024 | 3.5 | drafting appellate response brief |
| Jaclyn | Maffetore | 8/9/2024 | 3.2 | drafting appellate response brief |
| Jaclyn | Maffetore | 8/12/2024 | 4.3 | drafting appellate response brief |
| Jaclyn | Maffetore | 8/13/2024 | 0.6 | lit team meeting re: hearing |
| Jaclyn | Maffetore | 8/13/2024 | 5.1 | drafting/editing appellate response brief for circulation of draft to full team |
| Jaclyn | Maffetore | 8/15/2024 | 2.2 | drafting hearing prep document and sharing to team |
| Jaclyn | Maffetore | 8/16/2024 | 0.2 | team meeting following hearing |
| Jaclyn | Maffetore | 8/16/2024 | 0.8 | remote hearing before J. Cogburn |
| Jaclyn | Maffetore | 8/16/2024 | 1.5 | Hearing prep |
| Jaclyn | Maffetore | 8/19/2024 | 2.1 | editing appellate brief |
| Jaclyn | Maffetore | 8/20/2024 | 1 | drafting revised response re: permanent injunction |
| Jaclyn | Maffetore | 8/20/2024 | 3.4 | editing appellate brief |
| Jaclyn | Maffetore | 8/21/2024 | 3.8 | editing appeal brief |
| Jaclyn | Maffetore | 8/22/2024 | 0.5 | legal call |
| Jaclyn | Maffetore | 8/22/2024 | 5.9 | cite-checking/incorporating others' cite-checks/edits into near-final draft of appellate resp brief |
| Jaclyn | Maffetore | 8/23/2024 | 0.5 | finalizing and filing notice re: permanent injunction order |
| Jaclyn | Maffetore | 8/26/2024 | 4.2 | finalizing appellate response br and filing |
| Jaclyn | Maffetore | 9/10/2024 | 0.5 | lit team call |
| Jaclyn | Maffetore | 9/13/2024 | 0.5 | draft letter to Cogburn re: case status |
| Jaclyn | Maffetore | 9/17/2024 | 2 | reviewing reply brief |
| Jaclyn | Maffetore | 9/23/2024 | 0.5 | reviewing order from court re: remedial process, conf w team re: same |
| Jaclyn | Maffetore | 9/24/2024 | 0.5 | lit team call |
| Jaclyn | Maffetore | 9/24/2024 | 0.7 | emails to team re: court order, scheduling legal call |
| Jaclyn | Maffetore | 9/27/2024 | 0.5 | draft mot to continue |
| Jaclyn | Maffetore | 10/1/2024 | 0.5 | legal call w/ KZB |
| Jaclyn | Maffetore | 10/7/2024 | 0.3 | outreach to opposing counsel/conf w/ team re: pretrial deadlines |
| Jaclyn | Maffetore | 10/22/2024 | 0.6 | litigation team call |

| | | | | |
|---|---|---|---|---|
| Jaclyn | Maffetore | 10/25/2024 | 0.5 | legal call w/ Kanautica |
| Jaclyn | Maffetore | 10/25/2024 | 1.5 | research/drafting MTD appeal (became supplemental brief) |
| Jaclyn | Maffetore | 10/30/2024 | 2.5 | research/drafting MTD appeal (became supplemental brief) |
| Jaclyn | Maffetore | 11/1/2024 | 0.4 | finalizing draft continuance; sending same to opposing counsel; filing same |
| Jaclyn | Maffetore | 11/7/2024 | 0.2 | emails w/ opposing counsel re: missing redactions |
| Jaclyn | Maffetore | 11/7/2024 | 0.8 | lit team call |
| Jaclyn | Maffetore | 11/7/2024 | 2 | reviewing/collecting thoughts re: defs filings; reviewing teams circulated thoughts re: same |
| Jaclyn | Maffetore | 11/8/2024 | 2.5 | planning response |
| Jaclyn | Maffetore | 11/12/2024 | 2.2 | draft/edit 4th cir filing |
| Jaclyn | Maffetore | 11/13/2024 | 3.7 | drafting/editing 4th cir supplemental brief |
| Jaclyn | Maffetore | 11/14/2024 | 0.2 | draft email to opposing counsel re: motion to dismiss appeal |
| Jaclyn | Maffetore | 11/14/2024 | 0.4 | reviewing edits to 4th cir filing |
| Jaclyn | Maffetore | 11/15/2024 | 0.2 | further emails to opposing counsel re: motion to dismiss |
| Jaclyn | Maffetore | 11/15/2024 | 3.5 | plan/draft response to notice of compliance |
| Jaclyn | Maffetore | 11/17/2024 | 3.2 | draft response to notice of compliance |
| Jaclyn | Maffetore | 11/18/2024 | 3.8 | editing/cite-checking 4th cir filing |
| Jaclyn | Maffetore | 11/19/2024 | 0.2 | finalizing motion to dismiss |
| Jaclyn | Maffetore | 11/19/2024 | 0.2 | filing mot to dismiss and supplemental brief |
| Jaclyn | Maffetore | 11/19/2024 | 1 | reviewing tables for 4th cir finalization |
| Jaclyn | Maffetore | 11/19/2024 | 1.4 | revising draft response to notice of compliance |
| Jaclyn | Maffetore | 11/20/2024 | 2.2 | revising draft response to notice of compliance |
| Jaclyn | Maffetore | 6/25/2025 | 2 | compiling my hours for fee petition; culling vague/duplicative entries |
| Jaclyn | Maffetore | 7/2/2025 | 1.8 | researching/drafting fee petition memo |
| Jaclyn | Maffetore | 7/3/2025 | 2.1 | researching/drafting fee petition memo |
| Jaclyn | Maffetore | 7/7/2025 | 2.8 | researching/drafting fee petition memo |
| Jaclyn | Maffetore | 7/8/2025 | 1.1 | legal research re: fee awards similar cases |
| Jaclyn | Maffetore | 7/8/2025 | 3.5 | drafting fee petition memo |
| Jaclyn | Maffetore | 7/9/2025 | 1.2 | drafting fee petition memo;circulating same to team |
| Jaclyn | Maffetore | 7/15/2025 | 2 | further culling time entries for fee petition |
| Jaclyn | Maffetore | 7/16/2025 | 2.2 | editing fee petition |
| Jaclyn | Maffetore | 7/18/2025 | 0.5 | drafting attorney fee motion; circulating same to team |

| | |
|---|---|
| TOTAL: | 1011.1 |
| Fee Petition: | 19.2 |

| First Name | Last Name | Date | Hours | Description |
|---|---|---|---|---|
| Daniel | Siegel | 1/18/2022 | 1 | Team meeting |
| Daniel | Siegel | 1/21/2022 | 1 | Call with client |
| Daniel | Siegel | 1/25/2022 | 0.8 | Review Taylor's complaint edits |
| Daniel | Siegel | 1/25/2022 | 1 | team call |
| Daniel | Siegel | 3/3/2022 | 1 | Client call |
| Daniel | Siegel | 3/8/2022 | 1 | Team meeting |
| Daniel | Siegel | 3/22/2022 | 1.5 | Call with client re case status |
| Daniel | Siegel | 3/24/2022 | 0.2 | Emails with team re arranging in-person visit with client |
| Daniel | Siegel | 3/25/2022 | 0.3 | Emails with team concerning prison denial of Dr. Ettner's visit and potential need for motion to compel |
| Daniel | Siegel | 3/29/2022 | 1 | Team meeting |
| Daniel | Siegel | 4/5/2022 | 0.2 | Review updated complaint |
| Daniel | Siegel | 4/6/2022 | 2.8 | Edit complaint and emails to team re same |
| Daniel | Siegel | 4/12/2022 | 1 | Call with client |
| Daniel | Siegel | 4/19/2022 | 1 | Team meeting |
| Daniel | Siegel | 4/28/2022 | 0.5 | Final review of complaint |
| Daniel | Siegel | 6/24/2022 | 7 | Draft response to defendants' motion to dismiss |
| Daniel | Siegel | 6/27/2022 | 2.8 | Draft response to Defendants' motion to dismiss |
| Daniel | Siegel | 6/28/2022 | 3 | Draft response to Defendants' motion to dismiss |
| Daniel | Siegel | 7/5/2022 | 3.4 | Edit response to MTD |
| Daniel | Siegel | 7/11/2022 | 1.7 | Edit MTD response brief |
| Daniel | Siegel | 8/16/2022 | 2 | Moot for hearing |
| Daniel | Siegel | 8/19/2022 | 2 | Moot for hearing |
| Daniel | Siegel | 9/30/2022 | 0.3 | Review and edit discovery requests |
| Daniel | Siegel | 10/12/2022 | 1 | Interview with Dr. Caraccio |
| Daniel | Siegel | 12/13/2022 | 0.5 | Litigation team meeting |
| Daniel | Siegel | 1/10/2023 | 0.5 | Team meeting |
| Daniel | Siegel | 1/13/2023 | 7 | Depo prep with client; travel to and from Anson CI |
| Daniel | Siegel | 1/24/2023 | 0.5 | Team call |
| Daniel | Siegel | 1/30/2023 | 2 | Edit Ettner expert report |
| Daniel | Siegel | 1/31/2023 | 0.6 | Edit Ettner expert report |
| Daniel | Siegel | 2/1/2023 | 3 | Review Defendants' document production |
| Daniel | Siegel | 2/6/2023 | 0.5 | Review Defendants' document production |
| Daniel | Siegel | 2/14/2023 | 2.5 | Review Defendants' document production |
| Daniel | Siegel | 2/16/2023 | 0.5 | Call with opposing counsel re Rule 35 examination |
| Daniel | Siegel | 2/17/2023 | 0.5 | Review Defendants' Rule 35 motion and brief |
| Daniel | Siegel | 2/18/2023 | 5 | Draft response to Rule 35 motion |
| Daniel | Siegel | 2/19/2023 | 3.7 | Draft response to Rule 35 motion |
| Daniel | Siegel | 2/20/2023 | 1.2 | Revise and circulate Rule 35 response |
| Daniel | Siegel | 2/21/2023 | 1 | Revise Rule 35 response |
| Daniel | Siegel | 2/22/2023 | 0.4 | Call with opposing counsel re 30(b)(6) objections |
| Daniel | Siegel | 2/22/2023 | 2.3 | Revise Rule 35 response |
| Daniel | Siegel | 2/23/2023 | 1 | Revise Rule 35 response |
| Daniel | Siegel | 2/24/2023 | 2.2 | Finalize and file Rule 35 response |
| Daniel | Siegel | 2/27/2023 | 2.8 | Review Defendants' document production |
| Daniel | Siegel | 2/28/2023 | 1 | Team call |
| Daniel | Siegel | 3/1/2023 | 1.5 | Document review |
| Daniel | Siegel | 3/2/2023 | 1.2 | Document review |
| Daniel | Siegel | 3/3/2023 | 1.2 | Document review |
| Daniel | Siegel | 3/27/2023 | 1 | Doc review |
| Daniel | Siegel | 3/28/2023 | 1 | team meeting |
| Daniel | Siegel | 4/12/2023 | 0.5 | Team call re |
| Daniel | Siegel | 5/3/2023 | 0.2 | Edit email to opposing counsel re Rule 35 proposal |
| Daniel | Siegel | 5/5/2023 | 1.5 | Prepare for Harris depo |
| Daniel | Siegel | 5/11/2023 | 3 | Prepare for Harris depo |
| Daniel | Siegel | 5/12/2023 | 2 | Prepare for Harris depo |
| Daniel | Siegel | 5/15/2023 | 1.5 | Prepare for Harris deposition |
| Daniel | Siegel | 5/16/2023 | 3 | Take deposition of Brandeshawn Harris |
| Daniel | Siegel | 5/25/2023 | 0.4 | Meet and confer with opposing counsel re Rule 35 motion and fact discovery issues |
| Daniel | Siegel | 6/26/2023 | 1.7 | Revise mediation statement |

| | | | | |
|---|---|---|---|---|
| Daniel | Siegel | 6/27/2023 | 1 | Team meeting |
| Daniel | Siegel | 6/27/2023 | 1 | Legal call with client |
| Daniel | Siegel | 7/7/2023 | 2.5 | Review Boyd, Penn, and Li expert reports |
| Daniel | Siegel | 7/10/2023 | 1.3 | Review Li report |
| Daniel | Siegel | 7/10/2023 | 1.8 | Review Boyd report |
| Daniel | Siegel | 7/10/2023 | 2 | Review Penn report |
| Daniel | Siegel | 7/11/2023 | 0.5 | Review Boyd report |
| Daniel | Siegel | 7/11/2023 | 0.5 | Review Penn report |
| Daniel | Siegel | 7/11/2023 | 0.5 | Review Li report |
| Daniel | Siegel | 7/21/2023 | 3.5 | Review Boyd report and prepare deposition outline |
| Daniel | Siegel | 7/24/2023 | 1.5 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/25/2023 | 2.7 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/26/2023 | 1.2 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/27/2023 | 2.8 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/28/2023 | 3 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/29/2023 | 2.7 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/30/2023 | 2 | Prepare Dr. Boyd deposition outline |
| Daniel | Siegel | 7/31/2023 | 3.3 | Prepare deposition outline |
| Daniel | Siegel | 8/1/2023 | 0.5 | Prepare for Boyd deposition |
| Daniel | Siegel | 8/2/2023 | 0.6 | Prepare for Boyd deposition |
| Daniel | Siegel | 8/3/2023 | 1.5 | Prepare for Boyd deposition |
| Daniel | Siegel | 8/4/2023 | 5.5 | Take deposition of Dr. Sara Boyd |
| Daniel | Siegel | 8/21/2023 | 5.5 | Draft Daubert brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 8/22/2023 | 2.3 | Draft Boyd Daubert brief |
| Daniel | Siegel | 8/23/2023 | 0.5 | Edit Boyd Daubert brief |
| Daniel | Siegel | 8/24/2023 | 0.5 | Edit Boyd Daubert brief |
| Daniel | Siegel | 8/29/2023 | 0.5 | Team call |
| Daniel | Siegel | 9/18/2023 | 2.5 | Review Junker deposition for summary judgment brief |
| Daniel | Siegel | 9/19/2023 | 1.5 | Review Harris deposition transcript for summary judgment brief |
| Daniel | Siegel | 9/19/2023 | 1.8 | Review Boyd deposition transcript for summary judgment brief |
| Daniel | Siegel | 9/27/2023 | 2.3 | Edit argument section of MSJ brief |
| Daniel | Siegel | 9/28/2023 | 1 | Team call |
| Daniel | Siegel | 9/28/2023 | 1.7 | Edit facts section of MSJ brief |
| Daniel | Siegel | 9/29/2023 | 0.6 | Edit argument section of MSJ brief |
| Daniel | Siegel | 9/29/2023 | 2 | Edit facts section of MSJ brief |
| Daniel | Siegel | 10/2/2023 | 2 | Edit brief in support of summary judgment |
| Daniel | Siegel | 10/3/2023 | 1.8 | Edit brief in support of summary judgment |
| Daniel | Siegel | 10/4/2023 | 2.7 | Edit brief in support of summary judgment |
| Daniel | Siegel | 10/5/2023 | 1.5 | Edit brief in support of summary judgment |
| Daniel | Siegel | 10/6/2023 | 2 | Review Defendants' motion/brief for summary judgment and supporting materials |
| Daniel | Siegel | 10/9/2023 | 3.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/10/2023 | 4.2 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/11/2023 | 3.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/12/2023 | 2.2 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/13/2023 | 0.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/14/2023 | 2 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/15/2023 | 2.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/16/2023 | 1.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/17/2023 | 2.4 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/18/2023 | 1.8 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/19/2023 | 1.3 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/20/2023 | 2.5 | Review Defendants' response in opposition to plaintiff's motion for summary judgment |
| Daniel | Siegel | 10/20/2023 | 2.8 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/21/2023 | 1 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/21/2023 | 3 | Draft reply brief in support of motion for summary judgment |
| Daniel | Siegel | 10/22/2023 | 0.5 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/22/2023 | 3.3 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/23/2023 | 0.8 | Edit brief to exclude testimony of Dr. Penn |
| Daniel | Siegel | 10/23/2023 | 1.3 | Edit brief to exclude testimony of Dr. Li |
| Daniel | Siegel | 10/23/2023 | 2.2 | Draft response in opposition to defendants' motion for summary judgment |

| | | | | |
|---|---|---|---|---|
| Daniel | Siegel | 10/23/2023 | 3.5 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/24/2023 | 0.3 | Edit brief to exclude testimony of Dr. Li |
| Daniel | Siegel | 10/24/2023 | 1.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/24/2023 | 1.5 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/24/2023 | 2.3 | Edit brief to exclude testimony of Dr. Penn |
| Daniel | Siegel | 10/25/2023 | 1 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/25/2023 | 1 | Edit brief to exclude testimony of Dr. Penn |
| Daniel | Siegel | 10/25/2023 | 2.4 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/26/2023 | 1.4 | Draft brief to exclude testimony of Dr. Boyd |
| Daniel | Siegel | 10/26/2023 | 2.5 | Draft response in opposition to defendants' motion for summary judgment |
| Daniel | Siegel | 10/27/2023 | 0.7 | Review Defendants' reply brief in support of motion for summary judgment |
| Daniel | Siegel | 11/7/2023 | 1.5 | Prepare for and participate in moot court for summary judgment hearing |
| Daniel | Siegel | 11/8/2023 | 0.5 | Discuss summary judgment hearing with J Maffetore |
| Daniel | Siegel | 11/8/2023 | 2.5 | Travel from Chapel Hill to Charlotte for summary judgment hearing |
| Daniel | Siegel | 11/9/2023 | 1.5 | Second chair hearing on motions for summary judgment |
| Daniel | Siegel | 11/9/2023 | 2.5 | Travel from Charlotte summary judgment hearing back to Chapel Hill |
| Daniel | Siegel | 12/11/2023 | 0.5 | Review response in opposition to motion to exclude Li |
| Daniel | Siegel | 12/11/2023 | 0.7 | Review response in opposition to motion to exclude Penn |
| Daniel | Siegel | 12/11/2023 | 0.7 | Review response in opposition to motion to exclude Boyd |
| Daniel | Siegel | 12/12/2023 | 0.3 | Review response brief to Boyd Daubert motion |
| Daniel | Siegel | 12/12/2023 | 0.4 | Review Li response to Daubert motion |
| Daniel | Siegel | 12/12/2023 | 2.5 | Outline reply brief in support of Daubert motions |
| Daniel | Siegel | 12/13/2023 | 3.8 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/14/2023 | 3 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/15/2023 | 4 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/16/2023 | 3.5 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/17/2023 | 3.3 | Draft reply brief in support of Daubert motions |
| Daniel | Siegel | 12/18/2023 | 1 | Finalize and file reply brief in support of Daubert motions |
| Daniel | Siegel | 2/2/2024 | 1 | Review order on summary judgment and discuss with team |
| Daniel | Siegel | 2/21/2024 | 3.3 | Draft brief in support of renewed motion for summary judgment. |
| Daniel | Siegel | 2/22/2024 | 5.5 | Draft brief in support of renewed motion for summary judgment. |
| Daniel | Siegel | 2/23/2024 | 5 | Draft brief in support of renewed motion for summary judgment. |
| Daniel | Siegel | 2/24/2024 | 0.5 | Draft brief in support of renewed motion for summary judgment. |
| Daniel | Siegel | 2/26/2024 | 0.5 | Revise brief in support of renewed MSJ |
| Daniel | Siegel | 2/27/2024 | 0.3 | Revise brief in support of renewed MSJ |
| Daniel | Siegel | 2/29/2024 | 0.1 | Review email from opposing counsel requesting extension of time |
| Daniel | Siegel | 2/29/2024 | 0.6 | Finalize and file renewed MSJ and supporting docs |
| Daniel | Siegel | 3/1/2024 | 0.5 | Draft and file response to defendant's motion for extension of time |
| Daniel | Siegel | 3/22/2024 | 0.5 | Team call re renewed MSJ briefing |
| Daniel | Siegel | 3/22/2024 | 0.6 | Review defendants' opposition to plaintiff's renewed MSJ and defendants' renewed MSJ brief |
| Daniel | Siegel | 3/25/2024 | 1 | Edit reply brief in support of renewed MSJ |
| Daniel | Siegel | 3/29/2024 | 1.5 | Edit opposition to defendants' renewed MSJ |
| Daniel | Siegel | 3/30/2024 | 0.5 | Edit opposition to defendants' renewed MSJ |
| Daniel | Siegel | 3/31/2024 | 0.4 | Edit opposition to defendants' renewed MSJ |
| Daniel | Siegel | 4/16/2024 | 0.3 | Review SJ order |
| Daniel | Siegel | 5/21/2024 | 0.5 | Edit response to motion to stay |
| Daniel | Siegel | 5/22/2024 | 2 | Edit response to motion to stay |
| Daniel | Siegel | 7/18/2024 | 0.5 | Review motion for stay pending appeal |
| Daniel | Siegel | 7/18/2024 | 3.4 | Draft response to stay motion |
| Daniel | Siegel | 7/19/2024 | 4 | Draft response to stay motion |
| Daniel | Siegel | 7/20/2024 | 3.3 | Draft response to stay motion |
| Daniel | Siegel | 7/21/2024 | 3.3 | Edit and cite-check response to stay motion |
| Daniel | Siegel | 7/25/2024 | 0.2 | Review order denying stay motion |
| Daniel | Siegel | 7/26/2024 | 0.3 | Review Defendants' proposal for compliance with the permanent injunction |
| Daniel | Siegel | 7/27/2024 | 0.5 | Draft objections to defendants' proposal for evaluating plaintiff |
| Daniel | Siegel | 7/28/2024 | 0.3 | Draft objections to defendants' proposal for evaluating plaintiff |
| Daniel | Siegel | 7/29/2024 | 0.3 | Draft objections to defendants' proposal for evaluating plaintiff |
| Daniel | Siegel | 7/29/2024 | 1 | Review defendants' opening brief |
| Daniel | Siegel | 7/30/2024 | 0.5 | Review defendants opening brief |
| Daniel | Siegel | 7/31/2024 | 2.5 | Outline appellee's brief |

| | | | | |
|---|---|---|---|---|
| Daniel | Siegel | 8/1/2024 | 3 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/2/2024 | 1.5 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/5/2024 | 2.5 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/6/2024 | 4 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/7/2024 | 3.6 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/8/2024 | 3.3 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/9/2024 | 4 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/10/2024 | 0.5 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/12/2024 | 2 | Draft argument section of appellee's brief |
| Daniel | Siegel | 8/14/2024 | 1.5 | Edit facts section of appellee's brief |
| Daniel | Siegel | 8/19/2024 | 2.2 | Edit appellee's brief |
| Daniel | Siegel | 8/20/2024 | 1.4 | Edit appellee's brief |
| Daniel | Siegel | 8/21/2024 | 0.4 | cite check appellee's brief |
| Daniel | Siegel | 8/22/2024 | 2 | cite check appellee's brief |
| Daniel | Siegel | 8/26/2024 | 1.5 | Final review of appellee's brief |
| Daniel | Siegel | 11/15/2024 | 1 | Edit supplemental brief |
| Daniel | Siegel | 11/19/2024 | 0.8 | Edit response to Defs notice of compliance |
| Daniel | Siegel | 7/10/2025 | 1.3 | Edit brief in support of motion for fees |
| Daniel | Siegel | 7/10/2025 | 1 | Draft declaration in support of motion for fees |
| Daniel | Siegel | 7/17/2025 | 0.5 | Edit brief in support of motion for fees |
| Daniel | Siegel | 7/18/2025 | 0.3 | Edit brief in support of motion for fees |
| | | TOTAL | 346.6 | |

# Attachment 2

| Project/Time entry | User | Start date | Time (decimal) |
|---|---|---|---|
| Review documents and prepare notes on documents | Li Nowlin-Sohl | 03/02/2023 | 1.000 |
| Team call re 30b6 deposition, depositions, and discovery | Li Nowlin-Sohl | 03/07/2023 | 0.800 |
| Team call re 30b6 deposition strategy and outlines | Li Nowlin-Sohl | 03/09/2023 | 0.500 |
| Review documents from Defendants and prepare notes on documents | Li Nowlin-Sohl | 03/09/2023 | 1.900 |
| Call with team re discovery and depositions | Li Nowlin-Sohl | 03/14/2023 | 1.000 |
| Team call re discovery, depositions, and mediation | Li Nowlin-Sohl | 03/28/2023 | 1.000 |
| Review documents for Hahn deposition and prepare deposition outline | Li Nowlin-Sohl | 04/02/2023 | 3.000 |
| Prepare Dr. Hahn deposition outline | Li Nowlin-Sohl | 04/04/2023 | 2.900 |
| Prepare Dr. Hahn deposition outline | Li Nowlin-Sohl | 04/06/2023 | 3.300 |
| Revise and finalize Dr. Hahn deposition outline | Li Nowlin-Sohl | 04/10/2023 | 2.300 |
| Conduct Dr. Hahn Deposition | Li Nowlin-Sohl | 04/11/2023 | 7.800 |
| Team call regarding discovery, depositions, and litigation strategy | Li Nowlin-Sohl | 05/09/2023 | 0.800 |
| Team call re mediation and discovery | Li Nowlin-Sohl | 06/28/2023 | 0.300 |
| Review Dr. Li report and prepare notes re same | Li Nowlin-Sohl | 07/15/2023 | 2.700 |
| Review and comment on Antommaria rebuttal report | Li Nowlin-Sohl | 08/01/2023 | 1.500 |
| Review and comment on Antommaria rebuttal report | Li Nowlin-Sohl | 08/02/2023 | 0.800 |
| Prepare outline for Dr. Li Deposition | Li Nowlin-Sohl | 08/03/2023 | 5.600 |
| Review and provide final comments to Antommaria rebuttal report | Li Nowlin-Sohl | 08/06/2023 | 1.300 |
| Prepare outline for Dr. Li Deposition | Li Nowlin-Sohl | 08/07/2023 | 4.600 |
| Team call re litigation strategy, summary judgment, and depositions | Li Nowlin-Sohl | 08/23/2023 | 1.000 |
| Prepare Dr. Antommaria for deposition | Li Nowlin-Sohl | 09/05/2023 | 1.100 |
| Defend deposition of Dr. Antommaria | Li Nowlin-Sohl | 09/07/2023 | 2.000 |
| Prepare Daubert motion re Dr. Li | Li Nowlin-Sohl | 10/21/2023 | 4.000 |
| Prepare Daubert motion re Dr. Li | Li Nowlin-Sohl | 10/22/2023 | 3.500 |
| Revise Daubert motion re Dr. Li | Li Nowlin-Sohl | 10/23/2023 | 4.800 |
| Review and take notes on Sheitman deposition in preparation for cross examination | Li Nowlin-Sohl | 02/08/2024 | 2.900 |
| Prepare Sheitman cross examination outline | Li Nowlin-Sohl | 02/12/2024 | 1.500 |
| Prepare Sheitman cross examination outline | Li Nowlin-Sohl | 02/13/2024 | 4.400 |
| Review and revise direct examination outline for Dr. Ettner | Li Nowlin-Sohl | 02/14/2024 | 2.100 |
| Hearing preparation meeting with Dr. Ettner | Li Nowlin-Sohl | 02/14/2024 | 2.000 |
| Revise Sheitman cross examination outline | Li Nowlin-Sohl | 02/15/2024 | 2.700 |
| Hearing prep call with team | Li Nowlin-Sohl | 02/17/2024 | 0.900 |

# Attachment 2

| Project/Time entry | User | Start date | Time (decimal) |
|---|---|---|---|
| Prepare for evidentiary hearing | Li Nowlin-Sohl | 02/20/2024 | 1.000 |
| Evidentiary Hearing | Li Nowlin-Sohl | 02/20/2024 | 3.800 |
| Review and revise renewed motion for summary judgment | Li Nowlin-Sohl | 02/27/2024 | 0.700 |
| Team call re response to motion for summary judgment strategy | Li Nowlin-Sohl | 03/22/2024 | 0.600 |
| Compile time for fee motion | Li Nowlin-Sohl | 07/14/2025 | 0.700 |
| **Total** | | | **82.800** |

| First Name | Last Name | Date | Hours | Notes |
|---|---|---|---|---|
| Michele | Delgado | 4/8/2022 | 2.2 | Drafted Declaration of Jaclyn |
| Michele | Delgado | 4/15/2022 | 3 | Legal research on PRLA physical injury requirement as it relates to supplemental claims |
| Michele | Delgado | 4/18/2022 | 2 | Legal research on PRLA physical injury requirement as it relates to supplemental claims |
| Michele | Delgado | 4/19/2022 | 2 | Legal research on PRLA physical injury requirement as it relates to supplemental claims |
| Michele | Delgado | 4/21/2022 | 0.3 | Adopted edits for the declaration and did a final review |
| Michele | Delgado | 6/29/2022 | 6.7 | Draft my section of the Response to the MTD brief |
| Michele | Delgado | 6/30/2022 | 7.5 | Continued to draft and conduct research for my portion of the response brief for the MTD |
| Michele | Delgado | 7/1/2022 | 7.4 | Draft response brief for the MTD |
| Michele | Delgado | 7/5/2022 | 3 | Edit brief responding to MTD |
| Michele | Delgado | 7/11/2022 | 1.5 | Final review and edits to response to MTD |
| Michele | Delgado | 7/20/2022 | 1 | Drafted Motion for Extension |
| Michele | Delgado | 7/21/2022 | 1 | Edit and file Motion for Extension and Proposed Order |
| Michele | Delgado | 10/21/2022 | 1 | Draft initial disclosures |
| Michele | Delgado | 10/24/2022 | 1 | Research for initial disclosures |
| Michele | Delgado | 10/25/2022 | 1 | Finalize initial disclosure |
| Michele | Delgado | 10/27/2022 | 1 | Edit initial disclosures |
| Michele | Delgado | 1/5/2023 | 3 | Drafted joint motion to extend for dispositive motions |
| Michele | Delgado | 2/2/2023 | 3 | Doc Review |
| Michele | Delgado | 2/3/2023 | 3 | Reviwed Discovery |
| Michele | Delgado | 2/6/2023 | 3 | Doc review |
| Michele | Delgado | 2/7/2023 | 3 | Doc review |
| Michele | Delgado | 2/9/2023 | 2 | Doc review. |
| Michele | Delgado | 2/10/2023 | 2.5 | Doc review. |
| Michele | Delgado | 2/13/2023 | 3 | Doc review |
| Michele | Delgado | 2/14/2023 | 3 | Doc Review |
| Michele | Delgado | 2/15/2023 | 2 | Doc review. |
| Michele | Delgado | 2/16/2023 | 5.8 | Doc review |
| Michele | Delgado | 2/17/2023 | 5.8 | Doc Review |
| Michele | Delgado | 2/23/2023 | 6.1 | Doc Review |
| Michele | Delgado | 2/27/2023 | 6 | Doc Review |
| Michele | Delgado | 2/28/2023 | 5 | Doc Review |
| Michele | Delgado | 3/1/2023 | 4.7 | Doc Review |
| Michele | Delgado | 3/2/2023 | 3.4 | Doc Review |
| Michele | Delgado | 3/3/2023 | 7.5 | Doc Review |
| Michele | Delgado | 3/6/2023 | 4.5 | Doc Review |
| Michele | Delgado | 3/7/2023 | 4.8 | Doc Review |
| Michele | Delgado | 3/8/2023 | 6.4 | 30(B)(6) Outline drafting |
| Michele | Delgado | 3/9/2023 | 5.7 | Doc review for Outline for 30(b)(6) |
| Michele | Delgado | 5/10/2023 | 3 | Drafting catlett depo outline |
| Michele | Delgado | 5/11/2023 | 2.5 | draft catlett depo outline |
| Michele | Delgado | 5/12/2023 | 0.1 | Draft notice of deposition |
| Michele | Delgado | 5/12/2023 | 3.5 | draft catlett depo outline |
| Michele | Delgado | 5/15/2023 | 3 | Review of additional discovery documents in preparation of catlett depo |
| Michele | Delgado | 5/17/2023 | 1 | final review and edits of catlett depo outline |
| Michele | Delgado | 5/18/2023 | 4 | Deposition of Terri Catlett |
| Michele | Delgado | 5/18/2023 | 4 | Catlett Deposition |
| Michele | Delgado | 5/19/2023 | 3.4 | Reviewed Kanautica's transcript for confidential designations |
| Michele | Delgado | 6/22/2023 | 0.6 | Reviewed docs and outlined questions for Bowman deposition |
| Michele | Delgado | 6/29/2023 | 0.7 | Catlett transcript review and designations |
| Michele | Delgado | 6/29/2023 | 3.5 | Bowman deposition |
| Michele | Delgado | 9/26/2023 | 1.3 | Drafted Motion for SJ |
| Michele | Delgado | 9/26/2023 | 1.6 | Reviewed Catlett's Transcript for quotes for SJ outline |
| Michele | Delgado | 9/27/2023 | 1.9 | Reviewed Bowman's Transcript for quotes for SJ outline |
| Michele | Delgado | 9/28/2023 | 0.2 | Edit draft motion for partial SJ |
| Michele | Delgado | 9/28/2023 | 0.5 | Reviewed legal portion of SJ brief |
| Michele | Delgado | 9/28/2023 | 0.9 | Marked designations from Catlett and Bowman transcripts |

| | | | | |
|---|---|---|---|---|
| Michele | Delgado | 9/28/2023 | 1.5 | Add to and edited facts section of SJ brief |
| Michele | Delgado | 10/4/2023 | 0.1 | Edit SJ motion |
| Michele | Delgado | 10/5/2023 | 0.9 | Edit SJ brief |
| Michele | Delgado | 10/25/2023 | 2.2 | Cite checking reply to MSJ brief |
| Michele | Delgado | 12/18/2023 | 1.2 | Cite checking reply brief |
| Michele | Delgado | 1/4/2024 | 1.8 | Drafting stipulation of facts |
| Michele | Delgado | 1/9/2024 | 4.1 | Drafting Stipulations of Fact |
| Michele | Delgado | 1/16/2024 | 0.2 | Edit Stipulation of Facts |
| Michele | Delgado | 2/12/2024 | 1 | Research and draft writ |
| Michele | Delgado | 3/14/2024 | 0.8 | Drafted a motion to continue trial |
| Michele | Delgado | 7/18/2024 | 0.3 | Research moot question |
| Michele | Delgado | 8/22/2024 | 3.6 | Cite checked 4th circuit brief |
| Michele | Delgado | 9/16/2024 | 3.1 | Researched prevailing party status |
| Michele | Delgado | 9/17/2024 | 5 | Researched prevailing party status |
| Michele | Delgado | 10/30/2024 | 0.5 | Draft Joint MTC |
| Michele | Delgado | 11/18/2024 | 0.6 | Cite checked supplemental brief |
| Michele | Delgado | 11/20/2024 | 0.9 | Cite checked response to notice of compliance |
| Michele | Delgado | 12/2/2024 | 1.5 | Draft motion to extend time for attorneys fees |
| | | | **199.8** | |

**Fee Petition (Non-Taxable Items)**

| Category | Item | Date | Cost |
|---|---|---|---|
| Attorney travel expenses | | | |
| Transportation, Mileage, & Parking | Jaclyn Maffetore, Budget Rent-A-Car - rental car for client visit at Anson CI (124 miles away 1 way) | 4/30/2022 | $123.49 |
| | Jaclyn Maffetore, GAS - Sheetz: gas to top up rental car for trip to Anson CI for client visit | 4/30/2022 | $19.51 |
| | Jaclyn Maffetore, GAS - Sheetz, Incgas to top up rental car for return following trip to Charlotte Airport and Anson CI | 5/31/2022 | $16.83 |
| | Jaclyn Maffetore, GAS - Circle K: gas for rental car for trip to Charlotte Airport and Anson CI | 5/31/2022 | $32.98 |
| | Jaclyn Maffetore, Enterprise Rent A Car - rental car for trip to pick up expert at Charlotte Airport and drive to client evaluation at Anson CI | 5/31/2022 | $86.83 |
| | Jaclyn Maffetore, Enterprise Rent-A-Car - rental receipt for trip to Anson CI to have client sign documents | 6/30/2022 | $121.88 |
| | Jaclyn Maffetore, GAS - Sheetz: gas to top up rental car for trip to Anson CI to have client sign documents | 6/30/2022 | $40.14 |
| | Jaclyn Maffetore, Hertz Rent A Car - rental car to drive to CLT for hearing | 8/31/2022 | $97.56 |
| | Jaclyn Maffetore, GAS - Sheetz #647: gas to fill up rental car to CLT prior to return | 8/31/2022 | $31.22 |
| | Michele Delgado, MILEAGE - 188.2 mi @ $0.625 / mi: MTD and PI Hearing | 8/31/2022 | $117.63 |
| | Jaclyn Maffetore, PARKING - Epicentre - Preferred Parking: overnight deck parking in downtown CLT for hearing | 8/31/2022 | $30.00 |
| | Michele Delgado, MILEAGE - 186.29 mi @ $0.625 / mi; MTD and PI Hearing | 8/31/2022 | $116.43 |
| | Michele Delgado, Parking - MTD and PI Hearing | 8/31/2022 | $13.00 |
| | Dan Siegel, MILEAGE - 247.33 mi @ $0.625 / mi: Travel to and from prison for depo prep | 1/31/2023 | $154.58 |
| | Dan Siegel, MILEAGE - 233.26 mi @ $0.625 / mi: Trip to and from deposition | 1/31/2023 | $152.79 |
| | M.Delgado CC, Uber - Uber to Dan's for Carpooling to Prison for Depo | 1/31/2023 | $58.62 |
| | M.Delgado CC, Uber - Uber back from Dan's for KZB Depo | 1/31/2023 | $63.23 |
| | M.Delgado CC, Uber - Uber Tip Charged Separately (KZB Depo) | 1/31/2023 | $15.80 |
| | D.Siegel CC, PARKING - Cityparking Inc.: Parking in Richmond | 1/31/2023 | $15.00 |
| | J. Maffetore CC, PARKING - State Parking Div Visito; parking for Peiper deposition | 5/31/2023 | $12.00 |
| | J. Maffetore CC, PARKING - State Parking Div Visito; parking for Junker deposition | 5/31/2023 | $16.00 |
| | D. Siegel CC, PARKING - Daniel S. Mclaurin Parking Municipaparking for Junker depo | 5/31/2023 | $14.00 |
| | M. Delgado CC, PARKING - State Parking Div Visito: Parking Deck | 5/31/2023 | $8.00 |
| | M. Delgado CC, PARKING - State Parking Div Visito; Parking Deck | 5/31/2023 | $8.00 |
| | J. Maffetore CC, PARKING - State Parking Div Visito: parking for Catlett deposition | 5/31/2023 | $12.00 |
| | M. Delgado CC, PARKING - State Parking Div Visito; Parking Deck | 5/31/2023 | $12.00 |
| | M. Delgado CC, Parking - Parking Deck Expense for Deposition | 6/30/2023 | $8.00 |
| | Maffetore CC, PARKING - State Parking Div VisitorParking for Michele Delgado for mediation m | 7/31/2023 | $16.00 |
| | Maffetore CC, PARKING - Hilton Palmer Houser: Parking for mediation | 7/31/2023 | $16.00 |
| | Siegel CC, PARKING - The Carpark Munici: Parking for mediation | 7/31/2023 | $14.00 |
| | Maffetore CC, PARKING - parking for deposition of Dr. Boyd at DOJ | 8/31/2023 | $10.00 |
| | Siegel CC, PARKING - Parking for Dr. Boyd depo | 8/31/2023 | $12.00 |
| | Delgado CC, PARKING - State Parking Div Visito: Parking Deck - Dr. Penn's Deposition | 8/31/2023 | $18.00 |
| | Siegel CC, PARKING - parking for Penn depo | 8/31/2023 | $16.00 |
| | Maffetore CC, PARKING - Parking for deposition of Dr. Penn at DOJ | 8/31/2023 | $18.00 |
| | Maffetore CC, PARKING - State Parking Div Visitor: Parking for deposition of Dr. Li at DOJ | 8/31/2023 | $12.00 |
| | Dan Siegel, MILEAGE - 289.31 mi @ $0.655 / mi: Travel to and from Charlotte for summary judgment hearing | 11/30/2023 | $150.00 |
| | M. Delgado CC, Parking - Parking Lot Expense for SJ Hearing | 11/30/2023 | $17.00 |
| | D. Siegel CC, Parking - Overnight parking | 11/30/2023 | $42.00 |
| | Jaclyn Maffetore, Mileage - mileage to/from hearing in wdnc - permission from KG to drive own car alone due to illness and logistical difficulty getting rental | 11/30/2023 | $213.15 |
| | Dan Siegel, MILEAGE - 288.36 mi @ $0.67 / mi: Travel to and from Charlotte for SJ hearing | 2/29/2024 | $150.00 |
| | M.Delgado CC, PARKING - Parking Lot - Evidentiary Hearing | 2/29/2024 | $17.00 |
| | L.Robbins CC, PARKING - Pps - Surface Lot":Parking for KZB Hearing | 2/29/2024 | $17.00 |
| | Jaclyn Maffetore, MILEAGE - 313.57 mi @ $0.67 / mi: max $150 in mileage for using own car for evidentiary hearing at WDNC, resubmitted due to not attaching map | 2/29/2024 | $150.00 |
| | J.Maffetore CC, Parking - Parking for KZB evidentiary hearing | 2/29/2024 | $17.00 |
| | J. Maffetore CC, PARKING - Doa State Parking Div: parking for mediation | 3/31/2025 | $10.00 |
| | J. Maffetore CC, PARKING - Doa State Parking Div:client parking for mediation | 3/31/2025 | $10.00 |
| | J. Maffetore CC, PARKING - Doa State Parking Div: parking for mediation | 3/31/2025 | $4.00 |
| | D. Siegel CC, PARKING - Doa State Parking Div: | 3/31/2025 | $10.00 |
| | M. Delgado CC, PARKING - Parking Deck - KZB Mediation | 3/31/2025 | $10.00 |
| | M. Delgado CC, PARKING - Parking - Status Conference | 4/30/2025 | $14.00 |
| | D. Siegel CC, PARKING - Pps - Surface Lot: Parking for status conference | 4/30/2025 | $15.00 |
| | Michele Delgado, MILEAGE - 360.07 mi @ $0.70 / mi: Mileage - Status Conference | 4/30/2025 | $150.00 |
| | Jaclyn Maffetore, MILEAGE - 313.75 mi @ $0.70 / mi: travel to/from status fonference at WDNC courthouse | 5/31/2025 | $150.00 |
| Accommodations & Hotels | Jaclyn Maffetore, HOTEL - Aloft: hotel for morning hearing in Charlotte | 8/31/2022 | $165.55 |
| | J. Maffetore CC, HOTEL - Residence Inn for summary judgment hearing at wdnc | 11/30/2023 | $273.14 |
| | D. Siegel CC, Hotel - Hotel | 11/30/2023 | $295.04 |
| | J. Maffetore CC, HOTEL - Residence Inn overnight parking | 11/30/2023 | $29.00 |
| | L.Robbins CC, HOTEL - Doubletree Hotels: Hotel stay for Michele Delgado for hearing | 2/29/2024 | $214.56 |
| | L.Robbins CC, HOTEL - Doubletree Hotels: Hotel stay for Jaclyn Maffetore for hearing | 2/29/2024 | $200.67 |
| | L.Robbins CC, HOTEL - Doubletree Hotels: Hotel stay for Dan Siegel for hearing | 2/29/2024 | $214.56 |
| Postage for client communications | L.Robbins CC, USPS - Mailing of SJ to KZB | 5/31/2024 | $9.85 |
| | L.Robbins CC, USPS - Overnight mailing docs back to KZB | 5/31/2024 | $30.45 |
| | J.Maffetore CC, USPS - mailing appeal document overnight to client due to emergency deadline | 5/29/2024 | $30.45 |
| **TOTAL** | | | **$4,138.94** |

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS, et al.<br><br>Defendants. | ) | DOCKET NO. 3:22-cv-191 |

TRANSCRIPT OF MOTION FOR ATTORNEYS' FEES
BEFORE THE HONORABLE MAX O. COGBURN, JR.
UNITED STATES DISTRICT COURT JUDGE
AUGUST 26, 2025

APPEARANCES:

On Behalf of the Plaintiff:

Michele Delgado
Jaclyn Maffetore
Daniel Kohle Siegel
ACLU of NC Legal Foundation
P.O. Box 28004
Raleigh, North Carolina 27611

On Behalf of the Defendants:

Stephanie Ann Brennan
Michael Elmer Bulleri
North Carolina Department of Justice
114 W. Edenton Street, P.O. Box 629
Raleigh, North Carolina 27603

Deborah Cohen-Rojas, R.D.R., C.R.R., F.C.R.R.
Official Court Reporter
Deborah_CohenRojas@ncwd.uscourts.gov 704.350.7497
*Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.*

THE COURT: So have you guys settled this thing?

MS. MAFFATORE: No, your Honor.

THE COURT: I always think that's the best thing to do in these situations, so -- I'll hear brief argument. I've been thinking about what I want to do in this case. So if you all want to saying something for the record, go ahead. Everybody's got good papers here, by the way.

MS. MAFFATORE: Thank you, your Honor.

THE COURT: Both sides. Both sides have done their -- made their position clear.

MS. MAFFATORE: Your Honor, can you hear me okay?

THE COURT: I can.

MS. MAFFATORE: Okay. So thank you for hearing us, your Honor. Plaintiff is entitled to reasonable attorneys' fees here as prevailing party of her Eighth Amendment claim, for which this Court granted summary judgement and entered permanent injunctive relief.

As your Honor recognized, what we saw here was, in part, a constitutional process that ultimately should have resulted in the provision of medical care. The parties dealt a robust factual record for this Court and demonstrated that the process at issue here was no process at all. It was a sham process, as this Court recognized, and it violated the Eighth Amendment to the United States Constitution.

This Court thereafter entered a permanent injunction

finding that plaintiff had achieved actual success on the merits of her claim and required the defendants revaluate plaintiff for her surgery that she sought.

Compensating this success is allowed for and would serve the purposes of Section 1988. Plaintiff's counsel here seeks a total of $526,207.50 for a total of 2,004.6 hours. This figure already takes into account the fact that plaintiff did not achieve complete success on all of her claims in this case. It already represents a 42 percent reduction in the total number of hours spent on this case by the five counsel who have submitted billing records here.

Plaintiff has also sought reasonable expenses and has submitted a bill of costs. No argument has been made against those costs or expenses, and we believe that those costs and expenses should be awarded. And unless your Honor has specific questions, I can start with the prevailing party.

THE COURT: Yeah -- well, yeah. I'm gonna let them -- I'll hear from the other side. I don't need a lot of extensive stuff on this.

But what do you say to the two-rate situation? That is, the change in the rates.

MS. BRENNAN: Your Honor, we had pointed out that there were a couple district courts in this circuit that have used the different years --

THE COURT: Uh-huh.

MS. BRENNAN: -- to calculate the rate, and that seems appropriate to us, given that you have to stick with what the statute allows under the PLRA.

THE COURT: Yeah. And courts have done it both ways, but I think it's -- I think splitting it up -- whatever the rate was at the time to do the work, is the best way to do it.

MS. BRENNAN: Right. We obviously don't think you get there because we think Stinnie controls in this case.

THE COURT: Right. Well, I think you're wrong. I think they are the prevailing party, although it's on a -- it's only on a portion of that.

And let's face it. Ms. -- although there was a constitutional issue here that the plaintiff prevailed on, ultimately -- ultimately -- the plaintiff did not get any relief about getting the surgery. And so that was really what this case is about. I mean, it's based in the constitutional thing.

The reason that you get attorneys' fees is because we've got to get lawyers to bring these constitutional things up where there will not be big rewards and big money and big things. We've got to encourage people to do that.

So I am going to find -- I am going to find that they have prevailed, and you certainly can appeal if you want to, but I do believe there are two things at play here. I think the double -- I think the two rates -- and then how much is it --

should it be reduced by the fact of where the success was and where the failure was with regard to what was brought in the case and what happened up till that time.

I do realize that there were several things at play. But doing the complaint is going to be the same thing as -- I mean, depending -- no matter what it is. I mean, most complaints -- although you have to -- you have to fix them to meet the -- to meet the particular case. Almost everybody has a group of complaints and things like that that they push the button. I mean, go in a place and try to get your estates and trust done, and the person goes in and pushes a button and charges you $25,000. So there's a lot of stuff that goes into these things that's already been done, but there was a lot of work done here.

And I do congratulate the State on changing its makeup of its panel, particularly for this case. I don't know that the doctor that held -- that was the head of that -- and I've forgotten his name -- was bad in any other kind of cases, but he had a thing about these, and he was not able to see past that in order to do that.

He should have recused himself and said, look, I don't think this ought to ever happen, I think there's something wrong here, I don't agree with it, all that. And, you know, he's in the group of people who believe that this is a moral failing instead of a birth failing. Something happens. If

somebody is born in the body of one person -- of one sex and believes it's in another sex, something has gone wrong. And it's real. It's not a moral failing. And he should have stepped aside.

Thankfully, the State had changed it, but the result was the same in terms of looking at what Zayre-Brown's situation was. And I sort of thought that might be the way it came out. I mean, the times that I saw the plaintiff, the plaintiff did not look like they were an extremist, but -- but that's -- I'm not an expert in that field. That's why it was left to experts in that field. It's just my own view and common sense of it.

But this is a real constitutional issue. What some people didn't understand -- I'm not sure all the judges at the Court of Appeals understood -- this was about process, not findings. It was about process. I was making no opinion about whether I thought that surgery ought to happen.

And I was more than willing to allow a fair panel to make the call for the State. But you -- there's no way a panel led by a person who believes that it can never be a cause, when the North Carolina law says it could be -- and then these panels led by him was o-fer in finding it, zero. Now, his group said, we will -- we're not going to go that way and say it can never happen. But then they found again, to keep the record perfect, that they never found a reason for this surgery.

So this was about process. It has to be fair. Everybody

has to be fair. It's -- they have a constitutional right to a fair hearing, not a result, but a fair hearing. These folks brought it, and thankfully my state changed to make sure that this is a fair process because I think we have to be fair in North Carolina on what we do.

And I realize there are still people in the state government -- may not be you -- that thinks that there's something wrong with these people. Well, if whatever -- they -- it may be, but it's a health issue, and it's an issue that occurred at birth.

And we would be better off in getting all these things done if we would quit trying to create multiple, thousands of genders out there. Gender is determined by chromosomes, X and Y, and X and X. Now, defects result in people with those chromosomes believing they're something else, and they have a right to live that way as long as they don't interfere with absolutely everybody else's enjoyment of stuff.

And so I'm going to find -- now, you can stand up for three hours. I'm going to find they're the prevailing party. Now, what do we do with the amount -- I'm going to -- I'd rather you all work this out because I feel like that's -- because of that, that this -- that the 500-some-thousand or whatever feels like a lot to me because I come from a day when lawyers charged for what they did and not what their paralegals did. Their paralegals and secretaries work was taken into

account into their hours. But now, I get things where the paralegals are charged more than some lawyers charged back in the time when I was practicing.

MS. BRENNAN: Well, your Honor, I will preserve our argument on Stinnie. That might make this difficult for us to settle because that is an important legal issue that extends, I think, beyond this case in terms of the State's perspective because we believe that there has been a change, a significant change, in the law because of that Supreme Court case that took into account the policy concerns that you raised, that are valid policy concerns, and rejected that and said that we're not going to --

THE COURT: But this case was decided now. I realize, when it goes to the Supreme Court, they can issue an emergency order that doesn't give a reason at all as to why they came up with that and do whatever they want to do. And I realize that we're at a day now when there's going to be changes on down the road. But I'm going to say this. This case was decided upon at that time. They prevailed at that time. This case is over, and they prevailed.

So you can go ahead and appeal this if you want to, and you certainly can do that. You can keep going all the way up and take the position that North Carolina can do any damn thing it wants to do with the prisoners. Keep bringing me those cases, and you better give them a fair hearing because I'll

keep coming back at it and keep coming back at you.

MS. BRENNAN: And --

THE COURT: And I don't care what the administration does. It can send people to anywhere in this world that it wants to send people to. And if the Supreme Court says it's okay for as long as they're going to keep doing it, they can -- they can -- you know, I don't know what we're going to do in this country. But the courts are going to have to be fair to the citizens of North Carolina. We are not in a dictatorship in this state or in this country.

MS. BRENNAN: I understand, your Honor, and I appreciate that. We obviously want the courts to be good and fair and give people a fair shake, but also for the law to be applied. And the law is now the decision in Stinnie, which is what we're going to preserve, which is an opportunity for us to protect the State's purse in some of these cases, which we do have an obligation to do.

THE COURT: So that's why I say that you ought to settle the case. Rather than have me find a dollar amount -- they know you're going to appeal, and I have no idea what's going to happen on appeal, and you don't, either. Okay?

And so I think both sides ought to talk about this, rather than have me go forward. I am prepared -- I'm not going to -- by finding that -- I'm not going to be finding $530,000-some. I don't know what I'm going to do. But I go with your argument

that it should be two rates, and I go with your argument that it ought to be considered, depending on how big a win it was and what parts they lost.

Now, why don't you all sit together and come up with the right amount? Because if I come up with an amount, I'm sure it will be higher than what you want, and they may go, oh, that's wonderful, until the Court of Appeals gets a hold of it. And maybe they'll say, okay, that's fine, and maybe they'll say no.

MS. BRENNAN: I will certainly take back to my clients your Honor's strong suggestion that we do that and talk --

THE COURT: And if you don't -- if you don't, I'll -- I will come up and -- I'll come up with what I think is the decision, and then you can take it back. And it may be the courts nowhere will give money to anybody, and the State can do anything it wants and never have to pay for what it did.

The State should have realized in this case that it had a defective panel. It should have realized, but it did not and -- until later, until these people forced the State to do that.

So I do -- I believe that they certainly were on a prevailing party in this case, even though it was only on that one piece. But it was really on the most important piece to the Court, and that's the constitutional right to have a fair hearing. The State of North Carolina violated that. And if you want more opinions to go forward and be written up there on

what happened, then you can do that. The State of North Carolina has to do what it's supposed to do. You did it when you finally changed the panel, at least for these cases.

I'm not saying that that doctor could not necessarily be fair, although I heard his testimony here, and his testimony in this case, though he could probably find it, I found not to be worthy of belief given his public, prior writings and prior findings. He prior said I could never find that as being -- as happening and tried to get his committee to do that.

He then never, never found any of these people should get that surgery. Maybe that's the right -- maybe that was right in all those cases. I don't know. But he wasn't a fair one to make the hearing. And then he got into my courtroom and said he could find it. Oh, come on. No jury would find that he was telling the truth, and I didn't, either.

MS. BRENNAN: I understand, your Honor. And we're -- I won't re-argue Stinnie. We'll rest on our briefs for that purpose, recognizing that, at the close of the case, there's no enforceable order that forces any of that. I mean, yes, our client has voluntarily --

THE COURT: I know that.

MS. BRENNAN: -- taken him off, but that's not something that's legally --

THE COURT: And that's why I'm -- that's why I'm congratulating the State of North Carolina for doing that, but

you wouldn't have done that but for this case. In other words, that didn't just happen, oh, one day. You know, we've read what he wrote and, because of that, we're going to change this. No, you made those changes, which are good changes, because these folks brought this case.

MS. BRENNAN: I take your point. You know, I think that's similar to some of the cases, including Stinnie, where they said, even if you effectuate a change, if you don't get relief at the end of the case, that doesn't count.

THE COURT: Right.

MS. BRENNAN: So what we're looking at is whether there's a legal change at the end. But, again, I accept your Honor's position on Stinnie. I would like to be heard briefly on the amount, if Your Honor --

THE COURT: Yeah, I will. I'll hear from you briefly, but what I'm hoping you do is you negotiate with those folks. And if it doesn't work, then I'll -- and I may have a -- listen to what you're saying or somewhere in there or you can maybe work something out with them because I don't think it's going to be productive for everybody to be spending their time and money going to the circuit.

MS. BRENNAN: I hear you. And I will certainly convey that to our client.

So I will just be very brief on the issue of the amount of fees, given that your Honor has indicated that you would award

some fees.

THE COURT: Yeah. And I've read every -- you all have written excellent papers, and I've got your arguments. These folks have excellent arguments, too, and it's a -- we'll see what happens --

MS. BRENNAN: Yeah. I think --

THE COURT: -- if we don't come up with something in this.

MS. BRENNAN: Just to make a couple very brief points, I think Hensley is very clear that the degree of success does have to be taken into account as the most important factor.

THE COURT: It does. It does. If I don't do that -- if I don't do that, I will get reversed.

MS. BRENNAN: And while the -- your Honor focused on an important issue of the procedure, that was not the thing that she has focused on and wanted in this case. I mean, she came to this Court because she wanted gender-affirming surgery or damages. With respect to the surgery, she never achieved that through this case --

THE COURT: That's true.

MS. BRENNAN: -- she leaves without it. And with respect to damages, she abandoned those claims and chose not to pursue them. And that's pretty significant because she could have.

The plaintiff makes a lot of out of the fact that this got

mooted. You know, obviously that's the passage of time and her release and some of those factors and then how long litigation takes, which -- you know, you can look at different things that happen, but litigation does take time. And she was released, and, therefore, the injunction was mooted, and it was vacated by the Fourth Circuit.

But she had the opportunity after that to pursue claims that were still remaining for damages and to prove that she deserved to get damages in this case, and she elected to abandon all of those claims and not to pursue them after years of litigation. So in that sense, too, she was not pre -- maybe -- she didn't prevail on those claims. And it's a significant thing, such that it warrants a large reduction in fees.

THE COURT: Okay. Okay. Let me hear from the -- let me hear from the plaintiff.

MS. MAFFATORE: Thank you, your Honor.

So first, I would just note that we did, in fact, in our complaint seek a declaration that defendants' practices in obstructing and denying plaintiff's adequate, necessary medical treatment and accommodations for gender dysphoria violated her constitutional rights. So that was something that we did seek at the outset for plaintiff in this case. And she did --

THE COURT: And that's where -- and that's where you succeeded. That's why -- that's -- it's based on that that I'm

finding you're a prevailing party. The case law is you don't have to prevail on everything. And they make -- and they make -- they make good arguments about what things did not work out.

And ultimately there was no money passing to the plaintiff in this thing, but it's a very significant thing. A constitutional violation is a very significant thing. And that's why we -- I mean, we have all sorts of cases brought where we award attorneys' fees in those cases, so the constitutional issues are brought up, even where -- even where the -- the remedy in terms of damage -- money damages is small, but in changing process and changing things is not.

And, yes, they did -- they did voluntarily make that change, but if there's anybody -- if we asked a hundred people whether that change would have happened without this lawsuit, I believe the hundred people would say no. This lawsuit is totally responsible for that change and, therefore, you are a prevailing party in this Court -- in this Court's view.

Now, they're going to appeal. If I give them $530,000-something, they're going to appeal. If you all can negotiate something -- you'll have to negotiate. Otherwise, I will give an award, and it's going to be less than that. I will not opine what it will be because -- or even in the area because I want both sides to be able to negotiate in good faith. And I hope the State will negotiate in good faith,

rather than have another judgment out there about fees.

MS. MAFFATORE: Understood, your Honor. So recognizing that your Honor intends to find that plaintiff is the prevailing party, I would just like to speak a bit to the amount, as well, in the event that we are not able to resolve that amongst ourselves, but I hope --

THE COURT: Briefly, I will hear --

MS. MAFFATORE: -- I hope that we are able to do that.

THE COURT: I will hear briefly, but I've got -- I've got everything you've written, and we've read it and considered it, and we've talked about it, and we are -- we are at a place where we are ready to consider something -- some figure.

But the -- you have to be realistic about this. I mean, when the case that went up that I was affirmed two-to-one on -- the very good judge up there didn't understand anything about -- that I was doing about process. She talked about what this is, and she had a real problem with transgender folk.

I don't know who up there feels that way and who doesn't, but you can take it up, and good luck up there. And you may win, you may lose. I don't know what panel you'll draw, so -- and they don't know, either.

MS. MAFFATORE: Certainly, your Honor.

THE COURT: So the best thing to do is to compromise this at some figure that's -- that's reasonable for the State to do it.

The State -- let me just say this. The State lawyers in this case have been honest brokers in this. And the problem came in the prison deal, that they were having this guy -- and somebody should have realized that maybe, on cases of personal injury, he's just fine, but he could not see past the fact that he was weirded out by the fact that somebody had this problem. And he should realize, this is -- he's not the one to hear this case. But he didn't, nobody else did.

MS. MAFFATORE: Yes, your Honor. So I just want to point out some -- I'm not -- I don't claim to be good at math, but I did try to do a bit of math related to what was highlighted in Defendants' Exhibit A to their response brief.

And I just want to note for your Honor that the total hours highlighted, at least the rows that were highlighted in full -- there were a couple of partial rows, and I did not take those into account -- amounts to 368 of our hours, which is roughly an 18 percent reduction.

If your Honor agrees with our colleagues across the aisle that those are all reductions that are necessary -- which we believe that those hours were justified, as we've explained in our briefing. But if your Honor agrees with them that a roughly 18 percent reduction is appropriate for the work that they have highlighted, that they believe was either duplicative or unnecessary, the fee award then -- and again, this is an estimation, I don't trust my own math necessarily -- would be

$429,607.

And so based on defendants' own presentation of what they have presented to this Court as being unnecessary, that is a figure for your -- for this Court's consideration. Again, I do believe that those hours were largely justified. They were client communications, they were strategy discussions among co-counsel, they were Daubert motions, which we would not have had to file had defendants not put forward those experts, and they were the Rule 35 motion, which we would not have had to defend against had defendants not brought it.

THE COURT: But then you have to go -- and the courts have said you have to -- if the Court is to consider the claims that did not succeed and the claim that did succeed, and decide -- and balance that out and decide where that falls and have a reduction, if you don't -- the Court has to consider it. The case law is clear. The Court has to consider it. If I go -- if I say, okay, I'll go with that figure and do it, we'll be coming back here for another hearing.

So we're not going to do that, and so you need to take that into consideration. That's the case law. That's the -- we got to do that. They know it, and you know what the case law is. So you all talk about this as to what a fair figure ought to be, and also the fact that a possible success on appeal -- you've got to look at both of those things. They do, too -- and come up with a compromise amount of money.

Is it going to be what you all would be due in the normal situation where you've done all this work? No. Are you going to wind up having done a lot of pro bono work in this case if you were able to get it worked out? Yes.

But you've done a -- you've done something -- in the fight for constitutional purposes, you've done something that -- you ought to be proud of the fact that you stood up for a constitutional wrong and you were found to be right about that. And now they have a different panel. So feel good about that. You always don't get cash for doing something.

MS. MAFFATORE: Right, your Honor. I do just want to highlight that we did -- we have already reduced --

THE COURT: I know. You feel like you have reduced it --

MS. MAFFATORE: Yes, your Honor. So -- and while my colleague did note that we have abandoned our damages claims, this is a case that is akin to Bowen and Edmo. In both of those cases, the damages claims were also abandoned. The fee award that was sought there in Bowen was over $1 million and in Edmo was $2.4 million, despite the fact that they abandoned their damages claims, despite the fact that all they got was the injunctive relief there.

We believe that that 42 percent reduction that we have put forward for this Court represents the limited degree of success we got on that Eighth Amendment claim, as compared to Bowen and

Edmo, where they sought for 5,000 hours because they had more complete injunctive relief than we have here.

THE COURT: All right. So go and talk about it and see what you work out with them. But I would caution you both to be understanding that one of you will win on appeal and one of you will lose on appeal.

And I really don't know what the Court for sure will do. I believe I am correct. I will take into consideration what I think the level of success is in the case and do it -- or you all will work it out with them. But don't get greedy about it.

MS. MAFFATORE: Yes, your Honor. We hope to be able to resolve this case and just hope that you will -- if we are not able to --

THE COURT: We're not -- if we're not --

MS. MAFFATORE: -- that you will consider the arguments we have made.

THE COURT: If you're not, I'll consider all arguments. I've considered them already. And I'm trying to give everybody where I am on this case. And you can come -- I mean, everybody can go to Richmond. And, you know, sometimes they agree with me and sometimes they don't, but that's fine. I mean, you know, they still are inviting me to have drinks with them when I'm up there, so it's not hurting our relationship at all.

MS. MAFFATORE: Well, thank you, your Honor. I don't

want to belabor the point unless you have any other specific questions. I'd be happy to --

THE COURT: I don't. I don't. And I appreciate -- like I said, I know that I disagree with some of the things you all are doing, but I do congratulate you all on -- your arguments are excellent, your paperwork is excellent.

And I do congratulate the State on changing that panel, and I hope you'll advise them that, whatever other panels they have, that they need to set them up -- you know, it shouldn't always be, you know, that's the -- if you want -- if you want another opinion, ask me again, if you don't give the prisoner any air.

MS. BRENNAN: Your Honor, Mr. Rodriguez, who was counsel for the State for most of this case, is now the general counsel over at the Department of Adult Corrections. So I'm sure he'll take the lesson --

THE COURT: Excellent, excellent. That's good. I want that -- I just want things to be fair. It's clearly -- it's a different area than just being out there. These are prisoners. And I mean, we -- you know, there's -- the State has certain things they have to do. It's not -- it's not as perfect as being at the house, sitting in front of the TV. You're in prison. And so there are certain things -- but they're being punished by being in prison, and it should not be onerous beyond the fact that they're in prison. And I know the

State knows that, and I get very few cases where I'm sure I would disagree with the State.

Had this panel been in -- by the way, had this panel been in -- whether or not I felt like it ought to be a -- that the plaintiff ought to -- ought to prevail about that, but had a fair panel been in the State and done it, I'd have gone along with the State on that.

This was totally -- the law just pretty much gives the State -- the State takes a fair shot at it, it's pretty strict on the courts. The courts can intervene only in very small circumstances. In this case, the State failed because of the process, not because of any other reason. Once the process was set, I was happy, and then they came up with whatever they came up with.

I do think the plaintiff could have sought damages just for the constitutional violation, but it would have been in the same neighborhood, probably, of what the attorneys' fees are. It wouldn't have been a lot different than what we're talking about today because the -- you know, with regard to all that -- and I'm assuming the plaintiff has gotten the surgery done at Chapel Hill now since they're out.

So -- yeah. And, again, I -- I feel for people that have this issue, that they -- that they -- you know, some of us are born in the bodies that we think we're supposed to be in, and for somebody not to be, it's got to be a traumatic situation

for those folks. And we just need to understand. We're all trying to get to the end of the line. We're all children of God, and we need to be fair to people.

So -- all right. Thank you all for everything you've done here and in this case. And try to work something out.

MS. BRENNAN: Your Honor, can I ask one question?

THE COURT: Yes, ma'am.

MS. BRENNAN: In terms of moving forward, what kind of timeframe would you like us to report back to you?

THE COURT: I think that's a very, very good question. What do you think you need to talk to your people? And then there needs to be a negotiation.

MS. BRENNAN: I think we need at least 30 days, realistically, just because of the number of people that need to be involved.

THE COURT: Okay. Well, let's go -- let's go -- let's see. Let's go -- 30 days would put us on a -- today's a Tuesday, it will put us at a Thursday. So I'm going to go 31 days, which puts us on a Friday at the end of the week.

If somebody will tell the Court -- let the Court know that either you have settled the matter on the attorneys' fees or you haven't, then I will go ahead and set this for sometime in October. And then we'll go ahead and have another hearing, at which time, if you want to say something additional to me, you can, at which time I'll mostly just let you know what I'm gonna

do because by then I'll -- and I already got a general idea of what I'm going to do, but I don't really know for sure exactly today. I wanted to hear from everybody today.

I do think that there is a reasonable thing here, rather than let the Court come in -- the Court -- if the Court issues something and follows the courts' dictates to consider success and reduction and stuff like that, absent them deciding that they're not a prevailing party, they're going to do whatever I put down. I guarantee you. They'll find that I have not -- I have not been unreasonable in there.

You'll have to win on prevailing party if that happens. You won't win on the amount I give. And they could. They could do that. And from the same standpoint over here, if they find against you on prevailing party, the amount of money is zero. So we need to -- you all need to talk. Okay.

MS. BRENNAN: Thank you, your Honor.

THE COURT: And this doesn't mean that you don't deserve every dime of the work that you did. You did great work, but we've got to look at things the way -- where they sit and what the courts do and the realities of the situation of what we're dealing with. So --

MS. MAFFATORE: Thank you, your Honor.

THE COURT: Okay. Thank you.

(End of proceedings.)

C E R T I F I C A T E

I, DEBORAH COHEN-ROJAS, Federal Official Court Reporter for the United States District Court for the Western District of North Carolina, a Registered Diplomate Reporter, Certified Realtime Reporter, and Federal Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the foregoing proceedings contained herein on the aforementioned subject on the date herein set forth, and that the foregoing pages constitute a full, true and correct transcript.

Dated this 14th day of August, 2026.

DEBORAH COHEN-ROJAS
RDR, CRR, FCRR
Federal Official Court Reporter

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendants. | **JOINT STATUS UPDATE** |

Pursuant to the Court's directive, the parties jointly report that they have unfortunately been unable to resolve Plaintiffs' pending motion for attorneys' fees by agreement and therefore respectfully request a ruling from the Court.

This the 24th day of September, 2025.

**JEFF JACKSON**
**Attorney General**

/s/ Stephanie A. Brennan
Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

Michael Bulleri
Special Deputy Attorney General
NC Bar No. 35196
mbulleri@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendants***

/s/ Jaclyn A. Maffetore
Jaclyn A. Maffetore
NC Bar No. 50849
jmaffetore@acluofnc.org

Daniel K. Siegel
NC Bar No. 46397
dsiegel@acluofnc.org

Michele Delgado
NC Bar No. 50661
mdelgado@acluofnc.org

ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
P.O. Box 28004
Raleigh, NC 27611-8004
Tel: (919) 354-5070
Fax: (919) 869-2075

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Tel: (919) 942-5200
Fax: (866) 397-8671
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
Li Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004-2400
Tel: (212) 519-7887
Fax: (212) 549-2650
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted pro hac vice

***Attorneys for Plaintiff***

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendant. | **NOTICE OF APPEAL** |

Notice is hereby given that all Defendants hereby appeal to the United States Court of Appeals for the Fourth Circuit from the order on fees, DE-176, entered by this Court in this action on June 22, 2026.

Respectfully submitted, this the 22nd day of July 2026.


**JEFF JACKSON**
**Attorney General**

/s/ Stephanie A. Brennan
Stephanie A. Brennan
Special Deputy Attorney General
NC Bar No. 35955
sbrennan@ncdoj.gov

Michael Bulleri
Special Deputy Attorney General
NC Bar No. 35196
mbulleri@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602-0629
(919)716-6900

***Attorneys for Defendant***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing motion was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

Dated: July 22, 2026

/s/ Stephanie A. Brennan
Stephanie A. Brennan