No. 26-6822

In the
United States Court of Appeals
for the Fourth Circuit

KANAUTICA ZAYRE-BROWN,

*Plaintiff-Appellee,*

v.

NORTH CAROLINA DEPARTMENT
OF ADULT CORRECTION, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of North Carolina

# BRIEF OF DEFENDANTS-APPELLANTS

JEFF JACKSON
Attorney General

Stephanie A. Brennan
Special Deputy Attorney General

Michelle A. Liguori
Special Deputy Attorney General

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6400

Counsel for Defendants-Appellants

## CORPORATE DISCLOSURE STATEMENT

I certify, pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, that no appellant is in any part a publicly held corporation, a publicly held entity, or a trade association, and that no publicly held corporation or other publicly held entity has a direct financial interest in the outcome of this litigation.

This the 23rd day of October 2026.

/s/ Stephanie A. Brennan
Stephanie A. Brennan

TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... V

JURISDICTIONAL STATEMENT .......... 1

ISSUES PRESENTED .......... 2

INTRODUCTION .......... 3

STATEMENT OF THE CASE .......... 6

A. Plaintiff Requested Gender-Affirming Surgery. .......... 6

B. Plaintiff Brought Claims Against Defendants, Including an Eighth Amendment Claim for Denial of Medical Care. .......... 7

C. The District Court Issued an Injunction Requiring Reconsideration of Plaintiff's Request for Surgery. .......... 8

D. Defendants Appealed the Injunction, but Plaintiff's Release from Prison Mooted the Appeal. .......... 12

E. Plaintiff Abandoned her Remaining Claims for Damages, Yet the District Court Awarded her Attorneys' Fees and Costs. 13

SUMMARY OF ARGUMENT .......... 17

STANDARD OF REVIEW .......... 19

ARGUMENT .......... 20

I. THE DISTRICT COURT ERRED IN CONCLUDING PLAINTIFF WAS A PREVAILING PARTY WHO IS ENTITLED TO FEES AND COSTS. .......... 21

A. *Stinnie* Holds that Plaintiffs are not the Prevailing Party Unless They Obtain from the Court Enduring Relief on the Merits that Materially Alters the Legal Relationship Between the Parties. .......... 22

B. Under this Controlling Precedent, Plaintiff is not a Prevailing Party. ............ 24

1. Plaintiff did not Prevail on any Claim She Actually Brought in the Case. ............ 25

2. The District Court's Injunction was a Temporary, Interim Step that Led to Another Determination that Surgery was not Necessary for Plaintiff. ............ 27

3. Plaintiff Obtained No Judicial Relief that Extends Beyond the Case. ............ 30

4. This Court Vacated the Injunction Before Final Judgment in any Event. ............ 32

5. Plaintiff Left the Case with no Enduring Judicial Relief that Materially Altered the Relationship Between the Parties. ............ 33

C. The District Court Erred by not Following *Stinnie* and by Applying the Very Logic *Stinnie* Rejected to Award Fees. .. 34

II. ALTERNATIVELY, EVEN IF PLAINTIFF WAS TECHNICALLY A PREVAILING PARTY, THE DISTRICT COURT ABUSED ITS DISCRETION BY AWARDING $526,207.50 IN FEES. ............ 36

A. The District Court Abused its Discretion by not Denying or Reducing the Fee Award Based on Plaintiff's Failure to Achieve the Injunction She Sought. ............ 38

B. The District Court Erred by Applying Hourly Rates for 2022, 2023, and 2024 that Exceeded 150 Percent of the Court-Appointed Counsel Rates for Those Years. ............ 44

C. The District Court also Erred by Awarding Fees that were not Directly and Reasonably Incurred in Proving the Violation Found. ............ 48

# TABLE OF AUTHORITIES

Cases

*AcryliCon USA, L.L.C. v. Silikal GmbH*,
985 F.3d 1350 (11th Cir. 2021) ........................................................ 29

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975) .......................................................................... 21

*Barber v. Kimbrell's*,
577 F.2d 216 (4th Cir. 1978) .................................................. 49, 50, 53

*Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*,
532 U.S. 598 (2001) ............................................................... 49, 50, 53

*Buffington v. Balt. Cnty.*,
913 F.2d 113 (4th Cir. 1990) .......................................................... 50

*Crawley v. MacVean*,
No. 7:19-cv-00474, 2023 WL 6447322 (W.D.Va. Sep. 29, 2023) ............. 47

*Daly v. Hill*,
790 F.2d 1071 (4th Cir. 1986) ........................................................ 52

*Doe v. Chao*,
435 F.3d 492 (4th Cir. 2006) .......................................................... 42

*Crawley v. MacVean*,
No. 7:19-cv-00474, 2023 WL 6447322 (W.D. Va. Sep. 29, 2023).......... 47

*EEOC v. Great Steaks, Inc.*,
667 F.3d 510 (4th Cir. 2012) .......................................................... 20

*Farrar v. Hobby*,
506 U.S. 103 (1992) .................................................................. passim

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................... 14, 38, 42

*Hernandez v. Kalinowski*,
146 F.3d 196 (3d Cir. 1998) ........................................ 52

*Jackson v. State Bd. of Pardons & Paroles*,
331 F.3d 790 (11th Cir. 2003) ........................................ 52

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ........................................ 40

*Kane v. Lewis*,
No. 16-1140, 675 F. App'x 254 (4th Cir. Jan. 13, 2017) (unpublished) ........................................ 42, 43

*Lackey v. Stinnie*,
604 U.S. 192 (2025) ........................................ passim

*McAfee v. Boczar*,
738 F.3d 81 (4th Cir. 2013) ........................................ passim

*Mercer v. Duke Univ.*,
401 F.3d 199 (4th Cir. 2005) ........................................ 39, 44

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ........................................ 47

*Murphy v. Smith*,
583 U.S. 220 (2018) ........................................ passim

*Parsons v. Ryan*,
949 F.3d 443 (9th Cir. 2020) ........................................ 47

*Reinbold v. Evers*,
187 F.3d 348 (4th Cir. 1999) ........................................ 19

*Shaw v. Hunt*,
154 F.3d 161 (4th Cir. 1998) ........................................ 19

*Sole v. Wyner*,
551 U.S. 74 (2007) ........................................ 23

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
489 U.S. 782 (1989) .......... 24

*United States v. Munsingwear Inc.*,
340 U.S. 36 (1950) .......... passim

*Volk v. Gonzalez*,
262 F.3d 528 (5th Cir. 2001) .......... 52

*Whitley v. Albers*,
475 U.S. 312 (1986) .......... 26

*Williams v. Benjamin*,
77 F.3d 756 (4th Cir. 1996) .......... 26

*Younger v. Green*,
No. RDB-16-3269, 2024 WL 3832336 (D. Md. Aug. 15, 2024) .......... 47

*Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., v. Rustam Guiv Found. of N.Y.*,
822 F.3d 739 (4th Cir. 2016) .......... 19, 20

Constitutions

N.C. Const. art. I, § 27 .......... passim

U.S. Const. amend. VIII .......... passim

Statutes

18 U.S.C. § 3006A .......... 45

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1343(a)(3) .......... 1

28 U.S.C. § 1367(a) .......... 1

29 U.S.C. § 794a .......... passim

42 U.S.C. § 1983 .......... 1, 21

42 U.S.C. § 1988 .................... passim

42 U.S.C. § 1988(b) .................... passim

42 U.S.C. § 1997e .................... 52

42 U.S.C. § 1997e(d) .................... passim

42 U.S.C. § 1997e(d)(3) .................... passim

42 U.S.C. § 12101 .................... passim

Rules

Fed. R. Civ. P. 54(d)(1) .................... 21

Fed. R. Civ. P. 35 .................... 51

Other Authorities

Ballentine's Law Dictionary 985 (3d ed. 1969) .................... 23

Black's Law Dictionary 1352 (4th ed. 1968) .................... 23, 24

Compensation and Expenses of Appointed Counsel, *Guidelines for Administering the CJA and Related Statutes*, Ch. 2, § 230.16, United States Courts (Jan. 5, 2026) .................... 46

## JURISDICTIONAL STATEMENT

In April 2022, Plaintiff Kanautica Zayre-Brown, then incarcerated at Anson Correctional Institution, filed a complaint against the North Carolina Department of Public Safety (DPS) and fourteen DPS officials. JA50, JA53-54. Plaintiff asserted claims under 42 U.S.C. § 1983, the Eighth Amendment to the United States Constitution (U.S. Const. amend. VIII), the North Carolina Constitution (N.C. Const. art. I, § 27), the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a). JA87-94. The district court had jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3), and supplemental jurisdiction over her state law claim under 28 U.S.C. § 1367(a).

The district court granted summary judgment for Plaintiff on her Eighth Amendment claim and entered an injunction on that claim. Defendants appealed the injunction to this Court. JA126-127. While the appeal was pending, Plaintiff was released from prison, and this Court thus dismissed the appeal as moot and vacated the district court's judgment. JA211-214. The parties then filed a joint stipulation,

dismissing with prejudice Plaintiff's remaining claims, resulting in a final judgment. *See* JA217-218.

Plaintiff filed a motion for attorneys' fees and costs. JA220-222. The district court granted the motion on June 22, 2026. JA19. Defendants filed a timely notice of appeal on July 22, 2026. JA349-350. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the district court erred in awarding more than half a million dollars in fees and costs to Plaintiff as a prevailing party in a case in which she never obtained an injunction requiring the gender-affirming surgery she sought and in which she abandoned her claims for damages.

2. Alternatively, whether the district court abused its discretion by awarding $526,207.50 in fees.

## INTRODUCTION

This appeal raises the question of whether a formerly incarcerated plaintiff seeking gender-affirming surgery from the State prison system is a prevailing party entitled to more than half a million dollars in attorneys' fees and costs in a case in which she never obtained an order requiring the gender-affirming surgery she sought and in which she wholly abandoned any claim for damages.

Under *Lackey v. Stinnie*, 604 U.S. 192 (2025), the answer to that question is no. In *Stinnie*, the Supreme Court considered whether the plaintiffs, who had obtained a preliminary injunction before the action became moot, were entitled to attorneys' fees as the prevailing party pursuant to 42 U.S.C. § 1988. *Id.* at 199-208. Because no court had granted enduring judicial relief on the merits that materially altered the legal relationship between the parties, the Supreme Court reversed an en banc decision of this Court affirming a fee award and held that plaintiffs did not qualify as prevailing parties who are eligible for attorneys' fees. *Id.*

Here too, Plaintiff does not qualify as a prevailing party. Plaintiff filed this case in April 2022 seeking an injunction requiring Defendants

to provide her with gender-affirming surgery and damages for Defendants' failure to provide the surgery. Plaintiff asserted a claim for denial of medical care under the Eighth Amendment, as well as other claims. At the summary judgment stage, the district court expressly declined to answer the key question of whether Plaintiff's desired surgery was medically necessary, noting that a reasonable jury could find for either party on that issue. Yet, the district court nonetheless granted Plaintiff an injunction due to its concerns about the fairness of the process.

The district court, however, did not endorse Plaintiff's asserted theory for an Eighth Amendment violation. Nor did it grant Plaintiff the relief she sought (surgery). Instead, the district court ordered Defendants to either provide the requested surgery or create a new committee with outside medical experts on gender dysphoria to reconsider the request. This injunction was only a temporary and interim step that required Defendants to re-review their decision with outside experts, which ultimately led only to another decision that the surgery was not medically necessary for Plaintiff. Furthermore, Defendants challenged the injunction on appeal, but the appeal was never decided on the merits.

Rather, this Court vacated the injunction as moot while it was on appeal due to Plaintiff's release from incarceration and dismissed the appeal. Plaintiff then elected to abandon her remaining claims for damages rather than move forward with a jury trial. Under these circumstances, Plaintiff left the case with no enduring relief. Under *Stinnie*, she is not a prevailing party who is entitled to recover fees and costs.

Moreover, even if Plaintiff were technically a prevailing party, the district court abused its discretion by awarding $526,207.50 in fees, which was the full amount Plaintiff requested. Plaintiff's extremely limited success makes this case like *Farrar v. Hobby*, 506 U.S. 103 (1992), where the plaintiff received only nominal damages and the Supreme Court held that the only reasonable fee was no fee at all. The district court also abused its discretion by failing to apply key provisions of the Prison Litigation Reform Act that place strict limits on the rates and compensable tasks in attorney fee awards in actions brought by prisoners.

This Court should reverse the district court's fee award.

## STATEMENT OF THE CASE

A. Plaintiff Requested Gender-Affirming Surgery.

Plaintiff is a transgender woman who suffers from gender dysphoria—a mental health diagnosis defined as the "marked incongruence between one's experienced/expressed gender and assigned gender[.]" JA102. Plaintiff sought to change her gender presentation and sex characteristics to align with her internal sense of gender identity. JA102.

Plaintiff was incarcerated in the state prison system in 2017. JA103. Throughout her incarceration, the Department provided Plaintiff with gender affirming hormone therapy (which she had received prior to incarceration) and mental health counseling.[1] JA70 & JA147.

Plaintiff requested a vulvoplasty, which is a surgery in which tissue from the penis, testes, scrotum and urethra are used to create a neo-vulva. JA103 & JA106. The Department through its Division Transgender Accommodations Review Committee (DTARC), or

[1] Plaintiff initiated her own removal from mental health services in November 2022. DE61-33 at 30-31. Additionally, Plaintiff voluntarily discontinued medication for anxiety and depression on April 25, 2022. DE61-19.

"Committee," denied the request after concluding that the requested surgery was not medically necessary for Plaintiff. JA106. The Committee reached this conclusion for two reasons. First, the Committee determined that Plaintiff was relatively well adjusted and was doing well with current treatments. JA106. Second, the Committee concluded that the medical literature regarding the efficacy of gender affirming surgery as a treatment for gender dysphoria was mixed in terms of outcomes. JA106.

### B. Plaintiff Brought Claims Against Defendants, Including an Eighth Amendment Claim for Denial of Medical Care.

In April 2022, Plaintiff filed this lawsuit against the Department and fourteen Department officials. Plaintiff asserted claims under the Eighth Amendment to the United States Constitution, Article I, § 27 of the North Carolina Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. In relevant part, Plaintiff contended that Defendants were deliberately indifferent to her medical needs by denying a medically necessary surgery. JA87-88 ¶¶ 144-154.

Plaintiff sought preliminary and permanent injunctions requiring Defendants to provide "necessary medical care . . . including . . . prompt provision of gender-affirming vulvoplasty"; a declaration that Defendants' failure to provide specific accommodations for gender

dysphoria was unconstitutional and unlawful; and damages. JA95. The district court denied Plaintiff's request for a preliminary injunction. JA31.

### C. The District Court Issued an Injunction Requiring Reconsideration of Plaintiff's Request for Surgery.

After discovery, the parties filed cross motions for summary judgment. JA34-35. Thereafter, on February 2, 2024, the district court issued an order denying the parties' cross motions without prejudice. JA102. The district court determined that it was beyond genuine dispute that "Defendants' denial [of the request for surgery] caused Plaintiff to suffer significant injury." JA109. However, the district court indicated that there were unresolved questions of material fact and that the district court would hold an evidentiary hearing to resolve two disputed issues: (1) whether the Committee applied the appropriate standard of care; and (2) whether the Committee's medical necessity analysis afforded Plaintiff individualized consideration. JA111. The district court set an evidentiary hearing for February 20, 2024. JA115. The district court indicated that it would permit the parties to renew their summary judgment motions after the evidentiary hearing.

On February 20, 2024, the parties appeared and presented evidence at a three-hour hearing on the two issues identified by the district court. Defendants presented the testimony of three medical professionals who served on the Committee. JA39, DE104-7. After the hearing, the parties renewed their cross-motions for summary judgment. JA40-41. On April 16, 2024, the district court denied Defendants' renewed summary judgment motion. *See* JA126. In the same order, the district court granted Plaintiff's renewed summary judgment motion in part, finding that Defendants' accommodation review process violated Plaintiff's Eighth Amendment rights. JA125.[2]

Despite Plaintiff's express disclaimer of any theory based on a categorical ban on surgery, DE66 at 21, and the lack of any due process claim in Plaintiff's complaint, JA50-97, the district court framed the question presented by Plaintiff's renewed motion as "whether North Carolina's *process* for assessing the medical necessity of gender-affirming surgery for inmates suffering from gender dysphoria violates the Eighth

[2] The district court denied Plaintiff's renewed summary judgment motion "with respect to [her] ADA and *Corum* claims." JA126.

Amendment of the United States Constitution," JA120 (emphasis added). The district court wrote:

> *This case is about process*, not substance. While this case involves a transgender prisoner, it is not a case about transgender issues. It is certainly not a case about whether states should or should not be required to pay for transgender healthcare. Instead, this case is about whether states can permit prison officials' personal views to determine the medical care available to prisoners.

JA124. The district court concluded that North Carolina's process was deficient because it failed to afford Plaintiff's request "unbiased and individualized" consideration. JA120. The district court focused on a position paper that had been written by a Committee member; he had stated in the paper that gender affirming surgery was not medically necessary. JA121. The district court determined this was a de facto blanket ban on surgery. JA123; *see also* JA137.

Despite having acknowledged in its prior order that "where—as here—a deliberate indifference claim arises from prison officials' decision not to provide a course of treatment, 'the essential test is one of medical necessity,'" JA110, the district court "ma[de] no finding as to medical necessity," JA125. Rather, the district court "[found] only that the process by which Defendants assessed medical necessity was flawed." JA125. The

district court acknowledged that, at this stage, "a reasonable jury could find for either party on the question of medical necessity." JA126.

Concerned with the process by which Defendants had reached a decision (but not necessarily its result), *see* JA124, the district court ordered injunctive relief, JA126-127. The injunction required Defendants "to, within 30 days, either (1) notify the Court of DPS' intention to accommodate Plaintiff's surgical request; or (2) form a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this Court for approval." JA126-127. The district court indicated in its injunction order that "if Defendants accommodate Plaintiff's surgical request, and Plaintiff's ADA and Corum claims proceed to trial, *then* the question of medical necessity will be put to the jury." JA126 (emphasis added).

If the new committee determined that the surgery was not necessary and Defendants opted not to provide the surgery, the Court stated that Plaintiff could then file a new motion asking the Court to review the new determination. JA126-127.

D. Defendants Appealed the Injunction, but Plaintiff's Release from Prison Mooted the Appeal.

On May 15, 2024, Defendants filed a timely Notice of Appeal to this Court. JA128. In November 2024, during the appeal, Plaintiff was released from incarceration. *See* JA207. This Court then asked for briefing on whether the injunction should be vacated under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), which held that a lower court decision should be vacated where the case became moot while on appeal. *See* JA207. Over Plaintiff's objection, this Court vacated the injunction and dismissed the appeal before making any determination on the merits. JA210-214.

In the meantime,[3] Defendants formed a new committee of two outside medical doctors with gender dysphoria expertise, and the district court approved the new committee. JA175. The new committee reached the same result as the Department's original Committee when it determined, based on its review, that gender affirming surgery was not medically necessary for Plaintiff. *See* JA181, JA184-185, JA186-195 & JA210. With the injunction vacated, Plaintiffs never filed a motion

[3] Defendants sought, but failed to obtain, a stay of the injunction pending appeal. JA131 & JA143.

seeking review of this additional decision. Nor did the district court issue any further order. Although Defendants voluntarily made some changes to their process, the district court recognized that those were not legally required. JA332-333.

### E. Plaintiff Abandoned her Remaining Claims for Damages, Yet the District Court Awarded her Attorneys' Fees and Costs.

With the injunctive relief request rendered moot, only Plaintiff's claims for damages remained. However, rather than proceed with those claims and put them to the test before a jury, in June 2025, Plaintiff elected to take a dismissal with prejudice of her remaining claims. JA217.

Nonetheless, Plaintiff moved for attorneys' fees and costs. JA220. Defendants opposed the motion, arguing that, pursuant to *Stinnie*, Plaintiff did not qualify as a prevailing party who was entitled to fees. *See* JA325 & 329-330; *see also* DE166. On August 26, 2025, the district court held a hearing on the motion. The district court began by asking, "So have you guys settled this thing?" JA323. Throughout the hearing, the district court repeatedly urged the parties to settle. JA330 & JA344-345.

The district court stated that it viewed Plaintiff as the prevailing party but recognized that "although there was a constitutional issue here

that the plaintiff prevailed on … ultimately – the plaintiff did not get any relief about getting the surgery. ***And so that was really what this case is about***. I mean, it's based in the constitutional thing." JA325 (emphasis added). The district court reiterated that it "was making no opinion about whether [it] thought the surgery ought to happen." JA327. The district court explained,

> The reason that you get attorneys' fees is because we've got to get lawyers to bring these constitutional things up where there will not be big rewards and big money and big things. We've got to encourage people to do that.

JA325.

As to amount, the district court told the parties: "I'm not going to be finding $530,000-some." JA330; *see also id.* at JA336 (indicating any award would be less than the requested amount). At the hearing, the district court recognized that degree of success required a reduction, as reflected in the following colloquy:

> [COUNSEL]: . . . I think Hensley [v. Eckerhart, 461 U.S. 424, 433 (1983)] is very clear that the degree of success does have to be taken into account as the most important factor.
> THE COURT: It does. It does. If I don't do that -- if I don't do that, I will get reversed.
> [COUNSEL]: And while the -- your Honor focused on an important issue of the procedure, that was

> not the thing that she has focused on and wanted in this case. I mean, she came to this Court because she wanted gender-affirming surgery or damages. With respect to the surgery, she never achieved that through this case --
> THE COURT: That's true.
> [COUNSEL]: -- she leaves without it. And with respect to damages, she abandoned those claims and chose not to pursue them. And that's pretty significant because she could have. [After the request for injunctive relief became moot], she had the opportunity … to pursue claims that were still remaining for damages and to prove that she deserved to get damages in this case, and she elected to abandon all of those claims and not to pursue them after years of litigation. So in that sense, too … she didn't prevail on those claims. And it's a significant thing, such that it warrants a large reduction in fees.

JA334-336. The district court further stated that it believed an award should be reduced "by the fact of where the success was and where the failure was…." JA325-326.

The district court also indicated that it agreed with Defendants that the PLRA rate at the time the work was done should apply as opposed to the current rate. JA333. It stated: "I don't know what I'm going to do. But I go with [Defendants'] argument that it should be two rates, and I go with [Defendants'] argument that it ought to be considered, depending on how big a win it was and what parts they lost." JA330-331.

On June 22, 2026, the district court issued its order on fees, awarding Plaintiff the full requested amount of her fees and costs. JA1-19. The district court's order contains less than two pages of discussion on the issue of prevailing party (including one short paragraph of analysis) and does not even mention the *Stinnie* case or Defendants' argument for why Plaintiff did not qualify as a prevailing party. JA5-6.

After concluding Plaintiff was a prevailing party entitled to fees, the district court performed a twelve-factor lodestar analysis, which the court determined supported the entirety of Plaintiff's requested fees. JA6-17. In doing so, the court applied 150 percent of the 2025 court-appointed counsel rate for all of counsel's work regardless of when it was performed and noted that Plaintiff's counsel represented that they already had removed fees for duplicative work and work associated with unsuccessful claims. JA7-8 & n.3, 17. The district court did not address Defendants' arguments about considerable fees remaining in the petition for work that was not compensable under the PLRA because it was duplicative or unnecessary to the injunction awarded. *See* JA17 & JA294-320. And although the district court specifically acknowledged that, "[t]he extent of the relief may affect [Plaintiff's] total recovery . . ." it did

not apply any reduction to the requested fee amount based on Plaintiff's lack of success. JA1.

Plaintiff did not assert a due process claim in her complaint. *See* JA50-96. And the Fourth Circuit vacated the injunction as moot without ever reaching the merits of the district court's injunction on an unraised due process claim. JA213-214. Yet, the district court explained its decision on fees as follows:

> The legal fees in this case were incurred primarily on the constitutional issue *of denial of due process*. Plaintiff prevailed on that issue both before this Court *and the Fourth Circuit*. The State of North Carolina prevailed on the medical necessity claim once an unbiased panel reviewed the claim. But because the due process issue was the cause of so much litigation and resulting costs, the Court will award the full attorney fees and costs requested.

JA339 (emphasis added).

## <u>SUMMARY OF ARGUMENT</u>

Plaintiff filed this case in April 2022 seeking an injunction requiring Defendants to provide her with gender-affirming surgery and damages for Defendants' denial of the surgery. Plaintiff achieved neither goal before taking a dismissal with prejudice of all remaining claims in

June 2025. Yet, the district court ordered the State to pay her more than half a million dollars in fees and costs as the prevailing party.

While Plaintiff did obtain an injunction from the district court at summary judgment due to the district court's procedural concerns, the injunction was not based on any Eighth Amendment theory that the Plaintiff actually asserted, and the district court expressly declined to decide the merits of her asserted claim for denial of medically necessary care. The injunction was only a temporary and interim step that required Defendants to re-review their medical-necessity decision with outside experts, and that additional review merely led to another decision that the surgery was not medically necessary for Plaintiff. The injunction did not provide Plaintiff with the relief she sought or permanently alter the relationship between the parties. Furthermore, this Court vacated the injunction as moot while it was on appeal due to Plaintiff's release from incarceration—never reaching the merits of the procedural injunction issued by the district court. Under these circumstances, and applying the Supreme Court's decision in *Stinnie*¸ Plaintiff is not a prevailing party who is entitled to recover fees and costs. This Court should reverse the order awarding fees.

Alternatively, even if this Court concludes that Plaintiff technically qualifies as a prevailing party, the district court abused its discretion by awarding over $520,000 in fees—which was everything Plaintiff requested. Because Plaintiff sought gender-affirming surgery but got only a new process determining she was not entitled to it, this case is like *Farrar*, where the Supreme Court determined that the only reasonable fee is no fee at all. But even if Plaintiff were entitled to some award of fees, the district court abused its discretion by failing to substantially reduce the fee award based on Plaintiff's lack of success and by failing to apply key provisions of the PLRA limiting the hourly rate and compensable tasks.

## STANDARD OF REVIEW

The district court's determination of whether a plaintiff is a prevailing party is a legal determination that is reviewed de novo. *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 754 (4th Cir. 2016)*; see also Reinbold v. Evers*, 187 F.3d 348, 362 (4th Cir. 1999); *Shaw v. Hunt*, 154 F.3d 161, 164 (4th Cir. 1998).

When a plaintiff is entitled to fees as a prevailing party, the district court's fee award is reviewed for abuse of discretion. *See McAfee v. Boczar*, 738 F.3d 81, 87 (4th Cir. 2013). A district court abuses its discretion, and commits reversible error, by not reducing a fee award to reflect a plaintiff's degree of success. *See id.* at 93-94. Legal determinations justifying an award, such as the district court's interpretation of a statute related to fees, are reviewed de novo. *Zoroastrian Ctr.* 822 F.3d at 754; *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 519 (4th Cir. 2012).

## ARGUMENT

This Court should reverse the order granting Plaintiff's request for attorneys' fees and costs, because Plaintiff is not the prevailing party in this litigation. Although this Court granted Plaintiff partial summary judgment and ordered limited injunctive relief, that temporary procedural relief does not render Plaintiff a prevailing party who is entitled to attorneys' fees and costs for this litigation. Plaintiff did not prevail on her asserted Eighth Amendment claim. Nor did she achieve either of her actual aims of obtaining surgery from Defendants or receiving a damages award. She did not obtain any enduring relief or

change the relationship between the parties at the close of the case. Indeed, the Fourth Circuit vacated the injunction she obtained prior to her own decision to take a stipulated dismissal with prejudice of her remaining claims for damages. And even if Plaintiff could show prevailing party status, the district court abused its discretion in awarding her over $520,000 in fees.

## I. THE DISTRICT COURT ERRED IN CONCLUDING PLAINTIFF WAS A PREVAILING PARTY WHO IS ENTITLED TO FEES AND COSTS.

Under the American Rule, parties are not entitled to collect attorneys' fees absent express statutory authorization. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 249 (1975). Congress has provided that in actions brought under certain civil rights statutes—including 42 U.S.C. § 1983—"the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Similarly, costs may be allowed for the prevailing party. *See* Fed. R. Civ. P. 54(d)(1). Here, Plaintiff was not entitled to recover either fees or costs because she is not a prevailing party.

### A. *Stinnie* Holds that Plaintiffs are not the Prevailing Party Unless They Obtain from the Court Enduring Relief on the Merits that Materially Alters the Legal Relationship Between the Parties.

In *Stinnie*, the Supreme Court considered whether the plaintiffs, who had won a preliminary injunction, were entitled to attorneys' fees as the prevailing party in litigation brought pursuant to 42 U.S.C. § 1988. 604 U.S. at 196. In that case, the plaintiffs challenged a Virginia statute as unconstitutional and won a preliminary injunction enjoining its enforcement. *Id.* While the case was on appeal, the Virginia General Assembly repealed the statute, rendering the case moot. *Id.*

In determining whether the *Stinnie* plaintiffs should be considered the prevailing party entitled to fees under 42 U.S.C. § 1988(b), this Court held, en banc, that some preliminary injunctions can provide lasting, merits-based relief and qualify plaintiffs as prevailing parties even if the case becomes moot before final judgment. *Id.* at 198. The Supreme Court reversed, holding in relevant part that plaintiffs who gained only preliminary injunctive relief before the action became moot did not qualify as prevailing parties who are eligible for attorneys' fees. *Id.* at 203-04. The Supreme Court held that, for these plaintiffs, no court conclusively resolved their claim by granting enduring judicial relief on

the merits that materially altered the legal relationship between the parties. *Id.* at 207-08.

The Supreme Court started with the statute's text and noted that it has recognized "prevailing party" as a legal term of art. *Id.* at 199-200. (citing *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603 (2001)). It explained that when 42 U.S.C. §1988(b) was adopted, contemporary dictionaries defined a prevailing party as one who successfully maintains its claim when the matter is finally resolved. *Id.* at 200 (citing Black's Law Dictionary 1352 (4th ed. 1968); Ballentine's Law Dictionary 985 (3d ed. 1969)).

The Court reviewed its prior decision in *Sole v. Wyner*, 551 U.S. 74 (2007), in which the Court established that the change in the legal relationship between the parties must be "enduring" for a party to be prevailing. *Stinnie*, 604 U.S. at 203. In *Sole*, the Supreme Court held that it was not enough to be considered prevailing for a plaintiff to obtain a preliminary injunction where a permanent one was later denied, because the plaintiff obtained no enduring change in the legal relationship between herself and the defendants. 551 U.S. at 77, 78, 86.

The Supreme Court further held in *Stinnie* that the enduring nature of the change must itself be judicially sanctioned. *Stinnie*, 604 U.S. at 202-03. Chief Justice Roberts explained that "prevailing party status 'does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who has made a claim against the other, has successfully maintained it.'" *Id.* at 200 (quoting Black's Law Dictionary 1352 (Revised 4th ed. 1968)). In short, "a plaintiff 'prevails' when a court grants enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties.'" *Id.* at 202 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).

B. Under this Controlling Precedent, Plaintiff is not a Prevailing Party.

The relevant takeaway from the Court's holding in *Stinnie* is that a plaintiff does not prevail where a plaintiff obtains no lasting relief from the court that permanently changes the relationship between the parties at the end of the case. That is exactly the case here.

As an initial matter, Plaintiff did not actually prevail at any point in time on any legal claim that she asserted in the case, and the district court conceded that Defendants were the prevailing party on her primary

Eighth Amendment claim. Regardless, the district court's injunction to resolve an unasserted due process issue was merely temporary, leading only to the same decision that surgery was not medically necessary for Plaintiff. And that injunction was vacated on appeal, in any event. Plaintiff had various remaining claims for damages but she chose to abandon them. The parties entered a stipulated dismissal of prejudice that ended the case without any enduring relief for Plaintiff.

1. Plaintiff did not Prevail on any Claim She Actually Brought in the Case.

As noted above, Plaintiff brought claims under the Eighth Amendment to the United States Constitution, Article I, § 27 of the North Carolina Constitution, the ADA, and the Rehabilitation Act. For the Eighth Amendment claim, Plaintiff contended that Defendants were deliberately indifferent to her medical needs by denying her a medically necessary surgery. JA87-88.

In her Complaint, Plaintiff did not assert any claim that Defendants violated the Eighth Amendment by failing to give her request for surgery individualized consideration. *See* JA87-88. Plaintiff also initially moved for partial summary judgment based on the purported denial of a medically necessary surgery. *See* DE63 at 25-29. At the time,

Plaintiff contended that the individualized assessment was "cursory," DE63 at 29, but specifically disclaimed any intention to proceed under a theory that Defendants had a blanket ban on gender-affirming surgery (*i.e.*, lack of individualized consideration), DE66 at 21.

Plaintiff's claim was asserted under the Eighth Amendment's cruel and unusual punishment clause. JA87-88, *see also Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) ("[I]t is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater substantive protection 'than does the Cruel and Unusual Punishments Clause.'"). Plaintiff's Eighth Amendment claim was entirely predicated on the allegation that she was wrongfully denied medically necessary care. *See* JA87-88 & JA95. But that allegation was never vindicated in the litigation. Rather, the Court specifically declined to decide the issue or rule on that basis. JA124-126.

Notably, the district court itself conceded that Defendants prevailed on the Eighth Amendment claim Plaintiff brought for denial of medically necessary care. JA18 (finding that "The State of North

Carolina prevailed on the medical necessity claim once an unbiased panel reviewed the claim."). The district court found only that Plaintiff prevailed on denial of "due process." JA18.

Because the claim asserted in the case centered on denial of medically necessary care and the district court found Defendants to be the prevailing party on that issue, the district court erred in its determination that Plaintiff was the prevailing party.

2. The District Court's Injunction was a Temporary, Interim Step that Led to Another Determination that Surgery was not Necessary for Plaintiff.

After granting summary judgment to Plaintiff on a due process theory, the district court awarded an injunction that only provided limited and temporary relief—another chance for the request to be considered by independent decisionmakers with relevant expertise. JA126-127. That, of course, was not the determination or relief Plaintiff was seeking. Nor did Plaintiff obtain the determination or relief she wanted as a result of the second review. Rather, the new committee reached the exact same conclusion as the original Committee: that the surgery was not medically necessary for Plaintiff. JA181, JA184-185, JA186-195 & JA210. This limited and temporary relief on a threshold

issue (medical necessity) is properly understood as a preliminary injunction. Thus, *Stinnie* is exactly on point.

*Stinnie* makes clear that a plaintiff does not qualify as the prevailing party unless she obtains enduring relief that changes the relationship between the parties at the close of the case. 604 U.S. at 203-04. While the district court's injunction here was issued at summary judgment, the injunction was a transient victory that provided only a second review that served as an interim step toward the relief Plaintiff sought—but never received.

Under these circumstances, the Supreme Court's holding applies. *Stinnie* holds that a plaintiff does not prevail where the plaintiff obtains no lasting relief that permanently changes the relationship between the parties at the end of the case. 604 U.S. at 203-04. The injunction granted by the Court only had a limited effect—Defendants were required to reconsider Plaintiff's request for surgery. Once Defendants completed the re-review as ordered by the Court, Defendants' compliance with the injunction was complete.[4] While the injunction contemplated further

[4] The district court stated that Defendants failed to fully comply with the injunction. Defendants disagree and would point out that the record

review of the decision at Plaintiff's request, the injunction as entered provided no further relief and certainly no ongoing relief that would continue at the close of the case. Thus, the injunction did not lead to any permanent change of status between the parties.

The fact that the Court's injunction was labelled as a permanent injunction does not alter the applicability of *Stinnie*. Nor does the fact that it was issued at summary judgment. What matters under *Stinnie* is the enduring nature of the injunction and the status between the parties at the end of the case. 604 U.S. at 203-04. Titles aside, the injunction at issue is best considered preliminary rather than permanent, because it was an interim measure that had no enduring effect. *Cf. AcryliCon USA, L.L.C. v. Silikal GmbH*, 985 F.3d 1350, 1360 (11th Cir. 2021) (finding an injunction entered on a partial summary judgment to be preliminary even though the trial court called it permanent, where it left open issues to be decided and did not survive final judgement). Here, the district court's injunction did not resolve any of Plaintiffs' claims, including her

---

demonstrates Defendants' efforts and the result. JA181, JA184, JA186, JA207, & JA210. Regardless, it is undisputed that the injunction was vacated, and this issue does not affect whether Plaintiff is the prevailing party.

claim for damages. Notably, the injunction left the key issue of medical necessity to be decided such that Defendants could prevail on the issue at a later stage of the case, which they did. JA18.

At bottom, the "relief" granted by the Court was the insertion of an additional procedural step that only led to a second conclusion that Plaintiff was not entitled to relief on the merits of her asserted Eighth Amendment claim. Thus, the district court erred in determining that the Plaintiff obtained any permanent or enduring relief that bestowed prevailing party status on Plaintiff.

#### 3. Plaintiff Obtained No Judicial Relief that Extends Beyond the Case.

Plaintiff also cannot claim she achieved some other result that would entitle her to prevailing party status. Below, Plaintiff tried to characterize the Court's injunction as a permanent injunction that required Defendants to adopt a different process. DE164 at 1. She claimed her rights were vindicated by paving the way for a constitutionally compliant process for all transgender prisoners who seek gender-affirming surgery after her. DE164 at 1. The district court apparently agreed. JA2.

The assertion that Plaintiff won a change in process for all transgender people seeking gender affirming surgery going forward is specious in light of what the order actually says. *See* JA126-127. At the close of the case, Plaintiff has obtained no legal judgment of any kind that would allow her to enforce any particular process for herself or anyone else. Under these circumstances, Plaintiff did not prevail. The lawsuit did not result in any legal requirement that Defendants change the process, as the district court recognized. JA332-333 (congratulating Defendant for making voluntary changes). Rather, Defendants voluntarily made some minor alterations to the review process.

But voluntary—and not legally mandated—changes by Defendants do not confer prevailing party status on Plaintiff. In *Stinnie,* the plaintiffs' efforts arguably did lead to a change in the law, because the legislature repealed the challenged law while the case was pending. 604 U.S. at 197. Here, by contrast, Plaintiff did not achieve any lasting change. Regardless, *Stinnie* holds that voluntary change not ordered by the court is not the type of enduring change of status between the parties that confers prevailing party status. *Id.* at 202-03; *see also Stinnie*, 604

U.S. at 207 ("Critically, both the change in relationship and its permanence must result from a judicial order.").

Ultimately, Plaintiff failed to win a judicially sanctioned, enduring change of status between the parties at final judgment.

4. This Court Vacated the Injunction Before Final Judgment in any Event.

The Fourth Circuit's vacatur of the injunction prior to dismissal (and without reaching the merits) removes any doubt regarding Plaintiff's status at the close of the case. The Fourth Circuit determined that Plaintiff's request for injunctive relief was moot and vacated it before issuing any decision on the merits in Defendants' appeal of the injunction. JA214. Therefore, Defendant never had an opportunity to have the district court's procedural injunction reviewed. The effect of a vacatur is to give the injunction no further effect and to leave nothing to endure at the close of the case. *See Munsingwear Inc.*, 340 U.S. at 40-41 (vacatur after a case becomes moot on appeal "eliminates a judgment, review of which was prevented through happenstance," and thus "prevent[s] a judgment, unreviewable because of mootness, from

spawning any legal consequences”).[5] With the vacatur, the portion of *Stinnie* regarding mootness controls, because like plaintiffs in *Stinnie*, Plaintiff here received no lasting relief.

5. Plaintiff Left the Case with no Enduring Judicial Relief that Materially Altered the Relationship Between the Parties.

Plaintiff’s own actions on remand demonstrate that Plaintiff did not prevail in the case. Although Plaintiff still retained claims under the ADA, Rehabilitation Act, and Article I, § 27 of the North Carolina Constitution that she could have pursued in a jury trial, she deliberately chose to abandon those claims.

Once the injunction was vacated, the case returned to the trial court for Plaintiff to pursue her remaining three claims for damages. Instead of taking those claims to a jury to be tested on the merits, however, Plaintiff stipulated to the dismissal of all remaining claims with prejudice. JA217. Thus, she left the case with nothing from Defendants (no injunctive relief, no declaration that the denial of medical care violated her rights, and no damages). She is no closer to obtaining her

[5] The Fourth Circuit specifically asked for briefing on the applicability of *Munsingwear* prior to issuing its order.

primary objective of requiring Defendants to provide gender-affirming surgery or damages than she was on the day she filed her lawsuit. There is no permanent change of status between the parties and no enduring relief. Under *Stinnie*, therefore, Plaintiff is not a prevailing party.

Plaintiff cannot contend that her release or the mootness of the injunction made it impossible for her to prevail or obtain enduring relief. She had every opportunity to continue to pursue her damages claims but instead dropped them after years of litigation. Under the circumstances, where Defendants fully defeated the request for surgery and any claim for damages, the district court's designation of Plaintiff as the prevailing party was error.

### C. The District Court Erred by not Following *Stinnie* and by Applying the Very Logic *Stinnie* Rejected to Award Fees.

Although Defendant extensively briefed the *Stinnie* case before the district court, the district court completely ignored the case–not even mentioning it once in its order on fees. It was legal error not to apply *Stinnie*.

The district court also erred in its assessment that Plaintiff had prevailed in the Fourth Circuit. The district court concluded that, "legal fees in this case were incurred primarily on the constitutional issue *of*

*denial of due process*" and that "Plaintiff prevailed on that issue both before this Court *and the Fourth Circuit*." JA339 (emphasis added). This was incorrect at both levels. As discussed above, Plaintiff's purported win on the issue in the district court was fully vacated by this Court, with no continuing legal effect. The district court's decision ignores that the vacatur under *Munsingwear* gave the injunction no further legal consequences. *See Munsingwear*, 340 U.S. at 40-41. And there was never a win on the issue at the Fourth Circuit. While Plaintiff successfully opposed a stay of the injunction in this Court while the appeal was pending, through no fault of Defendants, this Court never had the opportunity to decide the merits of Plaintiff's Eighth Amendment claim. Additionally, Plaintiff never asserted and the parties therefore never litigated a due process claim. Instead, her claims were brought under the Eighth Amendment, Article I, § 27 of the North Carolina Constitution, the ADA, and the Rehabilitation Act.

Furthermore, the district court apparently decided to award fees based at least in part on a belief that it was necessary to do so to encourage attorneys to bring civil rights cases. JA325. But this very policy rationale was raised by the dissent in *Stinnie* and did not carry the

day. *See Stinnie*, 604 U.S. at 208, dissent (arguing that the majority's rule was inconsistent with the objective "to encourage attorneys to file civil rights actions on behalf of the most vulnerable people in our society.").

For all of these reasons, this Court should determine that Plaintiff did not prevail and reverse the award of fees and costs.

## II. ALTERNATIVELY, EVEN IF PLAINTIFF WAS TECHNICALLY A PREVAILING PARTY, THE DISTRICT COURT ABUSED ITS DISCRETION BY AWARDING $526,207.50 IN FEES.

Even when a plaintiff is a prevailing party, the Prison Litigation Reform Act (PLRA) imposes exacting standards for attorney fee awards in suits filed by prisoners. Fees are generally not to be awarded except to the extent that (A) "the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and (B) either (i) the amount of the fee is "proportionately related to the court ordered relief for the violation" or (ii) "the fee was directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d). As the Supreme Court has explained, the PLRA "seeks to restrain" the discretion that a district court would otherwise have to award fees under section 42 U.S.C. § 1988(b). *Murphy v. Smith*, 583 U.S. 220, 227 (2018).

This Court has explained that calculating a reasonable attorneys' fee award requires a three-step process. *McAfee*, 738 F.3d at 88. The district court is required to:

(1) "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate;"

(2) "subtract fees for hours spent on unsuccessful claims unrelated to successful ones;" and

(3) "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff."

*Id.* (quotations omitted).

Here, the district court erred most prominently at the third step of the process by failing to reduce the fee award based on the degree of Plaintiff's success on her Eighth Amendment claim. Because the interim injunctive relief Plaintiff obtained was only a nominal aspect of the injunctive relief she ultimately sought, as discussed above, the district court abused its discretion by awarding fees at all, or, alternatively, by not substantially reducing the fee award. The district court also erred at the first and second steps of the analysis by applying a rate for work performed in 2022, 2023, and 2024 that exceeds the rate authorized by

the PLRA for those years, and by awarding fees for duplicative work and tasks not directly related to the injunction awarded, which the PLRA prohibits.

### A. The District Court Abused its Discretion by not Denying or Reducing the Fee Award Based on Plaintiff's Failure to Achieve the Injunction She Sought.

"Congress has not authorized an award of fees . . . whenever conscientious counsel tried the case with devotion and skill." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Rather, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436). "In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all," because the modicum of success achieved renders any award of attorneys' fees unreasonable. *Id.* at 115.

Thus, for example, in *Farrar*, the Supreme Court reversed a $280,000 fee award granted to plaintiffs who brought due process claims seeking $17 million in compensatory damages but obtained only $1 in nominal damages. *Id.* at 115-16. The Supreme Court determined that, even though the plaintiffs were technically prevailing parties, based on

the minimal extent of their success, "the only reasonable fee [was] no fee at all." *Id.* at 115; *see id.* at 114-16.

Similarly, in *McAfee v. Boczar*, which involved malicious prosecution and related claims, this Court reduced a $322,340.50 fee award by two-thirds where the plaintiff asked the jury for compensatory damages as high as $500,000 and the jury awarded only $2,943.60 in stipulated out-of-pocket damages. 738 F.3d at 85, 92-95. In vacating the fee award and reducing the fee, this Court explained: "Because the district court overstated McAfee's degree of success, it erred in not making an attorney's fee award that would properly reflect her success in this case." *Id.* at 94.

This case is like *Farrar* because the procedural injunction Plaintiff obtained, which was ultimately vacated, represents at most nominal success in that Defendants were ordered to reevaluate a threshold element of her Eighth Amendment claim seeking gender-affirming surgery. *See supra* pp. 9-12 & 28-31. The district court erred as a matter of law by failing to compare the injunction Plaintiff obtained to the injunction she sought. *See Mercer v. Duke Univ.*, 401 F.3d 199, 205 (4th Cir. 2005) ("If a case sought injunctive relief, the relevant comparison, of

course, would be the scope of the injunctive relief sought to the relief actually granted.")

The district court wholly failed to engage in the analysis required at step three of the test discussed in *McAfee*. JA1-17. The order on fees (1) included a lodestar analysis addressing the twelve factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[6] and, in doing so, (2) assessed whether Plaintiffs' fee petition requested fees associated with unsuccessful claims.[7] JA6-17. But the court failed to (3) address the extent to which the requested fees should be reduced based on the degree of Plaintiff's success. *See McAfee*, 738 F.3d at 88 (discussing the three-step process).

At the hearing on Plaintiff's motion for fees, the district court acknowledged that "plaintiff did not get any relief about getting the surgery," which was "really what this case is about," and the court had to

---

[6] This Court uses the *Johnson* factors in conducting the lodestar analysis. *McAfee*, 738 F.3d at 88 ("To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson*[.]").

[7] As argued below, *see infra* pp. 45-49, the district court erred in applying an unauthorized hourly rate and included duplicative time and non-trivial amounts of time associated with unsuccessful claims.

decide "how much . . . should [the award] be reduced by the fact of where the success was and where the failure was...." JA325-326. The court recognized: "[I]f I don't do that, I will get reversed." JA334.

However, when the district court issued its order on fees, it did not address whether and how much the award should be reduced for lack of success. *See* JA16-17. In concluding that Plaintiff was a prevailing party, the court acknowledged that Plaintiff "did not obtain all of the relief she sought in this case" and the "extent of relief may affect her total recovery." JA6. But, after the court performed a lodestar analysis and assessed whether to subtract fees for hours spent on unsuccessful claims, *see McAfee*, 738 F.3d at 88, the court never returned to the issue of Plaintiff's failure to obtain the relief she sought to determine an appropriate reduction to the fee award.[8] JA17.

As the district court itself recognized, this was reversible error. *See Farrar*, 506 U.S. at 115-16 (reversing fee award that did not reflect

[8] As the district court recognized, and as discussed below, Plaintiff's counsel maintained that they reduced their bills by 42 percent to address duplication of effort and the dismissed claims, but these claimed reductions did not purport to address her lack of success on the Eighth Amendment claim. JA17. The claimed reductions were also undocumented in the record and thus unreviewable by the court and Defendants. *See* JA225-267.

lack of success); *McAfee*, 738 F.3d at 94-95 (vacating fee award that did not reflect lack of success and directing district court to enter substantially reduced award); *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) ("the district court erred in its reasonableness analysis by failing to give primary consideration to the amount of damages awarded as compared to the amount sought . . . a consideration that exists in order to constrain a court's discretion in setting an award" (quotation omitted)); *see also Hensley*, 461 U.S. at 437 ("When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.").

Because Plaintiff achieved at most a nominal degree of success, the re-review of a threshold element of her Eighth Amendment claim seeking gender-affirming surgery, the only reasonable fee here, like in *Farrar*, is no fee at all. Accordingly, even if this Court determines that Plaintiff is a prevailing party, Defendants respectfully request that the Court reverse the district court's determination that Plaintiff is entitled to fees. *See Farrar*, 506 U.S. at 115-16 (reversing award of fees); *see also Kane v.*

*Lewis*, No. 16-1140, 675 F. App'x 254, 260 (4th Cir. Jan. 13, 2017) (unpublished) (vacating fee award of $25,000 where plaintiff obtained nominal damages and directing "district court to enter an order awarding [the plaintiff] zero dollars in attorney's fees").

Alternatively, as in *McAfee*, Defendants request that the Court vacate the $526,207.50 fee award and direct the district court to enter a substantially reduced fee award based on Plaintiff's very limited degree of success on her Eighth Amendment claim. *See McAfee*, 738 F.3d at 95. If this Court elects that option, to avoid a "second major litigation" on the issue of fees, Defendants respectfully request that the Court direct the district court to reduce the fee award by a set percentage. *Id.* Based on Plaintiff's extremely limited degree of success, including that the procedural injunction she obtained was vacated, and in the context of the PLRA's demanding standards, Defendants request that a reduction be

substantial.[9]

### B. The District Court Erred by Applying Hourly Rates for 2022, 2023, and 2024 that Exceeded 150 Percent of the Court-Appointed Counsel Rates for Those Years.

Reductions are also warranted because the district court erroneously applied hourly rates for 2022, 2023, and 2024 that exceeded 150 percent of the court-appointed counsel rates for those years, in violation of 42 U.S.C. § 1997e(d)(3).

The PLRA expressly caps hourly rates for attorney fee awards in actions brought by prisoners. 42 U.S.C. § 1997e(d)(3). "No award of attorney's fees . . . shall be based on an hourly rate greater than 150

---

[9] In *Mercer*, this Court affirmed a fee award that included a 20 percent reduction based on the extent of the plaintiff's success, where the plaintiff obtained only nominal damages but got a landmark ruling on the merits that Title IX does not permit schools to discriminate against women that the school has allowed to participate in contact sports. 401 F.3d at 206-07, 209-12. Here, to the extent any award is reasonable, which Defendants deny, a much larger reduction is appropriate because Plaintiff failed on the merits of her claim that she was entitled to gender-affirming surgery. Plaintiff thus did not succeed on a significant legal issue nor did she further a public purpose, especially where the procedural injunction she obtained was vacated on appeal. *See id.* at 206-08 (discussing factors for determining if an award of nominal damages justifies an attorney fee award).

percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel." *Id.*

The hourly rate for court-appointed counsel is set by the Judicial Conference of the United States. *See* 18 U.S.C. § 3006A. "Except in capital prosecutions and in death penalty federal habeas corpus proceedings, compensation paid to appointed counsel for time expended in court or out of court or before a U.S. magistrate judge may not exceed" the following rates:

| If services were performed between | The maximum hourly rate is |
|---|---|
| 01/01/2026 to present | $177 |
| 01/01/2025 through 12/31/2025 | $175 |
| 01/01/2024 through 12/31/2024 | $172 |
| 01/01/2023 through 12/31/2023 | $164 |
| 01/01/2022 through 12/31/2022 | $158 |

"Compensation and Expenses of Appointed Counsel," *Guidelines for Administering the CJA and Related Statutes*, Ch. 2, § 230.16, United States Courts (Jan. 5, 2026) ("hereinafter "Guidelines").[10]

Here, at Plaintiff's request, the district court used 150 percent of the 2025 court-appointed rate ($262.50) across the board—including for work that Plaintiff's counsel performed in 2022, 2023, and 2024. JA7-8; *see also* DE164 at 10-11 & n.4. This was an error of law in interpreting the maximum rates authorized by the PLRA for those years.

The Judicial Conference has determined that rates for court-appointed counsel depend on the year in which work was performed. *See* Guidelines § 230.16. Congress's decision to tie the maximum rates for PLRA attorney fee awards to the maximum rates for court-appointed counsel demonstrates Congressional intent that the rates for PLRA fee awards function the same way as court-appointed counsel rates, with maximum rates based on the year in which work was performed. *See* 42 U.S.C. § 1997e(d)(3).

---

[10] Available at https://www.uscourts.gov/administration-policies/judiciary-policies/guidelines-administering-cja-and-related-statutes-6#a230_16.

This Court has not addressed this specific issue, but the Ninth Circuit, in evaluating a fee award subject to 42 U.S.C. § 1997e(d)(3) and vacating and remanding on other grounds, instructed the district court to "determin[e] the correct rates for each year and appl[y] these rates to Plaintiffs' time-entries." *Parsons v. Ryan*, 949 F.3d 443, 465 (9th Cir. 2020). District courts in this Circuit have done the same. *See Younger v. Green*, No. RDB-16-3269, 2024 WL 3832336, at *5 (D. Md. Aug. 15, 2024) (discussing PLRA rates based on when services were performed); *Crawley v. MacVean*, No. 7:19-cv-00474, 2023 WL 6447322, *3 (W.D. Va. Sep. 29, 2023) (concluding "the court must apply the 'PLRA-capped rate of . . . $237.00 [per hour] for 2022; and $246.00 [per hour] for 2023'").

Plaintiff and the district court here relied on *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989), which held that an enhancement for delay in payment is appropriate as part of a reasonable attorney's fee under 42 U.S.C. § 1988. *See* JA7-8; DE164 at 10 n.4. However, *Jenkins* preceded the PLRA, it did not involve a prisoner suit, and the fee award was not subject to 42 U.S.C. § 1997e(d)(3)'s limitations. Relying on *Jenkins* to award 150 percent of the appointed-counsel rate in effect at the time of the fee petition, rather than at the time work was performed, is

inconsistent with the text of § 1997e(d)(3), the fact that court-appointed counsel rates are based on when work was performed and not when the fee petition is submitted, and Congress's intent to tie maximum PLRA attorney fee rates to court-appointed counsel rates.

The district court's use of an hourly rate for 2022, 2023, and 2024 that exceeded the maximum rate authorized by the PLRA for those years underscores that, to the extent any fee award is reasonable in this case, the $526,207.50 awarded was erroneous.

### C. The District Court also Erred by Awarding Fees that were not Directly and Reasonably Incurred in Proving the Violation Found.

Under the PLRA, Plaintiff is only entitled to fees for time "directly and reasonably incurred" in proving a violation. 42 U.S.C. § 1997e(d); *see also Murphy*, 583 U.S. at 227 (observing that section 1997e(d) "limit[s] the fees that would otherwise be available under § 1988 to cover only certain kinds of lawyerly tasks"). Below, Defendants contended that Plaintiff did not establish that the fees she requested were incurred to prove a due process violation (a claim which Plaintiff never asserted) or to support issuance of the injunction. Defendants argued that Plaintiff billed generally for time associated with preparing the complaint, motion

for preliminary injunction, written discovery, depositions, original summary judgment briefing, and Dr. Ettner's work, which all focused on the claim that Plaintiff was denied medically necessary care, not the lack of individualized assessment found by the Court. DE166 at 16-17.

Defendants also specifically challenged approximately 250 hours (representing approximately $65,000 in fees) as clearly not directly and reasonably necessary for proving the procedural violation that the district court found. *See* JA294-318; *see also* DE166 at 15-18.[11] The district court avoided the PLRA's exacting standards, making no findings of fact regarding how these fees were reasonably incurred in proving what the district court found as a violation. *See* JA16-17.

Attorney fee awards are "within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered." *Barber v. Kimbrell's*, 577 F.2d 216, 226 (4th Cir. 1978); *see also Murphy*, 583 U.S. at 226-27. However,

[11] Below, Defendants combined the timekeeping sheets that Plaintiff submitted and added colored highlights to illustrate the concerns discussed below. *See* JA294-318. The total of approximately 250 hours (approximately $65,000 in fees) does not include entries highlighted in yellow and pink (showing unnecessary duplication) for lead counsel Jaclyn Maffetore.

"appellate review, while necessarily limited in scope, is nonetheless available to insure that the trial court's discretion has not been abused." *Barber*, 577 F.2d at 226. This Court "cannot afford effective appellate review unless [the Court] ha[s] before [it] the district court's reasons for finding a particular award appropriate." *Id.*; *see also Buffington v. Balt. Cnty.*, 913 F.2d 113, 130 (4th Cir. 1990) (vacating fee award where the district court "mechanically accepted" counsel's proffered rates without requiring "specific corroborating evidence").

Below, Defendants argued that the following resulted in fees that were not directly and reasonably incurred in proving the procedural violation that the district court found:

- Plaintiff's timekeeping records reflected substantial duplication of effort due to overstaffing, including numerous internal communications and group meetings that would be unnecessary without overstaffing.[12] *See* JA294-318 (yellow highlights).

[12] Plaintiff's counsel represented they excluded some billers, but they still sought fees for five different attorneys. *See* JA225 & JA244.

- Multiple attorneys billed for client communications when those could have been handled by one counsel on behalf of the group. *See* JA294-318 (pink highlights).
- Plaintiff sought fees for preparing *Daubert* motions that were not granted, did not factor into the decision at summary judgment, proved unnecessary in a case where Plaintiff never proceeded to trial, and were not directly and reasonably incurred in proving the procedural violation found. *See* JA294-318 (green highlights).
- Plaintiff sought fees for opposing a motion for a Rule 35 examination, *see* JA294-318 (blue highlights), which were unnecessary where the magistrate judge found Defendants' "request to examine Plaintiff . . . reasonable and supported by good cause," DE47 at 7; *see also* JA33.
- Plaintiff's work on the fee petition—representing $7,350 for 28 hours in addition to those highlighted at JA294-318—was

not directly and reasonably incurred in proving a violation.[13]

As noted above, the PLRA has exacting standards for attorney fee awards. *See* 42 U.S.C. § 1997e; *Murphy*, 583 U.S. at 226-27. The district court did not hold Plaintiff to them in this case. Instead of assessing whether the asserted fees were directly and reasonably incurred in proving the violation found, the district court awarded Plaintiff everything she asked for based on her counsel's unsupported representations that they had already "culled hours where attorney work could be perceived as vague or duplicative" and "discounted as much attorney time as could be readily identified as pertaining solely to . . . unsuccessful claims." JA17.

---

[13] The district court's citation to *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986), to award fees on fees was misplaced, where *Daly* preceded the PLRA and did not consider the PLRA's requirement that fees be directly and reasonably necessary in proving a violation. *See* JA17. While several circuits have held that fees on fees are recoverable under the PLRA, *see Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 799 (11th Cir. 2003); *Volk v. Gonzalez*, 262 F.3d 528, 536 (5th Cir. 2001); *Hernandez v. Kalinowski*, 146 F.3d 196, 199-201 (3d Cir. 1998), Defendants contend that the *Hernandez* dissent was correct in concluding that fees and costs associated with preparing a fee petition are not "directly and reasonably incurred" in proving a violation of the plaintiff's rights and thus are not allowable under the PLRA. 146 F.3d at 201-02 (Cowen, J., dissenting); *see also Murphy*, 583 U.S. at 226 ("[I]n the Prison Litigation Reform Act of 1995, Congress reentered the field and adopted § 1997e's new and specialized fee shifting rule for prisoner civil rights suits alone.").

The district court erred by not making findings about how the challenged fees were directly and reasonably incurred in proving the procedural violation found. *See Barber*, 577 F.2d at 226. This error, too, underscores that, to the extent any fee award is reasonable in this case, the $526,207.50 awarded should be substantially reduced.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court reverse the district court's order allowing fees. In the alternative, Defendants respectfully request that the Court vacate the fee award and remand with instructions to the District Court to apply a specific and substantial reduction.

Respectfully submitted, this the 23rd day of October, 2026.

JEFF JACKSON
Attorney General

/s/ Stephanie A. Brennan
Stephanie A. Brennan
Special Deputy Attorney General
N.C. State Bar No. 35955

Michelle A. Liguori
Special Deputy Attorney General
N.C. State Bar No. 52505

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6400

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of October 2026, I filed the foregoing brief with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

/s/ Stephanie A. Brennan
Stephanie A. Brennan

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains less than 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface: 14-point Century Schoolbook font.

/s/ Stephanie A. Brennan
Stephanie A. Brennan